UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIMOTHY DANIEL MCGUIRE and
JAMES LEE JOSEPH RYAN,

      Plaintiffs,

v.                                                                              Case No. 05-40185
                                                                       Hon. Sean F. Cox

CITY OF ROYAL OAK;
OFFICER DOUGLAS WARNER; OFFICER
BARRY GALE; and POLICE CHIEF TED QUISENBERRY

      Defendants.

_____

## OPINION AND ORDER

This matter is before the Court on Defendants' Motion to dismiss and Motion for summary judgment.[1] Both parties fully briefed the issues and a hearing was held November 9, 2006. For the following reasons, the Court **GRANTS** Defendants' Motion for summary judgment on Plaintiffs' claims for: (1) violation of due process pursuant to §1983; (2) violation of the Fourth Amendment based on unreasonable seizure pursuant to §1983; (3) false arrest/false imprisonment; and (4) abuse of process. The Court **DENIES** Defendants' Motion for summary judgment with respect to Plaintiffs' claims for: (1) malicious prosecution; (2) intentional infliction of emotional distress; and (3) gross negligence. The Court declines to rule at this time on Defendants' Motion for summary judgment on Plaintiffs' claims for (1) supervisory liability and (2) municipal liability. Defendants may renew their motion at the close of discovery.

---

[1] Defendants agreed to withdraw their Motion to dismiss at the hearing.

## I.   BACKGROUND

This action arises out of the arrest of Plaintiffs Timothy McGuire ("McGuire") and James Ryan ("Ryan"). On August 9, 2003, Plaintiffs, both Canadian citizens, boarded a bus in Canada bound for Clarkston, Michigan. Plaintiffs went to see a country music concert at DTE Music Theater. Following the concert, Plaintiffs returned to the bus. Plaintiffs boarded the bus. However, McGuire got off the bus because other members of his group were going to get in a fight. McGuire claims he planned to break up the fight. Ryan remained on the bus and fell asleep.

Allegedly, two members of Plaintiffs' group were involved in an altercation with Daniel Threlfall ("Threlfall"). Threlfall was beaten and kicked until unconscious and bleeding. McGuire denies seeing who assaulted Threlfall; he says Threlfall was already on the ground when he got to the scene.

Defendants Warner and Gale, both Royal Oak police officers, also attended the concert. They were not on-duty. After the concert, they were returning to their vehicles with their families when the altercation with Threlfall occurred. Warner and Gale claim they saw two individuals assaulting Threlfall. They also claim they saw the two individuals board the Plaintiffs' bus. Warner and Gale followed the individuals to the bus and identified themselves as police officers, but they did not board the bus. They instructed the bus driver not to leave. The Oakland County Sheriff was called. Warner and Gale waited with the bus for 10-15 minutes until the Oakland County Sheriff deputies arrived. During that time, Warner and Gale allegedly again identified themselves as police officers.

When the Oakland County deputies arrived, McGuire was ordered off the bus while

officers conducted a search.  While McGuire was outside the bus, Warner and Gale allegedly told him that they were police officers and that if he did not get back on the bus and identify the assailants, Warner and Gale would "throw the book" at him.  Warner and Gale allegedly told McGuire that if he would not identify the assailants, Warner and Gale would say that they watched McGuire assault Threlfall.

Along with the Oakland County authorities, Gale went on the bus and escorted Ryan off.  Gale identified Ryan as one of the assailants.  Warner and Gale told the Oakland County deputies that they witnessed McGuire and Ryan punch and kick Threlfall.  McGuire and Ryan were arrested.  Following a preliminary hearing, where Warner testified that he witnessed McGuire and Ryan assault Threlfall, McGuire and Ryan were bound over on the charge of Assault with Intent to Commit Great Bodily Harm Less Than Murder.  On September 20, 2004, the Oakland County Prosecutor moved to dismiss the charges *nolle prosequi*, on the basis that newly discovered evidence pointed to other individuals as the assailants.

On June 8, 2005, Plaintiffs filed a Complaint.  A First Amended Complaint was filed on September 27, 2006 alleging:  (1) violation of 42 USC §1983 against the individual defendants for violation of the 4th Amendment; (2) violation of 42 USC §1983 against the City of Royal Oak; (3) Supervisory Liability against Royal Oak Police Chief Ted Quisenberry; (4) Assault and Battery; (5) Intentional Infliction of Emotional Distress; (6) False Arrest and False Imprisonment; (7) Gross Negligence; (8) Abuse of Process; and (9) Malicious Prosecution.

