UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Timothy McGuire and James Lee
Joseph Ryan,

    Plaintiffs,

v.                                                                             Case No. 05-40185

Royal Oak Police Sgt. Douglas Warner,                  Honorable Sean F. Cox
*et al.,*

    Defendants.
_____/

**<u>OPINION & ORDER</u>**

    This case is before the Court on the parties' cross-motions for summary judgment on the issue of municipal liability. The Court finds that the issues have been adequately presented in the parties' briefs and that oral argument would not significantly aid the decisional process. *See* Local Rule 7.1(e)(2), U.S. District Court, Eastern District of Michigan. The Court therefore orders that the motions will be decided upon the briefs. For the reasons that follow, the Court shall DENY Plaintiffs' Motion for Summary Judgment and shall GRANT Defendants' Motion for Summary Judgment, thereby dismissing both the City of Royal Oak and Chief Quisenberry from this action.

BACKGROUND

    The basic facts regarding the incident that led to this action have been summarized as follows:

> On August 9, 2003, Timothy McGuire and James Ryan traveled by bus from their native Canada to Clarkston, Michigan, in order to attend a country

1

music concert at the DTE Energy Music Theater. Following the concert, McGuire and Ryan boarded the bus to travel home. While they were on the bus waiting to depart, another attendee, Daniel Threlfall, was assaulted by two members of plaintiffs' group. While this occurred, McGuire left the bus, allegedly to break up the fight, and Ryan slept. McGuire denies seeing exactly who assaulted Threlfall.

Off-duty Royal Oak police officers Warner and Gale had also attended the concert; they were leaving with their families when Threlfall was assaulted. They claim to have seen the assault occur and the perpetrators board the bus. Believing Threlfall's assailants to be on the bus, Warner and Gale approached it, identified themselves as police officers, and instructed the driver not to leave. They then waited with the bus for the Oakland County Sheriff to arrive.

When the Oakland County deputies arrived, Warner and Gale again identified themselves as police officers and proceeded to assist in the investigation. McGuire was ordered off the bus while the deputies conducted a search. During this time, Officers Warner and Gale allegedly told McGuire that if he did not identify the men who assaulted Threlfall, they would pin the crime on him and "throw the book at him." Gale then entered the bus along with Oakland County authorities, escorted Ryan off, and identified him as one of Threlfall's assailants. Warner and Gale then stated to Oakland County authorities that they saw McGuire and Ryan commit the assault. Warner later reiterated this testimony in a written statement to Oakland County authorities and at McGuire and Ryan's preliminary hearing. Based upon the testimony of Warner and Gale, McGuire and Ryan were arrested and charged with Assault with Intent to Commit Great Bodily Harm Less than Murder. These charges were dropped on September 20, 2004, based upon newly discovered evidence indicating that McGuire and Ryan had not committed the assault.

*McGuire v. City of Royal Oak*, 295 Fed.Appx. 736 (6th Cir. 2008).

Plaintiffs filed this action on June 8, 2005. Plaintiffs asserted claims against Officers Warner and Gale, the City of Royal Oak, and Police Chief Ted Quisenberry, alleging violations of their Due Process and Fourth Amendment rights under § 1983, as well as false arrest/false imprisonment, abuse of process, malicious prosecution, intentional infliction of emotional distress, and gross negligence.

Plaintiffs had also asserted claims against Oakland County, Oakland County Sheriff Mike

Bouchard, and Oakland County Deputies Litchok and Matrich ("the Oakland County Defendants"). The Oakland County Defendants were dismissed without prejudice on August 9, 2006, upon stipulation of the parties. (Docket Entry No. 63).

Prior to the close of discovery, the remaining Defendants – Officers Warner and Gale, the City of Royal Oak, and Chief Quisenberry – moved for summary judgment on all counts.

As reflected in this Court's December 15, 2006 Opinion & Order, this Court denied Officer Warner and Officer Gale's request for summary judgment as to Plaintiffs' claims for malicious prosecution, intentional infliction of emotional distress, and gross negligence. This Court declined to rule on Chief Quisenberry and the City of Royal Oak's request for summary judgment with respect to Plaintiff's claims for: 1) supervisor liability; and 2) municipal liability. (Docket Entry No. 74). It stated, however, that "Defendants may renew their motion at the close of discovery." (*Id.* at 1).

