UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Timothy McGuire and James Lee
Joseph Ryan,

    Plaintiffs,

v.                                                                                          Case No. 05-40185

Royal Oak Police Sgt. Douglas Warner,                       Honorable Sean F. Cox
*et al.,*

    Defendants.
_____/

**OPINION & ORDER
DENYING DEFENDANTS' MOTION TO DISQUALIFY
AND DENYING DEFENDANTS' MOTION FOR RELIEF UNDER FED. R. CIV. P. 60(b)**

    This matter is currently before the Court on the following two motions: 1) "Motion to Disqualify Judge From Deciding Defendants' Motion for Relief Under Fed. R. Civ. P. 60(b)" (Docket Entry No. 196); and 2) Defendants' motion seeking relief under FED. R. CIV. P. 60(b) (Docket Entry No. 194). The Court finds that the issues in these motions have been adequately presented in the parties' briefs and that oral argument would not significantly aid the decisional process. *See* Local Rule 7.1(e)(2), U.S. District Court, Eastern District of Michigan. The Court therefore orders that the motions shall be decided based on the briefs. For the reasons below, the Court shall DENY both motions.

BACKGROUND

    This case, filed in 2005, has a rather long history. The basic facts regarding the incident that led to this action have been summarized as follows:

On August 9, 2003, Timothy McGuire and James Ryan traveled by bus from their native Canada to Clarkston, Michigan, in order to attend a country music concert at the DTE Energy Music Theater. Following the concert, McGuire and Ryan boarded the bus to travel home. While they were on the bus waiting to depart, another attendee, Daniel Threlfall, was assaulted by two members of plaintiffs' group. While this occurred, McGuire left the bus, allegedly to break up the fight, and Ryan slept. McGuire denies seeing exactly who assaulted Threlfall.

Off-duty Royal Oak police officers Warner and Gale had also attended the concert; they were leaving with their families when Threlfall was assaulted. They claim to have seen the assault occur and the perpetrators board the bus. Believing Threlfall's assailants to be on the bus, Warner and Gale approached it, identified themselves as police officers, and instructed the driver not to leave. They then waited with the bus for the Oakland County Sheriff to arrive.

When the Oakland County deputies arrived, Warner and Gale again identified themselves as police officers and proceeded to assist in the investigation. McGuire was ordered off the bus while the deputies conducted a search. During this time, Officers Warner and Gale allegedly told McGuire that if he did not identify the men who assaulted Threlfall, they would pin the crime on him and "throw the book at him." Gale then entered the bus along with Oakland County authorities, escorted Ryan off, and identified him as one of Threlfall's assailants. Warner and Gale then stated to Oakland County authorities that they saw McGuire and Ryan commit the assault. Warner later reiterated this testimony in a written statement to Oakland County authorities and at McGuire and Ryan's preliminary hearing. Based upon the testimony of Warner and Gale, McGuire and Ryan were arrested and charged with Assault with Intent to Commit Great Bodily Harm Less than Murder. These charges were dropped on September 20, 2004, based upon newly discovered evidence indicating that McGuire and Ryan had not committed the assault.

*McGuire v. City of Royal Oak*, 295 Fed.Appx. 736 (6th Cir. 2008).

Plaintiffs filed this action on June 8, 2005, against several defendants,[1] including Defendants Warner and Gale.

Defendants Warner and Gale filed a Motion for Summary Judgment as to Plaintiffs' claims for malicious prosecution, intentional infliction of emotional distress, and gross

---

[1] Several defendants were voluntarily dismissed by Plaintiffs and this Court granted summary judgment in favor of the City of Royal Oak and Chief Quisenberry.

negligence. They moved for summary judgment based upon qualified immunity and Michigan's governmental immunity statute. This Court denied that motion. The Sixth Circuit affirmed this Court's rulings in an unpublished opinion. *McGuire v. City of Royal Oak*, 295 Fed.Appx. 736 (6th Cir. 2008).

Defendants Warner and Gale were the only remaining Defendants in this action at the time of trial. The following four claims proceeded to trial: 1) "Intentional Infliction of Emotional Distress," asserted under Michigan law (Count VII); 2) "Gross Negligence" asserted under Michigan law (Count IX); 3) "Malicious Prosecution," asserted under Michigan law (Count XI); and 4) "Federal Claim of Malicious Prosecution in violation of 4th Amendment" (Count XII). (*See* Joint Final Pretrial Order). During the course of the trial, however, Plaintiffs voluntarily dismissed their gross negligence claim. (Docket Entry No. 170).

The trial in this matter was very contentious. Trial commenced on August 5, 2009. Numerous motions in limine were filed by the parties and ruled upon by the Court.

