UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Timothy McGuire and James Lee
Joseph Ryan,

  Plaintiffs,

v.                                                                            Case No. 05-40185

Royal Oak Police Sgt. Douglas Warner,  Honorable Sean F. Cox
*et al.,*

  Defendants.
_____/

## OPINION & ORDER
## DENYING DEFENDANTS' RENEWED MOTION TO DISQUALIFY JUDGE

  This matter is currently before the Court on Defendants' Renewed Motion to Disqualify Judge (Docket Entry No. 213). The Court finds that oral argument would not significantly aid the decisional process. *See* Local Rule 7.1(e)(2), U.S. District Court, Eastern District of Michigan. The Court therefore orders that the motion be decided without oral argument. For the reasons below, the Court shall DENY the motion and the evidentiary hearing shall proceed as scheduled.

### BACKGROUND

  This case, filed in 2005, has a rather long history. The basic facts regarding the incident that led to this action have been summarized as follows:

> On August 9, 2003, Timothy McGuire and James Ryan traveled by bus from their native Canada to Clarkston, Michigan, in order to attend a country music concert at the DTE Energy Music Theater. Following the concert, McGuire and Ryan boarded the bus to travel home. While they were on the bus waiting to depart, another attendee, Daniel Threlfall, was assaulted by two

> members of plaintiffs' group. While this occurred, McGuire left the bus, allegedly to break up the fight, and Ryan slept. McGuire denies seeing exactly who assaulted Threlfall.
>
> Off-duty Royal Oak police officers Warner and Gale had also attended the concert; they were leaving with their families when Threlfall was assaulted. They claim to have seen the assault occur and the perpetrators board the bus. Believing Threlfall's assailants to be on the bus, Warner and Gale approached it, identified themselves as police officers, and instructed the driver not to leave. They then waited with the bus for the Oakland County Sheriff to arrive.
>
> When the Oakland County deputies arrived, Warner and Gale again identified themselves as police officers and proceeded to assist in the investigation. McGuire was ordered off the bus while the deputies conducted a search. During this time, Officers Warner and Gale allegedly told McGuire that if he did not identify the men who assaulted Threlfall, they would pin the crime on him and "throw the book at him." Gale then entered the bus along with Oakland County authorities, escorted Ryan off, and identified him as one of Threlfall's assailants. Warner and Gale then stated to Oakland County authorities that they saw McGuire and Ryan commit the assault. Warner later reiterated this testimony in a written statement to Oakland County authorities and at McGuire and Ryan's preliminary hearing. Based upon the testimony of Warner and Gale, McGuire and Ryan were arrested and charged with Assault with Intent to Commit Great Bodily Harm Less than Murder. These charges were dropped on September 20, 2004, based upon newly discovered evidence indicating that McGuire and Ryan had not committed the assault.

*McGuire v. City of Royal Oak*, 295 Fed.Appx. 736 (6th Cir. 2008).

Plaintiffs filed this action on June 8, 2005, against several defendants,[1] including Defendants Warner and Gale.

Defendants Warner and Gale were the only remaining Defendants in this action at the time of trial. The trial in this matter was very contentious. Trial commenced on August 5, 2009.

---

[1] Several defendants were voluntarily dismissed by Plaintiffs and this Court granted summary judgment in favor of the City of Royal Oak and Chief Quisenberry.

After Lawrence Gilliken, Defendants' first witness, testified on August 13, 2009, the parties began discussing settlement. This Court held settlement conferences with the parties.

On August 19, 2009 – after two full weeks of trial and shortly before the jury was to hear closing arguments – the parties advised the Court that they had settled the case. The morning of August 19, 2009, the parties executed a written settlement agreement ("Agreement"), that states:

> The parties agree to a $_____[2] total settlement, $_____, to each Plaintiff. The parties are to keep the terms confidential. No party or parties' representatives will disclose to any person the terms of the settlement. If relatives have already been told of the settlement, those relatives are to be told not to discuss settlement with any other person.
>
> If asked, all anyone can say is case has been resolved. The terms will not be put on the record, instead the parties and representatives will sign an agreement which will set forth the specific terms of a confidential agreement.