Plaintiffs also asserted several counts against Oakland County; Oakland County Sheriff Mike Bouchard; and Oakland County Deputies Litchok and Matich.  Those Defendants were dismissed on August 9, 2006.  The Oakland County Defendants that were dismissed had a

pending Motion for summary judgment.

On April 24, 2006, Defendants Warner, Gale, City of Royal Oak, and Royal Oak police chief Quisenberry filed a Motion for summary judgment.

## II.   STANDARD OF REVIEW

Under Fed. R. Civ. P 56(c), summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Copeland v. Machulis*, 57 F.3d 476, 478 (6th Cir. 1995). A fact is "material" and precludes a grant of summary judgment if "proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). The court must view the evidence in the light most favorable to the nonmoving party and it must also draw all reasonable inferences in the nonmoving party's favor. *Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

## III.   ANALYSIS

### A.   Were Warner and Gale Acting Under Color of Law?

The parties dispute whether Warner and Gale were acting under color of law as required to bring an action under 42 USC §1983. Plaintiffs argue that Warner and Gale told the crowd to "move on;" repeatedly identified themselves as officers; ordered the bus driver not to leave; threatened McGuire that he better identify the assailants or they would say that McGuire was guilty; and Gale retrieved Ryan from the bus and conducted a line-up. Plaintiffs also contend

Warner and Gale were acting in conjunction with the Oakland County deputies, and pursuant to a Royal Oak police department requirement that they take action when a felony is committed in their presence.

Defendants contend that although Warner and Gale identified themselves as police officers, they acted as any ordinary citizens would who witnessed a crime. Defendants point out that ordinary citizens can make an arrest when they witness a felony. Additionally, Defendants deny that they were acting in accordance with department policy that required them to take action.

To state a claim under section 1983, a plaintiff must show that he was deprived of a right secured by the Constitution or laws of the United States by a defendant acting under color of state law. *Chapman v. Higbee Company*, 319 F.3d 825, 833 (6th Cir. 2003). "A private party's actions constitute state action under section 1983 where those actions may be fairly attributable to the state." *Id*. With respect to police officers, "[i]t is the nature of the act performed, not the clothing of the actor or even the status of being on-duty, or off-duty, which determines whether the officer has acted under color of law." *Stengel v. Belcher*, 522 F.2d 438, 441 (6th Cir. 1975).

"[A] police officer acts under color of state law when he purports to exercise official authority." *Parks v. City of Columbus*, 395 F.3d 643, 652 (6th Cir. 2005)(citation omitted). "Such manifestations of official authority include flashing a badge, identifying oneself as a police officer, placing an individual under arrest, or intervening in a dispute between third parties pursuant to a duty imposed by police department regulations." *Memphis, Tennessee Area Local, American Postal Workers Union v. City of Memphis*, 361 F.3d 898, 903 (6th Cir. 2004). Whether an officer acted under color of state law is fact-specific and determined on a case-by-

case basis. *Chapman*, 319 F.3d at 834. "Although it is possible to determine whether a person acted under color of state law as a matter of law, there may remain in some instances unanswered questions of fact regarding the proper characterization of the actions for the jury to decide." *Id*. (citation omitted).

Here, there is a genuine issue of fact regarding whether Warner and Gale were acting under color of law when Plaintiffs were arrested. McGuire testified that when Warner and Gale first got to the scene of the assault, they identified themselves as police officers and told the crowd to move on. [Response, Exhibit 1, p.79]. McGuire claims he then returned to the bus and the officers followed him. Warner and Gale then demanded that the bus driver not leave. *Id*. at p.84. The bus driver complied and Warner and Gale waited with the bus until the Oakland County authorities arrived. While waiting, McGuire claims Warner and Gale again identified themselves as police officers. *Id*. at p.92. When the Oakland County authorities arrived, Warner and Gale again identified themselves as police officers. McGuire was ordered off the bus. When he exited the bus, Warner and Gale were standing there. McGuire testified that "Warner and Gale threatened me with if you don't get on that bus - they said here's your options, if you don't get on the bus and get the guys that did it, then you're it...[t]hey told me that they would say that they watched me do it." *Id*. at pp.96-97. McGuire claims that he later told the Oakland County authorities about Warner and Gale's threats. *Id*. at pp.107, 120.