Thereafter, Defendants Warner and Gale appealed this Court's denial of qualified immunity and the Sixth Circuit affirmed. *McGuire v. City of Royal Oak*, 295 Fed.Appx. 736 (6th Cir. 2008). The decision noted that it was unclear whether Plaintiffs' malicious prosecution claim was brought under state law, federal law, or both:

> The district court noted that McGuire and Ryan's complaint did not specify whether their malicious prosecution claim was brought under state law, federal law, or both. The district court presumed that the complaint stated both for purposes of defendants' summary judgment motion, and we shall do the same. The issue of whether the complaint properly alleged a federal claim was raised for the first time on appeal.

*Id.* at 738 n.1.

Following the Sixth Circuit's decision, this Court held a status conference on February 3,

3

2009. On February 10, 2009, Plaintiffs filed a Second[1] Amended Complaint, apparently in response to the uncertainty as whether its malicious prosecution claim was brought under federal law, state law, or both. (Docket Entry No. 91). Plaintiff's Second Amended Complaint added the following count against Defendants Warner and Gale: "Federal Claim of Malicious Prosecution In Violation of the 4th Amendment" (Count Twelve). Thus, Plaintiffs' malicious prosecution claim is asserted under both state law and federal law.

Discovery is now closed and the matter is before the Court on the following two motions: 1) "Defendants City of Royal Oak and Chief Quisenberry's Motion for Summary Judgment" (Docket Entry No. 95); and 2) "Plaintiffs' Motion for Partial Summary Judgment Against the City of Royal Oak and Defendant Quisenberry for *Monell* Liability for Failure to Discipline, Failure to Supervise, Failure to Investigate and for Ratification and Acquiescence in Defendants Warner and Gale's Clear Wrongdoing" (Docket Entry No. 97).

Below is additional testimony, obtained during discovery in this action, that is relevant to the two motions pending before the Court.

Chaplain Timothy Renaud is Plaintiff McGuire's cousin. (*See* Renaud Dep. Tr., attached as Ex. 6 to Pls.' Motion). Chaplain Renaud is a deacon for the Archdiocese of Detroit and began serving as a Chaplain for the Royal Oak Police Department in 2002. (*Id.* at 6-7). He testified that, at some point after the incident at DTE, he happened to have a conversation with Officer Warner. (*Id.* at 11). He testified as follows:

> . . . I just happened to be talking with Sergeant Warner, matter of fact

---

[1]Although Plaintiffs titled it "Plaintiff's First Amended Complaint and Demand for Jury," it is actually the second amended complaint because Plaintiffs had already filed a First Amended Complaint on September 27, 2006. (Docket Entry No. 70).

> conversation.  Out of left field, question, do you guys – are you guys required to carry your weapon off-duty like other officers that I've heard of in other agencies.
>
> He said well, I think we should be and here's what happened here just this last week.  Doug went on to tell me about he and Barry had their families in his camper going to Pine Knob and out in the parking lot probably about 30 yards away was this big old tour bus and as they got back in their camper from the concert they look over there and a bunch of guys come barreling off the bus and grabbed this one fellow and started beating on him.
>
> Doug said me and Barry just couldn't stand there.  So he told the girls, the family, to stay right in here, and get that cell phone and call the police.  There's got to be somebody here on duty watching the concert.  He said call the Oakland Sheriff's Department and get somebody here quick.
>
> He said then we go over there.  Neither one of us have weapons that night because we're with our families and we wade into a bunch of young drunken kids.  He said this will teach me a lesson.
> . . . .
>
> Then later I call my cousin back and I said you're not going to believe this, I know who the officers are.  So he said well, how could you know?  Just a quirk, Tim.  Just a quirk.  I know them.
>
> And meanwhile, before I called Tim back I talked to Doug.  I asked him if, Sergeant Warner, asked him if we could go to breakfast.  I said Doug tell me again the story about the concert, finish all the details.  And he did.
>
> I said what happened on the bus?  Well, we got on the bus and we grabbed the two guys.  When we get on there they were the last two but as we're looking through the bus he said holy cow, they've all got western garb on, most them had western hats, it's night, it's dark, whole bunch of them looking the same, so we just grabbed the two that we could get.  Either you're going to tell or you're going to go down.  Well, they went down.
> . . . .
>
> He said why do you want to know all of this?  I told Doug, that's my cousin. And Doug just about slid off the bench.  Your cousin?  He's the young fellow.  Well, it's still my cousin, it's my cousin's son.
>
> Are you sure it was him?  Well, it's a whole bunch of them looked the same.  Could I dead certain?  Maybe not but in the melee and all, we got who we got.  He said but I'll tell you one thing, Tim, don't worry about it.  We've been down to two preliminary hearings and it's going to be all right, they're going to give the boys lie detector tests, so if they can pass those they'll probably walk . . .