After Lawrence Gilliken, Defendants' first witness, testified on August 13, 2009, the parties began discussing settlement.

On August 19, 2009 – after two full weeks of trial and shortly before the jury was to hear closing arguments – the parties settled the case. The morning of August 19, 2009, the parties executed a written "Agreement," that states:

> The parties agree to a $_____[2] total settlement, $_____, to each Plaintiff. The parties are to keep the terms confidential. No party or parties' representatives will disclose to any person the terms of the settlement. If relatives have already been told of the settlement, those relatives are to be told not to

---

[2] The Agreement contained the actual amounts.

>    discuss settlement with any other person.
>
>    If asked, all anyone can say is case has been resolved. The terms will not be put on the record, instead the parties and representatives will sign an agreement which will set forth the specific terms of a confidential agreement.

(8/19/09 Agreement). The Agreement was signed by each party and was also signed by David Gillam on behalf of the City of Royal Oak and James Duffy on behalf of the MMRMA.

The parties chose not to put all of the terms of the settlement agreement on the record. The record reflects as follows:

> THE COURT: Okay. There's been discussion starting last Friday regarding resolution of this case. The discussions continued yesterday and culminated with what I understand is a resolution this morning at about 11:00, five to eleven a.m.; is that correct?
> MR. ROBINSON: Correct, Your Honor.
> MR. SEWARD: Good morning, Your Honor. Joseph Seward on behalf of Doug Warner and Barry Gale; the answer is yes.
> THE COURT: Okay. Very good. All right. And the terms of that settlement are contained in an agreement; is that correct?
> MR. SEWARD: That's correct.
> THE COURT: Has the agreement been executed by everybody?
> MR. SEWARD: It is in the process.
> (Brief pause in the proceedings)
> MR. SEWARD: I will represent to the Court that it contains the original signatures of all.
> THE COURT: Okay. Is that true, Mr. Robinson?
> MR. ROBINSON: Our signatures have been placed, Your Honor. Let me peruse the document. I believe that's accurate.
> THE COURT: Okay. Mr. Seward, could you voir dire your clients?
> MR. SEWARD: I would prefer not to, Your Honor.
> THE COURT: Well, I'm requesting that you voir dire your clients --
> MR. SEWARD: Okay.
> THE COURT: – regarding that the resolution is agreeable to them, the fact that they understand that they can proceed to jury trial and –

(8/19/09 Tr.). Counsel for Defendant then proceeded to voir dire each Defendant. Plaintiffs' Counsel then proceeded to voir dire each Plaintiff. Each party stated on the record that he had

read the agreement and agreed to be bound by the terms of the agreement.  (*Id.*).

An Order of Dismissal, approved by both parties as to form and substance, was issued on August 19, 2009, stating:

> The parties having placed a settlement of this action on the record on this date, IT IS ORDERED that this action is hereby DISMISSED WITHOUT PREJUDICE.
> IT IS SO ORDERED.

(8/19/09 Order of Dismissal).  The jury was then released.

An August 20, 2009 article about this case appeared in the Detroit News, stating that the case had settled.  The article further stated that "[t]he terms of the agreement were not disclosed Wednesday.  But the city agreed to pay a six-figure settlement, according to one person familiar with the case."  (Ex. 3 to Defs.' Motion for Relief Under FED.R. CIV. P. 60(b)).  The article further stated that "pressure on the defendants to settle the case racheted up Thursday when the officers' first witness, Lawrence Gilliken, lent weight to McGuire's claims that Warner threatened him at the scene to identify the attackers or be charged with the crime himself. Gilliken, a friend of the two Royal Oak officers who went to the concert with them aboard Warner's recreational vehicle and was alongside them when they rushed to the scene of the fight, testified that on the drive home Warner admitted telling someone on the bus: 'You could be (an) accomplice if you don't tell me who did it.'  Also, 'I didn't believe I could identify the individuals, so I was impressed that they could' Gilliken testified of Warner and Gale."  (*Id.*) The Article further stated: "Although the city and officers admitted no wrongdoing, 'the fact they're willing to settle tells me they know they wronged us,' Ryan said."

An article about this case also appeared in the Windsor Star on August 20, 2009.  (Ex. 4

5

to Defs.' Motion for Relief Under FED.R. CIV. P. 60(b)). That article began as follows:

> An apology would be nice.
>
> But that's one thing Windsorites Tim McGuire and Jim Ryan may have to live without following the culmination Wednesday of a six-year legal ordeal that ended with a six-figure settlement from the city of Royal Oak in a case of wrongful arrest.