(8/19/09 Agreement). The Agreement was signed by each party and was also signed by David Gillam on behalf of the City of Royal Oak and James Duffy on behalf of the MMRMA.

The parties chose not to put all of the terms of the settlement agreement on the record. The record reflects as follows:

| | |
|---|---|
| THE COURT: | Okay. There's been discussion starting last Friday regarding resolution of this case. The discussions continued yesterday and culminated with what I understand is a resolution this morning at about 11:00, five to eleven a.m.; is that correct? |
| MR. ROBINSON: | Correct, Your Honor. |
| MR. SEWARD: | Good morning, Your Honor. Joseph Seward on behalf of Doug Warner and Barry Gale; the answer is yes. |
| THE COURT: | Okay. Very good. All right. And the terms of that settlement are contained in an agreement; is that correct? |
| MR. SEWARD: | That's correct. |

---

[2] The Agreement contained the actual amounts.

>THE COURT:         Has the agreement been executed by everybody?
>MR. SEWARD:        It is in the process.
>(Brief pause in the proceedings)
>MR. SEWARD:        I will represent to the Court that it contains the original signatures of all.
>THE COURT:         Okay.  Is that true, Mr. Robinson?
>MR. ROBINSON:      Our signatures have been placed, Your Honor.  Let me peruse the document.  I believe that's accurate.

(8/19/09 Tr.).

An Order of Dismissal, approved by both parties as to form and substance, was issued on August 19, 2009, stating:

> The parties having placed a settlement of this action on the record on this date, IT IS ORDERED that this action is hereby DISMISSED WITHOUT PREJUDICE.
>     IT IS SO ORDERED.

(8/19/09 Order of Dismissal).  The jury was then released.

An August 20, 2009 article about this case appeared in the Detroit News, stating that the case had settled.  The article further stated that "[t]he terms of the agreement were not disclosed Wednesday.  But the city agreed to pay a six-figure settlement, according to one person familiar with the case."  (Ex. 3 to Defs.' Motion for Relief Under FED.R. CIV. P. 60(b)).

An article about this case also appeared in the Windsor Star on August 20, 2009.  (Ex. 4 to Defs.' Motion for Relief Under FED.R. CIV. P. 60(b)).  Plaintiffs' Counsel and Plaintiff Ryan were quoted in the article.  (*Id.*).  City of Royal Oak Police Chief Christopher Jahnke was also quoted in the article.  (*Id.*).

Another article appeared in the Windsor Star on August 21, 2009, which was nearly identical to the August 20, 2009 article that appeared in the Windsor Star.

On September 2, 2009, Defendants filed a motion seeking relief under FED. R. CIV. P.

60(b) and on September 4, 2009, Defendants filed a "Motion to Disqualify Judge From Deciding Defendants' Motion For Relief Under FED. R. CIV. P. 60(B)." In that motion, Defendants stated that "[o]n August 19, 2009, before the close of Defendants' proofs, the parties entered into a joint settlement agreement, settling the claims of both Plaintiffs on specific terms, including an agreement that the terms of the settlement would remain confidential." (Docket Entry No. 194 at 1). Defendants noted that "[u]pon the reaching of a settlement agreement, the jury was discharged." (*Id.*). Pursuant to FED. R. CIV. P. 60(b), Defendants claimed that Plaintiffs and/or Mr. Robinson breached the settlement agreement and asked this Court to vacate the order of dismissal, reinstate this action, and proceed with a new trial. This Court denied both motions in a written Opinion & Order.

Plaintiffs then filed a "Motion to Reinstate the Case for the Limited Purpose of Enforcement of Settlement Agreement," wherein Plaintiffs state that they have not been paid the settlement proceeds and that Defense Counsel has not presented them with a subsequent written agreement and release.