Warner and Gale's testimony corroborates some of McGuire's allegations. Warner testified that he followed a person from the assault on Threlfall to the bus. [Supp. Brief, Exhibit 1, p.48]. Warner then identified himself as a police officer to the bus driver and told the driver not to leave. *Id*. Warner also testified that he identified himself as a police officer to the

6

Oakland County authorities upon their arrival. *Id*. at p.50. In addition, Warner testified that in conjunction with the Oakland County authorities, Gale went on the bus to identify Ryan. *Id*. at pp.84-85. Gale testified that he identified himself as an officer to the Oakland County authorities and went on the bus to identify Ryan. [Supp. Brief, Exhibit 2, pp.37-38].

Warner also testified that pursuant to the Royal Oak Police Department standard of conduct, he is supposed to stop crimes in progress. [Supp. Brief, Exhibit 1, pp. 27-28]. Warner conceded he is required to take action if a crime is committed in his presence. *Id*. Further, although Defendants argue in their Motion that Warner and Gale were acting as any other citizens who had witnessed a crime, Warner could not identify any authority that would allow an ordinary citizen to detain the bus. *Id*. at 54.

Defendants deny that Warner and Gale were acting pursuant to a department policy when they intervened in the assault on Threlfall. However, taking the facts and drawing inferences in Plaintiffs' favor, there is a question of fact regarding whether Warner and Gail were acting pursuant to the standards of conduct set forth by their department when they detained the bus and identified the Plaintiffs. As noted by *Parks, supra*, an officer acts under color of law when he purports to exercise official authority. An exercise of official authority can be manifested by identifying oneself as an officer and intervening in a dispute between third parties pursuant to a duty imposed by police department regulations. Warner himself could not identify what authority he was acting under to detain the bus, if not under his department's policy. Accordingly, Defendants are not entitled to summary judgment on Plaintiffs' §1983 claims on the basis that Warner and Gale were not state actors.

**B.     Are Warner and Gale Entitled to Qualified Immunity?**

Defendants argue Warner and Gale are entitled to qualified immunity against Plaintiffs' Fourth Amendment claim for unreasonable seizure.[2] Plaintiffs assert they were unlawfully seized in violation of the Fourth Amendment when Warner and Gale related facts known to be false to the Oakland County authorities in order to establish probable cause for Plaintiffs' arrest in the assault against Threlfall.

A plaintiff may bring a civil action for a deprivation of any federal constitutional or statutory right by state officials, pursuant to 42 USC §1983. However, defendants may raise the affirmative defense of qualified immunity. Qualified immunity is immunity from suit rather than a mere defense to liability. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). "Police officers are afforded qualified immunity for their discretionary functions, provided their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Sova v. City of Mt. Pleasant*, 142 F.3d 898, 902 (6th Cir. 1998)(citation omitted). Qualified immunity is designed to reduce the social costs of litigation by dismissing insubstantial lawsuits without trial. *Id.* (citation omitted). When the legal question of qualified immunity turns upon which view of the facts concerning the reasonableness of the use of force the jury believes, summary judgment is not appropriate. *Sova*, 142 F.3d at 903.

Before a court decides if a defendant is entitled to qualified immunity, the court must first determine whether any constitutional violation occurred. *St. John v. Hickey*, 411 F.3d 762, 768 (6th Cir. 2005). "If the court finds no violation, then the case must be dismissed at this threshold

---

[2]Plaintiffs also assert a substantive due process claim, but claims for unreasonable seizure must be analyzed under the Fourth Amendment, not due process. *Cassady v. Tackett*, 938 F.2d 693, 697 (6th Cir. 1991)(citing *Graham v. Connor*, 490 U.S. 386 (1989)). Defendant is entitled to summary judgment on Plaintiffs' due process claim.

stage because §1983 is inapplicable on its face." *Id*. In the context of this summary judgment motion, the Court must deny summary judgment if there are genuine issues of material fact as to whether Defendants violated Plaintiff's Fourth Amendment rights in an objectively unreasonable way and, second, those rights were clearly established at the time of Plaintiff's arrest such that a reasonable officer would have known that his conduct violated them.