(*Id*. at 11-14).  He testified this conversation over breakfast took place in January, 2004.  (*Id*.).

The Oakland County Prosecutor ultimately dismissed the charges on September 20, 2004.

5

Plaintiffs filed this action on June 8, 2005.

Chief Quisenberry was deposed in this action on January 22, 2007. (*See* Quisenberry Dep. Tr., attached as Ex. 7 to Pls.' Br.). He testified that he has been the Chief of Police for the Royal Oak Police Department since 2001. (*Id*. at 5). He testified that the Royal Oak Police Department does not have an Internal Affairs Section and that allegations of misconduct by officers are primarily investigated through his "office and then assigned to a command personnel to conduct the investigation." (*Id*. at 17-18). He testified:

> Q. Okay. When you say primarily through your office, tell me what you mean by that.
> A. I would be made aware of the allegation and then make the determination on what to do, what type of follow-up needs to be done.

(*Id*. at 18).

During his deposition, Chief Quisenberry testified that he read the complaint in this action sometime after it was filed. (*Id*. at 86-87).

He also testified that in February of 2006, Chaplain Renaud told him that he had been subpoenaed to give testimony about a conversation Chaplain Renaud previously had with Officer Warner. (*Id*. at 65). Chief Quisenberry testified that Chaplain Renaud told him that he was related to a defendant in this case, but did not go into detail about his conversation with Officer Warner. (*Id*. at 65-67). It does not appear that Chaplain Renaud told Chief Quisenberry about Officer Warner's alleged statements about not being certain as to the identity of the men who assaulted Threlfall.

Chief Quisenberry also testified that, during this action, he received a written complaint asking him to investigate Officers Warner and Gale:

> Q. Did you receive a written complaint, a letter of complaint asking you to investigate Police Officers Doug Warner and Barry Gale for having misidentified Tim McGuire in court for an assault on a person by the name of Danny Threfall, yes or no?
> A. Yes.
> Q. Based on that receipt of complaint, you did not initiate any investigation or order an investigation against Doug Warner or Barry Gale; is that correct?
> A. Yes.
> Q. Okay. I'm going to ask you why, and a lawyer is never supposed to ask that question but I'm going to go ahead and ask you because I need to know. Why?
>     MR. SEWARD: Hold on. Do not give up – I'm going to claim attorney-client privilege is what I'm going to limit.
>     MR. ROBINSON: Go ahead.
>     MR. SEWARD: Do you want me to answer it? I don't want you to say what you and I talked about, all right? You cannot give out any specifics about what we talked about because that's protected by the attorney-client privilege.
> BY MR. ROBINSON:
> Q. How about this? How about this? Did you not investigate consistent with what it is that we talked about earlier?
>     MR. SEWARD: How about this? Can I ask a question?
>     MR. ROBINSON: Yeah.
>     MR. SEWARD: Did you choose not to after consulting with me?
>     THE WITNESS: Yes.

(*Id*. at 70-71). With respect to what he did after receiving the complaint, he testified:

> The first thing I'm going to do is when I get a notice like this from Mr. McGuire dated February 20th is contact the legal representation that we have within the department and make sure that they're aware of it. They need to be made aware of everything that happens with this, and talk to them, talk to the city attorney, talk to the city manager and then follow up on what course of action is determined accordingly.

(*Id*. at 85).

Chief Quisenberry testified that: 1) he did not have any follow-up conversations with Chaplain Renaud; 2) he has not contacted Ryan, McGuire, or McGuire's father with regard to their allegations; and 3) he has not assigned anyone underneath him to investigate. (*Id*. at 73-74).