(*Id.*). The article further stated that "[t]he terms of the agreement were not disclosed, but a source told the Detroit News that the city agreed to a six-figure settlement." Plaintiffs' counsel, David Robinson was quoted in the article commenting about the case as follows:

> "This has been David v. Goliath, no doubt about it." Said David A. Robinson, the Southfield lawyer representing the two Windsor men. "It's been a very unfair fight. You've got police officers wielding their authority with abuse and never relenting in their falsehood."

(*Id.*). Ryan was quoted as follows in the article:

> "I'd love for them to know – not just the two cops – but also the two guys who did the assault that night, an apology would have been nice," Ryan said.
> "It's time to move on, but I never got that. A simple apology can really go a long way sometimes."

(*Id.*). City of Royal Oak Police Chief Christopher Jahnke was also quoted in the article:

> Despite the settlement between the Windsor pair and the municipality, the Royal Oak police department supports the actions of the two sergeants, police Chief Christopher Jahnke said Thursday.
> "I can't comment on the settlement itself," he said. "There were a number of factors involved.
> "You had a number of individuals beating someone to near death in this incident. The victim had gone into a coma and the actions of the officers saved his life. The sergeants broke up the fight and stopped the bus from leaving. One of the individuals in this case was encouraging the bus to leave.
> "I strongly support what the officers did in this case."
> Asked if he was upset that the city agreed to a financial settlement, Jahnke said he could not comment.
> "We have strongly supported sergeants Gale and Warner throughout this incident and strongly believe because they got involved they stopped an individual from

potentially being killed."

(*Id*.).

Another article appeared in the Windsor Star on August 21, 2009, which was nearly identical to the August 20, 2009 article that appeared in the Windsor Star.

On September 2, 2009, Defendants filed their motion seeking relief under FED. R. CIV. P. 60(b). On September 4, 2009, Defendants filed their "Motion to Disqualify Judge From Deciding Defendants' Motion For Relief Under FED. R. CIV. P. 60(B)."

## ANALYSIS

A. Defendants' "Motion To Disqualify Judge From Deciding Defendants' Motion for Relief Under FED. R. CIV. P. 60(B)":

In this motion, Defendants assert that this Court was present during the settlement conferences between the parties and therefore has "personal knowledge of the facts and circumstances occurring in those negotiations." (Defs.' Motion to Disqualify at ¶ 6). Defendants claim that this Court should disqualify itself, under 28 U.S.C. § 455(b)(1), from deciding Defendants' Motion for Relief Under FED. R. CIV. P. 60(B).

28 U.S.C. § 455(b)(1) states that a judge shall disqualify himself when he has "personal knowledge of disputed evidentiary facts concerning the proceeding." 28 U.S.C. § 455(b)(1). Knowledge gained from a judge's discharge of his judicial function, however, "is not a ground for disqualification under 28 U.S.C. § 455(b)(1)." *Omega Engineering, Inc. v. Omega, S.A.*, 432 F.3d 437, 447-48 (2d Cir. 2005) (holding that knowledge gained from magistrate judge's exercise of his judicial duty in overseeing settlement conference was not grounds for disqualification under § 455(b)(1)). Thus, any knowledge gained by this Court in connection

with its role in facilitating the settlement conferences in this action is not a ground for disqualification under § 455(b)(1).

Moreover, § 455(b)(1) pertains only to disputed evidentiary facts. Here, there is no dispute that the parties entered into a written settlement agreement. Defendants' Rule 60(b) motion raises the narrow issue of whether Plaintiffs have breached the terms of that written settlement agreement and, if so, whether such a breach presents circumstances so extraordinary or exceptional that this Court should order relief from the order of dismissal under Rule 60(b).

The Court therefore finds Defendants' Motion to Disqualify Judge from Deciding Defendants' Motion for Relief Under FED. R. CIV. P. 60(B) to be without merit and shall DENY the motion. Accordingly, this Court shall consider and rule upon Defendants' pending motion seeking relief under Rule 60(B).

B.   Defendants' Motion For Relief Under Fed. R.Civ. P. 60(b):

Pursuant to FED. R. CIV. P. 60(b), Defendants ask this Court to vacate the order of dismissal, reinstate this action, and proceed with a new trial.

"[T]he party seeking relief under Rule 60(b) bears the burden of establishing the grounds for such relief by clear and convincing evidence." *Info-Hold, Inc. v. Sound Merchandising, Inc.*, 538 F.3d 448, 458 (6th Cir. 2008).