Defendants filed responses to the motion. Defendants "admit that they have not paid settlement proceeds to Plaintiffs, but deny that they have breached the agreement." (Docket Entry No. 208 at 7). Defendants asserted that "Plaintiffs' material breach in the first instance annuls the contract *ab initio* and relieves Defendants of performance of any obligations under the settlement agreement." (*Id.*).

In an Opinion & Order issued on October 19, 2009, this Court ruled that is has subject matter jurisdiction to enforce the settlement agreement in this case. The Court granted Plaintiffs' Motion to Reinstate Case to the extent that it shall reopen this case for purposes of enforcing the

5

settlement agreement.  In doing so this Court explained that "[b]ecause there are disputes as to the terms of the settlement agreement and whether those terms were breached, the Court will hold an **EVIDENTIARY HEARING on November 12, 2009, at 9:00 a.m.** in order to determine the material terms of the settlement agreement, and whether those material terms have been breached."  (10/19/09 Opinion & Order at 11) (emphasis in original).

On October 24, 2009, Defendants filed their "Renewed Motion to Disqualify Judge." (Docket Entry No. 213).  In this motion, Defendants state that they "have listed as witnesses Judge Cox and his judicial assistant, Jennifer Hernandez, on their preliminary witness list and intend to call them to testify to facts underlying the questions to be addressed at the evidentiary hearing of November 12, 2009."  (Defs.' Motion at 3).  Defendants contend that this Court should recuse itself, under 28 U.S.C. § 455 (b), because it has "personal knowledge of the facts and circumstances" occurring in the settlement conferences that it held in this case.  Defendants further assert that "defense counsel had conversation with the Court's judicial assistant, Jennifer Hernandez, regarding the observation of Plaintiffs and their counsel talking with the reporter from the Detroit News."  (Defs.' Br. at 2).

ANALYSIS

28 U.S.C. § 455(b)(1) states that a judge shall disqualify himself when he has "personal knowledge of disputed evidentiary facts concerning the proceeding."  28 U.S.C. § 455(b)(1). This rule only applies to knowledge which the judge obtained **extrajudicially.**  *United States v. Page*, 828 F.2d 1476, 1481 (10th Cir. 1987); *see also Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Stop Treaty Abuse-Wisconsin, Inc.,* 991 F.2d 1249, 1255 (7th Cir. 1993)("'Personal' knowledge of evidentiary facts means 'extrajudicial.'"); *Omega Engineering,*

*Inc. v. Omega, S.A.*, 432 F.3d 437, 447-48 (2d Cir. 2005) (It is well established that knowledge gained from a judge's discharge of his judicial function "is not a ground for disqualification under 28 U.S.C. § 455(b)(1)."); *United States v. Patrick*, 542 F.2d 381, 390 (7th Cir. 1976) ("[F]acts learned by a judge in his judicial capacity cannot be the basis for disqualification" under § 455(b)(1)); *United States v. Bailey,* 175 F.3d 966, 969 (11th Cir. 1999)).

In other words, "[t]his rule is not meant to preclude participation of a judge who has obtained knowledge of the case through prior judicial proceedings."  46 AM. JUR. 2D  Judges § 151, *Knowledge of disputed evidentiary facts*.  "The phrase 'personal knowledge of disputed evidentiary facts' refers to knowledge extrajudicially obtained rather than knowledge obtained in a judge's official capacity" during judicial proceedings.  *Id.*  "Facts learned in a judicial capacity through a review of the evidence presented in court, in pretrial conferences, during plea bargaining, in the course of settlement conferences, or even in separate courtroom proceedings presided over by the same judicial officer, are not facts gathered from an extra judicial source." 8 Fed. Proc. L. Ed. § 20:92.