Here, Plaintiffs allege a violation of the Fourth Amendment based on an allegedly unreasonable seizure. For purposes of the Fourth Amendment, "whenever a police officer accosts an individual and restrains his freedom to walk away, he has seized that person." *Cameron v. City of Pontiac*, 813 F.2d 782, 784 (6th Cir. 1987(citing *Terry v. Ohio*, 392 U.S. 1, 16 (1968)). "A person is seized only when, by means of physical force or a show of authority, his freedom of movement is restrained." *Id*. (citing *U.S. v. Mendenhall*, 446 U.S. 544, 553 (1980)).

> We conclude that a person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. Examples of circumstances that might indicate seizure, even where the person did not attempt to leave, would be the threatening presence of several offices, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tome of voice indicating that compliance with the officer's request might be compelled.

*Id*. at 784-785.

Plaintiffs argue they were seized because Warner had McGuire by his arm; and Gale brought Ryan off the bus. [Response, p.12-13]. Plaintiffs do not allege use of excessive force. Plaintiffs also point out that Warner and Gale detained the bus, which was their only means of transportation.

Assuming that Defendants did seize the Plaintiffs, the seizure was reasonable. It is undisputed that Warner and Gale were present at the time of the assault. Warner testified, and it

9

is undisputed, that he followed persons he saw assaulting Threlfall to the Plaintiffs' bus. [Supp. Brief, Exhibit 1, pp.47-48]. Taking the facts and inferences as alleged by Plaintiff to be true, Warner and Gale were acting in accordance with their police department regulation that they take action when a crime is committed in their presence. Warner and Gale witnessed an assault and saw the assailants flee to a bus that according to Plaintiffs, Defendants knew was bound for Canada. [Response, p.2]. It was not unreasonable for Warner and Gale, acting under their authority as police officers, to detain the bus until the Oakland County authorities arrived. Even if Warner and Gale could not identify which individuals committed the assault, as Plaintiffs allege, there is no denying that Warner and Gale had a reasonable belief that the assailants were on the bus. See *U.S. v. Couch*, 367 F.3d 557, 560 (6th Cir. 2004). McGuire's own testimony underscores the fact that Warner and Gale believed the assailants were on the bus, according to McGuire, they told him to *get on the bus* and identify the assailants. [Response, Exhibit 1, pp. 96-97, 101](emphasis added).

Once the Oakland County authorities arrived, Plaintiffs were detained under their authority. As noted, Plaintiff dismissed the Oakland County Defendants on August 9, 2006.

Thus, because Plaintiffs were not unreasonably seized by Warner and Gale, they fail to establish a violation of the Fourth Amendment. Defendants are entitled to summary judgment.

      **C.**    **Supervisory Liability Against Defendant Quisenberry**

"A supervisory employee cannot be held liable under §1983 for the constitutional torts of those he supervises unless it is shown that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it." *Searcy v. City of Dayton*, 38 F.3d 282, 287 (6th Cir. 1994). Plaintiffs claim Quisenberry knew Warner and Gail were uncertain of

who assaulted Threlfall, but were nonetheless going to testify that it was McGuire and Ryan. [Amended Complaint, ¶88]. Allegedly, Quisenberry authorized, approved, or knowingly acquiesced in Warner and Gale's conduct. Plaintiffs state a claim that Quisenberry is liable under supervisory liability for malicious prosecution. However, Plaintiffs admittedly present no evidence to support their claim.

Plaintiffs argued in response to Defendants' Motion that they needed time to conduct discovery in order to support their claim. Both parties agreed at the hearing that discovery was withheld as to this claim pending resolution of Plaintiffs' claims against Warner and Gale. Thus, the Court declines to rule on Defendants' Motion for summary judgment on Plaintiffs' §1983 claim for supervisory liability until discovery is completed. Defendants may renew their Motion at that time.

### D.   Municipal Liability Against Defendant City of Royal Oak

A municipality can be liable under §1983 for constitutional violations it causes. "However, a municipality is not liable under §1983 for an injury inflicted solely by its employees or agents; the doctrine of respondeat superior is inapplicable." *Searcy*, 38 F.3d at 286. "It is only when the execution of the government's policy or custom inflicts the injury that the municipality may be held liable under §1983." *Id*. The municipality's policy or custom "must be the moving force of the constitutional violation..." *Id*.