7

He testified that there have been no assignment changes of Officers Warner or Gale following the incident on August 9, 2003. (*Id*. at 97). He further testified:

> Q. Okay. Are you going to – how about this? Despite your lawyer, I don't want to hear anything that you lawyer said to you or anything like that, are you going to initiate an investigation immediately against Doug Warner and Barry Gale as a consequence of anything you learned today at this deposition, yes or no?
> A. No.
> Q. Why?
> MR. SEWARD: If it involves our discussion I instruct you not to answer it [sic] based on the attorney-client privilege.
> BY MR. ROBINSON:
> Q. Right, I agree. But if it doesn't.
> A. But it does.
> Q. Okay. Thank you. It's fair to say that since the incident of the arrest of Jim Ryan and Tim McGuire on August 9, 2003, that there has been no probing by your office, certainly from that point til today regarding any allegation of those two police officers, Doug Warner and Barry Gale, as it might relate to their purposeful misidentification of both Jim Ryan and Tim McGuire, correct?
> MR. SEWARD: First of all, assumes facts not in evidence; second of all, it's been asked and answered.
> THE WITNESS: The answer is no. Yeah. The answer is you're correct, there has been no probing.

(*Id*. at 100-101).

Standard of Decision

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56 (c).

ANALYSIS

In their motion seeking partial summary judgment, Plaintiffs seek a ruling that they have

established municipal liability under the undisputed facts in this case. Plaintiffs contend that to establish liability, all they need to do is to establish that a policymaking official had notice of a "potentially serious problem or unconstitutional conduct, such that the need for corrective action or supervision was obvious, and the policymaker's failure to investigate or rectify the situation evidences deliberate indifference." (Pl.'s Br. at 11). They note that Chief Quisenberry testified he was a policymaker as the chief law enforcement officer for Royal Oak. Plaintiffs contend that under the undisputed facts here, Chief Quisenberry has acted with deliberate indifference in choosing to not investigate their complaints against Officers Warner and Gale and must be held liable in his official capacity. Plaintiffs contend that Chief Quisenberry's "decision was the product of a conscious, affirmative choice to ratify, approve, condone and acquiesce to the conduct in question," and that he must be held liable under *Marchese v. Lucas*, 758 F.2d 181 (6th Cir. 1985). Plaintiffs further contend that the City must also be held liable under *Marchese*.

Defendants note that Plaintiffs are suing Chief Quisenberry in his official capacity only. Defendants state that, under *Monell v. New York City Dept. Of Social Services*, 436 U.S. 658 (1978), Plaintiffs must demonstrate that, through its deliberate conduct, the municipality was the "moving force" behind the alleged injury. They state that in order to satisfy the mandate of *Monell*, Plaintiffs must identify the policy, connect the policy to the city itself and show that the particular injury occurred because of the execution of that policy. Defendants contend that Plaintiffs must show a clear and consistent pattern before liability can be imposed and that a single incident of alleged failure to investigate a complaint, made following the incident in question, cannot be sufficient to impose liability. Defendants rely on the following cases to support their position: *Fox v. VanOosterum*, 987 F.Supp. 597 (W.D. Mich. 1997); *Morrison v.*

9

*Board of Trustees of Green Township*, 529 F.Supp.2d 807 (S.D. Ohio 2007); *Hysell v. Licking County*, 2009 WL 262426 (S.D. Ohio 2009); and *Daniels v. City of Columbus*, 2002 WL 484622 (S.D. Ohio 2002).

    The Court agrees that the City of Royal Oak and Chief Quisenberry must be dismissed from this action because Plaintiffs cannot establish municipal liability under the facts of this case.

    Plaintiffs' complaint and briefs indicate that Plaintiffs have sued Chief Quisenberry in his *official capacity only*. Official capacity suits represent only another way of pleading an action against an entity of which the officer is an agent. *Alkire v. Irving,* 330 F.3d 802, 810 (6th Cir. 2003).[2] Thus, the issue is whether the facts here are "sufficient to establish liability of the [Chief] in his official capacity, specifically, whether the facts sufficiently demonstrate a 'custom or policy' of the [City] as required for liability under *Monell*." *Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1244 (6th Cir. 1989).[3]

    A plaintiff asserting a § 1983 claim on the basis of municipal custom or policy must identify the policy, connect the policy to the City itself and show that the particular injury was incurred because of the execution of that policy. *Graham v. County of Washtenaw*, 358 F.3d 377, 383 (6th Cir. 2004). "There must 'a direct causal link' between the policy and the alleged constitutional violation such that the [City's] 'deliberate conduct' can be deemed the 'moving force' behind the violation." *Id*. (quoting *Waters v. City of Morristown*, 242 F.3d 353, 362 (6th

---

[2] Notably, as a result of being sued only in his official capacity, Chief Quisenberry cannot claim qualified immunity. *Alkire*, 330 F.3d at 811.