Defendants contend that Plaintiffs and/or Mr. Robinson have breached the settlement agreement by: 1) disclosing that the settlement amount was six figures; and 2) making comments to reporters that went beyond stating that, "the case has been settled." Defendants contend that the alleged breach of the settlement agreement constitutes an "exceptional and extraordinary circumstance" justifying relief under FED. R. CIV. P. 60(b)(6), "as it leaves Defendants with no

other remedy for Plaintiffs' breach." (Defs.' Motion at ¶ 22).[3]

In this "Circuit, however, the breach of a settlement agreement does not, by itself, justify relief under Rule 60(b)." *Info-Hold, Inc.,* 538 F.3d at 459; *Ford Motor Co. v. Mustangs Unlimited, Inc.*, 487 F.3d 465, 469-70 (6th Cir. 2007) (breach of a settlement agreement does not, without more, constitute an exceptional or extraordinary circumstance warranting relief under Rule 60(b)(6)). In other words, relief is not mandated merely because the terms of a settlement agreement are breached. "If adequate relief is available through a separate lawsuit for breach of the settlement agreement, the court may leave the parties to that remedy and refuse to set the judgment aside." *Ford Motor Co.*, 487 F.3d at 469 (quoting 12 MOORE'S FEDERAL PRACTICE § 60.48 (3d ed. 2000)).

Having considered Defendants' motion, this Court concludes that Defendants have not established that they are entitled to the relief requested.

With respect to Defendants' assertion that Plaintiffs breached the settlement agreement because Plaintiffs and/or Mr. Robinson are the unidentified source that advised reporters that the case had been settled for six figures, Defendants have offered only unsupported allegations.

---

[3]Alternatively, Defendants contend that the alleged breach of the settlement agreement by Plaintiffs and Mr. Robinson constitutes "misconduct by an opposing party," under FED. R. CIV. P. (b)(3). As Defendants recognize in their brief, however, the majority view is that courts analyze breach of a settlement agreement as grounds for relief from judgment under subsection (b)(6), rather than under (b)(3), and that the Sixth Circuit adheres to this view. (Defs.' Br. at 8); *see Info-Hold, Inc.,* 538 F.3d at 458 (noting that "only one federal court has even suggested that the 'misconduct' provision in Rule 60(b)(3) might encompass the breach of a settlement agreement," and that subsection (b)(6) is the appropriate provision under which to seek such relief). This Court concludes that Defendants' motion is properly analyzed under subsection (b)(6). Moreover, even if this Court were to analyze the motion under subsection (b)(3), the Court would still conclude that Defendants are not entitled to the relief requested.

Defendants have not offered *any* evidence, much less clear and convincing evidence, that either Plaintiffs or Mr. Robinson disclosed to anyone that the case had settled for six figures.

Defendants also claim that Plaintiffs breached the settlement agreement by making comments to reporters that went beyond stating that, "the case has been settled."

In responding to Defendants' motion, Plaintiffs assert that the settlement agreement only requires them to keep the terms of the settlement agreement confidential and does not prohibit them from discussing the case. Plaintiffs further note that "Royal Oak police chief Christopher Jahnke himself made statements concerning the settlement, and his feelings about the case to the Windsor Star." (Pls.' Br. at 5 n.3).

For purposes of this motion, this Court need not determine if Plaintiffs, Mr. Robinson, or the City of Royal Oak breached the terms of the settlement agreement by making statements to the press that went beyond stating that "the case has been settled." Assuming *arguendo* that any of the comments made to the press constitute a breach of the parties' settlement agreement, this Court concludes that such a breach would *not* present circumstances so extraordinary or exceptional that this Court should order relief from the order of dismissal under Rule 60(b). That is, the alleged conduct does not, in the interests of justice, require vacating the dismissal and reinstating this case for a new trial. Rather, the Court concludes that this presents an ordinary case where adequate relief is available to the parties through a separate lawsuit for breach of the settlement agreement. *Ford Motor Co.*, 487 F.3d at 469; *Info-Hold, Inc.,* 538 F.3d at 459.

Accordingly, the Court shall DENY Defendants' motion for relief under FED. R. CIV. P. 60(b).

CONCLUSION & ORDER

For the reasons set forth above, IT IS ORDERED that Defendants "Motion to Disqualify Judge From Deciding Defendants' Motion for Relief Under FED. R. CIV. P. 60(B)" is DENIED.

IT IS FURTHER ORDERED that Defendants "Motion for Relief from Order of Dismissal and to Set Aside Settlement" is DENIED.

IT IS SO ORDERED.

S/Sean F. Cox
Sean F. Cox
United States District Judge

Dated: September 17, 2009

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 17, 2009, by electronic and/or ordinary mail.

S/Jennifer Hernandez
Case Manager