Here, Defendants do not allege that this Court has any personal, extrajudicial knowledge regarding this case.  Rather, Defendants seek recusal merely because this Court conducted settlement conferences with the parties during the course of this litigation.

A nearly identical situation was presented in *Omega Engineering, Inc. v. Omega, S.A.*, 432 F.3d 437 (2d Cir. 2005).  In that case, a magistrate judge presided over a settlement conference with the parties that concluded with the parties informing the court that the case had settled.  The parties confirmed on the record that the case had settled but stated that they needed two weeks to get a written agreement executed and filed.  The parties were unsuccessful in

executing that written agreement and a motion to enforce the settlement agreement was filed. The district court referred that motion back to the same magistrate judge for an evidentiary hearing. Defendant sought recusal but the magistrate judge denied that request and proceeded with the evidentiary hearing. The district court adopted the magistrate judge's ultimate recommended ruling and entered judgment in accordance with the terms of the settlement agreement.

On appeal, Defendant asserted that "the magistrate judge's personal knowledge of the facts surrounding the settlement conference required him to recuse himself from considering [Plaintiff's] subsequent motion to enforce the Settlement Agreement. [Defendant] relies on 28 U.S.C. § 455(b)(1) (2000), which states that a judge or magistrate must recuse himself '[w]here he has . . . personal knowledge of disputed evidentiary facts concerning the proceeding.'" *Id.* at 447. The United States Court of Appeals for the Second Circuit affirmed the district court's determination that disqualification was not necessary. In doing so, the appellate court noted that the magistrate judge's knowledge of the settlement agreement arose solely from his judicial duties in conducting the settlement conference and therefore his "his knowledge was not extrajudicial." *Id*. at 447-48.

This Court continues to believe that any knowledge gained by this Court in connection with its role in facilitating the settlement conferences in this action is not a proper ground for disqualification under § 455(b)(1). *Omega Engineering, Inc.,* 432 F.3d at 447-448; *see also Bilello v Abbott Laboratories*, 825 F.Supp. 475 (E.D. New York 1993).

In their renewed motion, Defendants appear to take the position that the extensive case law referred to above somehow does not apply here because this Court found that it has non-

8

ancillary jurisdiction over this matter to enforce the settlement agreement. (*See* Defs.' Br. at 6) (asserting that this "is not simply a matter of continuation of the previous case, but is an independent matter involving a breach of contract for which the Court must have an independent basis for jurisdiction."). Defendants have cited no legal authority to support that position and the Court finds it without merit. *See e.g., United States v. Page*, 828 F.2d at 1481 ("Section 455(b)(1) does not apply to knowledge obtained in the course of related judicial proceedings."); *Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Stop Treaty Abuse-Wisconsin, Inc.,* 991 F.2d at 1256-57 ("Facts learned by a judge in his or her judicial capacity regarding the parties before the court, whether learned in the same or a related proceeding, cannot be the basis for disqualification.").

Accordingly, the Court shall deny Defendants' Renewed Motion to Disqualify Judge and shall preside over the evidentiary hearing scheduled for November 12, 2009.[3]

## CONCLUSION & ORDER

For the reasons stated above, **IT IS ORDERED** that Defendants' Renewed Motion To Disqualify Judge is **DENIED.**

**IT IS FURTHER ORDERED** that the Evidentiary Hearing shall proceed as scheduled on November 12, 2009.

---

[3]As Defendants note in their motion, Rule 605 of the Federal Rules of Evidence prohibits a judge from testifying as a witness in a proceeding over which he presides. Thus, this Court will not be testifying at the November 12, 2009 evidentiary hearing.

**IT IS SO ORDERED.**

                                              S/Sean F. Cox  
                                              Sean F. Cox  
                                              United States District Judge

Dated: October 29, 2009

I hereby certify that a copy of the foregoing document was served upon counsel of record on October 29, 2009, by electronic and/or ordinary mail.

                                              S/Jennifer Hernandez  
                                              Case Manager