Plaintiffs allege the City of Royal Oak is deliberately indifferent to unsupported prosecutions complained to by its officers. [Amended Complaint, ¶82]. Further, Plaintiffs assert the City of Royal Oak failed to train and discipline officers with respect to initiation and continuation of prosecutions. *Id*. at ¶83. Lastly, Plaintiffs allege the City of Royal Oak was

aware that a substantial risk of serious harm existed. *Id*. at ¶84.

Plaintiffs argued in response to Defendants' Motion that they needed time to conduct discovery in order to support their claim. Both parties agreed at the hearing that discovery was withheld as to this claim pending resolution of Plaintiffs' claims against Warner and Gale. Thus, the Court declines to rule on Defendants' Motion for summary judgment on Plaintiffs' §1983 claim for municipal liability until discovery is completed. Defendants may renew their Motion at that time.

### E. Assault and Battery

Plaintiffs fail to establish a claim for assault and battery.

> To recover for an assault, a plaintiff must show an "intentional unlawful offer of corporal injury to another person by force, or force unlawfully directed toward the person of another, under circumstances which create a well-founded apprehension of imminent contact, coupled with the apparent present ability to accomplish the contact." *Vanvorous v. Burmeister*, 262 Mich.App. 467, 482-483, 687 N.W.2d 132 (2004). To recover for battery, a plaintiff must show a "wilful and harmful or offensive touching of another which results from an act intended to cause such contact."

*Sterling-Ward v. Tujaka*, 414 F.Supp.2d 727, 742 (E.D.Mich. 2006).

Here, Defendants deny any physical contact with Plaintiffs. [Motion, pp.12, 18]. McGuire testified he did not know if Warner or Gale ever touched him, and that he did not recall them touching him. [Response, Exhibit 1, pp.132-133]. Ryan claims he was never touched except to be handcuffed. [Response, Exhibit 2, pp.32-33]. Plaintiffs do not provide any evidence that Warner or Gale threatened corporal injury or made a harmful or offensive touching. Accordingly, summary judgment is proper on Plaintiffs' claim of assault and battery.

### F. False Arrest / False Imprisonment

"A false arrest is an illegal or unjustified arrest, and the guilt or innocence of the person

arrested is irrelevant...[t]o prevail on a claim of false arrest or false imprisonment, a plaintiff must show that the arrest was not legal, i.e., the arrest was not based on probable cause." *Peterson Novelties, Inc. v. City of Berkley*, 259 Mich.App. 1, 18 (Mich.App. 2003).  In order for a claim of false arrest to lie, the arrest itself must be made "without legal authority."  *Id*.  "One who instigates or participates in a lawful arrest...may become liable for malicious prosecution...but he is not liable for false imprisonment, since no false imprisonment has occurred."  *Id*.

Here, there can be no claim for false arrest/false imprisonment because there was probable cause for the arrest.  The Oakland County authorities conducted the investigation and arrested Plaintiffs.  Plaintiffs do not allege that Warner or Gale arrested them.  The Oakland County authorities knew an assault had occurred and had two eyewitnesses identifying Plaintiffs as the assailants.  For purposes of a false arrest claim, the alleged fact that the eyewitnesses provided false information is irrelevant where the arresting officers, the Oakland County authorities, had legal authority for the arrest.  See *Walsh v. Taylor*, 263 Mich.App. 618, 630 (Mich.App. 2004)(emphasis added)(there is a "well-established proposition that an officer may have probable cause regarding a suspect's commission of a crime on the basis of the *presumptively reliable* information conveyed to him by other officers.").

Accordingly, Defendants are entitled to summary judgment on Plaintiffs' claim of false arrest / false imprisonment.

### G.     Malicious Prosecution

Plaintiffs do not distinguish whether they are bringing a claim for malicious prosecution under federal or state law.  Because Plaintiffs state a claim under both, the Court presumes

Plaintiffs intended to assert the claim under federal and state law.