[3] "[A]n official capacity suit does not require a showing of supervisory liability." *Leach*, 891 F.2d at 1246.

10

Cir. 2001)).  These stringent standards are necessary to avoid *de facto respondeat superior* liability explicitly prohibited by *Monell*.  *Graham*, 358 F.3d at 383.

A failure to investigate misconduct and punish responsible parties can be evidence of a municipal policy of deliberate indifference.  *Leach*, 891 F.2d at 1248; *Marchese, supra.* "However, a municipality's failure to investigate claims of wrongful conduct does not *per se* mandate a conclusion that the municipality has a policy of tolerating violations of citizens' rights."  *Morrison*, 529 F.Supp.2d at 825.

In *Leach,* the district court found the sheriff and the county liable for the deliberate indifference to serious medical needs of a paraplegic inmate.  In affirming the district court's ruling, the Sixth Circuit noted that there had been 14 other paraplegics that had previously received similar treatment while housed at the jail.  *Leach*, 891 F.2d at 1248.  It also stated that "*[f]urther* evidence of a policy of deliberate indifference is found in the Sheriff's failure to investigate this incident and punish the responsible parties."  *Id.* (emphasis added).  It concluded that the "Sheriff's failure to supervise and correct the situation in view of the numerous similar incidents *and* his failure subsequently to punish the responsible individuals is more than sufficient evidence of a policy or custom to render the County liable for Leach's damages in this official capacity suit."  *Id*. (emphasis added).  Thus, *Leach* did not involve a failure to investigate standing alone.

*Marchese*, as the Sixth Circuit noted, presented "dramatic" facts.  *Marchese*, 758 F.2d at 182.  In that case, when the deputy sheriff ordered the plaintiff out of his car, the plaintiff "brought up a gun which he pointed at" the deputy.  The deputy dove for the gun and secured it. The plaintiff was ultimately seized, handcuffed, placed in a squad car, and taken to the station.

11

*Id.* The two episodes upon which the plaintiff filed suit, "and which the jury found liability," are as follows. As the plaintiff entered the Wayne County Sheriff's Department Road Patrol Station on Henry Ruff Road in Westland, Michigan, he "was greeted by a group of angry deputies with shouts of 'cop killer,'" and he was "beaten by various officers as he was taken into the station house." *Id.* "The second episode occurred later that night. Marchese's testimony is that, after he had been locked in a cell at some time close to midnight, a deputy having possession of the key to his cell opened the door and admitted to the cell someone who attacked him, beating him violently with some hard object." *Id.* Upon seeing the plaintiff's physical condition after these incidents, the state court judge ordered the sheriff's representative to investigate the incident and plaintiff's injuries. Nevertheless, the sheriff failed to investigate the incident or discipline the officers involved.

In a subsequent § 1983 suit, the Sixth Circuit affirmed liability against Wayne County and the Sheriff in his official capacity. In doing so, the court stated:

> This case presented assaults upon a defenseless prisoner both as he was being brought into the road patrol station house with his hands handcuffed behind him and in his darkened cell near midnight when, as the jury obviously found, he was beaten with some hard object after his cell was unlocked by a key admittedly committed to the care of the duty officer. *We view the key and its use in this instance as the symbol of the involvement in this assault of the defendant the Sheriff of Wayne County and the County of Wayne itself.*
>
> The evidence is such as to demand acceptance of the fact that 1) the shift officers on duty knew when this assault was going to take place, 2) heard it in progress and 3) sought to the degree possible, to cover up the attack after it occurred.
>
> Not only do the facts show that there was official toleration, (if not complicity in instigation) of the midnight assault on the part of the command officers on duty at the station house that night; but there was also a subsequent concealment followed by a complete failure to initiate and conduct any

meaningful investigation on the part of the Sheriff himself.

*Id*. at 187-88 (emphasis added).