The Sixth Circuit has not announced the elements for a malicious prosecution claim pursuant to §1983.  However, it is clear that a plaintiff may maintain a claim for malicious prosecution under the Fourth Amendment, pursuant to §1983.  *Darrah v. City of Oak Park*, 255 F.3d 301, 311-312 (6th Cir. 2001).  In *Spurlock v. Satterfield*, 167 F.3d 995, 1005-1006 (6th Cir. 1999), the Sixth Circuit held that a plaintiff did state a claim for malicious prosecution pursuant to §1983 where he alleged that the defendant "fabricated evidence and manufactured probable cause;" the plaintiff was held in custody despite a lack of probable cause; and the defendant conspired to maliciously prosecute and convict the plaintiff.

Plaintiffs allege a claim of malicious prosecution under §1983 because they assert that Warner and Gale:  did not believe Plaintiffs were the assailants; nonetheless provided false testimony to the Oakland County authorities that they actually saw Plaintiffs assault Threlfall; Warner confirmed his false statements in a written statement to the Oakland County authorities; and Warner gave false testimony at Plaintiffs' preliminary exam that he saw Plaintiffs assault Threlfall.

Plaintiffs establish a genuine issue of material fact regarding whether there was a lack of probable cause against Plaintiffs for purposes of a claim for malicious prosecution.  This is consistent with the finding that there was probable cause with respect to Plaintiffs' claim for false arrest, because the individual needing probable cause is different in the two causes of action.  For purposes of a false arrest claim, there is probable cause if there is legal authority for the arrest by the arresting officers.  *Peterson Novelties, Inc., supra*.  Here, the arresting officers had probable cause based on eyewitness testimony.  Thus, the arrest itself was lawful.

14

For purposes of a claim for malicious prosecution, the focus is on whether the defendant who instituted or maintained the suit had probable cause. The inquiry is whether Warner and Gale had probable cause when they identified Plaintiffs, thereby instituting the action; and whether Warner had probable cause when he testified at the preliminary exam that Plaintiffs committed the assault. It is of no consequence in this situation that Warner and Gale were not the actual prosecutors. "[A] person who supplies information to the prosecuting authorities concerning persons possibly implicated in a crime is not himself the prosecutor, unless he knows the information he is supplying to be false..." *Renda v. International Union*, 366 Mich. 58, 83 (1962). Malicious prosecution is the appropriate action when a police officer knowingly supplies false facts. See *Adams v. Metiva*, 31 F.3d 375, 388-389 (6th Cir. 1994) and *Payton v. City of Detroit*, 211 Mich.App. 375, 395 (Mich.App. 1995).

Plaintiffs establish a genuine issue of fact regarding whether Warner and Gale knowingly supplied false facts. McGuire testified that Warner and Gale threatened that if he did not get on the bus they would identify him as an assailant. [Response, Exhibit 1, pp. 96-97, 101]. Warner and Gale allegedly followed through with their threat when they identified Plaintiffs as the assailants to the Oakland County authorities. Warner also gave a written statement identifying Plaintiffs. Additionally, Warner later testified at Plaintiffs' preliminary hearing that he saw them assault Threlfall. Plaintiffs also cite the testimony of Deacon Timothy Renaud, the chaplain for the Royal Oak Police Department. Deacon Renaud testified that Warner told him he was uncertain of who assaulted Threlfall; and that he and Gale "got who they got.". [Response, Exhibit 6, pp.13-14, 19-20].

In addition, Defendants are not entitled to qualified immunity against Plaintiffs' claim.

"[M]alicious prosecution of an individual and continued detention of an individual without probable cause clearly violate rights afforded by the Fourth Amendment." *Spurlock*, 167 F.3d at 1006. Further, in *Spurlock*, the court held that the defendant could not seriously contend that a reasonable officer would not know that fabricating evidence in order to establish probable cause was a constitutional violation. *Id*. at 1005.

In order to establish a claim for malicious prosecution under Michigan law, a plaintiff must prove that: (1) the defendant has initiated a criminal prosecution against him; (2) the criminal proceedings terminated in his favor; (3) the private person who instituted or maintained the prosecution lacked probable cause for his actions; and (4) the action was undertaken with malice or a purpose in instituting the criminal claim other than bringing the offender to justice. *Matthews v. Blue Cross and Blue Shield of Michigan*, 456 Mich. 365, 378 (1998).

Defendants claim Plaintiff did not establish elements two and three because *nolle prosequi* is not the same as acquittal and there was probable cause for the arrest.