Like the plaintiff in *Tompkins*, Plaintiffs read *Marchese* very broadly as holding that any failure to investigate a report of police misconduct creates municipal liability and in effect, by-passes the requirements of *Monell*. *Tompkins v. Frost*, 655 F.Supp. 468, 472 (E.D. Mich. 1987). As the *Tompkins* court explained, however:

> Such an interpretation of *Marchese* is illogical. Wrongful conduct after an injury cannot be the proximate cause of the same injury. Moreover, *Monell,* forbids a finding of county liability except where the misconduct is pursuant to an official policy or custom and is also the "moving force" behind the plaintiff's injury. The misconduct by the county must also be either intentional or at the least, grossly negligent. . . . *Marchese*, read in light of *Monell* and its progeny, makes a post-injury failure to investigate a fact which may permit an inference that the misconduct which injured the plaintiff was pursuant to an official policy or custom.[4] Any other reading would permit respondeat superior liability for the failure to undertake an investigation and would thus by-pass the stringent proximate cause requirements of

*Tompkins*, 655 F.Supp at 472.

Unlike *Marchese*, there is insufficient evidence in this case to establish that the Royal Oak Police Department had an established policy or custom of failing to investigate complaints, or disciplining its officers, or that the City was "deliberately indifferent" to the constitutional rights of its citizens.

In *Marchese*, the court found "official toleration, (if not complicity in instigation) of the midnight assault on the part of the command officers on duty at the station house that night; [and] there was also a subsequent concealment followed by a complete failure to initiate and

---

[4]"Whether such an inference, standing alone, could support a finding of county liability is doubtful in light of *City of Oklahoma v. Tuttle*, 471 U.S. 808, 105 S.Ct. 24247, 85 L.Ed2d 791 (1985)." *Tompkins, supra* at 472 n.3.

conduct any meaningful investigation on the part of the Sheriff himself." *Marchese*, 758 F.2d at 187-88. Contrary to *Marchese,* this is not a situation where the City or Chief Quisenberry failed to investigate an incident after being ordered to do so and there is no evidence whatsoever of complicity or concealment on the part of the municipal defendants.

Plaintiffs have produced no evidence of a pattern of insufficient investigation into complaints about officers committing perjury. Indeed, there is no evidence of any prior allegations about officers committing perjury and no evidence that the Chief or the City have failed to investigate any other complaints about officers.

Rather, Plaintiffs seek to impose liability on the municipal defendants in this case on the basis of a single instance where the Chief has not yet investigated a complaint. "[I]inferring a municipal-wide policy based on one instance of potential misconduct runs dangerously close to 'the collapsing of the municipal liability standard into a simple respondeat superior standard.'" *Morrison,* 529 F.Supp.2d at 825. Moreover, the complaint at issue in this case was made by Plaintiffs during the course of a civil action against the City and Chief Quisenberry. In fact, Chief Quisenberry testified that he turned Plaintiff's complaint about Officers Warner and Gale over to counsel after receiving it and that he has not yet investigated the complaint *on the advice of counsel.*

For these reasons, the Court concludes that the evidence in this case, even when viewed in the light most favorable to Plaintiffs, is insufficient to establish the requisite municipal policy or custom.

In addition, the Court also concludes that, under the facts presented here, there is insufficient evidence to establish the requisite *causal connection*. That is, Plaintiffs have failed

14

to establish a causal link between the City's failure to investigate their complaint about Officers Warner and Gale and their alleged constitutional injury. Once an individual's rights have been violated, a subsequent failure to investigate that very same incident – standing alone – cannot logically be the "moving force" behind the alleged constitutional deprivation. *Tompkins, supra*; *Fox, supra*; *Hysell, supra*.

Accordingly, the Court shall grant summary judgment in favor of the City and Chief Quisenberry on the issue of municipal liability.

CONCLUSION & ORDER

For the reasons above, **IT IS ORDERED** that "Plaintiffs' Motion for Partial Summary Judgment Against the City of Royal Oak and Defendant Quisenberry for *Monell* Liability for Failure to Discipline, Failure to Supervise, Failure to Investigate and for Ratification and Acquiescence in Defendants Warner and Gale's Clear Wrongdoing" (Docket Entry No. 97) is **DENIED.**

**IT IS FURTHER ORDERED** that "Defendants City of Royal Oak and Chief Quisenberry's Motion for Summary Judgment" (Docket Entry No. 95) is **GRANTED** and the City of Royal Oak and Chief Quisenberry are hereby **DISMISSED** from this action.

**IT IS SO ORDERED.**

S/Sean F. Cox
Sean F. Cox
United States District Judge

Dated: April 28, 2009

I hereby certify that a copy of the foregoing document was served upon counsel of record on

April 28, 2009, by electronic and/or ordinary mail.

S/Jennifer Hernandez
Case Manager