*Nolle prosequi* is a sufficient disposition to support a claim for malicious prosecution, it does not have to equate to acquittal or a finding of innocence, only termination in the defendant's favor. See *White v. Rockafellow*, 181 F.3d 106, *1 (6th Cir. 1999)(unpublished opinion) and *Phiscator v. Rice*, 147 Mich. 411, 411-412 (1907). As stated above, for purposes of a claim for malicious prosecution, there was a lack of probable cause.

Accordingly, Defendants are not entitled to summary judgment on Plaintiffs' claims of malicious prosecution.

**H.     Abuse of Process**

Plaintiffs conceded at the hearing that Defendants are entitled to summary judgment on

16

this claim.

### I. Intentional Infliction of Emotional Distress

The elements of a claim for intentional infliction of emotional distress are: (1) extreme and outrageous conduct; (2) intent or recklessness; (3) causation; and (4) severe emotional distress. *Smith v. Calvary Christian Church*, 233 Mich.App. 96, 113 (Mich.App. 1998). "Liability for such a claim has been found only where the conduct complained of has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community." *Id*.

Defendants argue Plaintiffs fail to establish a claim because Defendants conduct falls far short of extreme and outrageous. [Motion, p.21]. However, as discussed earlier, Plaintiffs create a genuine issue of material fact on whether Warner and Gale knowingly falsely identified Plaintiffs as the assailants in the assault on Threlfall. This is sufficient to create a genuine issue of material fact on whether Defendants' alleged action of lying about the guilt of Plaintiffs, thereby instituting a year long prosecution, was extreme and outrageous.

Defendants are not entitled to summary judgment on Plaintiffs' claim for intentional infliction of emotional distress.

### J. Gross Negligence

Defendants argue they are immune from liability in Plaintiffs' claim for gross negligence pursuant to Michigan's governmental immunity statute.

Michigan's governmental immunity statute, MCL 691.1407 states, in pertinent part:

(2) Except as otherwise provided in this section...each officer and employee of a government agency...is immune from tort liability for an injury to a person or damage to property caused by the officer, employee...while in the course of employment...on behalf of a governmental agency if all of the following are met:

    (a)      The officer...is acting or reasonably believes he or she is acting within the scope of his or her authority.
    (b)      The governmental agency is engaged in the exercise or discharge of a governmental function.
    (c)      The officer's...conduct does not amount to gross negligence that is the proximate cause of the injury or damage.

    (7)      As used in this section:
    (a)      "Gross negligence" means conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results.

As an initial matter, the governmental immunity statute only applies if Warner and Gale were acting in the course of their employment, which they deny. If Warner and Gale are found to have acted as ordinary citizens, they cannot assert governmental immunity.

Assuming Warner and Gale were acting as police officers and are entitled to assert the governmental immunity statute, it still does not bar Plaintiffs' claim for gross negligence. Plaintiffs establish a genuine issue of fact regarding whether Warner and Gale knowingly falsely identified them as the assailants in the assault on Threlfall. This is sufficient to create a genuine issue of fact regarding whether Defendants' alleged actions were "so reckless as to demonstrate a substantial lack of concern for whether an injury results." Defendants are not entitled to summary judgment.

### V.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion for summary judgment with respect to Plaintiffs' claims for: (1) violation of due process pursuant to §1983; (2) violation of the Fourth Amendment based on unreasonable seizure pursuant to §1983; (3) false arrest/false imprisonment; and (4) abuse of process. The Court **DENIES** Defendants' Motion for summary judgment with respect to Plaintiffs' claims for: (1) malicious prosecution; (2) intentional infliction of emotional distress; and (3) gross negligence. The Court declines to

rule at this time on Defendants' Motion for summary judgment on Plaintiffs' claims for (1) supervisory liability and (2) municipal liability. Defendants may renew their motion at the close of discovery.

**IT IS SO ORDERED.**

                                      **S/Sean F. Cox**
                                      **Sean F. Cox**
                                      **United States District Judge**

**Dated:  December 15, 2006**

**I hereby certify that a copy of the foregoing document was served upon counsel of record on December 15, 2006, by electronic and/or ordinary mail.**

                                      **S/Jennifer Hernandez**
                                      **Case Manager**