UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Timothy Daniel McGuire, *et al.*,

      Plaintiffs,

v.                                                              Honorable Sean F. Cox

Royal Oak Police Sgt. Douglas                   Case No. 05-40185
Warner, *et al.*,

      Defendants.

_____/

### OPINION & ORDER

On October 19, 2009, this Court granted Plaintiffs' "Motion to Reinstate the Case for the

Limited Purpose of Enforcement of Settlement Agreement" to the extent that it reopened this

case for purposes of enforcement of the settlement agreement. Because Defendants claimed

there were disputes as to the material terms of the settlement agreement, and whether those terms

were breached, this Court concluded that summary enforcement of the settlement agreement

would not be appropriate. The Court held an evidentiary hearing on November 12, 2009,

continued on November 13, 2009, to determine the material terms of any settlement agreement

reached, and whether those material terms have been breached. Having held the evidentiary

hearing, the Court now concludes that: 1) the parties reached agreement as to the material terms

of a settlement on August 19, 2009 that resolved this action; 2) Plaintiffs have not breached any

of the material terms of the settlement agreement; but 3) nevertheless, to date, Plaintiffs have not

been paid the agreed upon settlement proceeds. Accordingly, the Court shall **GRANT**

Plaintiffs' Motion to Enforce Settlement Agreement and shall issue appropriate **CONSENT**

1

**JUDGMENTS**.

BACKGROUND

This case, filed in 2005, has a long and tumultuous history.  The allegations regarding the underlying incident that led to this action have been summarized as follows:

> On August 9, 2003, Timothy McGuire and James Ryan traveled by bus from their native Canada to Clarkston, Michigan, in order to attend a country music concert at the DTE Energy Music Theater.  Following the concert, McGuire and Ryan boarded the bus to travel home.  While they were on the bus waiting to depart, another attendee, Daniel Threlfall, was assaulted by two members of plaintiffs' group.  While this occurred, McGuire left the bus, allegedly to break up the fight, and Ryan slept.  McGuire denies seeing exactly who assaulted Threlfall.

> Off-duty Royal Oak police officers Warner and Gale had also attended the concert; they were leaving with their families when Threlfall was assaulted.  They claim to have seen the assault occur and the perpetrators board the bus.  Believing Threlfall's assailants to be on the bus, Warner and Gale approached it, identified themselves as police officers, and instructed the driver not to leave.  They then waited with the bus for the Oakland County Sheriff to arrive.

> When the Oakland County deputies arrived, Warner and Gale again identified themselves as police officers and proceeded to assist in the investigation.  McGuire was ordered off the bus while the deputies conducted a search.  During this time, Officers Warner and Gale allegedly told McGuire that if he did not identify the men who assaulted Threlfall, they would pin the crime on him and "throw the book at him."  Gale then entered the bus along with Oakland County authorities, escorted Ryan off, and identified him as one of Threlfall's assailants.  Warner and Gale then stated to Oakland County authorities that they saw McGuire and Ryan commit the assault.  Warner later reiterated this testimony in a written statement to Oakland County authorities and at McGuire and Ryan's preliminary hearing.  Based upon the testimony of Warner and Gale, McGuire and Ryan were arrested and charged with Assault with Intent to Commit Great Bodily Harm Less than Murder.  These charges were dropped on September 20, 2004, based upon newly discovered evidence indicating that McGuire and Ryan had not committed the assault.

*McGuire v. City of Royal Oak*, 295 Fed.Appx. 736 (6th Cir. 2008).

2

Plaintiffs filed this action on June 8, 2005, against several Defendants, including

Defendants Warner and Gale.  Defendants Warner and Gale were the only remaining Defendants

in this action at the time of trial.   The trial in this matter was very contentious.  Trial commenced

on August 5, 2009.  Members of the local press were present at various times throughout the

trial.

After Lawrence Gilliken, Defendants' first witness, testified on August 13, 2009, the

parties began discussing settlement.

On August 19, 2009 – after two full weeks of trial and shortly before the jury was to hear

closing arguments –  the parties advised the Court that they had settled the case.  On August 19,

2009, the parties executed a written agreement.  That agreement was signed by each named party

and was also signed by David Gillam on behalf of the City of Royal Oak and James Duffy on

behalf of the Michigan Municipal Risk Management Authority ("MMRMA").

The parties then placed a settlement on the record on August 19, 2009.  An Order of

Dismissal was then issued on August 19, 2009, stating:

> The parties having placed a settlement of this action on the record on this
> date, IT IS ORDERED that this action is hereby DISMISSED WITHOUT
> PREJUDICE.
> IT IS SO ORDERED.

(Docket Entry No. 193).  The jury was then released.

After August 19, 2009, three articles about this case appeared in local newspapers.  The

articles stated that although the terms of the settlement were not disclosed, an unidentified source

had indicated that the city agreed to pay a "six-figure" settlement.

On September 2, 2009, Defendants filed a motion seeking relief under FED. R. CIV. P.

3

60(b) and on September 4, 2009, Defendants filed a "Motion to Disqualify Judge From Deciding Defendants' Motion For Relief Under FED. R. CIV. P. 60(B)."

In their Rule 60(b) motion, Defendants stated that on August 19, 2009, the "parties came to an agreement for settlement of the case under specific terms, one of which was that the terms of the settlement remain confidential." (Docket Entry No. 194 at 1). Defendants represented that "the parties **had a meeting of the minds**" and reduced their agreement to writing. (*Id.* at 9) (emphasis added); (*see also Id.* at 1)("[o]n August 19, 2009, before the close of Defendants' proofs, the parties entered into a joint settlement agreement, settling the claims of both Plaintiffs on specific terms, including an agreement that the terms of the settlement would remain confidential."). Pursuant to FED. R. CIV. P. 60(b), Defendants claimed that Plaintiff Ryan and/or Mr. Robinson breached the terms of the settlement agreement and submitted the three articles as exhibits. (Docket Entry Nos. 194-5, 194-6 & 194-7). Based upon the alleged breach of the settlement agreement by Mr. Ryan and/or Mr. Robinson, Defendants asked this Court to vacate the order of dismissal, reinstate this action, and proceed with a new trial.

In their Motion to Disqualify, Defendants asked this Court to recuse itself under 28 U.S.C. § 455(b)(1), asserting that this Court has personal knowledge of the negotiations between the parties because the Court conducted settlement conferences. In that motion, Defendants referenced the August 19, 2009 agreement as **"the Agreement memorializing the settlement and its essential terms."** (Docket Entry No. 196 at ¶ 3 & 2) (emphasis added).

This Court denied both motions in a written Opinion & Order issued on September 17, 2009. (Docket Entry No. 204).

Meanwhile, Plaintiffs filed a "Motion to Reinstate the Case for the Limited Purpose of

Enforcement of Settlement Agreement," wherein Plaintiffs stated that they have not been paid the

settlement proceeds and asked the Court to enforce the settlement agreement.

Defendants filed responses to that motion, admitting "that they have not paid settlement

proceeds to Plaintiffs, but deny[ing] that they have breached the agreement." (Docket Entry No.

208 at 7). Defendants asserted that "Plaintiffs' material breach in the first instance annuls the

contract *ab initio* and relieves Defendants of performance of any obligations under the settlement

agreement." (*Id*.).

Defendants later filed a supplemental brief wherein they asserted – for the first time and

contrary to the assertions in their Rule 60(b) motion – that there "was no meeting of the minds"

as to one or more essential terms and thus there was no settlement agreement. (Docket Entry No.

210 at 9-10). Defendants requested that the Court conduct an evidentiary hearing to resolve all

issues of disputed fact surrounding the settlement agreement and its alleged breach. (*Id*. at 12).[1]

Plaintiffs, on the other hand, took the position that an evidentiary hearing was not

necessary and that the Court could summarily enforce the settlement agreement based upon the

record in this case.

In an Opinion & Order dated October 19, 2009 (Docket Entry No. 212), this Court

granted Plaintiffs' "Motion to Reinstate the Case for the Limited Purpose of Enforcement of

Settlement Agreement"  to the extent that it reopened this case for purposes of enforcing the

settlement agreement. Because there were disputes as to the material terms of the settlement

agreement and whether those terms were breached, the Court concluded that summary

---

[1]Neither party requested that they be allowed to conduct any discovery with respect to the
terms of the settlement agreement or the alleged breaches.

enforcement of the settlement agreement would not be appropriate.  Accordingly, the Court

scheduled an evidentiary hearing for November 12, 2009, to determine the material terms of any

settlement agreement reached, and whether those material terms have been breached.

This Court's October 19, 2009 Opinion & Order ordered each of the parties to file a

witness list no later than October 30, 2009, identifying each witness that the party intended to call

at the evidentiary hearing, along with a "specific summary of the testimony expected of each

witness." (Docket Entry No. 212 at 11).  The Court further ordered that no later than October 30,

2009, each party must file a brief wherein "they must specifically set forth their position as to: 1)

which material term(s) has been breached; 2) how and when that material terms was breached; 3)

**who** breached that material term; and 4) the evidence establishing the alleged breach."  (Docket

Entry No. 212 at 11) (emphasis added).

On October 24, 2009, Defendants filed a Renewed Motion to Disqualify Judge (Docket

Entry No. 213), which this Court denied an Opinion & Order dated October 29, 2009.  (Docket

Entry No. 219).

On October 27, 2009, Defendants filed their witness list.  (Docket Entry No. 214).  At

that time, Plaintiffs had not yet filed a witness list.  Notably, Defendants **did not** list either James

Ryan or Timothy McGuire[2] as witnesses they intended to call at the evidentiary hearing.  With

respect to Defendants' position as to **who** breached the agreement, Defendants' Pre-Evidentiary

Hearing Brief identified **Mr. Ryan and Mr. Robinson** as the individuals who allegedly breached

---

[2]Despite not having named Timothy McGuire as a witness, Defendants served a subpoena
on Mr. Robinson's office, at approximately 2:30 p.m on November 12, 2009, purportedly
requiring Mr. McGuire's attendance in this Court on November 12, 2009 at 9:00 a.m.  This Court
quashed that subpoena because it failed to give Mr. McGuire, who lives in Calgary, Canada, a
reasonable time to comply.  (Docket Entry No. 236).

the material terms of the settlement agreement.  (Docket Entry No. 222 at 10).

On November 5, 2009, Defendants filed a Motion for Reconsideration of Defendants' Renewed Motion to Disqualify Judge (Docket Entry No. 225), which was denied in an Opinion & Order issued on November 9, 2009.  (Docket Entry No. 226).  In that Order, this Court again expressly ordered that the "Evidentiary Hearing set for November 12, 2009, shall proceed as scheduled."

On November 10, 2009, Defendants filed a "Petition for Writ of Mandamus," asking the Sixth Circuit to direct this Court to: 1) set aside its Order Denying Defendants' Renewed Motion to Disqualify Judge; 2) grant Defendants' motion to disqualify; and 3) testify at the evidentiary hearing.  (Case No. 09-2447).

Forty-five minutes prior to the scheduled evidentiary hearing on November 12, 2009, this Court discovered that on the night of November 11, 2009, Defendants had filed, in this Court, a motion to stay proceedings pending a ruling from the Sixth Circuit on the petition for writ of mandamus.  In an Opinion & Order issued the morning of November 12, 2009, this Court denied that Motion to Stay, concluding that it was not timely, was without merit, and was filed as a delay tactic.  (Docket Entry No. 234).[3]

On that same day, November 12, 2009, the Sixth Circuit denied Defendants' motion to stay proceedings in this Court.  (Docket Entry No. 237).

---

[3]In addition, during the evidentiary hearing on November 12, 2009, Defense Counsel made another oral motion to stay, which this Court denied on the record.  Defense Counsel also made an oral motion for recusal on November 12, 2009, which this Court denied on the record and in a written order.  (Docket Entry No. 235).

7

EVIDENTIARY HEARING

The Court held the evidentiary hearing, which had been requested by Defendants, on November 12, 2009.  The evidentiary hearing continued on November 13, 2009.

A.    Exhibits:

_____The following exhibits were admitted at the hearing: 1) the August 19, 2009 written agreement (Joint Ex. 1, Docket Entry No. 200)[4]; 2) an article, written by Paul Egan, that appeared in the Detroit News on August 20, 2009 (Joint Ex. 2, Docket Entry No. 194-5); 3) An article, written by Dave Battagello, that appeared in the Windsor Star on August 21, 2009 (Joint Ex. 3, Docket Entry No. 194-7); 4) the August 19, 2009 Order of Dismissal (Pls.' Ex. 4, Docket Entry No. 193); 5) the Transcript of Proceedings on August 19, 2009 (Pls.' Ex. 5, Docket Entry No. 216); and 6) an article, written by Dave Battagello, that appeared in the Windsor Star on August 20, 2009 (Pls.' Ex. 6, Docket Entry No. 194-6).

B.    Witnesses:

The following witnesses testified at the evidentiary hearing on November 12, 2009: 1) Plaintiff James Ryan; 2) Plaintiffs' Counsel Racine Miller; 3) Plaintiffs' Counsel David Robinson; 4) Defense Counsel T. Joseph Seward; 5) James Duffy, representative of the Michigan Municipal Risk Management Authority ("MMRMA"); and 6) David Gillam, City Attorney for the City of Royal Oak.[5]

_____

[4]All of the exhibits admitted during the evidentiary hearing were already in the record in this case.  For ease of reference, each exhibit is followed by the applicable docket entry number.

[5]During the evidentiary hearing on November 12, 2009, Defense Counsel made an oral "Rule 50 motion," which this Court denied in a written Opinion & Order.  (Docket Entry No. 242).  As noted in that Opinion & Order, FED. R. CIV. P. 50 applies only to **jury trials**.

8

The following witnesses testified when the hearing resumed on November 13, 2009: 1) David Gillam; 2) Defendant Douglas Warner; and 3) Defendant Barry Gale.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

Having heard and observed the witnesses who testified at the evidentiary hearing, allowing for this Court to assess credibility, having considered the exhibits submitted by the parties, having reviewed all matters of record in this case, having considered the arguments presented by counsel, and having applied the governing legal principles, the Court makes the following findings of fact and conclusions of law.[6]

### FINDINGS OF FACT

After consideration of the testimony and exhibits presented at the evidentiary hearing, drawing inferences as appropriate, weighing the evidence and **assessing the credibility of the witnesses,** the Court finds as follows.

Trial commenced in this matter on August 5, 2009.   Members of the local press were present in the courtroom throughout various portions of trial.

On August 19, 2009, Counsel for the parties negotiated a settlement agreement.   T. Joseph Seward represented Defendants in those negotiations while David Robinson and Racine Miller represented Plaintiffs in the negotiations.   The representatives for Defendants did not discuss settlement directly with Plaintiffs or Plaintiffs' Counsel.   Rather, the negotiations were conducted through counsel.   (11/12/09 Hrg. Tr.[7] at 100-01, 159, 165-66; Mr. Seward's Affidavit

---

[6]To the extent that a finding of fact is more properly a conclusion of law, and the to the extent that a conclusion of law is more properly a finding of fact, it should be so construed.

[7]The Court's citations to the 11/12/09 Hearing Transcript are citations to the Rough Copy of the transcript, which is attached as Exhibit A to this Opinion & Order.   A final copy of the

at ¶ 3, Docket Entry No. 194-4, 11/13/09 Hrg. Tr. at 15).

During those negotiations, the parties, through their respective counsel, ultimately agreed upon a settlement amount. Plaintiffs would each be paid $350,000.00, for a total settlement amount of $700,000.00. The parties agreed that the settlement would be paid by Defendants, the City of Royal Oak and the MMRMA. (11/12/09 Hrg. Tr. at 132-33, 159, 163 & 171; Jt. Ex. 1, Docket Entry No. 200; Pls.' Ex. 5, Docket Entry No. 216).

Once the parties had agreed to the amount of the settlement, but before they had concluded settlement negotiations, Mr. Seward observed Plaintiffs and their parents speaking with reporter Paul Egan in the hallway outside of chambers. (11/12/09 Hrg. Tr. at 99-100). Mr. Seward was upset that Plaintiffs and their families were speaking with Mr. Egan.

Mr. Seward, Mr. Robinson, and Ms. Miller then continued negotiations in this Court's chambers, specifically negotiations as to confidentiality. Again, no client representatives were present during these negotiations.[8] (11/12/09 Hrg. Tr. at 99-100, 164-66; Mr. Seward's Affidavit at ¶ 3, Docket Entry No. 194-4).

---

transcript is not yet available.

[8]The Court notes that Mr. Gillam testified as to his "wishes" and "needs" regarding confidentiality. Mr. Seward also testified as to "his understanding" of his "client's wishes" as to confidentiality. Specifically, Mr. Seward testified that his clients wished to prevent Plaintiffs from making any kind of disparaging remarks or comments about the City and the Defendant Officers and that Defendants wished to "buy Plaintiffs' silence." (*See e.g.*, 11/12/09 Hrg. Tr. at 98-99). The undisclosed subjective wishes and desires of Defendants' representatives -- **who were not present during negotiations with Plaintiffs' Counsel** -- are not relevant. "A settlement agreement, like any other contractual arrangement, depends upon objective, not subjective, manifestations of intent." *Bosely v. 21 WFMJ Television, Inc.,* 245 Fed.Appx. 445 at 451 (6th Cir. 2007). Thus, the issue is what the parties, through their counsel, actually negotiated and agreed to. *Id*. at 450-51.

Mr. Seward inquired as to whether Plaintiffs had disclosed the various monetary amounts discussed as to settlement.  Mr. Robinson stated that, up until that point, his clients had not disclosed any negotiations as to the settlement amount to the media or to family members. (11/12/09 Hrg. Tr. at 80 & 101; Mr. Seward's Affidavit at ¶ 6, Docket Entry No. 194-4).

Mr. Seward then stated that his clients wished the amount of the settlement to remain confidential.  Plaintiffs agreed that the amount of the settlement would be kept confidential.

Ms. Miller then asked if Plaintiffs would be permitted to make the specific statement that the "case had settled in Plaintiffs' favor" without disclosing the amount of the settlement. (11/12/09 Hrg. Tr. at 69).

Mr. Robinson responded that, of course they could make such a statement.  Mr. Robinson stated that if the case settled, that would imply that the case resolved in favor of Plaintiffs. (11/12/09 Hrg. Tr. at 69).

Mr. Seward indicated that the specific statement "the case settled in plaintiffs' favor" would not be acceptable to Defendants. (11/12/09 Hrg. Tr. at 69-70).

Counsel for the parties then agreed that if asked about the **amount of the settlement**, the parties to the agreement and/or their representatives could not make the specific statement that the "case resolved in Plaintiffs' favor," or disclose the amount of the settlement.  They agreed that, if asked about the amount of the settlement, all anyone could say is the "case has been resolved."  (11/12/09 Hrg. Tr. at 69-70, 75 & 84).

At no time during settlement negotiations did Mr. Seward request a broad confidentiality provision that would prohibit the parties and/or their attorneys and representatives from discussing or commenting about any other aspect of this case.  (11/12/09 Hrg. Tr. at 72 & 74).

11

At no time during settlement negotiations did Mr. Seward request a non-disparagement clause.[9]  (11/12/09 Hrg. Tr. at 72 & 74).

The parties agreed that they would execute a written agreement that day, August 19, 2009, containing the material terms of the settlement.  They further agreed that they would execute a written release, containing the same material terms and other non-material details, after August 19, 2009.  (11/12/09 Tr. at 86, 159-60; Jt. Ex. 1).

On August 19, 2009, **Mr. Seward drafted** the written agreement memorializing the material terms of the settlement agreement.  (Mr. Seward's Affidavit at ¶ 9, Docket Entry No. 194-4; 11/12/09 Hrg. Tr. at 102-03, 109-112).  That written agreement states:

The parties agree to a $700,000[10] total settlement, $350,000, to each

_____

[9]The Court notes that Mr. Seward testified that, during negotiations, he: 1) insisted that there be no disparaging comments; and 2) said to Mr. Robinson, words to the effect that Defendants "wanted to buy his clients' silence."  (11/12/09 Hrg. Tr. at 98-99).  **The Court finds that this testimony is not credible.**

[10]During the evidentiary hearing on November 12, 2009, Defense Counsel requested that Exhibit 1 (the August 19, 2009 agreement) be submitted to the Court under seal.  Plaintiffs objected.  This Court indicated that it would allow the exhibit to be submitted under seal for purposes of the evidentiary hearing.  This Court expressly advised the parties, however, that if it concludes that the amount of the settlement is a material term of a valid and enforceable settlement agreement, the Court's Opinion & Order following the evidentiary hearing, and any judgment ultimately issued in this case, would reflect that amount.  (11/12/09 Hrg. Tr. at 6-9 & 13).  Defendants did not state any objection after the Court so advised the parties on November 12, 2009.  Moreover, at no time either before or after November 12, 2009, did Defendants file a motion seeking to seal the Court's Opinion & Order, or any judgment, that would be issued following the evidentiary hearing.

"The Sixth Circuit has stated that there is a "strong common law presumption in favor of public access to court proceedings and records." *Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165, 1179 (6th Cir. 1983) (finding that the "confidentiality agreement between the parties does not bind the court in any way," stating that the "public has a strong interest in obtaining the information contained in the court record," and vacating district court's order to seal.).  "Only the most compelling reasons can justify non-disclosure of judicial records."  *In re Knoxville News-Sentinel Co., Inc.*, 723 F.2d 470, 476 (6th Cir. 1983).  In light of these standards,

12

Plaintiff.  The parties are to keep the terms confidential.  No party or parties' representatives will disclose to any person the terms of the settlement.  If relatives have already been told of the settlement, those relatives are to be told not to discuss settlement with any other person.

If asked, all anyone can say is case has been resolved.  The terms will not be put on the record, instead the parties and representatives will sign an agreement which will set forth the specific terms of a confidential agreement.

(Jt. Ex. 1, Docket Entry No. 200).   The Agreement was then signed and agreed to by the Plaintiffs and Defendants and was also signed and agreed to by David Gillam on behalf of the City of Royal Oak and James Duffy on behalf of the MMRMA.  (*Id.*; Pls.' Ex. 5, Docket Entry No. 216).

Thereafter, on the morning of August 19, 2009 – after two full weeks of trial and shortly before the jury was to hear closing arguments – Counsel for the parties advised the Court that they had settled the case.  (Pls.' Ex. 5, Docket Entry No. 216).

The Court requested that the parties put the settlement on the record.  The parties chose not to put all of the terms of the settlement agreement on the record.  Nevertheless, the following was placed on the record on August 19, 2009:

| | |
|---|---|
| THE COURT: | Okay. There's been discussion starting last Friday regarding **resolution of this case**.  The discussions continued yesterday and culminated with what I understand is a **resolution** this morning at about 11:00, five to eleven a.m.; is that correct? |
| MR. ROBINSON: | Correct, Your Honor. |
| MR. SEWARD: | Good morning, Your Honor.  **Joseph Seward on behalf of Doug Warner and Barry Gale; the answer is yes.** |
| THE COURT: | Okay.  Very good.  All right.  **And the terms of that** |

and the fact that Defendants did not move to seal this Court's Opinion & Order or any judgment to be issued following the evidentiary hearing, the Court does not believe it would be appropriate to take such actions *sua sponte*.

13

|                  | **settlement are contained in an agreement; is that correct?** |
|------------------|-----------------------------|
| MR. SEWARD:      | **That's correct.**         |
| THE COURT:       | **Has the agreement been executed by everybody?** |
| MR. SEWARD:      | It is in the process.       |
| (Brief pause in the proceedings) | |
| MR. SEWARD:      | **I will represent to the Court that it contains the original signatures of all.** |
| THE COURT:       | Okay.  Is that true, Mr. Robinson? |
| MR. ROBINSON:    | Our signatures have been placed, Your Honor.  Let me peruse the document.  I believe that's accurate. |
| THE COURT:       | Okay.  Mr. Seward, could you voir dire your clients? |
| MR. SEWARD:      | I would prefer not to, Your Honor. |
| THE COURT:       | Well, I'm requesting that you voir dire your clients -- |
| MR. SEWARD:      | Okay.                       |
| THE COURT:       | – regarding that the resolution is agreeable to them, the fact that they understand that they can proceed to jury trial and – |
| MR. SEWARD:      | Gentlemen, do you mind stating your names? |
| MR. GALE:        | Barry Gale.                 |
| MR. WARNER:      | Doug Warner.                |
| THE COURT:       | You need to do it one at a time, okay? |
| MR. SEWARD:      | Okay.  Mr. Warner, have you read the terms of the agreement? |
| MR. WARNER:      | Yes.                        |
| MR. SEWARD:      | Have you signed it?         |
| MR. WARNER:      | Yes.                        |
| MR. SEWARD:      | Thank you.  Do you understand them? |
| MR. WARNER:      | Yes.                        |
| MR. SEWARD:      | Do you agree to abide by them? |
| MR. WARNER:      | Yes.                        |
| MR. SEWARD:      | Mr. Gale, have you read them? |
| MR. GALE:        | Yes.                        |
| MR. SEWARD:      | Did you sign it?            |
| MR. GALE:        | Yes.                        |
| MR. SEWARD:      | And do you agree to abide by it? |
| MR. GALE:        | Yes.                        |
| MR. SEWARD:      | Thank you.                  |
| THE COURT:       | **And the other two principals?** |
| MR. SEWARD:      | Oh.  Mr. Gillam, do you mind stating your name for the record? |
| MR. GILLAM:      | Good morning, Your Honor.  David Gillam.  Last name, G-I-l-l-a-m, as in Mary, city attorney for the City of Royal Oak. |

14

MR. SEWARD:        Have you read the agreement?

MR. GILLAM:        Yes, I have.

MR. SEWARD:        **And do you agree to be bound by the terms of the**
                   **agreement?**

MR. GILLAM:        **On behalf of the city, yes.**

MR. SEWARD:        Mr. Duffy, can you please tell us your name?

MR. DUFFY:         Jim Duffy.

MR. SEWARD:        Okay.  And have you had a chance to --

THE COURT:         Sir, could you also tell us who you're appearing on behalf
                   of?

MR. DUFFY:         I'm sorry. MMRA.

MR. SEWARD:        And have you read the terms of the agreement?

MR. DUFFY:         Yes.

MR. SEWARD:        **And do you agree to abide by the terms of the**
                   **agreement?**

MR. DUFFY:         **Yes**.

THE COURT:         Okay.  Mr. Robinson, do you wish to voir dire your clients?

MR. ROBINSON:      Sure.  Mr. McGuire, state your name, please, for the record.

MR. MCGUIRE:       Timothy Daniel McGuire.

MR. ROBINSON:      You read and reviewed the agreement between the parties?

MR. MCGUIRE:       Yes, I have.

. . . .

MR. ROBINSON:      And you will be bound by the agreement?

MR. MCGUIRE:       Yes, I will.

THE COURT:         Mr. Ryan, state your name for the record.

MR. RYAN:          James Lee Joseph Ryan.

MR. ROBINSON:      You read the agreement?

MR. RYAN:          Yes, I have.

MR. ROBINSON:      Are you bound by the agreement?

MR. RYAN:          Yes.

MR. ROBINSON:      Thank you.

. . . .

THE COURT:         Mr. Ryan, do you understand that we're almost done with
                   the trial, correct?

MR. RYAN:          Correct.

THE COURT:         All right.  And probably tomorrow the jury would start their
                   deliberations, correct? Do you understand that?

MR. RYAN:          Yes, I do.

THE COURT:         **And did you sign an agreement?**

MR. RYAN:          **Yes, I did.**

THE COURT:         **With the city and the officers and the MMRA; is that**
                   **correct?**

MR. RYAN:          **That is correct.**

15

| | |
|---|---|
| THE COURT: | **To resolve this case, correct?** |
| MR. RYAN: | **Yes, sir.** |
| THE COURT: | Do you understand the jury could award nothing at all? |
| MR. RYAN: | Yes, I do. |
| THE COURT: | An amount less than the agreement? |
| MR. RYAN: | Yes, I do. |
| THE COURT: | Or they could award you an amount greater than the agreement; do you understand that? |
| MR. RYAN: | Yes. |
| THE COURT: | Understanding all that, do you wish to accept this agreement? |
| MR. RYAN: | I do. |
| THE COURT: | And there has been an order of dismissal. |
| MR. SEWARD: | Thank you , Your Honor. May I approach? |
| MR. ROBINSON: | Judge, hold on. We have – there has to be some, before we sign the dismissal of this case, we've got to carry out the other terms of this agreement. **We have to receive what it is we need to receive pursuant to the agreement before we dismiss the case.** |
| THE COURT: | Did you think I was going to – what did you think was going to happen? |
| MR. ROBINSON: | Well, you said -- |
| THE COURT: | We have – can I see you at sidebar? |
| COURT REPORTER: | On or off the record? |
| THE COURT: | Go off the record first. |
| (Sidebar conference held off the record) | |
| THE COURT: | Okay. It's my understanding that the parties are agreeable to sign a stipulation order dismissing the case without prejudice. |
| MR. ROBINSON: | That's correct, Your Honor. |
| MR. SEWARD: | Yes, Your Honor. Thank you. |

(Pls.' Ex. 5, Docket Entry No. 216) (Emphasis added).

An Order of Dismissal, approved by both parties as to form and substance, was then

issued on August 19, 2009, stating:

> The parties **having placed a settlement of this action on the record** on this date, IT IS ORDERED that this action is hereby DISMISSED WITHOUT PREJUDICE.
> IT IS SO ORDERED.

16

(Pls.' Ex. 4, Docket Entry No. 193) (emphasis added).

The jury was then released.

After the jury was released, Counsel for the parties requested that they be permitted to speak with the jurors. The jurors agreed to speak with counsel and did so after the jury was released on August 19, 2009. Those discussions led Mr. Seward to believe that some of the jurors supported the Defendants. (11/12/09 Hrg. Tr. at 119).

An article about this case, written by **Dave Battagello**, appeared in the **Windsor Star** on **August 20, 2009.** (Pls.' Ex. 6, Docket Entry No. 194-6). That article stated:

> An apology would be nice.
>
> But that's one thing Windsorites Tim McGuire and Jim Ryan may have to live without following the culmination Wednesday of a six-year legal ordeal that ended with a six-figure settlement from the city of Royal Oak in a case of wrongful arrest.

(*Id.*). The article further stated that "[t]he terms of the agreement were not disclosed, but a source told the Detroit News that the city agreed to a six-figure settlement." Plaintiffs' counsel, David Robinson was quoted in the article commenting about the case as follows:

> "This has been David v. Goliath, no doubt about it." Said David A. Robinson, the Southfield lawyer representing the two Windsor men. "It's been a very unfair fight. You've got police officers wielding their authority with abuse and never relenting in their falsehood."

(*Id.*). Ryan was quoted as follows in the article:

> "I'd love for them to know – not just the two cops – but also the two guys who did the assault that night, an apology would have been nice," Ryan said.
> "It's time to move on, but I never got that. A simple apology can really go a long way sometimes."

(*Id.*). **City of Royal Oak Police Chief Christopher Jahnke was also quoted in that article**:

17

Despite the settlement between the Windsor pair and the municipality, the Royal
Oak police department supports the actions of the two sergeants, police Chief
Christopher Jahnke said Thursday.

**"I can't comment on the settlement itself,"** he said.  "There were a number of
factors involved.

"You had a number of individuals beating someone to near death in this incident.
The victim had gone into a coma and the actions of the officers saved his life.
The sergeants broke up the fight and stopped the bus from leaving.  One of the
individuals in this case was encouraging the bus to leave.

"I strongly support what the officers did in this case."

Asked if he was upset that the city agreed to a **financial settlement, Jahnke said
he could not comment.**

"We have strongly supported sergeants Gale and Warner throughout this incident
and strongly believe because they got involved they stopped an individual from
potentially being killed."

(*Id.*).

An August 20, 2009 article about this case, written by **Paul Egan**, appeared in the Detroit

News, stating that the case had settled.  (Joint Ex. 2, Docket Entry No. 194-5).  **Chief Jahnke**

**was not quoted in the Detroit News article written by Paul Egan**.  The article stated that

"[t]he terms of the agreement were not disclosed Wednesday.  But the city agreed to pay a six-

figure settlement, according to one person familiar with the case."  (*Id.*).  The article further

stated that "pressure on the defendants to settle the case racheted up Thursday when the officers'

first witness, Lawrence Gilliken, lent weight to McGuire's claims that Warner threatened him at

the scene to identify the attackers or be charged with the crime himself.  Gilliken, a friend of the

two Royal Oak officers who went to the concert with them aboard Warner's recreational vehicle

and was alongside them when they rushed to the scene of the fight, testified that on the drive

home Warner admitted telling someone on the bus: 'You could be (an) accomplice if you don't

tell me who did it.'  Also, 'I didn't believe I could identify the individuals, so I was impressed

that they could' Gilliken testified of Warner and Gale."  (*Id.*)

18

Another article, written by **Dave Battagello**, appeared in the **Windsor Star** on August 21, 2009, which was nearly identical to his August 20, 2009 article that had appeared in the Windsor Star.  (Joint Ex. 3, Docket Entry No. 194-7).  That article also contained the same comments from Chief Jahnke:

> Despite the settlement between the Windsor pair and the municipality, the Royal Oak police department supports the actions of the two sergeants, **police Chief Christopher Jahnke said Thursday.**[11]
> "I can't comment on the settlement itself," he said.  "There were a number of factors involved.
> "You had a number of individuals beating someone to near death in this incident. The victim had gone into a coma and the actions of the officers saved his life. The sergeants broke up the fight and stopped the bus from leaving.  One of the individuals in this case was encouraging the bus to leave.
> "I strongly support what the officers did in this case."
> Asked if he was upset that the city agreed to a financial settlement, Jahnke said he could not comment.
> "We have strongly supported sergeants Gale and Warner throughout this incident and strongly believe because they got involved they stopped an individual from potentially being killed."

(Jt. Ex. 3, Docket Entry No. 194-7) (emphasis added).

Neither Mr. Robinson nor Ms. Miller disclosed the amount of the settlement, or that it was six figures, to anyone.  (11/12/09 Hrg. Tr. at 70 & 85).

Mr. Ryan testified at the evidentiary hearing on November 12, 2009, and acknowledged that he was accurately quoted in the above newspaper articles.  (11/12/09 Hrg. Tr. at 34).  Mr. Ryan did not disclose to anyone the amount of the settlement.  (11/12/09 Hrg. Tr. at 21).  Mr. McGuire was not present when Mr. Ryan spoke with the press.  (11/12/09 Hrg. Tr. at 44-45). Mr. Ryan testified that his discussions with the Windsor Star took place after the Detroit News article had been published.  (*Id*. at 48, lines 17-20).  Mr. Ryan did not testify as to when Chief

---

[11]August 20, 2009, was a Thursday.

19

Jahnke spoke with Dave Battagello of the Windsor Star.  (*Id.*).

Mr. Gillam testified that he spoke with Chief Jahnke on August 20, 2009, and that Chief
Jahnke had indicated that he was going to call reporter **Paul Egan** but that he had not yet done
so.  (11/13/09 Hrg. Tr. at 12-13 & 18).  Mr. Gillam testified that the **Detroit News article** had
already been published at this time.  (*Id.*).  Mr. Gillam did not testify as to what time the August
20, 2009 **Windsor Star** article by **Dave Battagello** (i.e., the article that quoted Chief Jahnke)
was published, nor did he testify as to what time Chief Jahnke made his comments to Dave
Battagello on August 20, 2009.

In any event, Mr. Gillam testified that he told Chief Jahnke that Chief Jahnke could not
disclose[12] the terms of the settlement to Mr. Egan.  (11/13/09 Hrg. Tr. at 14).  Mr. Gillam,
attorney for the City of Royal Oak and a signatory to the Agreement, **did not** tell Royal Oak
Police Chief Jahnke not to speak to Mr. Egan or to restrict his comments to saying "the case has
been resolved."[13]

At the evidentiary hearing on November 12, 2009, Mr. Gillam acknowledged that if the
written agreement prohibited the parties and their representatives from stating anything about the
case other than "the case has resolved," that Chief Jahnke's comments made on August 20, 2009,

---

[12]Presumably, Chief Jahnke was aware of the terms of the settlement at that time.

[13]The Court notes that Defense Counsel asserts that Chief Jahnke's statements to the
Windsor Star were made only after Mr. Ryan and/or Mr. Robinson's statements were published
and therefore the settlement agreement was void at that time.  **There is no credible evidence to
support that assertion**.  During closing remarks, Mr. Seward characterized Mr. Ryan's
testimony as supporting his assertion.  Mr. Ryan, however, **did not** testify as to when **Chief
Jahnke** spoke to Dave Battagello.  (11/12/09 Hearing Tr. at 48 lines 17-20).  Defendants did not
call Chief Jahnke as a witness and there is no evidence before this Court as to what time Chief
Jahnke spoke with Dave Battagello of the Windsor Star on August 20, 2009.

to the Windsor Star would have been outside the scope of the Agreement. (11/12/09 Hrg. Tr. at 175).

It is undisputed that Mr. Ryan and Mr. McGuire have not been paid the settlement proceeds.  (11/12/09 Hrg. Tr. at 23 & 127).

CONCLUSIONS OF LAW

It is well established that courts retain the inherent power to enforce agreements entered into in settlement of litigation pending before them. *Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368, 1371 (6th Cir. 1976).  In fact, a district court has the inherent power to enforce an agreement entered into in settlement of pending litigation even if that agreement has not been reduced to writing. *Bowater N.Am. Corp. v. Murray Machinery*, 773 F.2d 71, 77 (6th Cir. 1985).

Before enforcing a settlement, a district court must conclude that agreement has been reached on all material terms. *Brock v. Scheuner Corp.*, 841 F.2d 151, 154 (6th Cir. 1988).  "The court must enforce the settlement as agreed to by the parties and is not permitted to alter the terms of the agreement." *Brock*, 841 F.2d at 154.

"A settlement agreement, like any other contractual arrangement, depends upon objective, not subjective, manifestations of intent." *Bosley v. 21 WFMJ Television, Inc.*, 245 Fed.Appx. 445 (6th Cir. 2007) (citing *Therma-Scan, Inc.*, 217 F.3d at 420).

1.  <u>On August 19, 2009, The Parties Reached Agreement As To All Material Terms Of A Settlement Agreement Resolving This Action.</u>

There is considerable evidence in the record to establish that the parties reached an agreement as to the material terms of a settlement agreement resolving this case on August 19, 2009.

21

In *Re/Max International, Inc.*, the Sixth Circuit found that the objective acts of the parties reflected that the parties had reached a settlement agreement where, in the first few days after the settlement was reached, the defendant communicated its belief that a settlement had been reached in a newsletter to its employees. *Re/Max International, Inc.*, 271 F.3d at 646.

In *Graley v. Yellow Freight System, Inc.*, 2000 WL 799779 (6th Cir. 2000), the Sixth Circuit affirmed the district court's granting of the defendant's  motion to enforce settlement agreement after the parties had represented to the court, before a hearing, that they had reached an oral settlement that would resolve the case. The transcript of the hearing reflected that the parties indicated that a settlement had been reached and that it would resolve the entire case. Neither the plaintiff nor his counsel stated that any of the terms of the settlement agreement still needed negotiation.  In affirming the district court, the Sixth Circuit emphasized that the plaintiff's counsel "did not use any language such as 'tentative,', 'subject to,' or 'contingent upon' further negotiations or ironing out further terms or details." *Id*. at * 6.  Although the parties stated that the settlement agreement would not be put on the record, the plaintiff's counsel never stated that the parties were not doing so because essential terms remained open to negotiation.  The Sixth Circuit concluded that the evidence showed that the "parties intended to be bound, and all that was left was to put the agreement in writing." *Id*.

In *Bosley*, the parties filed a "Notice of Settlement" a few days before trial was to begin, notifying the court that there was no need to impanel a jury because the parties had "effectively reached a settlement." *Bosely, supra*, at 451.  Thereafter, plaintiffs filed a motion seeking enforcement of the parties' settlement agreement, which was granted by the district court.

The Sixth Circuit affirmed, rejecting defendants' characterization of the agreement as no

22

more than "preliminary negotiations."  In doing so, it explained that:

> Defendants seem to assume that because they would have preferred that the
> agreement contain terms different from those agreed upon by [counsel for the
> parties], the agreement must necessarily be incomplete, and as a consequence,
> there was no meeting of the minds.  Just as the district court observed, however,
> the objective acts of the parties do not support defendants' position.  *See Re/Max*,
> 271 F.3d at 646 (noting that even though the parties had not yet formalized their
> agreement in writing, their "objective acts . . . reflect[ed] that an agreement had
> been reached.").

*Id*. at 450-51.  The court noted that the "Notice of Settlement" filed by the parties "did not state

that the parties were *close* to settlement or that talks were *on the verge* of producing an

agreement.  Rather, the defendants themselves stated that the agreement had effectively been

reached and that the process of drafting documents had begun."  *Id*.  In affirming the district

court's ruling that an agreement resolving the case had been reached, the court explained that:

> By all appearances, the parties operated as if their dispute had been resolved.
> Defendants point to nothing in the record – beyond their own undisclosed
> subjective intent – that would call the district court's finding of an agreement into
> question, much less support a finding of clear error.

*Id*. at 451.

Like *Re/Max*, *Graley* and *Bosley*, the parties' objective acts establish that the parties

reached a settlement agreement on August 19, 2009, resolving this case.

First, the parties **signed a written agreement memorializing the material terms of the**

**agreement.**  While the written agreement references that a subsequent written agreement would

be executed by the parties, the agreement does not indicate that the settlement is "tentative" or

contingent on the negotiation of any additional material terms.

Counsel for Defendants then affirmatively represented to this Court, on the record, that

the case had been resolved because the parties had reached a settlement and that the terms of the

23

settlement were contained in a written agreement that had been signed by all the appropriate

parties:

| | |
|---|---|
| THE COURT: | Okay. There's been discussion starting last Friday regarding **resolution of this case.** The discussions continued yesterday and culminated with what I understand is a **resolution** this morning at about 11:00, five to eleven a.m.; is that correct? |
| MR. ROBINSON: | Correct, Your Honor. |
| MR. SEWARD: | Good morning, Your Honor. **Joseph Seward on behalf of Doug Warner and Barry Gale; the answer is yes**. |
| THE COURT: | Okay. Very good. All right. **And the terms of that settlement are contained in an agreement; is that correct?** |
| MR. SEWARD: | **That's correct**. |
| THE COURT: | Has the agreement been executed by everybody? |
| MR. SEWARD: | It is in the process. |
| (Brief pause in the proceedings) | |
| MR. SEWARD: | **I will represent to the Court that it contains the original signatures of all.** |

(Pls.' Ex. 5, Docket Entry No. 216). Each of the parties that signed the written agreement also

stated, on the record, that they had read the written agreement and agreed to its terms. That

colloquy further reflected that the settlement agreement would resolve this case. (*Id*.). Notably,

neither Defense Counsel nor any of the individuals who signed the agreement gave any

indication whatsoever that the settlement was "tentative" or contingent on the negotiation of any

additional material terms.

Accordingly, before the jury was discharged, an Order of Dismissal was entered. That

Order of Dismissal, approved by both parties as to form and substance, was issued on August 19,

2009, and states:

> The parties having placed a **settlement of this action** on the record on this date, IT IS ORDERED that this action is hereby DISMISSED WITHOUT PREJUDICE.
> IT IS SO ORDERED.

(Pls.' Ex. 4, Docket Entry No. 193) (emphasis added).  The only reason that the dismissal was made without prejudice was because Plaintiffs' Counsel had indicated that he would not agree to dismiss the case with prejudice until his clients had actually received payment under the settlement agreement.

**Thus, "[b]y all appearances, the parties operated as if their dispute had been resolved."**  *Bosley, supra*, at 451.

In addition, like the situation seen in *Re/Max International, Inc*., the parties' objective acts **after** August 19, 2009, also reflect that the parties had reached a settlement agreement resolving this action on August 19, 2009.  For example, on Thursday August 20, 2009, Royal Oak Police Chief Christopher Jahnke made statements to the press acknowledging that **this case had settled**.  (Pls.' Ex. 6, Docket Entry No. 194-6).

Defendants also continued to affirmatively represent to this Court, in various submissions filed after August 19, 2009, that the parties had entered into a settlement agreement resolving this case.  For example, Defendants' Rule 60(b) Motion asserted that "[o]n August 19, 2009, before the close of Defendants' proofs, the parties entered into a joint settlement agreement, settling the claims of both Plaintiffs on specific terms, including an agreement that the terms of the settlement would remain confidential."  (Docket Entry No. 194 at 1).

At the evidentiary hearing on November 12, 2009, Mr. Duffy candidly testified that on August 19, 2009, there was an agreement to resolve this case:

> Q.    And there was an agreement – at least there was an agreement to resolve this case?
> A.    Correct.
> . . . .
> Q.    The case was settled on the 19th and the release was to come later?
> A.    That's correct.

25

(11/12/09 Hearing Tr. at 160).

Accordingly, the Court concludes that the evidence overwhelmingly establishes that on August 19, 2009, the parties agreed on the essential terms of a settlement agreement to resolve this case. All that remained was to sort out the non-material details and execute a release agreement containing these same material terms. *Re/Max International, Inc.*, 271 F.3d at 641.

2.      <u>The Material Terms Of The Parties' Settlement Agreement:</u>

"The court must enforce the settlement as agreed to by the parties and is not permitted to alter the terms of the agreement." *Brock v. Scheuner Corp.*, 841 F.2d 151, 154 (6th Cir. 1988).

"The intent of the parties when entering a settlement agreement is an issue of fact to be decided by the district court." *Henley v. Cuyahoga County Board of Mental Retardation and Developmental Disabilities,* 141 Fed.Appx. 437,443 (6th Cir. 2005)(citing *Brown v. County of Genesee*, 872 F.2d 169, 174 (6th Cir. 1989)). "A settlement agreement, like any other contractual arrangement, depends upon objective, not subjective, manifestations of intent." *Bosley v. 21 WFMJ Television, Inc.*, 245 Fed.Appx. 445 (6th Cir. 2007) (citing *Therma-Scan, Inc.*, 217 F.3d at 420).

As stated above, the evidence establishes that the parties had a meeting of the minds on August 19, 2009, and reached agreement as to the material terms of a settlement agreement resolving this case. The parties agreed to the following material terms on August 19, 2009:

> 1)      Payment of a specified amount ($700,000.00 total, $350,000.00 to each Plaintiff) to Plaintiffs McGuire and Ryan by Defendant Gale, Defendant Warner, the City of Royal Oak, and the MMRMA;
>
> 2)      The signatories to the August 19, 2009 agreement and their representatives shall keep the total amount of the settlement, and the amount to be paid to each Plaintiff, confidential;

26

3)      If asked about the settlement amount, the parties to the agreement and their representatives may state that the case was resolved, but may not make the specific statement that the "case was resolved in Plaintiffs' favor" or disclose the amount of the settlement.

4)      Plaintiffs release all claims against Defendants Gale and Warner that were asserted in this action; and

5)      Following execution of the August 19, 2009 agreement, the parties would execute a release agreement, which would merely set forth these same material terms and release Defendants Gale and Warner from liability.

The Court notes that Defendants assert that the confidentiality provision that the parties agreed to was very broad and included that the parties could not make any comments about any aspect of this case other than to state that the case has been resolved. The Court finds that position is not supported by **any credible evidence**. Defense Counsel did not request, and Plaintiffs did not agree to, such a broad confidentiality provision. The Court further notes that at the November 12, 2009 evidentiary hearing, Mr. Seward testified that during negotiations with Plaintiffs' Counsel he insisted that there be no "disparaging comments" and that he said to Mr. Robinson, words to the effect that Defendants "wanted to buy his clients' silence." As stated *supra,* **the Court finds that this testimony is not credible.**

Rather, the credible evidence in this case establishes that the parties agreed that if asked about the amount of the settlement, the parties to the August 19, 2009 agreement and their representatives could not make the specific statement that the "case resolved in Plaintiffs' favor" or disclose the amount of the settlement. Rather, the parties agreed that, if asked about the **amount of the settlement**, all anyone could say is the "case has been resolved."

In addition to being supported by the credible testimony of Mr. Robinson and Ms. Miller, this conclusion is also supported by the objective actions of Royal Oak Police Chief Christopher

27

Jahnke and City Attorney David Gillam following the settlement.  After the execution of the

settlement agreement, on August 20, 2009, Chief Jahnke, did not comment on the **amount** of the

settlement, but did make several comments to the media about this case and the police

department's support of the actions taken by Defendants Gale.  (Pls.'Ex. 6, Docket Entry 194-6;

Joint Ex. 3, Docket Entry No. 3).

Mr. Gillam testified that he told Chief Jahnke that Chief Jahnke could not disclose the

terms of the settlement to Mr. Egan.  (11/13/09 Hrg. Tr. at 14).  Mr. Gillam, attorney for the City

of Royal Oak and a signatory to the Agreement, did not advise Chief Jahnke not to speak to Mr.

Egan or to restrict his comments to saying "the case has been resolved."[14]

Thus, the actions of Chief Jahnke and Mr. Gillam are consistent with the parties'

agreement that if asked about the amount of the settlement, the parties to the agreement and/or

their representatives could not disclose the amount of the settlement but were not prohibited from

discussing or commenting about other aspects of the case.

In sum, Defendants negotiated the settlement in this case through experienced counsel

who had the opportunity to negotiate a broader confidentiality provision, or a non-disparagement

clause, but elected not to do so.  *Bosely, supra*, at 452.  The "fact that Defendants are now

unhappy with the bargain they made" does not entitle them to re-write the agreement.  *Id.*

3.    Neither Plaintiffs Nor Their Counsel Have Breached The Material Terms Of The
       Settlement Agreement:

Defendants assert that Mr. Ryan and/or Mr. Robinson breached the material terms of the

---

[14]Again, the Court notes that Defense Counsel asserts that Chief Jahnke's statements to
the Windsor Star were made only after Mr. Ryan and/or Mr. Robinson's statements were
published and therefore the settlement agreement was void at that time.  **There is no credible
evidence to support that assertion**.

agreement by disclosing to the media (i.e., Mr. Egan or Mr. Battagello) that the City had agreed to a "six figure" settlement in this case.[15] Defendants have failed, however, to present this Court with **any evidence** to establish that Mr. Ryan, Mr. Robinson, or any other person associated with Plaintiffs, made such a disclosure.

Defendants ask this Court to rule that Mr. Ryan and/or Mr. Robinson disclosed the amount of the settlement without any evidence establishing that either made such a disclosure. Defense Counsel urges the Court to make such a finding because Defendants have "eliminated other sources." The Court finds that position unsupportable. The Court must make its ruling based upon **evidence, not speculation.** With the exception of Chief Jahnke,[16] all of the parties or parties' representatives who are alleged to have spoken with the media following the settlement testified at the evidentiary hearing that they did not disclose the amount of the settlement to the media or tell the media that the settlement was "six figures."

Thus, Defendants have not presented this Court with any evidence to establish that Plaintiffs or their counsel disclosed the amount of the settlement agreement to the media.

4.     <u>It Is Undisputed That Plaintiffs Have Not Received The Settlement Proceeds And The Court Concludes That Plaintiffs Are Entitled To Enforcement Of The Settlement Agreement.</u>

As set forth above, the Court concludes that neither Plaintiffs' Counsel nor Plaintiffs

---

[15]Defendants further claim that the confidentiality provision that the parties agreed to was very broad and included that the parties could not make comments about any aspect of the case other than to state that the case has been resolved. As stated above, however, the Court concludes that the parties **did not** agree to such a provision. Accordingly, the Court concludes that neither Mr. Ryan, Mr. Robinson, nor Chief Jahnke breached the settlement agreement by commenting about the case without disclosing the amount of the settlement agreement.

[16]Defendants did not call Chief Jahnke as a witness at the evidentiary hearing.

29

breached the material terms of the settlement agreement.  Nevertheless, it is undisputed that, to date, Plaintiffs have not received the agreed upon settlement proceeds.

5.      The Court Shall Issue Consent Judgments In Order To Enforce The Settlement Agreement.

        "The power of a trial court to enter a judgment enforcing a settlement agreement has its basis in the policy favoring the settlement of disputes and the avoidance of costly and time-consuming litigation."  *Kukla v. National Distillers Prodcs., Co.*, 483 F.2d 619, 621 (6th Cir. 1973).  Such a judgment is in the nature of a consent judgment.  *Id.*; *see also Re/Max International, Inc.*, 271 F.3d at 650 ("Once concluded, a settlement agreement is as binding, conclusive, and final as if it had been incorporated into a judgment.").

        The Court concludes that, in order to enforce the settlement agreed to here, the issuance of consent judgments is warranted.  *Kukla, supra; see also, Limbright v. Hofmeister*, 553 F.Supp.2d 886, 893 (E.D. Mich. 2008) (enforcing settlement agreement by issuing consent judgment) (affirmed in *Limbright v. Hofmeister*, 566 F.3d 672 (6th Cir. 2009)).  Appropriate consent judgments shall be issued forthwith.

6.      The Court Shall Deny Plaintiffs' Unsupported Request For An Award Of Interest And Attorney Fees.

        At the close of the evidentiary hearing, Plaintiffs' Counsel requested that the Court award Plaintiffs interest on the unpaid settlement proceeds, from on August 19, 2009 to the date of any judgment that issues in this action.  Plaintiffs' Counsel also requested that the Court award Plaintiffs their attorney fees and costs incurred in connection with their Motion to Enforce Settlement Agreement.

        Defense Counsel responded that Plaintiffs have provided no authority in support of their

30

request.

The Court agrees that Plaintiffs have not provided this Court with any authority in support of their request.  Accordingly, the Court shall DENY Plaintiffs' request **without prejudice.**

CONCLUSION & ORDER

For the reasons set forth above, IT IS ORDERED that Plaintiffs' Motion to Enforce Settlement Agreement is GRANTED.  IT IS FURTHER ORDERED that the Court shall issue an appropriate CONSENT JUDGMENT forthwith.

IT IS SO ORDERED.

S/Sean F. Cox
Sean F. Cox
United States District Judge

Dated:  November 25, 2009

I hereby certify that a copy of the foregoing document was served upon counsel of record on November 25, 2009, by electronic and/or ordinary mail.

S/Jennifer Hernandez
Case Manager

```
 1                    UNITED STATES DISTRICT COURT
                      EASTERN DISTRICT OF MICHIGAN
 2                         SOUTHERN DIVISION

 3

     TIMOTHY DANIEL MCGUIRE,
 4   et al,

 5                         Plaintiffs,

 6        -v-                           Case No. 05-40185

 7   DOUGLAS WARNER, et al,

 8   _____Defendants./

 9                    EVIDENTIARY HEARING
                 BEFORE HONORABLE SEAN F. COX
10            United States District Court Judge
                      257 U.S. Courthouse
11                     231 West Lafayette
                    Detroit, Michigan 48226
12
                 (Thursday, November 12, 2009)
13
     APPEARANCES:          DAVID ROBINSON, ESQUIRE
14                         RACINE MILLER, ESQUIRE
                           Appearing on behalf of the
15                         Plaintiffs.

16                         JOSEPH SEWARD, ESQUIRE
                           ANN MCCLOREY MCLAUGHLIN, ESQUIRE
17                         Appearing on behalf of the
                           Defendants.
18
     REPORTED BY:          MARIE METCALF, CVR, CM
19                         257 U.S. Courthouse
                           231 W. Lafayette
20                         Detroit, Michigan 48226
                           metcalf_court@msn.com
21

22

23

24

25
```

1                        **TABLE OF CONTENTS**

2

3       **Proceedings – Thursday, November 12, 2009**

4

5       **WITNESS CALLED BY THE PLAINTIFFS:**

6       **JAMES LEE JOSEPH RYAN**

7                Direct Examination by Mr. Robinson ...

8                Cross-Examination by Mr. Seward ......

9                Redirect Examination by Mr. Robinson .

10      **WITNESS CALLED BY THE DEFENDANTS:**              **PAGE:**

11

12      **RACINE M. MILLER**

13               Direct Examination by Mr. Seward .....

14               Cross-Examination by Mr. Robinson ....

15      **DAVID A. ROBINSON**

16               Direct Examination by Mr. Seward .....

17               Cross-Examination by Ms. Miller ......

18               Redirect Examination by Mr. Seward ...

19               Recross-Examiantion by Ms. Miller ....

20      **T. JOSEPH SEWARD**

21               Direct Examination by Ms. Mclaughlin..

22               Cross-Examination by Mr. Robinson ....

23               Redirect Examination by Ms. McLaughlin

24

25

1

2

3        **JAMES E. DUFFY**

4        Direct Examination by Mr. Seward ...............

5        Cross-Examination by Mr. Robinson ..............

6        Redirect Examination by Mr. Seward .............

7

8        **DAVID W. GILLAM**

9        Direct Examination by Mr. Seward ...............

10       Cross-Examination by Mr. Robinson ..............

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                          Detroit, Michigan
 2                          Thursday, November 12, 2009
 3                          At about *:** a.m.
 4                             *   *   *
 5              DEPUTY COURT CLERK:  The United States
 6    District Court for the Eastern District of Michigan is in
 7    session.  The Honorable Sean Cox, United States District
 8    Court Judge presiding.  Please be seated.
 9                   The Court calls case number 05-40185.
10    McGuire and Ryan versus Warner and Gale.
11                   Counsel, your appearances for the record,
12    please.
13                   MR. ROBINSON:  Good morning, Your Honor.
14    David Robinson appearing on behalf of Mr. McGuire and Mr.
15    Ryan.
16                   MS. MILLER:  Good morning, Your Honor.
17    Racine Miller appearing on behalf of Mr. McGuire and Mr.
18    Ryan.
19                   MR. SEWARD:  Good morning, Your Honor.
20    Joe Seward on behalf of the defendants.
21                   MS. MCLAUGHLIN:  Good morning, Your Honor.
22    Anne McClorey McLaughlin appearing for the defendants.
23                   THE COURT:  Good morning, how is everyone
24    doing?
25                   MS. MILLER:  Pretty good.
```

```
 1                      THE COURT:  Good.  Are we ready to
 2          proceed?
 3                      MS. MILLER:  Yes, sir.
 4                      MR. SEWARD:  Yes, sir.
 5                      THE COURT:  I am.  Did you get the order
 6          denying defendants' motion to stay?
 7                      MR. SEWARD:  We got it just now, Your
 8          Honor.
 9                      THE COURT:  Right.  Well, I got your
10          motion to stay about 45 minutes ago, so I did the best I
11          could.  All right?
12                      MS. MILLER:  Thank you.
13                      THE COURT:  Okay.  Just give me a minute.
14                  (Brief pause in proceedings)
15                      THE COURT:  Okay.  Exhibits.  Have you
16          agreed upon a list of exhibits that you want the Court to
17          receive into evidence for this proceeding?
18                      MR. ROBINSON:  We have not discussed
19          those, but we don't object to theirs, Your Honor.
20                      THE COURT:  Any objection to -- you don't
21          have any objection to defense's proposed exhibit list
22          which includes the settlement agreement, the Detroit News
23          articles and articles printed by the Windsor Star.  So I
24          guess Defendants' Exhibit One would be the settlement
25          agreement.  Defendants' Exhibit Two are the articles
```

1          printed by the Detroit News.  And Exhibit Three are

2          articles printed by the Windsor Star; is that correct?

3                          MR. ROBINSON:  Correct.

4                          THE COURT:  All right.  Are you going to

5          move for those to be received?

6                          MR. SEWARD:  Yes, Your Honor.  And we

7          would ask that the settlement agreeement continue to be

8          admitted under seal.  Even though your opinion denying

9          our motion does set forth the -- most of the -- the words

10         of the agreement.  We still --

11                         THE COURT:  You know, we checked it out.

12         There's no order sealing it.  Do you have an order

13         sealing it?

14                         MS. MCLAUGHLIN:  Yes, Your Honor.  There

15         was an ordered entered.

16                         THE COURT:  Can I see that, the order

17         sealing it?

18                         Mr. Robinson, is there an order sealing

19         it?

20                         MR. ROBINSON:  I don't recall that, Your

21         Honor.

22                         MS. MCLAUGHLIN:  Yes, Your Honor.  I don't

23         have the copy of the agreement that has the Court's

24         electronic printing on the top, Your Honor.  But I know

25         that we filed it under seal and we would not have done

1          that without a Court order, because we were waiting for

2          the Court to enter an order to that effect.

3                         THE COURT:  Okay.  Let's take it a step at

4          at a time.  Do you have -- the order to seal just allows

5          it to be -- just allows it to be filed as an exhibit

6          under seal.  It does not -- there's no order that it be

7          sealed for all purposes.  So I'm not going to order it

8          sealed for the purposes of this proceeding.

9                         Okay.  So could you please put the

10         exhibits up at the -- the three exhibits that have been

11         admitted, put them up on the table in front of us where

12         we keep all of our exhibits.

13                        So will these be Joint Exhibits One, Two

14         and Three then?

15                        MR. ROBINSON:  That would be fine, Your

16         Honor.

17                        THE COURT:  Okay.  Great.  We have

18         stickers.

19                        You an sit down.  You don't have to stand.

20                        Okay.  Mr. Robinson, did you review the

21         exhibits that the defense just gave me?

22                        MR. ROBINSON:  I have seen them, Your

23         Honor.  Let me take a moment.

24                        THE COURT:  I'm under the impression you

25         do not want the amounts blacked out.  The exhibit they

7

1         handed to me is not the original.  It's a copy with the

2         amounts blacked out.

3                         MR. ROBINSON:  I would object, Your Honor,

4         to that.

5                         THE COURT:  Okay.  You want the original?

6                         MR. ROBINSON:  I do.

7                         THE COURT:  Okay.  Can I have the original

8         then?

9                         Okay.  You can give Mr. Seward back the

10        blacked-out.

11                        MR. ROBINSON:  Okay.

12                        MR. SEWARD:  Your Honor, just so the

13        record is clear that we object to the unredacted original

14        being admitted into evidence for this hearing.

15                        THE COURT:  And what's the basis of that

16        objection?

17                        MR. SEWARD:  Because when we were here

18        originally, when we put this on the record, the Court

19        indicated and my request that it would be placed under

20        seal.  We relied upon that.  And so far that has not been

21        made public either in any pleading nor in any opinions of

22        the Court that I have read to date.

23                        I have not read the order denying our

24        motion for stay.  So I don't know if that's a true

25        statement.  With that exception we would oppose that

                                                                    8

1       coming into evidence.

2                       THE COURT:  Do you agree that that

3       agreement was executed by the parties on August 19th,

4       which is reflected in Exhibit One?

5                       MR. SEWARD:  Oh, yes.  Absolutely.

6                       THE COURT:  Okay.  Great.

7                       Can I see the exhibits real quick for a

8       minutes here?

9                       Okay.  We have Exhibit One, entitled

10      "Agreement."  Joint Exhibit One, titled "Agreement."

11                      Exhibit Two, article from Paul Egan of the

12      Detroit News, Thursday, August 20th.

13                      And then we have an August 21, 2009

14      article from the Windsor Star.  Okay.

15                      Are there any other joint exhibits that

16      the parties can agree upon that can be received into

17      evidence?

18                      MR. ROBINSON:  Your Honor, if I might take

19      a moment to hand Mr. Seward our package of exhibits to

20      see if he would agree.

21                      THE COURT:  Okay.  Sure.

22                      MR. SEWARD:  Your Honor, I don't know that

23      these need to be admitted into evidence.  What they are

24      are the order of dismissal --

25                      THE COURT:  What about the order of

1          dismissal.  Do you object to that being received into

2          evidence?

3                         MR. SEWARD:  Pardon me?

4                         THE COURT:  Do you object to that being

5          received into evidence?

6                         MR. SEWARD:  No, because I believe it's

7          already part of the Court's records.  I don't know that

8          it has to be introduced separately as an exhibit and

9          that's my response to all of them.  They are already part

10         of the court's records, so the other -- what he has

11         proposed as exhibits are the Court's opinion and order

12         denying our motion to disqualify the Judge.  I don't see

13         how that is relevant to today's proceedings.

14                         The opinion and order granting in part and

15         denying in part plaintiffs' motion to reopen the case, I

16         don't see how that is relevant to these proceedings.  It

17         dictates what the proceedings will be, but it does not

18         need to be an exhibit in this evidentiary hearing.

19                         The order to show cause and appear for

20         status conference and hearing.  Same objection that --

21                         THE COURT:  How about if we receive -- Mr.

22         Seward has a good point.

23                         They are the court record.  How about if

24         we just receive the order of dismissal, which was from

25         the briefs, apparently, may have been part of a

                                                              10

1      discussion on August 19th.  How about if we just receive

2      that into evidence?  Is there any objection as to that

3      thought?

4                     MR. ROBINSON:  That would be fine, Your

5      Honor.

6                     MR. SEWARD:  Again, we would object.  It

7      doesn't -- it's already part of the court's record and it

8      doesn't bear upon the issues that the Court has framed in

9      its opinion setting forth the evidentiary hearing.

10                     THE COURT:  Okay.  I'm going to receive

11     the order of dismissal based upon my review of the

12     briefs, I think it is relevant for this proceeding.

13                     MR. ROBINSON:  Thank you, Your Honor.

14                     THE COURT:  Okay.  We'll make that Exhibit

15     Four; is that okay?

16                     MR. ROBINSON:  Yes, Your Honor.  Thank

17     you.  May I approach?

18                     THE COURT:  Yes.

19                     And what about the transcript.  I know

20     plaintiff has requested the transcript, I believe, of the

21     settlement proceedings on August 19th.

22                     MR. ROBINSON:  That, we did, Your Honor.

23                     THE COURT:  Any objection that?

24                     MR. SEWARD:  Can I see that again just to

25     --

```
 1                     Your Honor, first of all, we would object
 2       to it coming in as evidence -- it's part of the Court's
 3       record.  It's highlighted.  We have an objection to that.
 4                     THE COURT:  How about a clean copy?
 5                     MR. SEWARD:  Well, I still would have an
 6       objection to it coming in.
 7                     THE COURT:  Because?
 8                     MR. SEWARD:  Because it's already part of
 9       the court record.  It's not relevant to --
10                     THE COURT:  I don't think the transcript
11       is part of the court record.
12                     MR. SEWARD:  It is the court record.
13                     THE COURT:  Okay.  Is that your objection?
14                     MR. SEWARD:  And it's also not relevant to
15       the issues framed by this Court for this evidentiary
16       hearing.
17                     THE COURT:  Issues -- I thought you put
18       the --
19                     MR. SEWARD:  Pardon me?
20                     THE COURT:  Put the issues in front of me
21       to decide.  All right.  I'll receive the transcript as
22       Exhibit Five.
23                     MR. ROBINSON:  Five, Your Honor.
24                     THE COURT:  Five.
25                     It is -- the Court finds that this will be
```

1          relevant to the proceedings here today.  And it needs to

2          be a clean copy.

3                          MR. ROBINSON:  It is, Your Honor.  May I

4          approach?

5                          THE COURT:  Sure.

6                          It will be relevant to the proceedings

7          here today.

8                          Okay.  With respect to Exhibit One, at

9          this time I'm going to keep the amounts at this time

10         sealed.  All right.  So I'm going to take back Exhibit --

11         I'll keep the amounts sealed on that exhibit.  But if the

12         amount becomes a material term or an issue, that could

13         reflected in the Court's opinion and order, which will

14         not be sealed.  Okay?  As well as if the Court enters a

15         judgment.  Okay?

16                          MR. ROBINSON:  Thank you, Your Honor.

17                          THE COURT:  All right.  So the next issue

18         I want to deal with before we start with the testimony is

19         apparently a Mr. Kelly subpoenaed Ms. Hernandez for

20         testimony here today on -- at your request, Mr. Seward?

21                          MR. SEWARD:  Yes, Mr. Kelly served both

22         Jennifer Hernandez, the Court's case manager, as well as

23         the Court.

24                          THE COURT:  Okay.  Well, it served the

25         court administrator.  I actually haven't seen the

1       subpoena that was served on the court administrator.  But

2       I already dealt with that issue in opinion and order.

3                    With respect to the service of the court

4       clerk, I looked at your witness list and which you had to

5       file pursuant to court order with the statement of what

6       the individuals are going to testify to.  It states that

7       Ms. Hernandez talked with T. Joseph Seward regarding Mr.

8       Egan of the Detroit News speaking with plaintiffs'

9       contingency -- you mean, who?

10                   MR. SEWARD:  I recall I believe it was the

11      individual plaintiffs, family members.  I am not a

12      hundred percent certain at this point whether it included

13      any of the attorneys.

14                   THE COURT:  Okay.  So the proper testimony

15      would be that she saw plaintiffs -- the proper testimony,

16      she talked with you and said what?

17                   MR. SEWARD:  No, I approached her, Your

18      Honor, and said that I was upset.  I think I may have

19      used a different word to express my upsettedness.  That I

20      wanted to discuss the issue with the Court and asked her

21      to relay that to you.

22                   THE COURT:  Okay.  Any dispute as to that?

23                   MR. ROBINSON:  Your Honor --

24                   THE COURT:  Any dispute -- just listen --

25                   MR. ROBINSON:  No, Your Honor.

14

```
1                          THE COURT:  Okay.  Then why do we need

2            her?

3                          MR. SEWARD:  Because I think it's relevant

4            to show there is a dispute between the parties as to what

5            the material terms of the agreement are.

6                          THE COURT:  How can she testify to that?

7                          MR. SEWARD:  And one of the issues is did

8            we buy their silence.  And we submit that's a material

9            issue.  And when it was brought -- when I saw what was

10           going on, I brought it to her attention and she would be

11           able to testify regarding the fever in which I wanted to

12           talk to the Court to show that their silence was a

13           material issue, a material term of this agreement.  And

14           so we need her to establish --

15                         THE COURT:  Any issue that Mr. Seward was

16           upset when he spoke to Ms. Hernandez?

17                         MR. ROBINSON:  No, Your Honor.  Absolutely

18           not.

19                         MR. SEWARD:  And the reason for being

20           upset is that there was disclosure --

21                         THE COURT:  So you can tell us maybe the

22           reason as to why you were upset.  I don't that she can

23           tell the reason why you were upset.

24                         MR. SEWARD:  That's why she needs to be

25           called as a witness, Your Honor.
```

```
 1                        THE COURT:  At best, I think at best any
 2      testimony would appear right not cumulative and as to any
 3      testimony you may provide and I don't see where it's
 4      relevant.  That's point number one.
 5                        And could we have our clerk hand this
 6      document to Mr. Seward.
 7                        MR. SEWARD:  And this document is --
 8                        THE COURT:  Is that the subpoena that was
 9      served on Ms. Hernandez?
10                        MR. SEWARD:  And the witness fee.
11                        THE COURT:  Right.  And does it comply
12      with Rule 45(b)(1)?
13                        MR. SEWARD:  Excuse me.  It does not?
14                        THE COURT:  I'm asking if it complies with
15      Rule 45(b)(1)?
16                        MR. SEWARD:  What complies with 45 --
17                        THE COURT:  The subpoena.
18                        MR. SEWARD:  I believe it does.
19                        THE COURT:  Okay.  Why don't you look at
20      the check?
21                        MR. SEWARD:  The check is a witness fee
22      for $40.
23                        THE COURT:  To who?
24                        MR. SEWARD:  To the Honorable Sean Cox.
25                        THE COURT:  Is it to Jennifer Hernandez?
```

 1                    MR. SEWARD:  No, it's not, Your Honor.

 2                    THE COURT:  And that's the subpoena that

 3          was served on her.

 4                    MR. SEWARD:  Okay.  Is Court's check --

 5          does the Court's subpoena indicate that it was to

 6          Jennifer Hernandez?

 7                    THE COURT:  That's the subpoena she got.

 8                    MR. SEWARD:  I'm just asking a question,

 9          Your Honor.

10                    THE COURT:  Pardon me?

11                    MR. SEWARD:  I'm just asking a question of

12          whether the subpoena served upon the Court had Jennifer

13          Hernandez's check.

14                    THE COURT:  I told you I haven't seen

15          that.

16                    The second thing is is that if it had, it

17          wasn't -- assuming that it had, it wasn't served on her.

18          The subpoena was not served with a witness fee payable to

19          Jennifer Hernandez.

20                    MR. SEWARD:  Well, without --

21                    THE COURT:  So there seems to be a major

22          problem with your subpoena.

23                    MR. SEWARD:  Well, again, Your Honor, I

24          don't know where the original is of this Court's and to

25          see if there was a check there.  We were informed after

1    the Marshal's escorted Mr. Kelly out of chambers, we were

2    informed by Mr. Weaver, head clerk, that --

3              THE COURT:  But Mr. Seward, that is a

4    subpoena by your process server served on -- served to

5    Jennifer Hernandez, correct?  That's the subpoena, right?

6              MR. SEWARD:  Judge, I'm not disputing

7    that.  All I'm saying is that if there is a check for

8    Jennifer Hernandez to the Court I would submit that that

9    has been proper service.

10             THE COURT:  You're absolutely wrong.

11             MR. SEWARD:  Thank you, Your Honor.

12             THE COURT:  And we probably might want

13   that back in case it becomes an issue.

14             MR. SEWARD:  May I approach?

15             THE COURT:  Sure.

16             MR. SEWARD:  Thank you.

17             THE COURT:  So in any event, Ms. Hernandez

18   was not properly served by the defendant for her

19   appearance here today.

20             Okay.  It would seem to me that the

21   procedure -- and correct me if I'm wrong -- plaintiffs

22   are the ones that wish to enforce the order, so they

23   would go first; is that correct?

24             MR. ROBINSON:  Your Honor, I was --

25             THE COURT:  Or present their evidence

18

```
1          first.  It's up to you two.
2                        MR. ROBINSON:  I was under the impression
3          that it's Mr. Seward that is actually requesting the
4          evidentiary hearing, so --
5                        THE COURT:  Okay.  Mr. Seward, do you want
6          to go first?
7                        MR. SEWARD:  Well, Your Honor, they're the
8          ones who are -- it's our position that they moved to
9          enforce the settlement agreement.  The Court granted an
10         evidentiary hearing.  It's their -- they're the moving
11         party and therefore they should have the burden of moving
12         forward in persuasion.
13                        THE COURT:  Okay.  Let's take a break.
14                        (Brief pause in proceedings)
15                        THE COURT:  All right.  Mr. Robinson, you
16         wish to enforce this agreement, so you may proceed.
17                        MR. ROBINSON:  Okay.  Your Honor, I'll do
18         that.  I'm going to call Mr. Ryan, Your Honor.
19                        THE COURT:  Sure.  Mr. Ryan, could you
20         give your full name to our court reporter, please?
21                        THE WITNESS:  James Lee Joseph Ryan.
22         JAMES LEE JOSEPH RYAN, PLAINTIFF'S WITNESS, SWORN
23                        THE COURT:  And just give me a minute
24         before we start.
25                        (Brief pause in proceedings)
```

1                    THE COURT:  Okay.  You may proceed.

2                    MR. ROBINSON:  Thank you, Your Honor.

3                          **DIRECT EXAMINATION**

4     BY MR. ROBINSON:

5     Q    Mr. Ryan, would you state your name for the record.

6     A    James Lee Joseph Ryan.

7     Q    And Mr. Ryan were you present on August the 19th,

8     2009 during your trial against Messrs. -- I apologize.

9                    THE COURT:  Mr. Warner and Mr. --

10    BY MR. ROBINSON:

11    Q    -- Warner and Mr. Gale?

12    A    Yes, I was.

13    Q    Okay.  And at some point in time Mr. Ryan, did it

14    come to your attention that both Mr. Gale and Mr. Ryan --

15    I mean, Mr. Warner through their counsel, wish to resolve

16    the case with you?

17    A    Yes.

18    Q    Okay.  And did you have certain discussions with

19    your attorneys in that regard?

20    A    Yes.

21    Q    And did you eventually sign an agreement with regard

22    to settling the case?

23    A    Yes, I did.

24    Q    Okay.  Do you have an understanding as to the terms

25    that were laid out in the one-page document that you

1    signed?

2    A    An understanding of what was in the document that I

3    signed, yeah.

4    Q    Did you understand that there was something in the

5    document that was to be held confidential?

6    A    Yes, there was.

7    Q    What was that?

8    A    That was the amount of the settlement.

9    Q    At any point in time after August 19th, 2009 did you

10   ever reveal to anybody the amount of the settlement?

11   A    No, I did not.

12   Q    Okay.  Did you have a conversation with either the

13   Windsor Star or the Detroit Free Press -- Detroit News,

14   rather, with regard to settlement of this case?

15   A    In what regards as far as the settlement is

16   concerned?

17   Q    Did you reveal anything about the settlement amount,

18   number one?

19   A    No.

20   Q    Okay.  Did you reveal -- what do you recall

21   indicating to a newspaper in this regard?

22   A    How I felt about it.

23   Q    And did you believe that to have been a violation of

24   any agreement that you signed earlier on August the 19th,

25   2009?

21

```
1                       MR. SEWARD:  You know Your Honor --
2                       THE WITNESS:  No.
3                       MR. SEWARD:  I object to that, because
4      it's irrelevant as to what his belief is.
5                       THE COURT:  Overruled.
6      BY MR. ROBINSON:
7      Q     And did you discuss with your family anything with
8      regard to their responsibility to keep the amount of the
9      settlement confidential?  Or did you --
10     A     I didn't talk to anybody about specifically.
11     Q     Did anyone come to you in your family or have Mr.
12     McGuire indicated to you anything about having revealed
13     to anybody the amount of the settlement?
14     A     No.
15     Q     Okay.  Do you feel, Mr. Ryan, that you have abided
16     by the terms --
17                      MR. SEWARD:  Same objection, Your Honor.
18     What he feels is not relevant.
19                      THE COURT:  Overruled.
20     BY MR. ROBINSON:
21     Q     Do you feel, Mr. Ryan, that you have abided by the
22     terms of the agreement that was signed on August 19th,
23     2009?
24     A     Yes, I feel that I have.
25     Q     Okay.  Have you received any other document from Mr.
```

1       Seward or Mr. Warner or Mr. Gale relative to the

2       expression of any greater terms beyond those that were

3       contained in the August 19th, 2009 piece of paper?

4       A     No.

5       Q     Have you received Mr. Ryan, any amount of money that

6       was consistent with the agreement that you entered into

7       with both Mr. Warner and Mr. Gale relative to the

8       settlement of the case?

9       A     No, I have not.

10                  MR. ROBINSON:  Okay.  I don't have

11      anything else, Your Honor.

12                  THE COURT:  Okay.  Mr. Seward.

13                  MR. SEWARD:  Thank you.

14                        **CROSS-EXAMINATION**

15      BY MR. SEWARD:

16      Q     The exhibits are --

17                  THE COURT:  Just so I'm clear as we

18      proceed, there's no allegation -- you haven't made any

19      allegation anywhere that I saw, and please correct me if

20      I'm wrong, that Mr. McGuire spoke to the press.

21                  MR. SEWARD:  We've asked him to be here to

22      find out if he has.

23                  THE COURT:  Could you answer my question?

24                  MR. SEWARD:  Have we made that allegation?

25      Not specifically.

1              THE COURT:  Okay.  Very good.  And have

2     you made any allegation that Mr. McGuire disclosed the

3     amount of the settlement to anyone?

4              MR. SEWARD:  Have I made that allegation?

5     No.  We were going to make that inquiry.

6              THE COURT:  Okay.  You haven't made that

7     allegation.  You have no information as we start this

8     proceeding; is that correct?

9              MR. SEWARD:  And that's why we're going to

10    make that inquiry, Your Honor.

11             THE COURT:  Just so the record is clear.

12    Okay.  Go ahead.

13           MR. SEWARD:  The exhibits --

14             THE COURT:  They should all be right on

15    the table.

16             MR. SEWARD:  I --

17             THE COURT:  Okay.  One, two, three is

18    here.  Can I have a copy of one?  Anybody have a copy of

19    one?  There's one, two, three.

20             And then --

21             MR. SEWARD:  We have the redacted copy of

22    one, Your Honor.  We have the redacted copy of one.

23             THE COURT:  Sure.  Thank you.

24    BY MR. SEWARD:

25    Q    Mr. Ryan, do you --

```
 1                      THE COURT:  Do you have all the exhibits
 2      now?
 3                      MR. SEWARD:  Pardon me?
 4                      THE COURT:  Do you have all the exhibits?
 5      They're supposed to be all placed on the exhibit table
 6      here.
 7                      MR. SEWARD:  I have one, two and three,
 8      Your Honor.  I do not have four, which I believe is the
 9      transcript.
10                      THE COURT:  And five is the order, Mr.
11      Robinson?
12                      MR. SEWARD:  We gave plaintiffs' counsel
13      our copy of the transcript, because that was not marked
14      up.
15                      THE COURT:  Okay.
16                      MR. ROBINSON:  I handed it to the Court,
17      Your Honor.  I put a sticker on it.
18                      THE COURT:  So that's defendants',
19      Defendants' One -- sorry, that's Exhibit Four.  Okay.
20      One, two and three are joint and then defendants'
21      admitted exhibit four, which defendants moved in, Exhibit
22      Five, which defendants moved.
23                      MR. SEWARD:  No, I believe plaintiff.
24                      THE COURT:  I apologize.  You're right.
25      Plaintiff.
```

 1                    MR. ROBINSON:  Your Honor, and I -- for

 2          the record, I mismarked four and five, because I put a

 3          joint sticker on it.

 4                    THE COURT:  They're not joint, so why

 5          don't we just mark it four and five.  They're not joint.

 6          So let's take care of that now.

 7                    MR. ROBINSON:  Again, Your Honor, I --

 8          pursuant to the --

 9                    MR. SEWARD:  Okay.

10                    THE COURT:  Just stay with me.  One, two

11          and three are joint.  Okay.  The transcript, as I

12          understand, is four; is that correct?

13                    MS. MILLER:  I thought the order was four.

14                    THE COURT:  Okay.  The order is four.

15                    MS. MILLER:  Yeah, the order's four.

16                    THE COURT:  Order is four and the

17          transcript is five.  Okay.

18                    MR. ROBINSON:  Now, for the record, Your

19          Honor, I've marked order of dismissal plaintiffs' four,

20          transcript plaintiffs' five.  And I'm handing them to Mr.

21          Seward.

22                    THE COURT:  And that's a clean copy of the

23          transcript, right?

24                    MR. ROBINSON:  It is, Your Honor.

25                    THE COURT:  No highlights?

```
 1                         MR. ROBINSON:  No highlights.
 2                         THE COURT:  Okay.  Great.
 3                         MR. SEWARD:  All right.
 4          BY MR. SEWARD:
 5          Q   Mr. Ryan, I'm going to show you what's been marked
 6          Exhibit One --
 7                         MR. SEWARD:  Is it all right if I
 8          approach, Your Honor?
 9                         THE COURT:  Sure.
10          BY MR. SEWARD:
11          Q   You've seen that document before, haven't you?
12          A   Yes, I have.
13          Q   And it's signed by you?
14          A   Yes, it is.
15          Q   And it is -- it was read by you, correct?
16          A   That's correct.
17          Q   Okay.  And you read it before you signed it?
18          A   Yes.
19          Q   And you understood it, correct?
20          A   That's correct.
21          Q   Okay.  Now, in the agreement that is there, -- let's
22          just -- may I have that back?  Because the Court has our
23          copy that's redacted.
24                         The second sentence of the agreement says.
25                         "No party or party's representative
```

1                              will disclose to any person the terms

2                              of the settlement,"

3        correct?

4        A     If you read that, that's correct.

5        Q     Okay.  And it also goes on to say that if anyone's

6        talked to a relative the party was instructed to tell

7        that relative not to discuss the agreement -- the

8        settlement; is that correct?

9        A     That's correct.

10       Q     Okay.  And then the second paragraph, the next

11       paragraph, there's a statement there.  Can you read that

12       second paragraph for me?

13       A

14                              "If asked, all anyone can say is the

15                              case has been resolved.  The terms

16                              will not be put on the record.

17                              Instead, the parties and

18                              representatives will sign an

19                              agreement which will set forth the

20                              specific terms of a confidential

21                              agreement."

22       Q     Okay.  So the first sentence says -- of the second

23       paragraph.

24                              "If asked, all anyone can say is the

25                              case is resolved,"

1      is that correct?

2      A     That's correct.

3      Q     Okay.  Sometime -- I'm going to show you -- well,

4      Exhibit Two is a report from the Detroit Free Press -- or

5      the Detroit News.  And in there, it's quoted as you

6      making certain statements.  Have you read this agreement?

7      A     The agreement?

8      Q     Or the article?

9      A     I had read it.

10     Q     Okay.  And they attribute certain language to

11     yourself, correct?

12     A     What do you mean exactly by --

13     Q     Okay.  We'll go to the Windsor Star.  Let me ask you

14     this.  Let's back up to the -- to the Egan.

15                     Did you tell Mr. Egan that the -- words to

16     the effect you couldn't say the amount, but that it was a

17     six-figure settlement?

18     A     No.

19     Q     Do you know who did?

20     A     No, I don't.

21     Q     Have you ever been told who said that?

22     A     Nope.

23     Q     Okay.  Did you tell Mr. Egan words to the effect

24     that although the city and officers admitted no wrong

25     doing, the fact that they were willing to settle tells

                                                              29

1      me, yourself, that they know they wronged us?

2      A    Without having the article in front of me, I don't

3      know if that's exactly.

4      Q    Well, that's why I ask if -- okay.  I'll show you.

5      It's Joint Number Two.  It's the last sentence.

6      A    Thank you.

7                    I said words to that effect.

8      Q    Okay.  Now, would you agree with me that the

9      agreement number one says that if asked, all anyone could

10     say is the case resolved, correct?

11     A    Correct.

12     Q    Would you agree with me that your words or words to

13     the effect that "they were willing to settle tells me

14     they know they wronged us" is not consistent with that

15     agreement?  That is, you said more than "the case has

16     been resolved," isn't that a true statement?

17     A    I'm not speaking about the settlement itself.

18     Q    Sir, sir.  Isn't it true that when you were

19     interviewed by Mr. Egan you did not limit your words to

20     "the case has been resolved"?  Is that a true statement?

21     A    But am I limited to only speaking -- I mean, if I

22     speak to the media, am I limited to only saying that,

23     even if I'm not speaking about the settlement itself?

24     Q    Sir, isn't it -- well, hold on.

25                    You were asked questions about the

30

1    resolution of the matter, correct?

2              MR. ROBINSON:  Object to that, Your Honor.

3    That is without foundation.

4              MR. SEWARD:  This is the foundational

5    question.

6              MR. ROBINSON:  He's not -- he's got no

7    foundation.

8              THE COURT:  He can ask the question --

9    answer the question.

10             THE WITNESS:  I'm sorry.  Can you repeat

11   the question?

12   BY MR. SEWARD:

13   Q    You were asked questions by Mr. Egan about the

14   resolution of the matter; isn't that a true statement?

15   A    He may have asked me questions to that effect.

16   Q    Okay.  And in fact, you've already testified that

17   some of the words that came out, if the article is not a

18   correct quote, it was words to the effect "the fact that

19   they were willing to settle."  You said those words,

20   correct?

21   A    I said those words.

22   Q    Okay.  The words "they" refer to Officer Gale,

23   Officer Warner and the City of Royal Oak, correct?

24   A    I mean, I guess it spoke about the whole entirety of

25   the situation in its entirety.

1        Q    Sir, you have to answer the question that I'm

2    asking, please.

3                     The word "they're" t-h-e-y apostrophe r-e,

4    is referencing the Royal Oak side of the case; isn't that

5    true?

6        A    That's correct.

7        Q    Okay.  And then you used the words "willing to

8    settle."  So you're talking about the settlement,

9    correct?

10       A    That's correct.

11       Q    Okay.  And then you went on to say, "The fact that

12   the Royal Oak defendant settled the case tells you, Mr.

13   Ryan, that they -- and the word "they" refers to the

14   Royal Oak defendants, correct?

15       A    Yeah, that's correct.

16       Q    That "they" the Royal Oak defendants know they,

17   again that "they" refers to the Royal Oak defendants,

18   correct?

19       A    Correct.

20       Q    Wronged us, and the "us" refers to you and Mr.

21   McGuire; is that a true statement?

22       A    Yes.

23       Q    So if we take out the pronouns and put in what

24   you're is, the fact that the Royal Oak defendants were

25   willing to settle the case, tells Mr. Ryan the Royal Oak

1      defendants know the Royal Oak defendants wronged Jim Ryan

2      and Mr. McGuire, correct?

3      A    That's correct.

4      Q    Now, I want to draw your attention back to the

5      Tuesday, I believe it's August 18th, 2009; do you

6      remember that day?

7      A    Vaguely.

8      Q    Sure.  One of the things is there we had some

9      discussion by Danny Threlfall who identified you as being

10     a perpetrator; do you remember that?

11     A    I recall.

12     Q    Okay.  And then at the end of the day, the Court had

13     some discussions about trying to resolve this case; do

14     you remember that?

15     A    I'm not sure what you're referring to.

16     Q    Okay.  At the end of the day when the jury was gone

17     -- I'm not sure if it happened immediately after trial

18     for that day, but sometime before we left that afternoon,

19     there was some discussion on the record about plaintiffs'

20     demand, the defendants' offers and so forth.  Do you

21     recall that?

22     A    I recall many discussions.

23     Q    Okay.  And do you recall that the only persons in

24     the courtroom were the attorneys and the parties?  There

25     were no witnesses, no family members, no media; do you

1    recall that?

2    A    I guess I very vaguely.

3    Q    Do you recall at the end of the hearing when the

4    Judge put in what defendants had offered, that indicated

5    to the Court that I requested that that transcript be

6    sealed and the Court said he would; do you recall that?

7    A    Without reviewing a transcript itself, I don't.  I

8    apologize.

9    Q    Oh, okay.

10                  You had some discussions with the Windsor

11   Star, correct?

12   A    Correct.

13   Q    Have you read their article?

14   A    I have read it, yes.

15   Q    Okay.  Did they accurately quote you?

16   A    No, they may have.

17   Q    I will show you Exhibit Number Three, and go ahead

18   and take a look at it and see if they accurately quoted

19   you.

20   A    I don't recall my conversation verbatim with -- I

21   know topics we spoke about, though.

22   Q    Okay.  Certainly, the Windsor Star reporter asked

23   you questions about the resolution of the case, correct?

24   A    I'm sorry.  I'm just going to look through this some

25   more.

34

1              Unless I'm not -- I don't see anything
2       about the resolution of the case in here.
3       Q    Okay.  I don't know if that was my question.
4              I asked you if they accurately quoted you.
5              THE COURT:  I don't think that was the
6       question you asked him.
7              THE WITNESS:  No, not --
8              THE COURT:  You asked him that earlier,
9       but not -- that was not the question that was just
10      presented to him.
11             MR. SEWARD:  Okay.
12      BY MR. SEWARD:
13      Q    Well, did they accurately quote you in the article?
14      A    I mean, without recalling what I had said verbatim
15      exactly the conversation I had with him, the topics I
16      remember and it's quite possible that they did.
17      Q    Now, in the middle of page two, it talks about how
18      you would liked to have gotten an apology; do you see
19      there?
20      A    Yes.
21      Q    Okay.  Now, that came up in discussing the
22      resolution of the case, didn't it?
23      A    I believe -- that doesn't actually dictate any
24      resolution.
25      Q    Sir, please listen to the question that I'm asking.

                                                              35

1           MR. ROBINSON:  Your Honor, I think he

2     answered the question, Your Honor, and now he's arguing

3     with the witness.

4           MR. SEWARD:  I move to strike his answer

5     as unresponsive to the question that I asked.

6           THE COURT:  I'm not going to find it

7     unresponsive.

8           MR. SEWARD:  Okay.

9     BY MR. SEWARD:

10    Q    Sir, the discussion about you wanting an apology --

11          THE COURT:  The premise of the question is

12    that he had a discussion with the reporter regarding the

13    resolution of the case.  And I don't know that he has

14    told you that he had a discussion with the reporter

15    regarding the resolution, what in his mind was the

16    resolution of the case.

17    BY MR. SEWARD:

18    Q    The resolution of the case means that the trial did

19    not go forward, correct?

20    A    That's correct.

21    Q    Okay.  And that came about because of an agreement

22    signed by many persons including yourself, correct?

23    A    That's correct.

24    Q    Okay.  So when I talk about resolution, that's what

25    I'm referring to, the fact that the trial ended because

1    the party signed that preliminary agreement; is that okay

2    with you?

3    A    Yes.

4    Q    Okay.  And so in -- you had discussions with the

5    Windsor Star reporter, correct?

6    A    I did.

7    Q    Okay.  And the discussions that generated this quote

8    about wishing you had an apology was in response to some

9    discussions, questions, answers talking about --

10              THE COURT:  Mr. Seward, just so I can

11   understand pursuant to Rule 611, is it now your position

12   that Exhibit One is a preliminary agreement?

13              MR. SEWARD:  Oh, absolutely, Your Honor.

14   If the Court looks at --

15              THE COURT:  So it's changed again?

16              MR. SEWARD:  No, it's never changed, Your

17   Honor.

18              THE COURT:  Okay.  Fine.  Go ahead.

19              MR. SEWARD:  Okay.

20   BY MR. SEWARD:

21   Q    Now, the discussions that generated the quote came

22   about when there was talk, conversation about how the

23   case ultimately settled --

24              THE COURT:  You know what, Mr. Seward,

25   this is a hearing for placement of an order.  This is not

1      cross-examination during the course of a trial.  Just cut

2      to the chase and ask the questions that are relevant to

3      the issues in front of us, okay?

4                      MR. SEWARD:  I'm trying to, Your Honor.

5      BY MR. SEWARD:

6      Q     These discussions that you had with the reporter,

7      they came about in him asking you about the resolution of

8      the case, correct?

9      A     No.

10     Q     He didn't ask you about "would you want something

11     more, were you completely satisfied with the way the case

12     was settled"?

13     A     I don't remember specifically what he asked me.

14     Q     Well, that's why I said conversations, discussions,

15     talking.  Because I wasn't trying to say that it was

16     verbatim.  But that was when these words came out of your

17     mouth to the effect of an apology, the discussion was

18     about how the case settled, correct?

19                     THE COURT:  Wait.  That question is not

20     intelligible.  He just told you he did not discuss the

21     resolution of the case with the reporter from Windsor

22     Star.

23                     Okay.  So what's your next question?

24     BY MR. SEWARD:

25     Q     The context in which you made talked about an

38

1          apology was in response to some discussions about what

2          you would have liked in addition to in regards to the

3          settlement; isn't that true?

4                         THE COURT:  I don't understand your

5          question.

6          BY MR. SEWARD:

7          Q    Do you understand my question, sir?

8          A    It was in regards to how I felt about the entire

9          issue.

10         Q    And did it focus on, when this came up, about the

11         settlement, that it would have been nice to also have a

12         -- an apology?

13                        THE COURT:  Can you ask him a direct

14         question?  Are you asking him did he tell the reporter it

15         would be nice to have an apology from the defendants; is

16         that what you're asking him?

17                        MR. SEWARD:  In regards to discussions

18         about the settlement.

19                        THE COURT:  I'm asking that your questions

20         be focused and directed to the issues extant in this

21         hearing.

22                        MR. SEWARD:  And I believe this is very

23         germane to these issues.

24                        THE COURT:  Well, you know what, I'm the

25         Judge.  I've got to make the decision.  Okay?

1    BY MR. SEWARD:

2    Q    So can you answer my question, sir?

3                 THE COURT:  I want you to rephrase it.

4    BY MR. SEWARD:

5    Q    The discussions in regards to where you said the

6    words to the effect that you would like an apology, that

7    came about when you had discussions with him about the

8    settlement that you would have like to have in addition

9    an apology?

10   A    No, we weren't discussing --

11                THE COURT:  Just so the record is clear,

12   this is a search for the truth, Mr. Seward.

13                Are you asking him whether or not he

14   discussed the settlement with the reporter; is that what

15   you're asking him?

16                MR. SEWARD:  Not -- no, Your Honor.

17   That's not quite correct.

18                THE COURT:  Then pursuant -- then I'm not

19   going to allow the question under Rule 611.

20                MR. SEWARD:  What I'm asking is --

21                THE COURT:  I've made my ruling.  Ask your

22   direct question.  We're not going to sit here all day

23   going on and on, off on a tangent, examine, cross-examine

24   this witness as to the issues extant in this hearing.

25                MR. SEWARD:  Well, as I understand, there

1        is a --

2                    THE COURT:  I'm not debating you.

3                    MR. SEWARD:  I just want to let the record

4        reflect that there -- the material -- the material terms

5        of the contract, there is a significant dispute between

6        the parties as to what those are and whether they've been

7        met or breached.

8                    THE COURT:  You know what, you may be

9        right.  You can then -- that's -- but as to this witness,

10       ask him direct questions regarding the issue.

11                   MR. SEWARD:  And that's what I'm trying to

12       do, Your Honor.

13                   THE COURT:  Okay.  Mr. Seward, I'm giving

14       you a warning.  Keep it relevant, keep it direct.  We're

15       not going to be here all day.  I'm giving you the

16       opportunity to present your position.  You filed the

17       briefs, extensive briefs.  Ask this witness direct,

18       limited questions.  We're not going to bandy about for an

19       hour or two hours on this -- on this issue with the

20       newspaper.  He told that in his mind he did not discuss

21       the resolution of the case with him.  You can ask him

22       what he said to the reporter, which I think he's already

23       attempted to ask.

24       BY MR. SEWARD:

25       Q    When this -- when the words that came out about the

1    apology, what had the reporter asked you?

2    A    I don't recall.

3    Q    Was he talking about something, an additional item,

4    thing that you would like in regards to the settlement?

5    A    I believe we were simply talking about how I felt

6    about the issue.

7    Q    What was the issue?

8    A    Six years of drama, stress.

9    Q    And was the discussion also, and that it would have

10   been nice, in addition to whatever money you were to

11   receive --

12   A    No.

13   Q    -- that you would have gotten an apology?

14   A    In that respect, no.

15   Q    What do you mean "in that respect, no"?

16   A    Well, like I said, I would have loved an apology,

17   but that was simply in regards to how I felt about many

18   years of stress.  But not having anything at all to do

19   with the resolution of the case itself.

20   Q    You and I, we have a difference as to what the

21   resolution of the case is.

22                   MR. ROBINSON:  Judge, that's not a

23   question.

24                   THE COURT:  You're right.

25   BY MR. SEWARD:

1      Q    What I'm asking you is, though, when the discussion
2      about the --
3                      THE COURT:  Can I ask you a question
4      pursuant to 611?
5                      Do you have any questions to this witness
6      regarding the material terms?
7                      MR. SEWARD:  I believe that this goes to
8      the material terms.
9                      THE COURT:  No, you're going to the
10     breach.
11                     MR. SEWARD:  Pardon me?
12                     THE COURT:  Do you have any questions as
13     to material terms of the contract?  Why don't you ask him
14     that first and that -- pursuant to 611, and then whether
15     or not there was a breach.
16                     MR. SEWARD:  I'm sorry.  I'm missing what
17     the Court is trying to tell me when you say "ask him
18     questions about the material terms."
19                     THE COURT:  You don't --
20                     MR. SEWARD:  I don't understand what the
21     Court is trying to tell me.
22                     THE COURT:  Fine.
23                     MR. SEWARD:  Okay.
24                     THE COURT:  You don't understand what I'm
25     saying, that's fine.

```
 1                          MR. SEWARD:  Thank you, Your Honor.
 2                          THE COURT:  That's your position.
 3                          MR. SEWARD:  Okay.
 4       BY MR. SEWARD:
 5       Q    Was Mr. Ryan -- or excuse me, Mr. McGuire present
 6       when you had your discussions with Mr. Egan of the
 7       Detroit News?
 8       A    I don't believe so.
 9       Q    Were you present when Mr. Robinson had his
10       discussions with the Detroit News?
11       A    No.
12       Q    How did this discussion with Mr. Egan take place?
13       A    What do you mean exactly, how?
14       Q    Where and when?
15       A    Just outside of the courtroom.
16       Q    Okay.  And Messrs. McGuire and Robinson and Ms.
17       Miller were not present?
18       A    I stepped aside with him.
19       Q    Pardon me?
20       A    It was just him and I speaking.
21                          THE COURT:  Are you -- mean Mr. Egan?
22                          THE WITNESS:  Yes.  Sorry, Mr. Egan.
23       BY MR. SEWARD:
24       Q    So the -- how close was the group?
25       A    I don't know.
```

1      Q    In eyesight?

2      A    No, not for me.

3      Q    If you looked around --

4      A    I was facing -- I mean, I don't have a directional

5      here, but I was facing the opposite way from the group.

6      Q    Okay.  But if you would have turned around towards

7      the -- the group was within what, ten, fifteen feet?

8      A    I, honestly, I have no idea.  I wasn't looking

9      towards them.  I don't know where they were standing.

10     They could have been walking around, standing, I don't

11     know.

12     Q    Was it right outside this courtroom?

13                THE COURT:  Okay.  He already told you it

14     was outside the courtroom and he already told you he

15     didn't know how long -- how far away they were.  There's

16     been no allegation that Mr. McGuire spoke to anybody,

17     disclosed any terms of any purported settlement or not.

18     BY MR. SEWARD:

19     Q    Did you see Mr. McGuire speaking with Mr. Egan?

20     A    No.

21     Q    Did you see Mr. Robinson speaking with Mr. Egan?

22     A    At what point in time?

23     Q    Any time after the case was settled?

24     A    No.

25                MR. SEWARD:  Thank you.  I have no other

1      questions.

2                      THE COURT:  All right.  Mr. Robinson, any

3      redirect?

4                      MR. ROBINSON:  Just briefly, Your Honor.

5                         **REDIRECT EXAMINATION**

6      BY MR. ROBINSON:

7      Q    Mr. Ryan, you've read the article in the Windsor

8      Star, correct?

9      A    That's correct.

10     Q    And did you also read in the Windsor Star that the

11     chief of police, Christopher Jenke* had also made a

12     comment about this case?

13                     MR. SEWARD:  Object as to the foundation.

14     He wouldn't have been present.

15                     THE COURT:  Excuse me?

16                     MR. SEWARD:  If he's asking about comments

17     about what Chief Jenke may have said, I object to that on

18     the basis that he would not have foundation of that.

19                     THE COURT:  I think he just asked him if

20     he read the comments of an exhibit that's already -- just

21     read an exhibit that's already in evidence.

22                     MR. SEWARD:  I understand that, Your

23     Honor.

24                     THE COURT:  So what's your objection?

25                     MR. SEWARD:  I'll withdraw my objection.

1                      THE COURT:  Thank you very much.

2        BY MR. ROBINSON:

3        Q     You read the comments, correct?

4        A     Correct.

5        Q     Okay.  And with respect to the language in the

6        agreement that was signed August the 19th, 2009, the

7        second paragraph that I think you read, "if asked," were

8        you relating "if asked" back to the amount of the

9        settlement?

10       A     I'm sorry, can you --

11       Q     In the agreement that you signed on August 19th,

12       2009, do you have that in front of you?

13       A     Yes.

14       Q     See the second paragraph, or whichever paragraph it

15       is, it says "if asked" all anyone can say?

16       A     That's correct.

17       Q     And were you relating that "if asked" back to the

18       amount of the settlement?

19       A     Yes.

20       Q     Did you indicate to both Mr. Egan and to the Windsor

21       Star reporters if asked the question the amount of the

22       settlement that you couldn't disclose that?

23       A     That's correct.

24       Q     Okay.  Did you understand that that was your

25       responsibility under the agreement that you signed, and

                                                              47

1    that was limited to you could not reveal to them the

2    amount of the settlement?

3    A    Yes, that's correct.

4    Q    And did you reveal to them the amount of the

5    settlement?

6    A    No.

7    Q    In talking about your feelings to the reporters with

8    respect to an apology or anything else you said, did you

9    feel that that was violating the terms of any

10   confidentiality agreement?

11   A    No, absolutely not.

12                   MR. ROBINSON:  Okay.  Thank you.

13                   THE COURT:  Recross.

14                   MR. SEWARD:  Thank you.

15                   **RECROSS-EXAMINATION**

16   BY MR. SEWARD:

17   Q    Did the discussions with the Windsor Star took place

18   after the Detroit News article had been published; isn't

19   that a true statement?

20   A    That's correct.

21                   MR. SEWARD:  Thank you.

22                   THE COURT:  Okay.  Mr. Ryan, thank you

23   very much.  You may step down.

24                   THE WITNESS:  Thank you.  Leave these

25   there?

1              THE COURT:  Yes, leave them there.  All

2    right.  Next witness.

3              MR. ROBINSON:  Your Honor, I'm just going

4    to ask that -- we don't have any other witnesses.  Mr.

5    McGuire, again, has not made any comments --

6              THE COURT:  I understand there's been no

7    allegation that Mr. McGuire breached --

8              MR. ROBINSON:  We don't have anything

9    else, Your Honor.

10             THE COURT:  All right.  Mr. Seward?

11             MR. SEWARD:  Your Honor, well, at this

12   time we move to dismiss and have the Court rule in

13   defendants' favor.

14             Plaintiff is the moving party and has the

15   burden of proof in this case that there has been -- what

16   the material issues and the breach.  He has not

17   established that -- he has not met his obligations under

18   that.  He's got the settlement and he's made the

19   argument, but he hasn't submitted the proofs to support

20   what the material issues are, because clearly the

21   agreement says "if asked, all that anyone can say is that

22   the case has been --"

23             THE COURT:  Can I interrupt?  I apologize,

24   because I do have a question for you.

25             Ryan testified that he was not paid, if I

                                                      49

1      recall correctly, and I think that's in my notes.  Is

2      that not -- I mean, there is arguably testimony of a

3      breach, or how is that not evidence of a breach?

4                    THE COURT:  Okay.  The issue before the --

5      I'm not discuss -- I'm not disputing that he has not been

6      paid.  What I am suggesting to the Court --

7                    THE COURT:  Is establishing -- is your

8      position -- and I don't mean -- I apologize.  I just want

9      to understand the argument.  Your understanding that your

10     position is that the material terms have not been

11     established; is that correct?

12                   MR. SEWARD:  What I am saying is that his

13     opinion as to what the material terms are certainly not

14     binding upon this Court, because the document itself is

15     before the Court.  So what I am suggesting is a couple of

16     things.

17                   First of all, with the exhibit agreement

18     Number One, the Court is going to make a ruling as to

19     what the material terms are.  I'm submitting to the Court

20     that in the second paragraph where it says, "If asked,

21     all anyone can say is the case has been resolved," that

22     is a material issue.  He has -- he has recalled that that

23     was something that was negotiated.  He has acknowledged

24     that when he talked with the Detroit News the day of the

25     settlement he made those certain words.  And I would

1       submit to the Court that that constitutes a breach if

2       they have not adequately explained.  His belief that it

3       was proper is not binding upon the Court.

4                    Second of all, the other sentence in

5       agreement two -- or agreement one, paragraph two, is that

6       there would be subsequent documents exchanged dealing the

7       confidentiality agreement.  And those document have not

8       been drafted, prepared nor signed.

9                    So therefore, they have established that

10      there has been -- that there is an obligation to move

11      forward on that.  And since plaintiff has not submitted

12      any other proofs, the Court is left with a question.  But

13      it's their obligation to persuade the Court.

14                   Likewise, with Mr. McGuire, although there

15      are no allegations yet, they have not submitted any

16      proofs.

17                   THE COURT:  Hold that thought.  I need to

18      check something out.  Okay.  I need a break.

19                   (Brief pause in proceedings)

20                   THE COURT:  Mr. Seward, I'm trying to

21      understand.  Are you telling me that you don't want to

22      call any witnesses or are you bringing -- is that what

23      you're --

24                   MR. SEWARD:  Oh, absolutely not.  Your

25      Honor, I'm -- absolutely not, Your Honor.

1              THE COURT:  Okay.  Are you making a motion

2      based upon the proofs so far?

3              MR. SEWARD:  Yes.  I am --

4              THE COURT:  Okay.  You didn't -- you just

5      started -- maybe I missed something.  So your -- it's a

6      motion to --

7              MR. SEWARD:  It's at this point just to

8      the Court -- or ask the Court to rule based upon what

9      plaintiff has not presented and based upon the order of

10     the Court that plaintiff has not established a right to

11     recover -- a right to enforce the settlement agreement.

12     Although we have the terms of the settlement agreement in

13     front of the Court and plaintiff has the burden of

14     establishing that the terms of the agreement, plaintiff

15     has not presented evidence to counter as to the breach --

16     what are the terms of the agreement and whether they have

17     breached.

18              THE COURT:  Okay.  All right.  So you're

19     -- any particular rule or any case?

20              MR. SEWARD:  I believe under -- is it Rule

21     50 that we're asking for a --

22              THE COURT:  Okay.  Rule 50?

23              MR. SEWARD:  I believe so.  I think it

24     applies to more than just trials.

25              THE COURT:  Okay.  And so your position in

1        this motion is plaintiff has not established the terms.

2                        MR. SEWARD:  Oh, no.  We have two

3        responses to that.

4                        THE COURT:  No --

5                        MR. SEWARD:  Yes.

6                        THE COURT:  I apologize.  But I'm trying

7        to understand your motion.

8                        MR. SEWARD:  My motion is to -- right now

9        without defendants submitted -- going forward on their

10       portion of the evidentiary hearing, rule that plaintiff

11       has not met their burden under the motion that they

12       brought to establish a right to enforce the settlement,

13       which in their position is simply the payment of the

14       monies that is talk about in agreement -- in Exhibit

15       Number One.

16                        THE COURT:  How so?

17                        MR. SEWARD:  How so?

18                        THE COURT:  Plaintiff has not established

19       a right to payment.

20                        MR. SEWARD:  Because --

21                        THE COURT:  That's your motion, right?

22                        MR. SEWARD:  That is our motion.

23                        THE COURT:  Okay.

24                        MR. SEWARD:  It's two-fold.  And one part

25       has multiple arguments to it.  Two-fold.  One, that they

1      haven't established they did not breach material terms of

2      it.  And the other argument is that there was not a

3      meeting of the minds that there was not a fulfillment of

4      an agreement.  This was preliminary.

5                  Now, as to the material terms of the

6      agreement.  There are two paragraphs.  Certainly one

7      talks about the payment of monies, but the second

8      paragraph talks about what could be said in regards to

9      the settlement.  And clearly Mr. Ryan has admitted to

10     this Court that subsequent to signing the agreement, he

11     told Mr. Egan words more than " the case has been

12     resolved."  His opinion that that does not constitute a

13     breach is not binding upon the Court, because the Court

14     has the agreement in front of him.

15                 Second of all, although there's no

16     allegations that Mr. McGuire is the one who made the

17     words or said the words "six-figure settlement," it's

18     plaintiffs' burden of coming forward and they have not

19     elicited any testimony, and admissible testimony of Mr.

20     McGuire.  So it's not our obligation to show that he did,

21     because they are the moving party.  They have the

22     obligation of coming forward and introducing evidence to

23     that effect.  They have not done so.

24                 So we -- and as to the statements in the

25     Windsor Star, Mr. Ryan has acknowledged that that

```
 1          interview occurred after the Detroit News article was

 2          published.  So therefore, we already have the breach by

 3          him the day before to the extent that there is an

 4          agreement as to what the breach -- what the material

 5          terms are, "All you can say is."

 6                         THE COURT:  Okay.

 7                         MR. SEWARD:  Now, the second part of

 8          argument is that obviously, there has not been a meeting

 9          of the minds that this was preliminary agreement, because

10          the second sentence of the second paragraph clearly

11          indicates that there was going to be subsequent documents

12          that were going to be prepared, discussed and executed

13          which specifically talk about the terms of the

14          confidentiality agreement.

15                         That has not taken place.  He admitted it.

16                         THE COURT:  Okay.

17                         MR. SEWARD:  There is no indication and

18          there's no evidence as to whose obligation it was.  At

19          best, what the Court and anyone can glean from that is

20          that was going to be a joint effort.

21                         And there's been absolutely no testimony,

22          no evidence that anything was ever presented to the

23          defendants or to the plaintiffs in regards to that

24          subsequent agreement.  That is definitely a precondition

25          before there's going to be any payments of money.  So
```

1    plaintiff has woefully failed in any evidence to satisfy

2    the agreement, which is reflected in Exhibit One.  So

3    that's our argument.

4                    THE COURT:  Okay.  All right.  Mr.

5    Robinson.

6                    MR. ROBINSON:  Ms. Miller is going to

7    handle this, Your Honor.

8                    MS. MILLER:  Good morning, Your Honor.

9                    THE COURT:  Good morning.

10                   MS. MILLER:  The parties have briefed a

11   myriad of issues in this case on a number of occasions.

12   I will try not to belabor the points any long than

13   necessary.

14                   As a preliminary matter, Mr. Seward

15   misrepresented to this Court that Mr. Ryan admitted that

16   he spoke with Mr. Egan subsequent to entering into the

17   settlement agreement.

18                   I believe Mr. Ryan's testimony was that he

19   spoke with the Windsor Star subsequent to the agreement

20   and that any conversations with Mr. Egan were prior to.

21   Just a point of clarification.

22                   This Court directed the parties in his

23   order for show cause --

24                   THE COURT:  You know what, you need to be

25   focused on his argument.  Okay.  And as I understand his

1        argument, there was no breach of the material terms that

2        the confidentiality agreement was breached by your

3        client.  There was no meeting of the minds, and that you

4        need testimony from Mr. McGuire who is not present here

5        today with respect to the establishment of the existence

6        of the agreement, the terms of the agreement.  And that a

7        subsequent release and settlement agreement was a

8        precondition of the payment of any -- or I should say the

9        execution of a settlement and release agreement was a

10       precondition to the payment of any monies.

11                   MS. MILLER:  Well, Your Honor, that was

12       not anywhere within the four corners of the settlement

13       agreement.  There were no preconditions to anything.

14                   Meeting of the mind is apparent when Mr.

15       Jenke went and made statements to the press as well.

16       Clearly, his understanding was the same as Mr. McGuire's

17       and Mr. Ryan's.  There was a meeting of the minds as to

18       the dollar amount of the settlement, and that particular

19       dollar amount, the figure itself would not be disclosed.

20                   THE COURT:  Mr. Jenke's statements are in

21       exhibit what?

22                   MS. MILLER:  Defendants' Exhibit Two, I

23       believe, the Windsor Star article.

24                   THE COURT:  All right.  Go ahead.

25                   MS. MILLER:  Thank you.  The meeting of

1        the minds were clear that the material terms of the

2        agreement were the dollar amount and the confidentiality

3        of the dollar amount.  Mr. Jenke went beyond saying the

4        case is resolved with the understanding as all the

5        signatures to the agreement had.

6                     The only thing to remain confidential were

7        the terms of the settlement agreement.  The terms of the

8        settlement agreement were the dollar figure.

9                     That's been proven by the exhibits.

10       That's been proven by the testimony.  I don't believe

11       it's fair for defendant say that we have a burden to

12       disprove a purported breach which has not been proved in

13       the first instance.

14                     Do you have any questions?

15                     THE COURT:  No.  Anything further?

16                     MR. SEWARD:  Yes, Your Honor.  First of

17       all, I don't believe there -- I think Mr. Ryan clearly

18       said that the statements with Mr. Egan occurred after the

19       resolution of this case.  It's clear there was no

20       testimony that he said it beforehand.

21                     As to what Mr. Jenke may have been quoted

22       as saying, it's clear that that evidence before the Court

23       is that there was already the breach, the breach being

24       the Detroit News article which occurred the day before.

25       At that point, the law, I believe, is quite clear that we

1    have the right to rescind.  The agreement's been

2    breached.  We have no obligation to go forward.  So if

3    Mr. Jenke's statements can be considered to be a breach,

4    they occurred subsequent to their breach.

5                As to say there's preconditions, the last

6    phrase of the agreement, which has been marked as Number

7    One says, quote, "Instead the parties and representative

8    will sign an agreement which will set forth the specific

9    terms of a confidentiality agreement.

10               That clearly contemplates further

11   documents.  Could not be more clear.

12               Thank you.

13               THE COURT:  Okay.  I want to take a look

14   at Rule 50 for a quick minute.  I'll be right.

15               (Brief pause in proceedings)

16               THE COURT:  Okay.  The authority cited to

17   me is Rule 50.  I'm not sure Rule 50 -- I'm saying I'm

18   not sure Rule 50 is the appropriate rule.  My

19   understanding of the law is that the plaintiff has the

20   burden of establishing an agreement as well as a breach.

21   Has established an agreement as well as that there's been

22   a breach by the defendant of that agreement.

23               So what I'm going to do is I'm going to

24   order this transcript of Mr. Ryan's testimony before I

25   make any ruling.  Because I want to be absolutely clear,

59

1    and have had the opportunity to review Mr. Ryan's

2    transcript as well as the exhibits.

3                    So what I'll do right now is I'm going to

4    take the motion under advisement.  The ruling will be

5    based upon the evidence presented to me up to this point.

6    All right.

7                    Again, the ruling will be based upon the

8    evidence presented up to this point.  And if that's

9    agreeable to the parties.  And Mr. Seward, do you wish to

10   present a case?  Again, the ruling will be based upon the

11   evidence presented to me up to this point.

12                   MR. SEWARD:  Okay.  With that

13   understanding, then yes, we would like to present

14   evidence assuming the Court is going to deny that motion.

15                   THE COURT:  Is that the procedure

16   agreeable to you, Mr. Robinson?

17                   MR. ROBINSON:  We certainly would contend,

18   Your Honor, that if Mr. Seward does put on a case, that

19   we -- that our evidence presented through their witnesses

20   has to be germane to the whole issue of whether or not --

21   what the material terms are.  We still have the right to

22   cross-examine his witnesses, Your Honor.  Just

23   procedurally, --

24                   THE COURT:  Did you not hear my question?

25                   MR. ROBINSON:  I did, Your Honor.  I did,

1      Your Honor.

2                       Yes.

3                       THE COURT:  So procedurally agreeable to

4      you; is that correct?

5                       MR. ROBINSON:  It is, Your Honor.

6                       THE COURT:  Agreeable to you?

7                       MR. SEWARD:  I thought I expressed my --

8      that it's worth going forward presuming the Court is

9      going to deny the motion at that point.

10                      THE COURT:  Right.  Is the procedure

11     agreeable to you that I will make a ruling based upon

12     your motion and the evidence I will consider is only the

13     evidence presented to me up to this point.

14                      MR. SEWARD:  Right.  With that

15     understanding, yes.

16                      THE COURT:  All right.  Very good.

17                      Okay.  Mr. Seward, I assume you have

18     witnesses?

19                      MR. SEWARD:  Yes, we do, Your Honor.  Just

20     so the record is clear, I know the Court's ruling.  But I

21     just want to preserve the record.  My first witness would

22     be Jennifer Hernandez.  And we've indicated -- I'd like

23     to put a proffer, proof and just so the record is clear

24     that I would expect her to testify that she had some

25     conversations with me.  That I was visibly upset.  That I

1    expressed my upsetedness if that is a word.  That the

2    reason for being upset was the discussions by plaintiffs'

3    contingencies with Mr. Egan and that I want to bring it

4    up to the Court's attention, because I felt that that was

5    -- that I want to discuss that and what impact that would

6    have on the settlement or non-settlement of the case.

7    That is what we would proffer Ms. Hernandez' testimony

8    would be.

9              THE COURT:  Okay.  Any objection to that?

10              MR. ROBINSON:  No, Your Honor.

11              THE COURT:  Do you have any objection to

12    the proffer?

13              MR. ROBINSON:  It's his proffer, Your

14    Honor.  We would -- don't agree with it.  But --

15              THE COURT:  Fine.  That's what I was

16    asking.  Okay.

17              MR. SEWARD:  Our second witness would, in

18    fact, be this Court.  And what we would proffer to this

19    Court is its recollection of both the Tuesday before --

20    the last Tuesday, I think it's the 18th where we had some

21    discussions --

22              THE COURT:  I don't even think you can

23    make a proffer.

24              MR. SEWARD:  Pardon me?

25              THE COURT:  I don't even think you can

1       make a proffer.

2                       MR. SEWARD:  Well, if the Court's telling

3       me I can't, then I will stop.

4                       THE COURT:  Based upon the ruling, I don't

5       know that you can.  Do you have some authority that you

6       can?

7                       MR. SEWARD:  I'm just trying to protect

8       the record as to what the Court would expect it to be

9       testifying to.  If the Court's telling me that I cannot,

10      then I will proceed.

11                      THE COURT:  Any objection to the proffer?

12                      MR. ROBINSON:  Well, that would be

13      speculation, Your Honor.  How can he say what the Court

14      is going to testify to?

15                      THE COURT:  All right.  Go ahead and make

16      a proffer.

17                      MR. SEWARD:  Thank you.  My proffer would

18      be that we had some discussions on the record after trial

19      ended that the Court was in a position to see that Mr.

20      Egan was not present in the courtroom when we had these

21      discussions, and that, in fact, I made a request that

22      those discussions in that transcript be sealed, and the

23      Court granted it.

24                      Then as to Wednesday --

25                      THE COURT:  So just so the record is

1          clear, my -- the Court's testimony would be what?

2                     MR. SEWARD:  The Court's testimony is that

3          (a) we had discussions after trial had ended on Tuesday.

4          That the Court discussed the relative settlement

5          positions of the parties.  I believe the Court said that

6          plaintiff demanded X.  Defendants have offered Y.  The

7          Court is ordering Mr. Gillam and Mr. Duffy to be present

8          the next day, which was Wednesday the 19th.  And that I

9          had asked the Court to place this transcript under seal,

10         and the Court agreed.  And that when the Court made that

11         -- we had that hearing or discussion, that Mr. Egan was

12         not present in the courtroom.

13                    THE COURT:  Okay.

14                    MR. SEWARD:  Then -- may I proceed?

15                    The next proffer would be that the Court

16         had discussions in chambers and was present during the

17         discussions in chambers.  When I came back to the Court

18         discussing what I had seen.  And the proffer would be

19         that the Court heard that Ms. Racine at one point said,

20         "Can we say that it was resolved in plaintiffs' favor."

21         That Mr. Robinson said, "Well, of course, we can say

22         that.  How else could a case be resolved."  And that my

23         response is that is not appropriate referencing the

24         handwritten agreement that said "all you can say is the

25         case has been resolved."  That we had further discussions

1        that if we couldn't agree as to those terms, that I

2        wanted to proceed with trial.  That the Court urged the

3        parties to draft the confidentiality agreement --

4                    THE COURT:  You know, we need to take a

5        break.  Okay?

6                    MR. SEWARD:  Okay.

7                    (Brief pause in proceedings)

8                    THE COURT:  Did you make a request to make

9        a proffer during the course of this trial?  You had the

10       ruling from me regarding your request for me to testify

11       as a witness in court.  You've had a ruling since -- for

12       about I think close to a month on that issue.  Have you

13       ever made a request for a proffer.  I don't think you

14       have.  And I request all witnesses and description of the

15       testimony and all the rest of it well in advance of this

16       hearing.  But I don't have any information that you ever

17       requested the opportunity to make a proffer.

18                   MR. SEWARD:  Okay.  Until the Court rules

19       that it denied our motion for reconsideration, I don't

20       know that the time to make that proffer had come up.  I

21       think this is the first opportunity to do so.  I do

22       indicate that our witness list clearly indicated that the

23       Court was going to be called as a witness.

24                   THE COURT:  Pardon me?

25                   MR. SEWARD:  Our witness list clearly

1          indicates that the Court was going to be called as a

2          witness.

3                         THE COURT:  But you've had an order for a

4          long period of time that the Court was not going to

5          testify in this matter.  So there's been no request for a

6          proffer.  Okay.  Until you started the presentation of

7          your case.

8                         Now, I'm the fact finder, as you know.

9          And the fact finders don't hear proffers.  They're done

10         out of the presence of the fact finder.  So what I'm

11         going to do is I'm going strike your proffer as to Ms.

12         Hernandez.  I'm going to strike your proffer as to me.

13                        You need -- unless you have some authority

14         that proffers are heard in front of fact finders.

15         They're not, correct?

16                        MR. SEWARD:  At this point, I cannot cite

17         any case, any statute or any court rule dispositive as to

18         the issue on either side of it.

19                        THE COURT:  Well, you know, so I'm going

20         to strike the proffer.  I'm not going to consider --

21         obviously, I've not considered the proffer.  And I don't

22         want to hear the proffer.

23                        MR. SEWARD:  Okay.

24                        THE COURT:  So now you have to know --

25         you've got to look at what alternatives are available to

1    you since I'm not going to hear the proffer for obvious

2    reasons, because it is not, will not, cannot be evidence

3    that I consider.  So I don't want to hear it.

4                    MR. SEWARD:  I understand.

5                    THE COURT:  So you need to see what your

6    options are available.  Whether the option is to have the

7    proffer presented sometime to another judge, the chief

8    judge.  I don't know what the answer is right now.  But I

9    know that I believe it would be inappropriate for me to

10   hear a proffer, therefore, I'm going to strike the two

11   proffers.  Okay?

12                   MR. SEWARD:  Yes.  In regards to my next

13   options --

14                   THE COURT:  Next witness.

15                   MR. SEWARD:  Well, I would like to make

16   two motions.  First of all, I would ask the Court to

17   reconsider its decision to refuse to testify.  And then

18   if the Court is inclined not to grant that motion, the

19   Court knows that we filed a writ of mandamus --

20                   THE COURT:  Mr. Seward, please don't try

21   my patience.  I'm not revisiting orders that I've already

22   issued in the middle of this proceeding.

23                   MR. SEWARD:  Well, Your Honor, I'm just

24   asking that there be a stay --

25                   THE COURT:  Next witness.

1              MR. SEWARD:  Thank you, Your Honor.  We

2      would call Racine Miller to the stand.

3              THE COURT:  Ms. Miller, could you give us

4      your full name, please?

5              MS. MILLER:  Racine Michelle Miller.

6

7

8

9

10              *****************************.

11

12

13      **RACINE M. MILLER, DEFENDANTS' WITNESS, SWORN**

14                    **DIRECT EXAMINATION**

15      BY MR. SEWARD:

16      Q    Do you mind telling us your name?

17      A    Racine Michelle Miller.

18      Q    You are a lawyer licensed by the State of Michigan?

19      A    I am.

20      Q    And you were present in Judge Cox's chambers on

21      Wednesday, August 19th, 2009, I believe it was sometime

22      in the afternoon?

23      A    I was.

24      Q    Okay.  And we were discussing at some point the

25      overall resolution of the underlying matter, correct?

                         *   *   *

1      A     We were.

2      Q     Isn't it true, ma'am, at one point some discussion

3      took place which prompted you to say these words "is it

4      okay" or "is it all right for plaintiff to say the case

5      has been resolved in plaintiffs' favor"?

6      A     Words to that effect, I believe, yes.

7      Q     And the response from myself was that all you can

8      say is the case has been resolved?

9      A     I remember somebody responding.  I don't believe it

10     was you and I don't believe it was the word "no."

11     Q     Pardon me?

12     A     I don't believe it was you and I don't believe it

13     was the word "no."

14     Q     Okay.  Did you hear Mr. Robinson say words to the

15     effect "well, of course we can say that.  How else would

16     a case be settled unless it was resolved in plaintiffs'

17     favor"?

18     A     Similar words to those effect.

19     Q     And you don't -- and do you recall words to the

20     effect from me saying, "No.  All you can say is the case

21     has been resolved"?

22     A     I remember you objected.

23     Q     To what Mr. Robinson said?

24     A     To what I had said.

25     Q     Okay.  When you say "objected," what do you mean by

*   *   *

69

1    that?

2    A    I don't remember specific words.  Your demeanor was

3    clear to me that you did not agree with what I said.

4    Q    Okay.  That plaintiff could not say it's been

5    resolved in plaintiffs' favor?

6    A    That's correct.

7    Q    Okay.  Now, did you make any statements to the

8    media?  Mr. Egan or anyone?

9    A    Did I make any statements to the media?

10   Q    Did you talk to them at any point regarding the

11   settlement posture or position or offers of the

12   defendant?

13   A    No.

14   Q    Are you aware that there is a statement in the

15   Detroit News that someone said the case settled for a

16   six-figure settlement?

17   A    I am aware of that.

18   Q    Do you know who that person is?

19   A    I do not.

20   Q    Pardon me?

21   A    I do not.

22   Q    Do you know that it was not you?

23   A    I know that it was not me.

24   Q    Okay.  Now, do you recall in chambers after the

25   discussions about what plaintiff could say, could it be

*   *   *

1     resolved in plaintiffs' favor, that there had been some

2     representations by Mr. Robinson and/or yourself that no

3     one from plaintiffs' side -- meaning plaintiffs or their

4     families or their attorneys -- has said anything to Mr.

5     Egan regarding the settlement position of the defendants?

6     A     I don't remember that, honestly.

7     Q     Okay.  Do you recall that there was some discussions

8     in chambers about drafting a confidentiality agreement?

9     A     Vaguely.

10    Q     And do you recall that the Court was urging me to

11    fax over, e-mail our standard confidentiality agreement?

12    A     Yes, I do.

13    Q     Do you recall that Mr. Robinson said he did not want

14    to take up the time on that day to hash out, negotiate,

15    discuss the terms of that confidentiality agreement?

16    A     I don't remember that.

17    Q     Do you remember that it did not take place?

18    A     Yes, I do.

19    Q     Do you recall why?

20    A     I do not.

21              MR. SEWARD:  Thank you.  I have no other

22    questions.

23              THE COURT:  Mr. Robinson?

24              MR. ROBINSON:  I don't have any questions,

25    Judge.

*   *   *

71

1              THE COURT:  Ms. Miller, was there ever a

2    discussion of any gag order in discussions you had with

3    anybody?  Was there ever a discussion of any gag order?

4              MS. MILLER:  I don't believe so, no.

5              THE COURT:  And was there ever discussion

6    that the plaintiffs could not discuss any aspect of the

7    case with the media?

8              MS. MILLER:  No, Your Honor.

9              THE COURT:  Okay.  Anything else?

10                    **REDIRECT EXAMINATION**

11   BY MR. SEWARD:

12   Q    Yes.  Will you agree with me ma'am that the Exhibit

13   One, agreement clearly indicates that the parties and

14   their representatives, we'll say, an agreement which set

15   forth the specific terms of a confidentiality agreement?

16   A    I can't agree with you without seeing it, please.

17   Q    I think the Court has --

18              THE COURT:  You know what, I believe I

19   took them all during the last break, and I'll put them

20   all back on the table.  All the exhibits that is.

21              MR. SEWARD:  Thank you.

22   BY MR. SEWARD:

23   Q    I'm going to show you what's been marked Exhibit

24   One.

25              MR. SEWARD:  May I approach?

                         *   *   *

1                    THE COURT:  Yeah.

2                    THE WITNESS:  Thank you.

3     BY MR. SEWARD:

4     Q    And tell me when you've had a chance to read the

5     agreement, particularly the last two lines, the last

6     paragraph of the agreement?

7     A    Got it.

8     Q    Okay.  Will you agree with me that the agreement

9     specifically indicates that a -- the specific terms of a

10    confidentiality agreement were going to be drafted and

11    executed in a future time?

12    A    That's not what this says.

13    Q    Doesn't it say that they will -- the parties will

14    sign it, will sign an agreement which sets forth the

15    specific terms of a confidentiality agreement?

16    A    That's what this document says.

17    Q    Okay.  And you understand that obviously that phrase

18    means that that would occur subsequent to the execution

19    of Exhibit One?

20    A    Absolutely.

21    Q    And you'll agree with me that there was going to be

22    the terms of a confidentiality agreement, correct?

23    A    Yes, I do.

24    Q    And your understanding of a confidentiality

25    agreement is that there is going to be in the agreement

                         *    *    *

1     some -- in this contract some agreement between the

2     parties as what could or could not be said?

3     A     That's what confidential means.

4     Q     And the specific terms of what could or could not be

5     said has not been specifically addressed at any time; is

6     that true?

7     A     That is untrue.

8     Q     Okay.  Was there any agreement that the plaintiffs

9     or their attorneys could comment upon the wrongdoing of

10    the defendants.

11    A     There was no discussion about that.

12    Q     So there was no agreement either, was there?

13    A     There was no agreement as to what could or could not

14    be said about the case by the attorneys beyond the fact

15    that we could not disclose the terms of the settlement

16    agreement.

17    Q     Well, doesn't the first line of the second paragraph

18    say, "If asked, all anyone can say is the case has been

19    resolved," does it say it?

20    A     That's what the document says, yes, it does.

21    Q     And you understood that when you signed the

22    agreement, correct?

23    A     Do you want to know what I understood that to mean?

24    Q     No, you read that, correct?

25    A     I did read that.

                        *    *    *

1                    MR. SEWARD:  Okay.  Thank you.  I have no

2       other questions.

3                    THE COURT:  Okay.  Mr. Robinson.

4                    MR. ROBINSON:  I do.

5                          **CROSS-EXAMINATION**

6       BY MR. ROBINSON:

7       Q    Ms. Miller, what did you understand that language to

8       mean?

9       A    The phrase "if asked"?

10      Q    Yes?

11      A    "All anyone can say is case has been resolved"?

12      Q    Yes?

13      A    If asked about the dollar figure of the amount of

14      the settlement, that's what I understood that phrase to

15      mean.

16      Q    Now, you're an attorney, correct?

17      A    I am.

18      Q    Now, do you know any legal term that you can define

19      to the Court that would give you that understanding?

20      A    I do.  There is a doctrine typically used in

21      statutory construction of ejusdem generis.

22                    MR. SEWARD:  I object to this, Your Honor.

23      It calls for conclusions of law.

24                    THE COURT:  Overruled.

25                    THE WITNESS:  The Doctrine of Ejusdem

                          *   *   *

1    Generis stands for the proposition that where there is a

2    phrase of things, the generic or the general will follow

3    the specific.  With that in mind, where this agreement

4    specifically stated a dollar amount and was followed up

5    with "if asked, all anyone can say is case has been

6    resolved," I relate that phrase back to what was just

7    previously discussed, which was the dollar amount.

8    BY MR. ROBINSON:

9    Q    Okay.  And you have studied this doctrine in law

10   school and as a lawyer?

11   A    I have, yes, sir.

12   Q    Did you breach any term of confidentiality with

13   regard to the four corners of the document that you

14   signed?

15   A    No, sir.  I did not.

16                  MR. ROBINSON:  Thank you.

17                  THE COURT:  Okay.  Ms. Miller, thank you.

18                  THE WITNESS:  Thank you.

19                  THE COURT:  All right.  Next witness?

20                  MR. SEWARD:  Mr. Robinson.

21                  THE COURT:  Okay.  Mr. Robinson.

22                  Just so we understand, we're going to be

23   breaking for lunch at 12:30.  And then after that, the

24   Court will be available until about 2:30.  And if we're

25   still not done, we're going up to Flint tomorrow and

                        *    *    *

1    everyone is going to be there at 8:00, so make sure your

2    schedules are, if need be, adjusted.  Because I've got --

3                    MR. SEWARD:  So we break at 12:30 and we

4    come back at what time?

5                    THE COURT:  Probably about 1:15.

6                    MR. SEWARD:  Okay.  And we'll go to 2:30.

7                    THE COURT:  Two-thirty if necessary.  And

8    if we don't conclude today, we're starting tomorrow in

9    Flint at 8:00 in the morning.  And you will be there

10   until the hearing is concluded.  If that's necessary.

11   It's just that I have to go to Flint tomorrow to cover a

12   part of the Flint docket.

13                   MR. SEWARD:  Can I have your notepad,

14   please?

15                   MR. ROBINSON:  No.

16                   THE COURT:  Oh, I'm sorry.  Mr. Robinson,

17   could you give us your full name for the court reporter?

18                   MR. ROBINSON:  David Anthony Robinson.

19   **DAVID ANTHONY ROBINSON, DEFENDANTS' WITNESS, SWORN**

20                   MR. SEWARD:  I would request that you --

21   that -- Your Honor, I make a request that the notepad not

22   be present with Mr. Robinson during his testimony.

23                   THE COURT:  Why?

24                   MR. SEWARD:  Because I don't want him to

25   refresh his memory or have him read from it, unless I be

                    *   *   *

1    given an opportunity to look at it.

2              THE COURT:  If he's going to refer to a

3    notepad, yeah.  If he's going to be using a notepad, sure

4    you can look at it.

5              MR. SEWARD:  Thank you.

6              THE WITNESS:  I'm not going to be using a

7    notepad, Mr. Seward.

8              MR. SEWARD:  Then I would ask that it not

9    be present with him.

10             THE WITNESS:  It's not bothering me or

11   it's not bothering you, Mr. Seward.  It's right here,

12   okay?

13             MR. SEWARD:  It is bothering me.  I make

14   that request, Your Honor.

15             MR. ROBINSON:  Well, that's part of your

16   problem, Mr. Seward.

17             THE COURT:  Okay.

18             MR. ROBINSON:  I'm sorry.

19             THE COURT:  It's just sitting there.

20             MR. SEWARD:  Okay.

21                    **DIRECT EXAMINATION**

22   BY MR. SEWARD:

23   Q    Do you mind telling the members -- do you mind

24   telling us your name?

25   A    David A. Robinson.

                      *   *   *

1       Q    You're an attorney?

2       A    That, I am.

3       Q    Okay.  Draw your attention the in chamber

4       discussions regarding the resolution of this matter.  Did

5       you hear Ms. Racine say the words, "Can plaintiff say the

6       case has been resolved in plaintiffs' favor"?

7       A    I don't exactly remember what Ms. Miller said.

8       Q    Do you recall that she said words to that effect?

9       A    No.

10      Q    Do you recall saying words to the effect, "At some

11      point, of course, plaintiff can say was resolved in their

12      favor.  How else would a case get resolved"?

13      A    I made a comment after you used the phrase about you

14      can only say the case has been resolved.  My comment was

15      that -- something to the effect of how that doesn't make

16      sense, because when you say it's been resolved, then

17      automatically it's been resolved in the favor of the

18      plaintiffs.  That's the only thing I said.

19      Q    Okay.  And do you recall hearing myself say that

20      that was not going to be acceptable to defendants?

21      A    I believe you insisted on the language about the

22      only thing you could say is that the case has been

23      resolved.

24      Q    Thank you.  Do you recall also me indicating that if

25      we could not agree to that that the trial should go

                        *   *   *

1      forward?

2      A    No.

3      Q    Do you recall discussions with the Court regarding

4      what had been said by yourselves or the individual

5      plaintiffs or their family members to Mr. Egan prior to

6      the resolution being -- prior to that meeting.

7      A    Say that one more time?

8      Q    Pardon me?

9      A    Ask that question again.  I don't understand.

10     Q    Let me try it again.  Do you recall that I indicated

11     to the Court that I was very concerned about any

12     discussions that had taken place up -- prior to our

13     meeting in the chambers?

14     A    I think you mentioned something about whether or not

15     the plaintiffs or the parties -- I think you made

16     reference to the plaintiffs and what they had said

17     relative to resolution of this case before we entered

18     into the settlement or something like that -- or during

19     the settlement negotiations.  And I had indicated that

20     nobody had disclosed anything, Mr. Egan or anybody else.

21     Q    So you had made representations to me to relieve my

22     concerns that neither you, Ms. Racine, the plaintiffs,

23     had said anything up until that point to Mr. Egan

24     regarding any numbers?

25     A    Correct.

*    *    *

1    Q     Regarding the settlement?

2    A     Correct.

3    Q     And you also indicated to me that -- and to the

4    Court that the family members were unaware of the -- even

5    the relative numbers that we were talking about.

6    A     I don't remember specifically what I said if I said

7    anything about family members.

8    Q     Would you disagree that that conversation took place

9    if someone were to give that testimony?

10   A     I just said I don't recall.

11                THE COURT:  Are you representing -- are

12   you handling Mr. --

13                MS. MILLER:  Yes, sir.  Do I need to be

14   making an objection?  I apologize.

15                THE COURT:  No, no, no.  Sometimes -- I

16   just -- Ms. McLaughlin, I think, is going to handling Mr.

17   Seward.  Are you handling Mr. Robinson?

18                MS. MILLER:  Yes, sir.

19                THE COURT:  Okay.

20   BY MR. SEWARD:

21   Q     Do you recall conversations in chambers regarding

22   the Court desiring a confidentiality agreement to be

23   presented right then and there?

24   A     I don't recall as you specific state the Court

25   requiring a confidentiality agreement right then and

*   *   *

1     there, no.

2     Q    Well, do you recall conversations regarding the fact

3     that the Court wanted me to get my standard

4     confidentiality agreement?

5     A    No.

6     Q    Okay.  Do you recall any discussions about the Court

7     saying can someone, whether it's myself or you, fax over

8     or e-mail a confidentiality agreement while we're there

9     to resolve the -- to get an agreement as to the

10    understanding what could or could not be said?

11    A    The only thing I recall is that there was mention

12    about a release agreement.

13    Q    Okay.  Do you recall the Court discussion what the

14    terms of those release would be?

15    A    The Court never discussed that.

16    Q    Do you recall the Court indicating that it wanted

17    the actual documents, the final documents to be brought

18    over?

19    A    Nobody discussed what the terms of that document

20    would be.

21                MR. SEWARD:  Exactly.  Thank you.  I have

22    no other questions.

23                THE COURT:  Ms. Miller?

24                MS. MILLER:  Thank you.

25                         **CROSS-EXAMINATION**

                         *   *   *

1      BY MS. MILLER:

2      Q     Mr. Robinson, how long have you been an attorney?

3      A     Since 1986.

4      Q     You've throughout the course of your career had the

5      opportunity to engage in numerous settlement

6      negotiations; is that correct?

7      A     Hundreds.

8      Q     Hundreds.  You've drafted settlement agreements?

9      A     I have.

10     Q     And you ensure for your client and for yourself that

11     all of the material terms that you desire to agree to are

12     incorporated into the written agreement; is that correct?

13     A     I make every attempt to do so.

14     Q     Not all of the negotiations and discussions were

15     incorporated into the finalized written agreement, were

16     they?

17     A     Into the agreement that was signed on the 19th?

18     Q     Yes, sir.  Correct?

19     A     No, they weren't.

20     Q     Were the material terms reduced to writing and

21     signed to?

22     A     The material terms as it relates to the amount of

23     the settlement was related in the terms of the document

24     and there was reference to some vague statement about

25     being asked about -- we don't know what that means "if

                          *   *   *

                                                          83

1     asked."  So it relates back to the amount of the

2     settlement.  And to this day, the amount of the

3     settlement has not been disclosed as I understand it.

4     And that as the material term of the document that was

5     signed on August the 19th, 2009.

6     Q    Thank you.  Mr. Robinson, at any time throughout the

7     course of this litigation or afterwards did you waive

8     either yours or your client's first amendment right if

9     you were even able to do so?

10    A    A first amendment right is sacrosanct.  It was not

11    part of any discussion with regard to the resolution of

12    this case.  The resolution of this case was with regard

13    to monetary amount that came into play as a consequence

14    of Mr. Gillikin's expression of inconsistent testimony,

15    inconsistent position between Mr. Warner and himself, Mr.

16    Gillikin being a passenger on the recreational vehicle --

17              THE COURT:  I -- maybe I'm missing

18    something.  How is this germane to the issues before the

19    Court?

20              MS. MILLER:  I asked if he waived anyone's

21    first amendment rights.

22              MR. ROBINSON:  Oh, no.

23              MS. MILLER:  Thank you.

24              MR. ROBINSON:  Certainly not my own.

25    BY MS. MILLER:

                        *    *    *

1    Q    You signed an agreement that said the parties are to

2    keep the terms confidential.  What did you believe the

3    terms to be?

4    A    As I indicated before, the terms of the agreement

5    was the amount of the settlement.

6    Q    And did you keep those terms confidential?

7    A    As I have in every case that I've ever had, yes.

8              MS. MILLER:  Thank you, sir.  I have no

9    further questions.

10             THE COURT:  Okay.  Redirect.

11             MR. SEWARD:  Thank you.

12                    **REDIRECT EXAMINATION**

13   BY MR. SEWARD:

14   Q    Did you tell Mr. Egan that it was a six-figure

15   settlement?

16   A    No.

17   Q    Do you know who did?

18   A    I have no idea.  I know there was a lot of people

19   out in the hall that day, including your clients and

20   their family.

21   Q    Not family.  Okay.

22             So sitting here today, you have no idea

23   where Mr. Egan got the information that allows him to say

24   it's a six-figure settlement?

25   A    No, I don't.

                         *   *   *

1    Q    Okay.  All right.  And you'll agree with me that the

2    last phrase of agreement one clearly indicates that there

3    was going to be at least one other document that was

4    going to be drafted between you and myself to be signed

5    by our clients?

6    A    I'm sorry?

7    Q    You'll agree with me that the last phrase in the

8    last sentence of the agreement, which is number one --

9    let me show it to you.

10                  Clear indicates that there was going to be

11   a subsequent document or documents detailing the terms of

12   a confidentiality agreement?

13   A    I understand that the case was settled.  The

14   material terms of the settlement was the amount of the

15   money and that there would be another release that would

16   be signed by my clients relative to this settlement.

17   That's what my understanding was.

18   Q    Okay.  You'll agree with --

19   A    And you never presented that agreement.  When I

20   called your office, you said you had no intention of

21   signing or sending a release.

22                  MR. SEWARD:  I move to strike as

23   unresponsive to my question.

24   BY MR. SEWARD:

25   Q    Sir, you'll agree with --

                          *   *   *

1                          THE COURT:  I'm not going to do that.

2      BY MR. SEWARD:

3      Q    You'll agree with me that the term "release" is

4      nowhere mentioned in this agreement?

5      A    It didn't have to be mentioned.

6                          THE COURT:  He just --

7                          MR. ROBINSON:  I agree with you.

8                          THE COURT:  Listen to his question.

9                          MR. ROBINSON:  I will, Your Honor.

10     BY MR. SEWARD:

11     Q    And you'll agree with me that whatever was going to

12     happen there was going to be a subsequent document that

13     was going to be negotiated between yourself and myself --

14     A    Negotiations already taken place, Mr. Seward.

15     Q    You'll agree with me that there was going to be a

16     subsequent document that was going to be executed by the

17     plaintiffs and/or the defendants?

18     A    That would have released the defendants so that they

19     would never be sued again as in every case that I've

20     done, Mr. Seward.

21     Q    Okay.

22     A    A settlement is agreed upon and release is sent.

23     Q    Thank you.  But could you answer my question?

24     A    I thought I did.

25     Q    There was going to be a subsequent agreement --

                              *   *   *

1    that's really just a yes or no question?

2    A    There was going to be a subsequent release, period.

3    Q    Okay.  You'll agree with me that the agreement,

4    number one, says a confidentiality agreement, does it

5    not?

6    A    And that is not different than anything that I said.

7    Confidentiality clauses are in releases.

8    Q    Okay.  And you'll agree with me that we never got

9    around to executing those subsequent documents?

10   A    The terms had been negotiated with respect to the

11   settlement.  A release was to be forthcoming, which is

12   standard in probably a hundred percent of the cases that

13   you have settled and I have settled.  I guess the

14   question I asked, though, was not what -- a hundred

15   percent of what you do is that that agreement had not

16   been prepared nor executed?

17   A    And that doesn't change the fact that the material

18   terms of what we agreed on were contained in the four

19   corners of the document that was signed on August 19th,

20   2009.

21   Q    Well, again, I appreciate that statement.  But

22   getting back to the question that I asked --

23                 THE COURT:  Just so I understand, is it

24   your position that there was no agreement because no

25   release agreement was signed?

                        *    *    *

```
 1              MR. SEWARD:  As to -- if the Court is
 2    referring back to my second, what I call my second
 3    argument or my second position, yes.  Because there was
 4    no subsequent document negotiated because our position is
 5    that once the --
 6              THE COURT:  Okay.  So the answer to the
 7    question is "yes"?
 8              MR. SEWARD:  That's correct.
 9              THE COURT:  Okay.
10    BY MR. SEWARD:
11    Q    And would you agree with that statement?  All I want
12    to know is that there is no dispute that there was never
13    a subsequent agreement exchanged between your office and
14    my office?
15    A    I don't agree.  I don't agree.
16    Q    Okay.  Did you submit a document to me?
17    A    A release agreement is for all intents and purposes
18    a closing document with regard to finalizing what has
19    been earlier entered into by way of negotiations, a
20    settlement.  That document never came.
21    Q    Okay.  So you agree that you never submitted one to
22    me?
23    A    Mr. Seward, if you had asked me to draft a release
24    agreement for your client, you probably would have been
25    committing malpractice.
```

                        *   *   *

1    Q    Well, okay.  But getting back to my question --

2    A    And had you have asked, I would have given you one.

3    Q    Okay.  But the fact is; you did not, correct?

4    A    I wish you had asked.

5    Q    Okay.  The fact is you did not, correct?

6    A    You didn't ask.

7    Q    I'm not asking why it didn't happen.  All I'm asking

8    is that it did not happen?

9    A    I guess I wish I should have.  I wish I could have.

10   Q    Okay.  So your answer -- I just want a clear answer.

11              THE COURT:  Mr. Robinson, please answer

12   Mr. Seward's question.

13              MR. ROBINSON:  No, I didn't send you

14   anything.

15   BY MR. SEWARD:

16   Q    And you'll agree that I did not send you any

17   subsequent document?

18   A    I agree that you breached the agreement, yes, sir.

19   Q    And you'll agree that I did not send you any

20   subsequent document?

21   A    I agree that when I called and asked you for the

22   release, you --

23              THE COURT:  You know what --

24              THE WITNESS:  I'm sorry, Your Honor.

25              THE COURT:  -- stay with the question.

*    *    *

1           THE WITNESS:  No, you didn't.

2    BY MR. SEWARD:

3    Q    And you'll agree with me that the subsequent

4    execution of this document was going to take place

5    outside the presence of the Court?  In other words, we

6    would not involve the Court?

7    A    There was going to be a release that you sent, it

8    would have been sent to my office, which is outside of

9    the Court.  I would have had the client sign it after

10   reading it and send it back, yes.

11           MR. SEWARD:  Thank you.  I have no other

12   questions.

13           THE COURT:  Ms. Miller.

14           MS. MILLER:  May I?

15           THE COURT:  Sure.

16           MS. MILLER:  Thank you.

17                   **RECROSS-EXAMINATION**

18   BY MS. MILLER:

19   Q    Mr. Robinson, you've had the opportunity to review

20   Exhibit One, the settlement agreement entered into on

21   August 19th of 2009?

22   A    Yep.  Yes.

23   Q    Was it your understanding that the defendants'

24   obligation to abide by the terms in sentence one, being

25   the payment amount, was conditioned upon anything?

                    *   *   *

                                                           91

1       A     Signing a release, which was pro forma, but beyond

2       that, the settlement had been entered into and its

3       embodied in the joint Exhibit Number One.

4       Q     And that agreement --

5       A     It was a done deal for all intents and purposes.

6       Q     In that agreement, is there anything on the face of

7       that document that indicates that there is any condition

8       precedent which must be met prior to payment of the

9       funds?

10      A     Nor subsequent.

11      Q     Did you understand that to be the case?

12      A     As in every case, this case, absolutely.  It was a

13      done deal on August the 19th, 2009.

14      Q     Do you recall whose responsibility, be it by

15      directive of the Court or by volunteering, whose

16      responsibility was it to draft and submit the subsequent

17      agreement of confidentiality and/or release?

18      A     Mr. Seward, by his own admission.

19                  MS. MILLER:  Thank you.  I have no further

20      questions for you.

21                  THE COURT:  Okay.  Thank you very much.

22      You may sit down.

23                  Okay.  Mr. Seward, next witness.

24                  MR. SEWARD:  Be myself, Your Honor.

25                  THE COURT:  Okay.  Ms. McLaughlin, are you

                              *   *   *

1      ready?

2                      MS. MCLAUGHLIN:  Yes, Your Honor.

3          **THOMAS JOSEPH SEWARD, DEFENDANTS' WITNESS, SWORN**

4                          **DIRECT EXAMINATION**

5      BY MS. MCLAUGHLIN:

6      Q    Mr. Seward, you are an attorney licensed to practice

7      in the State of Michigan?

8      A    Yes, ma'am.

9      Q    How long have you been so licensed?

10     A    Since May of 1983.

11     Q    And you were lead counsel for the defendants during

12     the trial of this matter; is that right?

13     A    Yes.

14     Q    That trial began sometime early in August and

15     proceeded through that date that the settlement that

16     we've all heard about was reached, correct?

17     A    Yes.

18     Q    When did the subject of settlement first arise

19     during the trial?

20     A    I believe -- well, the first time it -- it was

21     always an issue, but it became more earnest the Thursday

22     before, so that would have been August 13th.  If the

23     Thursday is the 13th, that's when there were earnest

24     discussions.

25     Q    Okay.  And that was -- so it's the Thursday before

                            *   *   *

1       the 19th, which was a Wednesday, right?

2       A     Correct.

3       Q     I think that's the 13th, okay.  And then were

4       settlement offers made or discussed at that time?

5       A     Not on Thursday.

6       Q     Okay.  What about after that?

7       A     Yes, there were certain discussions between Mr.

8       Robinson and myself after Thursday, the 13th.

9       Q     Okay.  And when was that?  You said it was after.

10      Do you remember when?

11      A     I think I had a phone call in to Mr. Robinson on

12      Friday.  We may have exchanged voice mails on Saturday

13      and/or Sunday.  And I think we talked on Monday.

14      Q     Okay.  Was the Court in session on Friday or Monday?

15      A     We did not hold trial.  I have no idea whether the

16      Court was holding other matters.

17      Q     Okay.  And then on the Tuesday when you returned to

18      trial; is that right?

19      A     Yes, that's my memory.  We started up again on

20      Tuesday.

21      Q     Okay.  And were there any discussions at that time

22      about settlement?

23      A     Yes.  At -- I believe there was a very brief

24      discussion Tuesday morning and then we proceeded right

25      into trial because we didn't want -- the Court did not

                            *   *   *

                                                              94

1        want the jury to wait around.  And then after the jury

2        had been excused for the day, there were more discussions

3        regarding settlement.  And the Court ordered us to

4        produce Mr. Gillam and Mr. Duffy for settlement

5        discussions then Wednesday.

6        Q    Okay.  And at the time that the Court made that

7        order, did he make any other statements on the record

8        outside the presence of the jury about the status of the

9        settlement negotiations?

10       A    Well, yes.  I mean, as I recall it, there was some

11       discussions about what had been offered, what had been --

12       there was discussions what plaintiff was demanding, what

13       defendant had offered.  Which came first, I don't recall.

14       I recall that the only persons in the courtroom were the

15       attorneys.  I'm not even sure if the parties were

16       present.  But there were no witnesses and I asked the

17       Court to seal that document, because I was quite

18       surprised that he put the -- expressed the numbers.

19       Q    Okay.  And you knew at that point who Paul Egan, the

20       Detroit News reporter was, correct?

21       A    I learned -- yes.

22       Q    Okay.  And was Mr. Egan in the courtroom when that

23       disclosure was made?

24       A    Absolutely not.

25       Q    Okay.  So then you proceeded to settlement

*   *   *

1    negotiations on the 19th; is that correct?

2    A    That is correct.

3    Q    And how did that occur?

4    A    What happened is we were supposed to meet with the

5    Court, I want to say 8:00.  We did meet with the Court.

6    I want to say it was before 8:30.  I don't remember for

7    sure if it was 8:00 or not.  There was some discussions

8    and the relative positions of the parties.

9    Q    Okay.  And where were you and your clients when this

10   took place?

11   A    Well, we changed.  We had certain discussions with

12   the Court in his chambers in the beginning of the

13   morning.  Then -- I want to say at some point myself, Mr.

14   Gillam, the city attorney for Royal Oak and James Duffy

15   from the Michigan Municipal Risk Management Authority

16   were in the Court's jury room.  I think there was a time

17   when parties were -- parties and their representatives

18   were in court going back and forth to the chambers, but

19   I'm not a hundred percent sure of that.  But at some

20   point we were in the defendants -- no, myself, Mr. Gillam

21   and Mr. Duffy were in the Court's jury room.

22   Q    Okay.  And then at some point you came to an

23   agreement about what the amount of the settlement would

24   be, correct?

25   A    Yes.

*   *   *

1     Q    And the subject of confidentiality arose at some

2     point as well; isn't that true?

3     A    Oh, absolutely.

4     Q    Okay.  How did that come about?

5     A    Well, from our position, confidentiality was always

6     an issue and that's why I requested of the Court the

7     Tuesday beforehand to seal that transcript.  I was caught

8     off guard by that and certainly didn't want any

9     discussions regarding any level of settlement discussed.

10    Then when we were in the jury room there was some

11    discussions, it looked like, at least from our

12    perspective that there was an agreement as to the number

13    and someone said, "And of course, there has to be a

14    confidentiality agreement."  It may have been said by all

15    -- well, myself and the Judge.  Definitely, that was

16    discussed.

17    Q    Okay.  And did you discuss that Mr. Gillam and Mr.

18    Duffy?  Not the specific terms, but the general nature

19    that this would be a confidential agreement?

20    A    The discussion about needing a confidentiality

21    agreement between myself and the Court was made in the

22    presence of Dave Gillam and Jim Duffy.

23    Q    Okay.  What was your understanding as to your

24    client's wishes about any admission of liability with

25    respect to the settlement?

*    *    *

```
 1        A    Well, in regards to the confidentiality.

 2                   MR. ROBINSON:  Your Honor, I don't know if

 3        that's really relevant, Your Honor.

 4                   MS. MCLAUGHLIN:  Oh, it's very relevant,

 5        Your Honor.

 6                   THE COURT:  I'm sorry.  Give me the

 7        question again.

 8                   MS. MCLAUGHLIN:  I said what was his

 9        understanding as to his client's wishes regarding any

10        admission of liability regarding the settlement.

11                   THE COURT:  Objection is what?

12                   MR. ROBINSON:  Objection to relevancy,

13        Your Honor.

14                   THE COURT:  I'll let it go.  Overruled.

15                   MS. MCLAUGHLIN:  Thank you.

16                   MR. SEWARD:  The reason -- this all goes

17        back to when the Court started talking about the relative

18        numbers on Tuesday.  We recognized --

19                   THE COURT:  Is he answering the question.

20                   MS. MCLAUGHLIN:  Yes, he is.

21                   MR. SEWARD:  Yes, I am.

22                   THE COURT:  I'm not sure about that, but

23        --

24                   THE WITNESS:  We recognize that in

25        settling a case where liability was hotly disputed that
```

                              *   *   *

1    we did not want to give any appearance that there was a

2    concession by the defendants of any wrongdoing.  And so

3    any reference to in any fashion to suggest that we were

4    wrong or that we admitted we were wrong was key to the

5    resolution of this matter.  We recognize and even the

6    Court asked at some point -- I don't recall if it was on

7    the record or not -- about the specific number.  I

8    recognize that because of the Freedom of Information Act,

9    there's a chance, even a good chance that the actual

10   dollar amount would be disclosed.  That's why we insisted

11   and always insist that there be no types of discussions,

12   any type of disparaging remarks or comments that somehow

13   were we wrong, the defendants were wrong or that they

14   admitted to wrong.  We were buying their silence.

15   BY MS. MCLAUGHLIN:

16   Q    And can you tell the Court how the agreement, Joint

17   Exhibit One, came into existence.

18   A    Oh, certainly.  After we had the discussion with the

19   Court in the jury room, there was some discussions about

20   the polygraphing and so forth.  The Court left.  I walked

21   outside through the front door of the Court's chambers

22   out to the hallway and I saw a group from the plaintiffs'

23   side talking with Mr. Egan.  I know for a fact that

24   Messrs. McGuire and Ryan were present.  I know that their

25   families, their parents were present.  I don't recall a

*   *   *

99

1    hundred percent if Ms. Miller or Mr. Robinson or both

2    were there.

3                    I then went up to Jennifer Hernandez, the

4    Court's case manager, and indicated to her that I was

5    upset.  I was very upset that the plaintiffs were talking

6    with the -- Mr. Egan from the media, because I was

7    concerned about what was being discussed.  I asked that I

8    wanted to talk to the Court about this.

9                    Shortly there -- she left the courtroom --

10                   THE COURT:  You know, I hate to interrupt,

11   but both of you have tried your cases, so I think we have

12   a bit of a narrative going on here.  We need to follow

13   question and answer format.

14   BY MS. MCLAUGHLIN:

15   Q    After you told Ms. Hernandez what you just testified

16   to, what happened then?

17   A    Shortly thereafter, I was brought into the Court's

18   chamber and I expressed to the Court that I was very

19   upset that I had seen members of the plaintiffs' side of

20   the case talking with Mr. Egan and that that was

21   unacceptable.

22   Q    And then what happened?

23   A    There was some discussions by the Court that he

24   didn't want the settlement to fall through.  That Mr.

25   Robinson then said that he was an experienced litigator,

                         *    *    *

1       that it wasn't, he then made representations that the

2       plaintiffs' family members, Mr. Ryan's mother was

3       present, Mr. McGuire's father was present.  There were

4       other family members.  I'm not sure with whom.  That they

5       didn't even know the terms.  At that point, Ms. Miller

6       said, "Can the plaintiffs say the case was resolved in

7       plaintiffs' favor?"  Mr. Robinson said words to the

8       effect, "Well, of course.  How else can a case be

9       resolved unless it's resolved in plaintiffs' favor?"  At

10      that point, I said, "No."  And then I said, "All you can

11      say is the case has been resolved."  There was further

12      discussions going on there with people talking all at the

13      same time.  And I made the comment, "If we can't agree on

14      that words to the effect, we can't agree --" then I want

15      to proceed with trial.

16      Q    Okay.  And then what occurred after that?

17      A    At that point the Court began urging me to e-mail

18      and/or fax over my standard confidentiality agreement.

19      Q    And how did you respond?

20      A    I told the Court that I don't have a standard

21      confidentiality agreement.  And the Court indicated then,

22      "Well, somebody in your firm does.  Let's get it."

23      Q    So it was clear then that the Court wanted this --

24                  MR. ROBINSON:  Objection to the form of

25      the question.  It's leading.

                              *    *    *

1    BY MR. MCLAUGHLIN:

2    Q    What from that comment was clear to you as far as

3    what the Judge intended?

4                    MR. ROBINSON:  Objection.  Leading.

5                    THE COURT:  You can't comment on what the

6    Judge intended.  You know that.

7                    MS. MCLAUGHLIN:  All right.

8                    THE COURT:  Clearly hearsay.

9    BY MS. MCLAUGHLIN:

10   Q    What happened after that?

11   A    Well, the Court asked that I get a document.  Mr.

12   Robinson said, constantly said, you know, there was

13   talking going on at the same time.  Mr. Robinson would

14   say we don't need that.  We're not going to -- I think he

15   used the words "screw up the settlement."  I indicated to

16   the Court that I'd have to check.  Mr. Robinson kept

17   urging, "No, let's just put this -- we got a signed

18   agreement.  Let's be done with it.  We can do this

19   later."

20   Q    Okay.  All right.  Who drafted the terms of the

21   agreement that it was set to typing?

22   A    I believe that it was a joint effort among the

23   Court, myself and Mr. Robinson.  There was certain

24   language that I insisted on.

25   Q    Okay.  I'm going to have you look at Joint Exhibit

                          *    *    *

1      One.  And ask; what language did you insist on?

2      A     What I insisted on is when the questions came up

3      about what could or could not be said, I --

4                    THE COURT:  Can I interrupt pursuant to

5      Rule 611?  Didn't your affidavit say that you drafted it?

6                    THE WITNESS:  I -- I definitely drafted

7      the last paragraph.

8                    THE COURT:  You didn't draft the first

9      paragraph?

10                   THE WITNESS:  I don't think I did the

11     first -- I don't think I did the first line, Your Honor,

12     because as I indicated to the Court before, how the total

13     amount was going to be divided was not an issue to us.

14     But I may have put it down -- I don't have that -- it was

15     a handwritten on a yellow piece of legal paper.

16     BY MS. MCLAUGHLIN:

17     Q     Whose handwriting was it --

18                   THE COURT:  Wait a minute.

19                   (Brief pause in proceedings)

20                   MS. MCLAUGHLIN:  May I proceed, Your

21     Honor.

22                   THE COURT:  Okay.

23                   MS. MCLAUGHLIN:  Thank you.

24     BY MS. MCLAUGHLIN:

25     Q     I believe I asked who actually took down the

                          *   *   *

1    language on the yellow legal paper.

2                        MR. ROBINSON:  Your Honor, I have to

3    object.  The question was; who drafted the agreement.

4                        THE COURT:  You can cross-examine.

5                        MR. ROBINSON:  Thank you, Your Honor.

6                        THE WITNESS:  I don't have specific

7    memory.  I know that my handwriting -- I'm the one who

8    drafted the second paragraph, absolutely sure.  Whether I

9    did the first paragraph or not, I'm not sure at this

10   point.

11   BY MS. MCLAUGHLIN:

12   Q    Okay.  And then what happened to that yellow piece

13   of paper?

14   A    I believe it was taken by someone in chambers,

15   whether it was the Court or the Court's staff attorney or

16   someone who then typed it up in what's become Exhibit

17   One.

18   Q    Okay.  When you were discussing this matter, did Mr.

19   Robinson or Ms. Miller offer any suggestions about

20   limiting the scope of the confidentiality agreement to

21   only disclosure of the amount of the settlement?

22                        MR. ROBINSON:  Object to the form of the

23   settlement, Your Honor.

24                        THE COURT:  You know what, Mr. Robinson,

25   just let Ms. McLaughlin get the question out.

                        *    *    *

```
 1                    MR. ROBINSON:  I'm sorry.

 2                    THE COURT:  Go ahead.  Could you give it

 3       to us again?

 4       BY MS. MCLAUGHLIN:

 5       Q    During the discussions regarding agreement, the

 6       agreement that was signed, did Mr. Robinson or Ms. Miller

 7       offer any suggestions about limiting the scope of the

 8       confidentiality agreement only to disclosure of the

 9       settlement amount?

10                    MR. ROBINSON:  Object to the form of the

11       question, Your Honor.

12                    THE COURT:  Overruled.

13                    MS. MCLAUGHLIN:  Thank you.

14                    THE WITNESS:  No.

15       BY MS. MCLAUGHLIN:

16       Q    In the last paragraph or the second paragraph there

17       indicates, "If asked, all anyone can say is case has been

18       resolved," is that correct?

19       A    Oh, yes.

20       Q    Okay.  And that was language that you insisted on?

21       A    Absolutely.

22       Q    On behalf of your clients?

23       A    Absolutely.

24       Q    And it also indicates that a more specific

25       confidentiality agreement --
```

                              *   *   *

1              MR. ROBINSON:  Object to the form of the

2       question, Your Honor.  It's a leading question.

3              THE COURT:  He's got a point.

4       BY MS. MCLAUGHLIN:

5       Q    What is the second sentence of the second paragraph

6       of the agreement, Exhibit One, say?

7       A    What it says is that the parties would further

8       define the terms of the confidentiality agreement and the

9       penalties if there was going to be a breach of the

10      confidentiality agreement.

11      Q    Okay.  And what were your expectations regarding the

12      language of a more specific confidentiality agreement?

13      A    All it was going to say that if anybody asked about

14      this case, all you could say the case has been resolved.

15      No more.

16      Q    Did you read the articles in the Detroit News and

17      the Windsor Star in which the plaintiff, Mr. Ryan, and

18      plaintiffs' counsel, Mr. Robinson, were quoted?

19      A    Oh, yes.

20      Q    And what did you do when you read those articles?

21      A    Probably swore in my office and contacted my clients

22      -- no, my clients contacted me.  So we discussed what was

23      the appropriate response.

24      Q    Okay.  Did you ever speak with Detroit News Reporter

25      Paul Egan after the settlement was reached?

                        *   *   *

1     A     Yes.

2     Q     What did he say to you if you remember?

3     A     He wanted me to --

4                    THE COURT:  Clearly hearsay.

5                    MS. MCLAUGHLIN:  Okay.

6     BY MS. MCLAUGHLIN:

7     Q     What did you tell him?

8     A     Told him all I could say is the case has been

9     resolved.

10    Q     Did you say anything more than that?

11    A     Yes.  That all I could say is the case has been

12    resolved.

13    Q     Did you ever tell Mr. Egan or anyone associated with

14    the Detroit News that the settlement in this case was for

15    six figures?

16    A     Absolutely not.

17    Q     When you read the articles in the Detroit News and

18    the Windsor Star, what about those articles caused you

19    concern?

20    A     It was the key term for us to settle the case is

21    that this was a hotly disputed case of liability.  And

22    that if there was ever going to be a settlement there had

23    to be an understanding that we were not conceding that we

24    did anything wrong.  Because to date, I do not share that

25    thought.  And nor would I allow my client to be

                          *   *   *

1      disparaged in the media.  I felt that that was an

2      intentional act by the plaintiffs to breach the agreement

3      that they had this planned all along, that it was

4      inappropriate.

5      Q    And you believe that that violated the terms of the

6      agreement?

7      A    Absolutely.

8      Q    Was there any doubt in your mind that the

9      confidentiality -- or the confidential nature of the

10     settlement did not -- was not limited to the settlement

11     amount only?

12     A    How could there when we had the discussion with Ms.

13     Miller when she asked could it be resolved in plaintiffs'

14     favor?  I said, "No, all you can say is the case has been

15     resolved."  There was no question about that.

16                    MS. MCLAUGHLIN:  I have nothing further.

17                    THE WITNESS:  Thank you.

18                    THE COURT:  Okay.  Just give me a sec.

19                    MS. MCLAUGHLIN:  Oh, Your Honor, I do have

20     one more.

21                    THE COURT:  Sure.

22     BY MS. MCLAUGHLIN:

23     Q    The agreement that was to be drafted later, did you

24     anticipate that the Court would be at all involved in

25     that?

                        *    *    *

1    A    No.

2    Q    That something would have been taken care of, how?

3    A    Dave and I would exchange -- I'd send over a

4    proposed agreement, he would take a look at it.  If his

5    clients agreed, they would sign it.  If he had some

6    changes, he would tell me about it and we would hash it

7    out.

8    Q    Okay.  Did you ever believe that the Court would be

9    involved in that in any fashion?

10    A    Absolutely not.

11                   MS. MCLAUGHLIN:  Okay.  Thank you.

12                   THE COURT:  Mr. Robinson.

13                   MR. ROBINSON:  Thank you, Your Honor.  May

14    I approach the witness, Your Honor?

15                   THE COURT:  Sure.

16                   **CROSS-EXAMINATION**

17    BY MR. ROBINSON:

18    Q    Mr. Seward, did you identify that document as two

19    pages and the last page being your signature and an

20    affidavit that you prepared that was an exhibit to your

21    original motion filed in September of '09?

22    A    This is the affidavit of myself.

23    Q    And do you see on page -- on the second page,

24    paragraph nine, it indicates that you prepared a

25    documents that has been made reference to that was signed

                         *   *   *

1    by everybody on August the 19th, 2009?  Do you see that

2    paragraph?

3                    THE COURT:  Mr. Seward?

4                    THE WITNESS:  I'm reading it, Your Honor.

5    Yes, I see that.

6    BY MR. ROBINSON:

7    Q    That paragraph says that you drafted that agreement,

8    right?

9    A    Yes, it does.

10   Q    It doesn't say you drafted part of it, does it?

11   A    No.

12   Q    Says you drafted the whole agreement, correct?

13   A    Yes, it does.

14   Q    So you lied under oath when you answered Ms.

15   McClorey's question as it relates to only drafting part

16   of the agreement, right?

17   A    Absolutely not.  Did not lie.

18   Q    May I see that?

19   A    Certainly.

20   Q    You read it, sir?

21   A    Yes, I have.

22   Q    Did you see anything about you did part of it?

23   A    Pardon me?

24   Q    Did you type this?

25   A    Oh, no.

                         *   *   *

```
 1      Q    Did you dictate it so your secretary could type it?

 2      A    No.

 3      Q    These are your words, right?

 4      A    It's my affidavit, I signed it.

 5      Q    You read it, correct?

 6      A    Yes, sir.

 7      Q    It's sworn testimony, isn't it?

 8      A    Yes, sir.

 9      Q    So you lied, sir, didn't you?

10      A    Absolutely not, Mr. Robinson.

11      Q    It says you drafted the agreement, not part of the

12      agreement.

13      A    That's true.

14      Q    That you testified to here today, correct?

15      A    I'm sorry.  Which question do you want me to answer?

16      Q    The one where I said you lied here today when you

17      said that you only drafted part of it.  You even said I

18      drafted part of it --

19      A    No.

20      Q    Do you have in here that I drafted part of it, Mr.

21      Seward?

22      A    Well, let me respond to --

23      Q    Do you have it here --

24                  THE COURT:  Wait, wait.  One question at a

25      time.
```

*   *   *

1    BY MR. ROBINSON:

2    Q    Do you have in here, Mr. Seward, that I drafted part

3    of the agreement; yes or no?

4    A    Sir, as I indicated --

5    Q    Do you have in here, Mr. Seward, that David Robinson

6    drafted part of the agreement?

7    A    Sir, as I indicated I don't recall if I drafted the

8    first paragraph.  I admitted today that I drafted the

9    second paragraph.  That affidavit is signed August 31st,

10   which is what, 13 days after the 19th.  And it says that

11   I drafted the entire agreement --

12            THE COURT:  I think he asked you a

13   specific question regarding whether he's mentioned in the

14   affidavit as a drafter.

15            THE WITNESS:  No.

16            THE COURT:  Okay.

17   BY MR. ROBINSON:

18   Q    I didn't draft any of that agreement, Mr. Seward,

19   you did.  Consistent with your affidavit; isn't that

20   correct?

21   A    If by meaning that I wrote it down, that's

22   absolutely correct.  If you're saying that you didn't

23   have input on it, not correct.

24   Q    Ms. McClorey made reference to some yellow pages or

25   something that there was some handwriting on; did you see

                    *   *   *

                                                          112

1     my handwriting on that document?

2     A    I don't recall, Mr. Robinson, whose handwriting was

3     on it.

4     Q    Now, Mr. Seward, the first day of trial, you do

5     recall that you and I were at this table and before we

6     got started, I asked you, "Listen, Joe, I may as well ask

7     the question; is there any money in this case," or

8     something to that effect.  And do you remember what your

9     response was?

10    A    Verbatim?  No, not verbatim.

11    Q    Okay was it something like this with a smirk.  I

12    wouldn't pay your clients a dime; do you remember that?

13    A    No, I don't remember that.

14    Q    Something to that effect, though, right?

15    A    Something to the effect that my clients were not

16    willing to offer anything towards settling the case that

17    I thought would be acceptable to the plaintiffs.

18    Q    You don't remember using the term "a dime" or "I

19    wouldn't pay them anything"?

20    A    No, those are not words that I usually say.

21    Q    How about the smirk?  Do you remember the smirk?

22    A    No.

23    Q    That changed, though, didn't it at some point in

24    time when Mr. Gilligan your own witness got on the stand,

25    right?

                              *    *    *

```
 1                    MS. MCLAUGHLIN:  Your Honor, I'm going to
 2          object to the relevance of this.
 3                    THE COURT:  Oh, it is relevant based upon
 4          what you brought up during the course of his direct
 5          examination.
 6          BY MR. ROBINSON:
 7          Q    Didn't that attitude change --
 8                    THE COURT:  Quote, unquote, hotly
 9          contested and denying liability and they felt strongly
10          about it.  Those were the questions that the defense
11          brought up.  The defense raised the issue.
12                    Go ahead, Mr. Robinson.
13                    MR. ROBINSON:  Thank you, Your Honor.
14          BY MR. ROBINSON:
15          Q    Didn't that attitude change?
16          A    Did we look at trying to resolve the matter after
17          Mr. Gillikin testified, the answer is yes.
18          Q    Didn't Mr. Gillikin, in fact, shift the momentum,
19          your own witness off the whole point of your smirk which
20          accompanied your contextual statement that you weren't
21          paying anything, correct?
22                    MS. MCLAUGHLIN:  Your Honor, I want to
23          place an objection to the form of the question, Your
24          Honor.  He's now assuming facts that are not in evidence.
25                    THE COURT:  The question you might want to
```

*   *   *

114

1     rephrase.  I'll sustain it as to the form only.  It's --

2     it's hard for me to understanding exactly what your

3     question is.

4     BY MR. ROBINSON:

5     Q    What was it, Mr. Seward, about Mr. Gillikin's

6     testimony that made you change your mind?  Made your

7     clients change their mind?

8                    MS. MCLAUGHLIN:  Your Honor, I'm objecting

9     because I think this goes to work product and also

10    possibly attorney/client privilege.

11                   THE COURT:  Really?

12                   MS. MCLAUGHLIN:  Pardon me?

13                   THE COURT:  Really?  Overruled.  I don't

14    see it.  Again, this is within the scope of what the

15    defense brought about.

16    BY MR. ROBINSON:

17    Q    What was it, Mr. Seward, that Mr. Gillikin said that

18    made you change your mind?

19    A    Sir, --

20                   THE COURT:  It would be "change interest

21    in resolving the case."

22    BY MR. ROBINSON:

23    Q    Change interest in resolving this case?

24    A    Mr. Gillikin's testimony was not the only thing that

25    -- if you're suggesting that Mr. Gillikin's testimony was

*   *   *

1    the one and only event that took place to cause us to

2    change our mind, you're mistaken.

3    Q   I didn't ask you that.  I asked you; what was it

4    about Mr. Gillikin's testimony.  I didn't ask you about

5    the other stuff.

6             THE COURT:  You know what, go ahead and

7    make your objection.

8             MS. MCLAUGHLIN:  All right.  Object to the

9    form of the question.  He's assuming facts that are not

10    evidence.  Assuming that Mr. Gillikin's testimony --

11             THE COURT:  I don't know if you can go

12    into what's in his mind.

13             MR. ROBINSON:  And I'm not, Your Honor.

14    I'm just going to the --

15             THE COURT:  Because then it may --

16             MR. ROBINSON:  Mr. Gillikin did offer

17    testimony --

18             THE COURT:  I know.  Are you trying to

19    establish a timeline or what?

20             MR. ROBINSON:  Yes.

21    BY MR. ROBINSON:

22    Q   At the point in time that you decided to take

23    seriously --

24             THE COURT:  Gentlemen, all right.  No

25    smirks, no smiles, no nodding the heads, okay?

*   *   *

1                     DEFENDANT WARNER:  Who are you talking to?

2                     THE COURT:  I'm talking to both of you.

3          Go ahead.

4                     This is a serious proceeding.  At least

5          I'm taking it seriously.

6                     DEFENDANT WARNER:  I coughed.

7                     THE COURT:  Excuse me, sir.  That's not

8          what I observed.

9                     You may go ahead.

10                    MR. ROBINSON:  Thank you, Your Honor.

11         BY MR. ROBINSON:

12         Q    As far as the time line is concerned, it was after

13         Mr. Gillikin's testimony that it was the first time you

14         ever really entertained resolving this case, correct?

15         A    Absolutely not.

16         Q    That's the first time you ever revealed it to me,

17         how's that?  Correct?  You and I had no discussions about

18         resolution of this case other than that first day of

19         trial when I asked you did you have something to offer,

20         correct?

21         A    I recall you saying the first day of trial words to

22         the effect, "Are we going to settle this case?"  And I

23         recall indicating in some fashion that my clients were

24         not going to be offering the money that you wanted.  I

25         don't recall any other discussions until after following

                              *   *   *

                                                              117

```
 1          --
 2     Q     After Mr. Gillikin's testimony.
 3     A     -- the Friday that we did not have trial.
 4     Q     After Mr. Gillikin's testimony is the first time
 5     that you ever hinted to me the possibility of resolving
 6     this case; isn't that correct?
 7     A     That may be true.
 8     Q     You never had any discussion with me about not
 9     making disparaging comments about your clients either,
10     did you, with regard to any of the negotiations that we
11     had on August the 19th, 2009, correct?
12     A     Oh, I disagree with that vehemently.
13     Q     You never had any discussions with me any time prior
14     to that about not disparaging -- making disparaging
15     remarks about your client and that somehow being
16     attendant to resolution of this case; did you?
17     A     No, i didn't think we were going to resolve --
18     Q     Mr. Seward, you and I have had a number of cases
19     together, furthermore, haven't we?
20     A     One or two.
21     Q     Mr. Seward, you've never made any comment to me in
22     any of the cases we had that somehow my clients were --
23               THE COURT:  It's your testimony that you
24     and Mr. Robinson have only had one or two cases together?
25               THE WITNESS:  That's what comes to my
```

*   *   *

1    mind.

2                        MR. ROBINSON:  Okay.  Well, I think you're

3    a little older than I am, Mr. Seward.

4                        THE WITNESS:  Thank you.

5                        MR. ROBINSON:  We've had more than two

6    cases together, I believe.

7    BY MR. ROBINSON:

8    Q    In those two cases, Mr. Seward, you and I have never

9    had a discussion about either my clients or me not saying

10   disparaging remarks about your clients, have we?

11   A    No, I think we won both cases.

12   Q    Mr. Seward, did you speak to the jury and I speak to

13   the jury after this case was over?

14   A    We were both present and had questions with the

15   jury.

16   Q    Mr. Seward, did you ever tell me that the reason

17   that you filed the motion that you filed with regard to

18   the Rule 60 and asking that the Court set aside the

19   settlement was because of what the juror revealed to you

20   in the jury room, and that's your real motivation for all

21   of this thing; didn't you tell me that?

22   A    Oh, absolutely -- no, what I told you, David, was

23   that I didn't view the case the same way that you did and

24   that two of the jurors supported the defendants just like

25   two had supported you and the other four were undecided.

                        *   *   *

                                                              119

1       I told you that I still don't see the case the same way

2       as you do.

3       Q    Mr. Seward, you would agree with me that the

4       material term of the document that you drafted on August

5       the 19th, 2009 is the amount of money, correct?

6       A    Well, that's one of the material terms.

7       Q    Mr. Seward, who told Mr. Egan six figures?

8       A    I have no clue.

9       Q    Mr. Seward, didn't you allege in your pleading, the

10      September the 20th, 2009, that it was the plaintiffs or

11      their lawyer; didn't you do that?

12      A    It may very well be true.  I don't -- if you can

13      show it to me, I don't --

14      Q    No, you tell me you did, Mr. Seward.  You put it out

15      there, so who did it today?  This is the evidentiary

16      hearing.  Who put that out there?  Who did it?

17      A    Sir, I do not know.  That's why we're trying to find

18      out.

19      Q    All right.  And you're saying that that was a breach

20      of the agreement that was entered into on the 19th.

21      A    But that is a breach of the --

22      Q    But you can't say who made that revelation, can you?

23      A    I know who didn't.

24      Q    I'm not asking you that.

25                    THE COURT:  Answer his question.

                        *   *   *

1      BY MR. ROBINSON:

2      Q    You can't say who did it?

3      A    No, I do not know who did it.

4      Q    It could have been Mr. Warner or Mr. Gale as far as

5      you know, correct?

6      A    No.

7      Q    It could have been Ms. McClorey.  It could have

8      been.  You don't know?

9      A    I do know that it wasn't them.

10     Q    How do you know, sir?

11     A    Because I asked.

12     Q    You're assuming?

13     A    No.  Because I asked.

14     Q    You're assuming, sir.

15     A    No, because I asked.

16     Q    How do you know they're not lying?

17     A    They have no reason to lie.

18     Q    Okay.  But the point is; you don't know, do you?

19     A    I just answered that.  No, I don't know.

20     Q    Mr. Ryan's comment was not disparaging even about

21     the officers, was it?

22     A    Oh, I couldn't disagree more with you.

23     Q    Mr. Seward, you are familiar with CMDA Happenings;

24     are you not?

25     A    Our news letter, yes, I get a copy of it.

                              *   *   *

1      Q     And Anne McClorey McLaughlin; who is she?

2      A     She's my partner.

3      Q     And she wrote an article in the September 2009 On

4      Law publication from your office, correct?

5      A     I don't know.  I'd have to see it.

6      Q     Let me show it to you?

7      A     Thank you.

8      Q     Are you familiar with that document?

9      A     Am I familiar with the --

10     Q     Yeah?

11     A     -- the On Law?

12     Q     Yes, sir.  Are you familiar with it?

13     A     I know that my firm puts out every month or tries

14     to, a news letter, yes.

15     Q     Are you familiar with an article that your partner

16     wrote in the September 2009 On Law publication?

17     A     No, I didn't read it.  I'm sorry.

18     Q     Okay.  Let me help you.  Were you familiar, sir,

19     that your partner wrote an article that talked about

20     confidentiality provision must be disclosed upon FOIA

21     request?  Were you familiar with that?

22     A     No.

23     Q     Before August the 19th, 2009, aren't you familiar

24     with the fact that under FOIA, anything that you're

25     trying to keep disclosed is subject to FOIA, and the law

                        *    *    *

1        says it has to be disclosed under that law?  Are you

2        familiar with that?

3        A    I am very familiar with FOIA.  I know that there's a

4        chance that the settlement agreement can be subject to

5        disclosure and that's exactly why we have in that

6        paragraph the stuff about all you can say is the case has

7        been resolved.  There will be no disparaging comments.

8        Myself and my clients are very well aware that there's a

9        chance, maybe even a likelihood that the actual dollar

10       amount will be disclosed.  That's why we insist that

11       there be no disparaging comments.  We bought your

12       client's silence.

13       Q    Sir, you didn't come to me and say, "Dave, listen.

14       I'm going to put some money on this thing so that we buy

15       Mr. McGuire and Mr. Ryan's silence."  You didn't do that,

16       did you?

17       A    In my mind, absolutely, yes.

18       Q    Yes, in your mind, Mr. Seward.  My question is; did

19       you come to me, the lawyer that represents the two

20       plaintiffs and say that to me?

21       A    In my --

22       Q    Saying, "Mr. Robinson, I want to buy your clients'

23       silence, yes or no?"

24       A    Words to that effect, yes.

25       Q    Words to that effect where?

                              *   *   *

 1                          THE COURT:  You said "words to the effect"

 2     to Mr. Robinson that you wanted to buy his clients'

 3     silence?

 4                          THE WITNESS:  Absolutely.

 5     BY MR. ROBINSON:

 6     Q    Is that against public policy that you know of as a

 7     lawyer, Mr. Seward?

 8     A    No, I don't believe it's against public policy at

 9     all.

10     Q    Do you understand there's a First Amendment?  Do you

11     understand that?

12     A    I understand there's a First Amendment.

13     Q    Do you understand the concept of the prior

14     restraint, Mr. Seward?

15     A    Do I understand the concept of prior restraint --

16                          THE COURT:  What's the -- excuse me.

17     BY MR. ROBINSON:

18     Q    There was on gag order --

19                          MR. ROBINSON:  I'm moving on, Your Honor.

20                          THE COURT:  I'm trying to understand where

21     you're going.

22     BY MR. ROBINSON:

23     Q    Certainly, the parties did not agree that they would

24     not make disparaging comments about the officers?

25     A    I could not disagree more with you.  That is not

                              *    *    *

1       true.

2       Q     Where is it in Exhibit -- do you have it?

3       A     Yeah, Exhibit One.

4       Q     Yeah, where is it in there?

5       A     I don't know how much clearer it could be.  All

6       anyone could say is the case has been resolved.  Nothing

7       more.  The case has been resolved.  That's all they could

8       say.

9       Q     It says "if asked," doesn't it?

10      A     Yes.

11      Q     If asked what, Mr. Seward?  You drafted it.  If

12      asked what?  How are the Tigers doing?  That they can

13      only say the case has been resolved?

14      A     Any questions.

15      Q     Is it ambiguous, Mr. Seward?

16      A     Not in my mind.

17      Q     I understand it's all in your mind, Mr. Seward.

18      That's why we're here.  It's in your mind.

19      A     Is there a question.

20      Q     Mr. McGuire did not make a comment to anybody about

21      this case, did he?

22      A     I can't say that.

23      Q     In order to have breached the agreement, wouldn't

24      Mr. McGuire have had -- wouldn't you have to point to

25      something to show how he breached the agreement?

                        *   *   *

1      A     I do not believe that it's our burden to show that

2      at this point.

3      Q     Is it your burden, sir, to pay the money that you

4      agreed on behalf of your clients that you would pay?

5                    THE COURT:  Just can I understand it -- if

6      there's an agreement it's not your burden to show that

7      there was a breach; is that your position?

8                    THE WITNESS:  Pardon me?  I'm sorry.  I

9      didn't hear the Court's question.  You caught me off

10     guard.

11                   THE COURT:  Did you say that if there's an

12     agreement, it's not your burden to show that there was a

13     breach?

14                   THE WITNESS:  At this point it's not my --

15     it's my position that it's not our burden to show that

16     there was a breach.

17                   THE COURT:  Okay.

18     BY MR. ROBINSON:

19     Q     Did you not Mr. McGuire, Mr. Seward?

20     A     If you're talking about my client, I mean, I

21     personally have no obligation to pay --

22     Q     I'm sorry.  You're absolutely right.

23                   As the representative of your clients, did

24     you pay Mr. McGuire the agreed upon amount to resolve

25     this case?

                           *   *   *

1    A    My clients have not issued a settlement draft to

2    Messrs. McGuire and Ryan.

3    Q    Mr. Seward, you've settled more than one case.  How

4    long have you been a lawyer?

5    A    Which question do you want me to answer?

6    Q    Both of them.  But you answer the first one first?

7    A    The first one.

8    Q    You've settled cases before, right?

9    A    Pardon me?

10   Q    You've settled cases before, right?

11   A    Yes, sir.

12   Q    And you've been a lawyer for how long?

13   A    Since, I believe it's May 23rd, 1983.

14   Q    Okay.  And so in the course of that period of time,

15   how many cases have you settled?

16   A    I have no idea.

17   Q    And when you settled them, you settled them at

18   different points during the process of the law suit,

19   correct?

20   A    Yes.

21   Q    It may occur at settlement conference.  It may occur

22   between yourself -- a discussion between yourself and the

23   lawyer which takes place on the phone between your office

24   and his office, things like that, correct?  Right?  That

25   might be one of the scenarios?

*   *   *

1    A    Oh, absolutely.

2    Q    Okay.  And so Mr. Seward, I guess the point that I

3    want to make is that every time you settle a case, you

4    don't have a release document with you at the same time

5    where you mandate the plaintiff's lawyer, or the lawyer

6    with whom you're dealing sign it right then and there, do

7    you?

8    A    Before there is a disbursement of the settlement

9    drafts, absolutely.

10   Q    Mr. Seward, confidentiality had nothing whatsoever

11   to do with the settlement of this case.  Confidentiality

12   came attendant later, but had nothing to do with settling

13   this case, did it?

14   A    Oh, you're absolutely wrong.

15   Q    Mr. Seward, you had no discussion with David

16   Robinson, me, that says, "Mr. Robinson, confidentiality

17   is the only reason that we're settling this case."  You

18   didn't come to me and you didn't say that to me, did you?

19   A    The only reason, oh, no, of course not.

20   Q    Mr. Seward, you didn't come to me and tell me, "Mr.

21   Robinson, we are not going to settle this case unless you

22   agree to a confidentiality agreement," did you?

23   A    That's exactly what the agreement says.

24   Q    Mr. Seward, where does that agreement say that that

25   you had a conversation with David Robinson to say that

*   *   *

128

1      you're not going to settle the agreement unless it's

2      confidential.  Where does it say that?

3      A    The discussions took place when we drafted this in

4      the Court's chamber and --

5      Q    And the Court's chamber --

6      A    -- as reflects our discussion that all that a party

7      could say, or their representative whenever this case was

8      discussed, that the case has been resolved.  Nothing

9      more.

10     Q    If asked, if asked, the parties can say it's been

11     resolved if asked about what, Mr. Seward?  What are they

12     asking about?

13     A    This case.

14     Q    This case?  Does it say that in the document?  "If

15     asked about this case," does it say that?

16     A    I don't see how the language could be any clearer.

17     Q    In your mind, Mr. Seward, right?

18              MS. MCLAUGHLIN:  Your Honor, aren't we

19     being kind of repetitive here?

20              THE COURT:  I think we are.

21              MR. ROBINSON:  I'm almost done, Your

22     Honor.  If I can --

23     BY MR. ROBINSON:

24     Q    You took contracts, right?

25     A    I must have, yeah -- of course I did.

                          *    *    *

1      Q    You understand four corners, right?  Correct?

2      A    I understand that term in the context of what a

3      contract is, yes.

4      Q    You understand ambiguity, correct?

5      A    I don't know that I completely understand that.

6      Q    You think that the term -- do you think the terms

7      that makes reference to the dollar amount of the

8      settlement is ambiguous?

9      A    Oh, absolutely not.

10                     MR. ROBINSON:  I don't have anything else.

11                     THE COURT:  Okay.  Ms. McLaughlin?

12                     MS. MCLAUGHLIN:  Thank you, Your Honor.

13                     **REDIRECT EXAMINATION**

14     BY MS. MCLAUGHLIN:

15     Q    Mr. Seward, the affidavit that Mr. Robinson showed

16     you earlier, you indicated was signed on August 31st; is

17     that right?

18     A    That's what the date of it is.

19     Q    Okay.  That was 12 days or so after August 19th when

20     that agreement was signed, true.

21     A    Yep.

22     Q    Was your -- did you review that affidavit before you

23     testified today?

24     A    No.

25     Q    Was your recollection better then or is it better

                          *   *   *

1     now about what took place?

2                     MR. ROBINSON:  Object to the form of the

3     question, Your Honor.  Leading.

4                     THE COURT:  That's not -- "was your" is

5     not a leading question.

6                     Go ahead.

7                     MS. MCLAUGHLIN:  Thank you, Your Honor.

8     BY MS. MCLAUGHLIN:

9     Q    Can you answer the question?  I presume, because

10    right now I don't recall -- I wish we had that yellow

11    piece of paper, so I could take a look at it.

12                    THE COURT:  I think Ms. McLaughlin asked

13    you whether or not your recollection is better today or

14    was it better at the time you execute the affidavit.

15                    THE WITNESS:  I am presuming that my

16    recollection was better in August.

17    BY MS. MCLAUGHLIN:

18    Q    And if the affidavit says that you drafted language

19    of a preliminary agreement, that language doesn't say

20    that you drafted the entire agreement?

21                    MR. ROBINSON:  Objection as to form --

22                    THE COURT:  Got to let her finish the

23    question.

24                    You know, I didn't hear the end of the

25    question.

*  *  *

131

1                    MS. MCLAUGHLIN:  I said that language

2       doesn't say that you drafted the entire agreement, does

3       it.

4                    MR. ROBINSON:  That's a leading question.

5                    MS. MCLAUGHLIN:  I'll rephrase, Your

6       Honor.

7                    THE COURT:  I'll allow it.

8                    MS. MCLAUGHLIN:  Oh, thank you.

9                    THE WITNESS:  That certainly is the intent

10      of the affidavit.  And I'm not trying to say anything

11      different today.

12      BY MS. MCLAUGHLIN:

13      Q    Mr. Robinson also mentioned the article that

14      appeared in our firm's news letter a couple of months ago

15      regarding the Freedom of Information Act and its effect

16      on confidential settlements.  You've heard him refer to

17      that and representing that I wrote that article.  Do you

18      have any disagreement with the fact that the terms of a

19      settlement involving a public entity, such as the City of

20      Royal Oak, may become public under the Freedom of

21      Information Act?

22                    THE COURT:  Are you asking him if he

23      disagrees with what's contained in the article that he

24      didn't read?

25                    MS. MCLAUGHLIN:  I'll rephrase.  Thank

                         *    *    *

1    you.

2    BY MS. MCLAUGHLIN:

3    Q    Is it your understanding that the Freedom of

4    Information Act may require disclosure of terms of

5    settlement involving a public entity?

6    A    There's certainly an argument can be made and

7    there's been some success that settlement agreements are

8    producible or disclosed pursuant to the Freedom of

9    Information Act, yes, I am well aware of that.

10   Q    Okay.  And did you know that when you entered into

11   the settlement agreement in this case?

12   A    Oh, absolutely.

13   Q    And did that knowledge have any effect on the

14   language that appeared in Exhibit One, the agreement?

15   A    Absolutely.

16   Q    And what effect did it have?

17   A    That's the whole point of the agreement.  We

18   recognized that there is a chance, some people think a

19   very good chance that the actual release will be

20   disclosed to the media.  That's why in this particular

21   case, because it's a hotly contested, that we require

22   that there was never going to be any admission of

23   liability by the officers and that we were -- there was

24   an agreement, an agreement that anyone who was going to

25   talk to the media, because the media had been present,

*   *   *

1      all they could say in response to media was "the case has

2      been resolved."  The last thing that anyone that I

3      expected to see is any comment at all regarding the

4      settlement.  All I expect to say is "the case has been

5      resolved."

6      Q    And that's in fact what you said?

7      A    Yes.

8      Q    And does the Freedom of Information Act apply to --

9                  THE COURT:  So you're telling the Court

10     that this release, agreement would not contain the amount

11     of the settlement?

12                 THE WITNESS:  Oh, no.  It probably -- well

13     --

14                 THE COURT:  Because you want to keep that

15     out of the public's eye?

16                 THE WITNESS:  I have tried in the past not

17     to make reference to the specific number.  I've had

18     limited success.  Whether that would have occurred or

19     not, I don't know.  I came into the -- in arriving at the

20     settlement with the thought that there's a very good

21     chance, a likelihood that the actual number would

22     ultimately be disclosed.  Even though we try --

23                 THE COURT:  So are you telling me --

24     again, I'm asking this pursuant to Rule 611 -- that this

25     release that you were contemplating preparing or

                        *   *   *

 1     whatever, would not have contained the amount of the

 2     settlement?

 3                    THE WITNESS:  What I'm saying is that I

 4     don't know for sure if it would or wouldn't.

 5                    THE COURT:  Okay.

 6                    THE WITNESS:  But it's my thought that in

 7     coming to the agreement, I had to advise my clients and

 8     it is my --

 9                    THE COURT:  Okay.  I think you answered --

10     I believe you answered my question.

11     BY MS. MCLAUGHLIN:

12     Q    Does the Freedom of Information Act prevent -- by

13     itself prevent the plaintiffs, such as in this case, who

14     settle a case from speaking with anyone publicly?

15                    MR. ROBINSON:  I apologize, Your Honor.  I

16     didn't hear the question.  I didn't understand it.

17                    THE COURT:  Could you rephrase it?

18                    MS. MCLAUGHLIN:  Sure.

19     BY MS. MCLAUGHLIN:

20     Q    Does the Freedom of Information Act apply to the

21     plaintiffs and what they might say to the media?

22     A    Not that I'm aware of.

23     Q    Without a confidentiality agreement, would you have

24     been able to prevent the plaintiffs from speaking with

25     anyone about the case?

                         *    *    *

1      A    Not that I'm aware of.

2      Q    Okay.  If the case had gone to the jury and the jury

3      had returned a verdict, would you have been able to

4      prevent the plaintiffs from discussing that in public

5      with anyone?

6      A    I'd like to think I'd try to -- if it was adverse to

7      us, I'd like to try to find some ways to, but I don't

8      think I could.

9      Q    Okay.  And the Doctrine of Prior Restraint applies

10     to the state and the government, does it not --

11                    THE COURT:  You're leading.

12                    MS. MCLAUGHLIN:  Pardon me?

13                    THE COURT:  That's a leading question.

14     BY MS. MCLAUGHLIN:

15     Q    To whom does the Doctrine of Prior Restraint apply?

16     A    To my understanding it applies only to municipal

17     entity, a law enforcement entity of some sort.  A

18     regulatory agency.

19     Q    Okay.  Does the Doctrine of Prior Restraint prevent

20     private agreements, such as a confidentiality or

21     nondisclosure agreement from being entered?

22     A    Not that I'm aware of.

23     Q    Did you settle with case with each plaintiff

24     individually or with both plaintiffs as a whole?

25     A    We made that clear that we were not going to get

                          *    *    *

```
 1     involved in deciding who got what.  We were paying a sum
 2     of money.  How it was divided was between themselves.
 3     Q    Okay.  So the --
 4                    THE COURT:  Just a second.
 5                    (Brief pause in proceedings)
 6                    THE COURT:  Okay.
 7                    THE WITNESS:  Your Honor, are we going to
 8     take a break soon.  Just because --
 9                    THE COURT:  Sure.  How about we take a
10     break right now and then we'll get back together about
11     1:15.
12                    MS. MCLAUGHLIN:  Oh, that's fine.
13                    THE COURT:  Now, any other witnesses after
14     Mr. Seward?
15                    MS. MCLAUGHLIN:  Yes, we do have a couple
16     more witnesses.
17                    THE COURT:  Who?
18                    MS. MCLAUGHLIN:  The defendants and Mr.
19     Gillam and Mr. Duffy.  But I expect their testimony to be
20     very brief.
21                    THE COURT:  I'm looking at Mr. Seward's
22     affidavit, so I would suspect their testimony would be
23     pretty brief.  But we shall see.  Okay.
24                    COURT CLERK:  Court is in recess.
25                    (Court in recess at 12:31 p.m.)

                         *    *    *
```

```
 1                              *    *    *

 2                 (Court in session at 1:38 p.m.)

 3                      COURT CLERK:  The United States District

 4      Court for the Eastern District of Michigan is back in

 5      session.  Please be seated.

 6                      The Court recalls case number 05-40185.

 7                      THE COURT:  A little bit of housekeeping.

 8      For a period of time during the lunch hour, I was working

 9      on defense's motion, I guess, to dismiss for lack of a

10      better term.  In defendants' preliminary exhibit list, --

11      strike that.

12                      Under three, you have articles printed by

13      the Windsor Star and plaintiff agreed to that motion to

14      admit those exhibits.  Of course, plaintiff states any

15      and all exhibits relied upon defendants.  And those

16      articles were part of -- I believe these articles were

17      part of your Rule 60 motion, which are reflected in

18      Exhibit One and Two of your preliminary exhibit list; is

19      that correct?

20                      MR. SEWARD:  I'm sorry.  The Rule 16 --

21                      THE COURT:  Sixty.

22                      MR. SEWARD:  Are they referenced in our

23      motion?

24                      THE COURT:  I thought they were.

25                      MR. SEWARD:  I believe they are.

                               *    *    *
```

1                          THE COURT:  Were attached, right?

2                          MR. SEWARD:  I believe they are, yes.

3                          THE COURT:  Okay.  But I guess you forgot

4          to include this article in the exhibits you gave to me --

5          I believe this was admitted -- this is the Windsor Star

6          article dated August 20th.

7                          MR. SEWARD:  May I approach?

8                          THE COURT:  I assume that the parties --

9          it was an oversight in not making that a part of Exhibit

10         -- which one is it?  I have to get my notes.  I left them

11         in chambers.

12                         (Brief pause in proceedings)

13                         THE COURT:  Is that Exhibit Two?  The

14         articles are Exhibit Two.  Is that correct, it's an

15         oversight in not attaching that to Exhibits Two or Three;

16         is that correct?

17                         MR. ROBINSON:  That's correct, Your Honor.

18                         MR. SEWARD:  I don't think it's an

19         oversight on our part, Your Honor.

20                         THE COURT:  You requested articles by the

21         Windsor Star.  You only gave me one.

22                         MR. SEWARD:  That's correct.  We gave you

23         the one we wanted to introduce, Your Honor.

24                         THE COURT:  Wasn't that article attached

25         to your Rule 60?

                              *    *    *

```
1                    MR. SEWARD:  Without --
2                    THE COURT:  I believe it was.
3                    MR. SEWARD:  I don't have that memory --
4        that good of a memory to say which ones were or weren't.
5                    THE COURT:  Okay.  I was under the
6        impression that I admitted all articles from the Windsor
7        Star.
8                    MR. ROBINSON:  Your Honor, it was attached
9        as Exhibit Seven to Mr. Seward's motion of September 2nd,
10       2009.
11                   THE COURT:  Okay.  Well, I think it's in.
12                   MR. ROBINSON:  Thank you, Your Honor.
13                   THE COURT:  Are you requesting that I
14       complete it, put it in?
15                   MR. ROBINSON:  Absolutely, Your Honor.
16                   THE COURT:  Yeah, I thought that that was
17       when you -- when the defendant requested articles, I
18       admitted what I believe was the articles under three, and
19       apparently that article was left out.
20                   MR. ROBINSON:  Correct, Your Honor.  May I
21       approach.
22                   MS. MILLER:  Thank you, Your Honor.
23                   THE COURT:  Okay.  All right.  Mr. Seward,
24       are you ready to continue and Ms. McLaughlin?
25                   MS. MCLAUGHLIN:  Yes, Your Honor.
```

*   *   *

1           THE COURT:  The Windsor Star article dated

2     August 20th, which was not attached, admitted this

3     morning needs to be attached as the August -- needs to be

4     made part of the exhibit.

5           MR. SEWARD:  Well, Your Honor, it's our

6     position that that is not part of our joint exhibits, so

7     we would suggest that you might want to mark it as

8     something other than part of -- three.

9           (Brief pause in proceedings)

10          THE COURT:  Just so the record is clear,

11    when we dealt with the admission of Exhibits Two and

12    Three, the admission of what I was understanding articles

13    from the Detroit -- sorry, from the Windsor Star, which I

14    believe on proposed Exhibit Number Three on defendants'

15    witness list, was it your understanding as well that it

16    included the August 20th article?

17          MR. ROBINSON:  I did.

18          MS. MILLER:  Yes, sir.

19          THE COURT:  And your objection is what?

20          MR. SEWARD:  We admitted the articles that

21    we wanted to introduce, Your Honor, which is the 21st

22    article from the Windsor Star.

23          THE COURT:  So you did not want articles

24    from the Windsor Star, you're telling me.  You wanted a

25    article.

                    *   *   *

1                    MR. SEWARD:  When we introduced today,

2        yes, that's correct.

3                    THE COURT:  And it's your understanding

4        that it was articles?

5                    MR. ROBINSON:  I did, Your Honor,

6        absolutely, that's what we agreed to.

7                    THE COURT:  So what is your objection to

8        the introduction of August 20 article?

9                    MR. SEWARD:  I don't know that I'm

10       objection, other than to the extent that the Court is

11       suggestive that it's a joint article.  It is not a joint

12       article.  If the Court's going to admit it, the Court's

13       going to admit it.

14                   THE COURT:  I thought it was -- I was

15       working on this case during the lunch hour break.  I

16       thought that this was part of the packet of articles from

17       the Windsor Star that I thought had been admitted.  And

18       it's your understanding as well, I take it?

19                   MR. ROBINSON:  It is, Your Honor.

20                   THE COURT:  It wasn't.  Is there an

21       objection to this article being admitted?

22                   MR. SEWARD:  Oh, no, Your Honor.

23                   THE COURT:  The only objection we have is

24       that it not be marked as a joint exhibit.

25                   THE COURT:  Oh, okay.  Any problem with

                              *    *    *

1       that?

2                       MR. ROBINSON:  No, Your Honor.

3                       THE COURT:  So shall we mark it as

4       exhibits -- there is no Plaintiffs' One and Two or three,

5       that's joint.  But we have Plaintiffs' Exhibit Four,

6       Five, and we'll make this Six; is that what you want to

7       do?

8                       MR. ROBINSON:  Yes, Your Honor.

9                       THE COURT:  Any problem?

10                      MR. SEWARD:  No, Your Honor.

11                      THE COURT:  Okay.  As we proceed, I don't

12      know if there will be any further exhibits or not, but

13      everyone make sure that what you understand is the

14      exhibit or what has been admitted is all part of the

15      exhibit that comes to me.  Okay?

16                      MR. ROBINSON:  Thank you.

17                      THE COURT:  Great.  All right.  Ms.

18      McLaughlin, you may proceed.

19                      MS. MCLAUGHLIN:  Thank you, Your Honor.

20                  **REDIRECT EXAMINATION (CONTINUED)**

21      BY MS. MCLAUGHLIN:

22      Q    Mr. Seward, when this case was resolved, was it

23      settled with the plaintiff's individually or as a whole?

24      A    Was a complete settlement.  It was --

25      Q    What do you mean by a complete settlement?

                        *   *   *

1        A    We were settling the one complaint, the one lawsuit,

2        the one case, that being McGuire and Ryan.  We were not

3        settling with each individual.  It was a total amount of

4        the settlement.  How it was going to be divided was not

5        of an issue to us.

6        Q    Okay.  And then the agreements, Exhibit One, the

7        Joint Exhibit One was signed by all the parties, all

8        attorneys and representatives for the City of Royal Oak

9        and the MMRA, correct?

10                   MR. ROBINSON:  Your Honor, I object to the

11       form of the question as leading.

12                   THE COURT:  I apologize.  Give me the

13       question again, so I make sure I --

14                   MS. MCLAUGHLIN:  I'll rephrase it, Your

15       Honor.  I'll just rephrase the question.

16                   THE COURT:  Okay.

17       BY MS. MCLAUGHLIN:

18       Q    Was it signed by the plaintiffs, the agreement,

19       Exhibit One?

20       A    Yes, the individual plaintiff's Messrs. McGuire and

21       Ryan signed it.

22       Q    Did Mr. Messrs. McGuire and Ryan's attorneys sign it

23       as well?

24       A    I know Mr. Robinson did.  I don't know if Ms. Racine

25       Miller did.  Thank you.  Well, I'll just go through it.

                          *   *   *

1       The signatures are Mr. McGuire, Mr. Ryan, Mr. Warner, Mr.

2       Gale, Mr. Robinson, Ms. Miller, Mr. Gillam, Mr. Duffy,

3       myself, and it has the initials of our Judge.

4       Q    Okay.  And the agreement was -- strike that.  Was

5       everyone who signed the agreement bound by the agreement?

6       A    That's certainly my belief.

7       Q    Okay.  And did any party's representatives do

8       anything to breach that agreement?

9       A    Well, yes --

10                   MR. ROBINSON:  Your Honor, I would just

11      object to the form.  The agreement he's asking for, she's

12      asking for opinion testimony.

13                   THE COURT:  His objection is opinion.

14                   MS. MCLAUGHLIN:  Mr. Seward is an

15      attorney, Your Honor.  He's qualified to render a legal

16      opinion.  He's testified he's been a lawyer since 1983,

17      which makes him practicing about 26 years.  I think he's

18      qualified to answer a legal question.  I think the same

19      objection was made earlier and --

20                   THE COURT:  Okay.

21                   MS. MCLAUGHLIN:  -- you overruled --

22                   THE COURT:  Go ahead.

23                   MS. MCLAUGHLIN:  Thank you, Your Honor.

24      BY MS. MCLAUGHLIN:

25      Q    Mr. Seward?

                         *    *    *

1    A    I'm sorry.  My mind was racing.  Your question is?

2    Q    The question was; did any party's representative do

3    anything to breach the agreement?

4    A    Yes.

5    Q    And what was that?

6    A    Well, the party representative is Mr. Robinson's

7    statement both in the Detroit News and then subsequently

8    the Windsor Star.

9    Q    Okay.  And what is the effect of the breach of the

10   agreement by a party's representative?

11   A    Well, there's really no incentive for us to --

12                MR. ROBINSON:  Your Honor, I object to the

13   foundation --

14                THE COURT:  I don't know that he can

15   answer that one I don't know there's foundation.  And

16   ultimately, I think that's up to the trier of fact.

17   BY MS. MCLAUGHLIN:

18   Q    All right.  Now, Mr. Robinson asked you on

19   cross-examination about what went into the decision to

20   resolve the case --

21                THE COURT:  And you know, that's outside

22   the scope of the cross-examination.

23                MS. MCLAUGHLIN:  I'm sorry.  This is

24   redirect, Your Honor.

25                THE COURT:  I know it is.  It's outside

*   *   *

1        the scope.

2                     MS. MCLAUGHLIN:  It's outside the scope of

3        his cross-exam.

4                     THE COURT:  Anything that was brought up

5        during the course of Mr. Robinsons' cross-examination of

6        your client.  This issue was not touched upon by Mr.

7        Robinson during the course of his cross-examination.

8                     MS. MCLAUGHLIN:  With all due respect,

9        Your Honor, he examined Mr. Seward extensively about the

10       factors that went into the decisions to settle and

11       specifically referring to Mr. Gillikin's testimony.

12                    THE COURT:  But he didn't go into issues

13       of his opinion.

14                    MS. MCLAUGHLIN:  But he talked about Mr.

15       Gillikin's testimony.

16                    THE COURT:  I know.  I'm aware.  But the

17       last couple question, I think, were outside the scope.

18                    MS. MCLAUGHLIN:  Okay.  I'm sorry, Your

19       Honor.  Just so I understand, are you referring to the

20       questions I just asked?  Or are you referring to -- and

21       that Mr. Seward answered?  Or are you referring to the

22       ones that I asked about the --

23                    THE COURT:  Why don't we just ask the

24       question.

25                    MS. MCLAUGHLIN:  Okay.

                              *    *    *

1      BY MS. MCLAUGHLIN:

2      Q    On cross-examination Mr. Robinson asked you about

3      factors and timing of when more earnest settlement

4      negotiations took place.  Do you recall that line of

5      questioning?

6      A    Yes.  Yes, I do.

7      Q    Okay.  And he asked you about whether Mr. Gillikin's

8      testimony was an influential factor in the decision to

9      settle the case; do you recall that question?

10     A    Yes, I do.

11     Q    And was Mr. Gillikin's testimony the only factor in

12     the decision to initiate or re-initiate any settlement

13     discussions?

14                   MR. ROBINSON:  Just object to the form of

15     the question, Your Honor.

16                   THE COURT:  What's wrong with the form?

17                   MR. ROBINSON:  I think it's leading.

18                   THE COURT:  If that's your objection,

19     overruled.

20                   MS. MCLAUGHLIN:  Thank you, Your Honor.

21                   THE WITNESS:  No, it wasn't the only

22     reason.  There had been thoughts expressed well before

23     that about whether we should settle or not.

24     BY MS. MCLAUGHLIN:

25     Q    Okay.  And so those other thoughts arose before Mr.

                          *   *   *

1        Gillikin testified?

2        A    Oh, absolutely.

3        Q    Now, earlier on -- also on cross-exam, you testified

4        that it's not our burden to show a breach; what did you

5        mean by that?

6        A    Well, I mean, the Court's already ruled against us

7        on our motion to set aside the settlement agreement.  I

8        have to respect that, and I do.  Now, the Court's granted

9        plaintiffs' motion, and that's why we're here.  So it' my

10       position plaintiff has the burden of going forward.

11                   THE COURT:  How -- I don't understand your

12       question.  What's relevant to the issues extant?  You're

13       asking a procedural issue that I already dealt with.

14                   MS. MCLAUGHLIN:  I realize that, Your

15       Honor.  But I was referring to an issue that Mr. Robinson

16       raised on his cross-examination, and a question that the

17       Court had for Mr. Seward during that time as well.

18       BY MS. MCLAUGHLIN:

19       Q    Mr. Seward, what was the consideration for the

20       amount of money that was to be paid to the plaintiffs as

21       a result of the settlement.  A number of elements of the

22       consideration.  Obviously the first is that the trial

23       would not go forward, the case would be dismissed.  There

24       would be no appeals by any party.  That there would be a

25       subsequent agreement outlining the terms of the

                          *   *   *

1    confidentiality agreement.  That we wouldn't see this

2    case in the newspaper.  And that we would, you know, once

3    they signed that release and that confidentiality

4    agreement that we would then, though my office, forward

5    my clients' check or checks to the plaintiffs' counsel to

6    bring it to an end.

7    Q    Okay.  Why was the language in the settlement

8    agreement "if asked" -- I'm quoting, "If asked, all

9    anyone can say is case has been resolved."  Why was that

10   put in there?

11   A    Well, it was because we had reached an agreement.

12   We talked to the Court about it in the jury chambers.

13   There was the discussions about the confidentiality.  As

14   soon as I walked out, I see plaintiffs' group around Mr.

15   Egan.  I'm upset because I think there's games being

16   played, that while we already told them what was going to

17   go on, I wanted to talk to the Court.  When we got into

18   chambers, we had the discussion about what could be said,

19   and Ms. Miller asked that question, "Well, can we say

20   it's been resolved in plaintiffs' favor," I'm thinking to

21   myself, "They've already disclosed it to the media."  And

22   then when Mr. Robinson says, "Of course," I at that

23   point, there was no reason to settle.  I was then assured

24   --

25                    THE COURT:  Can I please have a question

                        *   *   *

                                                            150

```
1     and answer format?
2                     MS. MCLAUGHLIN:  Oh, yes.  Yes.  Well, I
3     asked him why that clause was put in.  He was explaining
4     the circumstances.
5     BY MS. MCLAUGHLIN:
6     Q    But what other factors, if any, went into the
7     decision to put that language into the agreement?
8                     MR. ROBINSON:  Your Honor, this has
9     certainly been gone into on direct and it is a bit beyond
10    my cross.
11                    MS. MCLAUGHLIN:  I think that this is at
12    the heart of the case, Your Honor.  And Mr. Robinson
13    asked him what that term meant, and specifically --
14                    THE COURT:  It seems -- we seem to be
15    going over what you brought out in direct.  And I'm
16    looking at my notes from the cross-examination and I --
17    maybe one could argue that it was touched upon during the
18    cross-examination, but you're just going over again what
19    was occurring during -- what he had to say during his
20    direct examination.  So I mean, and I'm getting narrative
21    answers.  So go ahead.
22                    MS. MCLAUGHLIN:  Thank you, Your Honor.
23                    MR. SEWARD:  Am I allowed to finish the
24    answer or no?
25                    THE COURT:  Go ahead and ask the question.
```

                          *   *   *

1    BY MS. MCLAUGHLIN:

2    Q    I believe the question was; were there any other

3    factors other than what you just mentioned that went into

4    the decision to put that language in the agreement?

5    A    Yes, there were other factors.

6    Q    And what were they?

7    A    Well, when Mr. Robinson indicated that no one had

8    said anything to the media an assured me that nothing

9    would be said along those lines, then I felt comfortable,

10   so that was clear to everybody, because there was media

11   attention.  No misunderstanding.  All you could say was

12   the case was resolved.

13   Q    Okay.  Speaking of the media attention.  Going back

14   to the Detroit News article, when you indicated that you

15   read it, where did you read it?  In the paper?  The

16   newspaper itself or did you read it in the on-line

17   version?

18   A    On the on-line version.

19   Q    And what did you do then?

20   A    Well --

21             MR. ROBINSON:  Your Honor, this is

22   definitely beyond the scope of my cross.

23             THE COURT:  Yes.

24             MS. MCLAUGHLIN:  Your Honor, if I may.  An

25   exhibit has been introduced as part of the record that

*  *  *

1      was not previously introduced when I first examined Mr.

2      Seward and when Mr. Robinson did his cross-examination

3      that has bearing on the issues here.

4                    THE COURT:  Okay.  Well, and I mean, I

5      thought it has been introduced and forgotten to be

6      attached.

7                    MS. MCLAUGHLIN:  I appreciate that, Your

8      Honor.  But it was our intention to introduce --

9                    THE COURT:  So you want to ask him about

10     that particular article?

11                   MS. MCLAUGHLIN:  Well, I want to ask him

12     about timing related to that article.

13                   THE COURT:  Okay.  Go ahead.

14                   MS. MCLAUGHLIN:  All right.  Thank you.

15     BY MS. MCLAUGHLIN:

16     Q    Mr. Seward, I'm going to show you Exhibit Two.

17     A    Thank you.

18     Q    Is that a copy of the article that your read

19     on-line?

20     A    It certainly appears to be, yes.

21     Q    From the Detroit News, correct?

22     A    Yes.

23     Q    All right.  And that was authored by Paul Egan?

24     A    That's what it says.

25     Q    And when you read that article, the on-line version,

                         *   *   *

153

```
1     did you do anything with respect to that article?

2     A     Well, yes.  First of all, I ran a Google search to

3     find out who it was disseminated.  Was it just the

4     Oakland version or whatever.  And was it in any other

5     papers, because --

6                         THE COURT:  How is this relevant?

7                         MS. MCLAUGHLIN:  Your Honor, as I said,

8     it's relevant to the issues that were raised during Mr.

9     Ryan's testimony as well as --

10                        THE COURT:  Exactly what?  Relevant to

11    what?

12                        MS. MCLAUGHLIN:  The timing of the article

13    -- of this article as well as the timing of the --

14                        THE COURT:  Let me finish.

15                        MS. MCLAUGHLIN:  I'm sorry.

16                        THE COURT:  So he sees the article.  He

17    runs a Google search.  How is this possibly relevant to

18    the issues that I have in front of me; was there an

19    agreement, was the agreement breached?

20                        MS. MCLAUGHLIN:  Well, it does go to the

21    breach of the agreement, Your Honor.

22                        THE COURT:  How?

23                        MS. MCLAUGHLIN:  Mr. Ryan testified that

24    his interview with the Windsor Star was after the Detroit

25    News article was published.
```

                              *   *   *

1                      THE COURT:  Okay.

2                      MS. MCLAUGHLIN:  And the article in the

3          Windsor Star that we had jointly agreed on is dated

4          August 21st.  The one that Your Honor raised after the

5          lunch break is apparently dated August 20th.  That's the

6          plaintiff's exhibit, number, I think it's Six.  So the

7          issue of the timing I think here is relevant to the

8          breach.

9                      THE COURT:  Okay.

10         BY MS. MCLAUGHLIN:

11         Q    Mr. Seward?

12         A    Okay.  Yes, and there had not been -- I did not find

13         any articles other than the Detroit News article when I

14         did my internet search in the morning.

15         Q    And then did you do any other searches related to

16         that article?

17         A    Yes.  Every day I did the same search to see how

18         widely it was dispersed.  And on Saturday, I came across

19         the Windsor Star article.

20         Q    Okay.  And that was after you had already done a

21         search that revealed that nothing had been done.  But

22         then at some point after that you found an article that

23         mentioned the settlement in the Windsor Star?

24         A    That's correct.

25                     MS. MCLAUGHLIN:  I believe that's all the

                              *    *    *

1    questions I have, Your Honor.

2               THE COURT:  Mr. Robinson, any questions?

3               MR. ROBINSON:  I don't think so, Your

4    Honor.

5               THE COURT:  Okay.  Mr. Seward, thank you

6    very much.

7               THE WITNESS:  Thank you.

8               THE COURT:  Okay.  Next witness.

9               MR. SEWARD:  Your Honor, at this time we

10   would call James Duffy to the stand.

11              THE COURT:  All right.  Mr. Duffy.

12        **JAMES E. DUFFY, DEFENDANTS' WITNESS, SWORN**

13                    **DIRECT EXAMINATION**

14   BY MR. SEWARD:

15   Q    Do you mind telling us your name?

16   A    James E. Duffy.

17   Q    And you're employed by whom?

18   A    MMRA.

19   Q    And is the MMRA a self-insurance program for

20   Michigan municipal entities?

21   A    Correct.

22   Q    And you are assigned as the claims adjustor for this

23   particular case?

24   A    Correct.

25   Q    Were you present during Wednesday, August 18th, 2009

                        *   *   *

1     where settlement discussions were had?

2     A    Yes, I was.

3     Q    And there was an agreement -- at least there was an

4     agreement to resolve this case?

5     A    Correct.

6     Q    Would you have issued settlement drafts based upon

7     only the agreement number one?

8     A    No.

9                     MR. SEWARD:  I have no other questions --

10    oh.

11    BY MR. SEWARD:

12    Q    Did you ever talk to the media?

13    A    No.

14                    MR. SEWARD:  No other questions.

15                    THE COURT:  Okay.  Mr. Robinson, any

16    questions?

                          **CROSS-EXAMINATION**

17

18    BY MR. ROBINSON:

19    Q    Mr. Duffy, you read the agreement before you signed

20    it, correct.

21    A    Correct.

22    Q    And you didn't go back and ask Mr. Seward to add any

23    other language either, did you?

24    A    No, sir.

25    Q    Okay.  And -- I'm sorry.  You're not a lawyer,

                              *   *   *

```
 1      correct?

 2      A    No, sir.

 3      Q    Okay.  But you had a concern about the

 4      confidentiality and so forth and so on?

 5      A    Mr. Seward's concern.

 6      Q    I'm sorry.  Sir, I'm talking about your concern?

 7      A    My concern was to settle the case.

 8      Q    Did you have a concern about the confidentiality?

 9      A    Yes.

10      Q    Yes or no?

11      A    Yes.

12      Q    Okay.  And what did you discuss with Mr. Seward

13      about that?

14                MR. SEWARD:  I think that I have to object

15      based upon the attorney/client privilege, Your Honor.

16                MR. ROBINSON:  I'll change it.

17      BY MR. ROBINSON:

18      Q    Did you -- were you satisfied with the language that

19      Mr. Seward had drafted, weren't you?

20      A    For what?

21      Q    In the agreement?  You were satisfied with it,

22      right?

23      A    As an on-the-spot agreement, yes.

24      Q    As an on-the-spot agreement?

25      A    Yes.
```

                        *   *   *

```
 1      Q    What does that mean "on-the-agreement"?

 2      A    That means we drafted the agreement on-the-spot when

 3      we had concluded negotiations.

 4      Q    Suggesting something may have been left out?

 5      A    Well, there's no release.

 6      Q    Right?

 7      A    There's no confidentiality agreement.

 8      Q    Okay.  And again, you didn't have a part in that

 9      drafting that document, right?

10      A    No, sir.

11      Q    Mr. Seward did, right?

12      A    That's correct.

13      Q    Did I?

14      A    I have no idea.

15      Q    Quick question.  You just said that you would not

16      have issued a check on that agreement.  Didn't you just

17      say that?

18      A    Correct.

19      Q    On August 19th, 2009 after you signed it, it was

20      your intent to issue a check, correct?

21      A    There's some paperwork that has to happen and I have

22      to have a release that's going to be coming to me.

23      Q    Was the case -- and that was a release, correct?

24      A    What was a release?  I had no release.

25      Q    Okay.  Listen to my question.  What you're making
```

*    *    *

1    reference to is a document that's going to come later?

2    A    That's correct.

3    Q    And isn't that sort of characteristically how it

4    happens; you settle a case and then the release comes

5    later?

6    A    Yes.

7    Q    Because as far as the document is concerned, the

8    case was settled on August the 19th, 2009, right?

9    A     In my mind?

10   Q    The case was settled, sir?  The parties had not been

11   released.

12   A    Correct.

13   Q    But the case was settled?

14   A    Well, there two -- I can answer your question.  I

15   can say two things.

16   Q    No.  The case was settled on the 19th and the

17   release was to come later?

18   A    That's correct.

19                   MR. ROBINSON:  Nothing else.

20                   THE COURT:  Okay.  Anything else?

21                   **REDIRECT EXAMINATION**

22   BY MR. SEWARD:

23   Q    When you say the case was settled --

24                   THE COURT:  I would note that in your

25   witness list that you filed, I asked for the proposed

                         *    *    *

1    testimony and this testimony that you solicited from this

2    witness is beyond what you indicated to the Court you

3    were going to be inquiring.  And what was represented to

4    me on the record earlier, that I thought his testimony

5    was going to be merely on the issue that he did not

6    disclose the terms of the settlement to anyone.

7              MR. SEWARD:  That's true.  That's what we

8    put in our preliminary witness list.  Yes.

9              THE COURT:  James Duffy, he did not

10   discuss with any media person regarding the six-figure

11   settlement.

12             MR. SEWARD:  That's correct.

13             THE COURT:  Okay.  What do you want to ask

14   him?

15   BY MR. SEWARD:

16   Q    Sir, you were -- when you say the case was settled,

17   does that mean that you would have issued checks without

18   any other paperwork?

19   A    No.

20             MR. SEWARD:  That's it.  Thank you, Your

21   Honor.

22             THE COURT:  Anything else?  Mr. Robinson?

23             MR. ROBINSON:  No, Your Honor.

24             THE COURT:  Okay.  Thank you.

25             All right.  Next witness?

                    *   *   *

1              MR. SEWARD:  David Gillam, Your Honor.

2        **DAVID W. GILLAM, DEFENDANTS' WITNESS, SWORN**

3                    **DIRECT EXAMINATION**

4    BY MR. SEWARD:

5    Q    Do you mind telling us your name?

6    A    David Gillam, last name G-i-l-l-a-m, as in Mary.

7    Q    How are you employed?

8    A    I'm the city attorney for the City of Royal Oak.

9    Q    And how long have you been the city attorney?

10   A    In-house approximately three years.  For

11   approximately a year before that, I did on an out-house

12   basis when I was with the firm of Secrest Wardle.

13   Q    Were you ever employed by the city before that?

14   A    And then in the 1990s for a period of roughly seven

15   and-a-half years, I was the deputy city attorney for the

16   City of Royal Oak.

17   Q    Can you explain to the Judge how a case involving

18   the City of Royal Oak is settled.  Just the mechanical

19   steps, what you have to go through?

20              MR. ROBINSON:  Your Honor, I object on the

21   basis of Mr. Seward's preliminary witness list and the

22   limitations of this witness, what his testimony would be.

23              THE COURT:  What's the relevance?

24              MR. SEWARD:  The relevance -- well, we're

25   getting to the relevance that --

                    *   *   *

1           THE COURT:  Well, you're going to have to

2     show me the relevance.  I have here "David Gillam,

3     expected testimony, he did not have discussions with any

4     media person regarding six figure settlement.  He will

5     also testify as to the necessity of a confidentiality

6     agreement."

7           MR. SEWARD:  And that's exactly where

8     we're going with it, Your Honor, that the necessity for a

9     confidentiality agreement --

10          THE COURT:  Well, then go directly to it.

11          MR. SEWARD:  Okay.

12    BY MR. SEWARD:

13    Q    To approve this settlement, does it have to be

14    approved by the city counsel?

15    A    Yes.  City commission, that's correct.

16    Q    I'm sorry.  The city commission.  In regards to this

17    particular case, was there a need for a confidentiality

18    agreement?

19    A    In my opinion, yes, to the full extent possible

20    under the law.

21    Q    What do you mean by that?

22    A    Well, there's been earlier testimony today about the

23    Freedom of Information Act.  If there was a settlement

24    and release agreement that was generated as part of this

25    case --

*   *   *

1              THE COURT:  How is this relevant to; was

2        there agreement, what were the material terms of the

3        agreement and was there a breach?

4              MR. SEWARD:  It goes to what were the

5        material terms of the agreement are, Your Honor.  In the

6        second paragraph it says that one can -- "If asked, all

7        that one can say is the case is resolved."  And then the

8        next sentence talks about confidentiality agreement, and

9        that's a material fact, that's a material factor that

10       prompts us to settle the case.

11             THE COURT:  Did he participate in any

12       settlement negotiations?

13             MR. SEWARD:  Yes, he did.

14             THE COURT:  Your affidavit.  "The only

15       parties present during those negotiations were Judge Cox,

16       Plaintiffs' Attorneys David A. Robinson, Racine Miller

17       and myself."

18             MR. SEWARD:  In chambers, absolutely,

19       that's a correct statement.

20             THE COURT:  Did he participate in

21       negotiations with Mr. Robinson and Ms. Miller?

22             MR. SEWARD:  Through the Court, absolutely

23       yes.

24             THE COURT:  I don't see where his

25       testimony is relevant.  He did not negotiate any terms of

*  *  *

1          the purported agreement with plaintiffs' counsel.

2                          MR. SEWARD:  He expressed his request, his

3          desire, his need to have a confidentiality agreement in

4          that jury room and the Court was present.

5                          THE COURT:  Did he express that to Mr.

6          Robinson and Ms. Miller that -- did he request

7          confidentiality agreement or discuss that issue at all

8          with him, with them?

9                          MR. SEWARD:  I do not know.

10                          THE COURT:  You don't?

11                          MR. SEWARD:  No, I never asked him that

12         question.  I have no reason to believe he did.

13                          THE COURT:  Well, ask him that question.

14         BY MR. SEWARD:

15         Q    Did you discuss the terms of the confidentiality

16         agreement with Ms. Miller or Mr. Robinson?

17         A    No, I did not.

18                          THE COURT:  Did you negotiate the terms of

19         the settlement at all with Mr. Robinson or Ms. Miller?

20                          THE WITNESS:  I haven't had any dealings

21         directly with either Mr. Robinson or Ms. Miller.  I've

22         had discussion with Mr. Seward about settlement.

23                          THE COURT:  So the answer to the question

24         that I asked you is what?

25                          THE WITNESS:  The answer to the question

                              *    *    *

                                                            165

1          is to the conversation with Mr. Robinson and Ms. Miller,

2          the answer is no, Your Honor.

3                          THE COURT:  Very good.

4          BY MR. SEWARD:

5          Q    Now, is it a material requirement for the city to

6          have a confidentiality agreement?

7          A    Yes.

8                          MR. SEWARD:  The Court is shaking his head

9          no?

10                         THE COURT:  What's the relevance?

11                         MR. SEWARD:  The Court's opinion asked

12         whether the material --

13                         THE COURT:  The relevance is what the

14         agreement was.

15                         MR. SEWARD:  I understand that and --

16                         THE COURT:  And he didn't negotiate the

17         agreement.

18                         MR. SEWARD:  Well, Your Honor, I guess we

19         don't agree as to that.  He did negotiate.  He's

20         indicated his requirements.  How else can we get out what

21         is material to us unless we get it through the testimony.

22         The Court seems to be tying our hands trying not to have

23         that come in.

24                         THE COURT:  That's your characterization

25         of it.

                              *   *   *

```
 1                    MR. SEWARD:  Yes, that's true.
 2                    THE COURT:  I think his testimony based
 3        upon what information provided with right now is
 4        irrelevant.  The parties negotiated the settlement
 5        through counsel.  He was not part of any of these
 6        settlement negotiations.
 7                    MR. SEWARD:  Your Honor, I have to make
 8        yet another motion to recuse yourself.  You've indicated
 9        a bias against my clients that appear to that --
10                    THE COURT:  Mr. Seward --
11                    MR. SEWARD:  Well, can I make my motion,
12        Your Honor?
13                    THE COURT:  Not right now.
14                    MR. SEWARD:  Will I be allowed to at some
15        point?
16                    THE COURT:  You've made another motion to
17        recuse.
18                    MR. SEWARD:  Well, I'd like the basis,
19        because it's different than what we've done in the past.
20                    THE COURT:  You can file a written motion.
21                    MR. SEWARD:  Okay.  Thank you.
22        BY MR. SEWARD:
23        Q    Have you had a chance to review Exhibit One?
24        A    Not today, but previously, yes.
25        Q    Have you seen the newspaper article, the Detroit
```

                         *   *   *

1     News?

2     A     Yes.

3     Q     Do you believe that that's a material breach of the

4     agreement?

5     A     In my opinion, yes.

6     Q     And why is that?

7                    MR. ROBINSON:  I would say that that's a

8     question for the Court.

9                    THE COURT:  I will decide that issue.

10                   MR. SEWARD:  I made that same objection

11    with Mr. Ryan and the Court overruled me on that one, so

12    I thought it was fair game.

13                   THE COURT:  You can ask him if he thought

14    there was a breach.  Go ahead, ask the question.

15    BY MR. SEWARD:

16    Q     Do you think there was a breach?

17    A     In my opinion, yes.

18    Q     Explain your answer, please.

19    A     Could I refer to the exhibit, Mr. Seward?

20    Q     Yes.

21    A     Thank you.  The first sentence of the second

22    paragraph, "If asked, all anyone can say is the case has

23    been resolved."  In my opinion the statements that

24    appeared in both the news article and the Windsor Star

25    articles are contrary to the language, that part of the

                          *   *   *

1       agreement.  In fact, I received a telephone call from --

2                   THE COURT:  Sir, you're a lawyer?

3                   THE WITNESS:  Yes, sir.

4                   THE COURT:  And you've practiced for how

5       many years?

6                   THE WITNESS:  Twenty-three years, Your

7       Honor, the same as Mr. Robinson.

8                   THE COURT:  And so in fact, "I received a

9       telephone call," were you going to tell me, discuss what

10      someone said in a telephone call to you?

11                  MR. SEWARD:  Oh, Your Honor, I would

12      suggest when I asked him to explain why he thinks that, I

13      would not offer it for the truth of the matter asserted,

14      Your Honor.

15                  THE COURT:  Excuse me.  Are you getting

16      ready to make some sort of hearsay statement.

17                  THE WITNESS:  Your Honor, what I was --

18                  THE COURT:  Just answer the question

19      specifically, okay?

20      BY MR. SEWARD:

21      Q    Okay.  Can you explain why you believe that was a

22      breach?

23      A    I think the statements that appeared in the

24      newspaper articles go far above and beyond the statement

25      that the case has been resolved.

                        *    *    *

1      Q    Okay.  What was your understanding of what the

2      settlement -- what was the benefit to the city in

3      settling this case?  What was it from your perspective as

4      representative of the city expecting out of this?  What's

5      the value to the city?

6      A    Well, I mean, it's -- I mean, you have the value of

7      a known settlement as opposed to a potentially unknown

8      jury verdict.  But above and beyond that, one of the

9      benefits would have been to the fullest extent

10     permissible under law would be to limit the disclosure of

11     the terms of the settlement and to eliminate or minimize

12     any comments related to that settlement.

13     Q    Why is that important?

14     A    From my perspective as a city attorney, the decision

15     to settle this case was a business decision.  The city,

16     through the city commission, city administrators --

17                    THE COURT:  Okay.  What's the relevance of

18     this?

19                    MR. SEWARD:  It goes to what is material.

20     The Court --

21                    THE COURT:  It's not relevant.  His

22     testimony right now is not relevant to the issues extant.

23     Okay.

24     BY MR. SEWARD:

25     Q    What is the material terms for this city?

*    *    *

170

1        A    In this agreement?

2                    THE COURT:  What are the material terms

3        for the city?

4                    MR. SEWARD:  Correct.  For the defendants.

5                    THE WITNESS:  In this particular

6        agreement?

7                    MR. SEWARD:  Yes.

8                    THE WITNESS:  Well, I think three.  Number

9        one is the total amount of the settlement.  Number two is

10       the statement that I had referenced previously.  If

11       asked, all anyone can say is the case has been resolved.

12       And then number three, the reference in the following

13       sentence to a subsequent agreement which would set forth

14       the specific terms of a confidential agreement.

15       BY MR. SEWARD:

16       Q    Why are those last two important to the defendants?

17       A    As I indicated before, the settlement in this case

18       was a business decision on the part of the city.  And in

19       the course of everyday activities, the city, through the

20       city commission, city administrator --

21                    MR. ROBINSON:  Your Honor, I'm going to

22       object again.

23                    THE COURT:  Yes, absolutely.  I'm going to

24       strike that testimony.

25       BY MR. SEWARD:

                         *    *    *

1     Q    What's important to the defendants?  Whose actual

2     money is this?

3                    THE COURT:  To show that -- what's

4     material issue -- what are the material terms, Your

5     Honor.

6                    THE COURT:  Did I miss something in his

7     anticipated testimony?  "He will testify as to the

8     necessity of the confidentiality agreement."  Nothing

9     about him testifying about the material terms of any

10    agreement or breach thereof.

11                   MR. SEWARD:  I'm confused, Your Honor.

12    Your opinion says that those are the issues that are

13    present --

14                   THE COURT:  See, one of the reasons why we

15    do this, send out these orders is so we will know who is

16    going to testifying, what they can -- what they plan on

17    testifying to for the evidentiary hearing that you

18    requested.

19                   MR. SEWARD:  Okay.

20    BY MR. SEWARD:

21    Q    Why is there a necessity for the confidentiality

22    agreement; can you explain that, please?

23    A    To the fullest extent possible under the law we

24    would like to be able to limit comments which are going

25    to add fuel to second-guessing of the city's decision.

                         *   *   *

1      We're going to be second-guessed anyway.  We are on a

2      regular basis for any decision that's made.  And as part

3      of a settlement to the fullest extent possible, again, we

4      would like to be able to limit any comments that are

5      going to call the city's judgment into question.

6                      MR. SEWARD:  Thank you.

7                      THE COURT:  Okay.  Any questions?

8                      MR. ROBINSON:  Just briefly, Your Honor.

9                      **CROSS-EXAMINATION**

10     BY MR. ROBINSON:

11     Q    Mr. Gillam --

12     A    Gillam, correct.

13     Q    You read the article in the Windsor Star, did you

14     not?

15     A    Yes, I --

16     Q    Both dates?

17     A    I don't know if I've seen the second one or not, to

18     be honest.  I know I have seen the one.

19     Q    You are aware of the person by the name of Chief

20     Jenke*, is it?

21     A    Jenke, the Police chief, yes, I am.

22     Q    Okay.  You're aware that Chief Jenke also made

23     comments in the Windsor Star, correct?

24     A    Again, I've seen the one article from the News and

25     I've heard that there were comments in the other article.

                         *   *   *

                                                          173

1      Yes.  I believe you, yes.

2      Q    He asked you a direct question.  Could you give him

3      a direct answer?

4      A    I'm sorry, Mr. Robinson.  I'm not trying to avoid --

5      could you repeat the question for me?

6      Q    You're aware that Chief Jenke made comments about

7      this case in the Windsor Star on both the 20th and the

8      21st, correct?

9      A    Yes, I have that information, yes.

10     Q    And from your analysis of Mr. Ryan's comment to the

11     Detroit News and to the Windsor Star, you would have to

12     agree that Chief Jenke's comments in your estimation

13     would have gone outside the scope of what you hold in

14     your hand there, Exhibit One, correct?

15               MR. SEWARD:  I don't know that's he's

16     established a foundation that he knows the specific words

17     of Chief Jenke.

18               MR. ROBINSON:  I would be happy to show

19     him, Your Honor.

20               THE COURT:  Did you read the articles?

21               THE WITNESS:  I know I've seen one of the

22     two Windsor articles.  I don't know if I've seen the

23     second one.  And I did see the Detroit News article, yes.

24     BY MR. ROBINSON:

25     Q    Would you like to see the other article?

                         *   *   *

                                                        174

```
 1        A     It would help me answer your question, yes.
 2                        MR. ROBINSON:  May I, Your Honor?
 3                        THE COURT:  Sure.
 4                        THE WITNESS:  This appears to be pretty
 5        much the same quotations that appeared in the News
 6        article, so I can't say for sure.  If you could show me
 7        the other one, then I could tell you for sure.
 8        BY MR. ROBINSON:
 9        Q     Just with respect, do you see anything in the
10        article attributable to Chief Jenke?
11        A     Yes, sir.
12        Q     Okay.  And is that the article that you did see and
13        read?
14        A     Again, I don't remember if I saw and read this.  The
15        comments look familiar, but I don't now if it's from this
16        article or from the Detroit News article.
17        Q     Are they comments attributable to Chief Jenke in
18        what it is that you have before you?
19        A     Yes, sir.
20        Q     And again, I'd ask you the question; apparently in
21        your estimation the comments of Chief Jenke would also go
22        outside of the scope of agreement number one, correct?
23        A     Yes.
24        Q     And you understand -- you talked about the
25        confidentiality and its relationship to the City of Royal
```

*   *   *

1          Oak.  Sir, you are familiar with ordinance number 2009,

2          an ordinance to establish standards of conduct for all

3          elected and appointed city officials?

4                    MR. SEWARD:  Object to the relevancy, Your

5          Honor.

6                    THE COURT:  What's the relevancy?

7                    MR. ROBINSON:  Mr. Seward, again, has

8          offered this witness to talk about --

9                    THE COURT:  All right.  We'll stop at this

10         point.  I'll see everyone up in Flint tomorrow at 8:00 in

11         the morning.  Everyone that's been called as a witness,

12         must be present just in case the plaintiff may want

13         rebuttal.

14                    MR. SEWARD:  May I ask that Mr. Duffy be

15         excused?

16                    THE COURT:  No.

17                    MR. ROBINSON:  Mr. Seward, -- apparently,

18         I got a text from my office that Mr. Seward has served my

19         office with a subpoena for Mr. McGuire.  Mr. McGuire is

20         in Alberta, Canada.

21                    THE COURT:  Right.

22                    MR. ROBINSON:  It would be virtually

23         impossible for Mr. McGuire to be here, unless, of course,

24         Mr. Seward wants to fly him here at his expense.

25         Certainly there was no reasonable notice, as it were, to

                              *   *   *

1    have Mr. McGuire here by way of subpoena.

2                    THE COURT:  Do you want to fly him in at

3    your expense?

4                    MR. SEWARD:  Absolutely not.  We were

5    relying upon plaintiffs' witness list that says number

6    one, Timothy McGuire would be present at his hearing.

7    Likewise, on our witness list we put in that we expected

8    Mr. McGuire to be here.  So it's not coming as any

9    surprise.

10                   THE COURT:  Okay.  The second thing is

11   your motion to disqualify is based upon what?

12                   MR. SEWARD:  What I just was making?

13                   THE COURT:  Right.

14                   MR. SEWARD:  Yes.  Okay.  455(b)(1)(A).

15   Your Honor has shown some -- a clear bias against the

16   defendants.  First of all, the Court took it upon itself

17   to do plaintiffs work and find --

18                   THE COURT:  Fifty-five one five (b), what?

19                   MR. SEWARD:  455(b)--

20                   MS. MCLAUGHLIN:  28 U.S.C. 455(b)(1)

21                   THE COURT:  Okay.  Give it to me again.

22                   MS. MCLAUGHLIN:  Sorry.  28 U.S.C. 455

23   (b)(1)

24                   THE COURT:  Okay.  Just give me a minute.

25                   (Court in recess at 2:35 p.m.)

                          *   *   *

177

```
 1                    (Court in session at 2:36 p.m.)
 2                    THE COURT:  All right.  I've got 455 in
 3          front of me, (b)(1).  Specifically, what is your
 4          contention?
 5                    MR. SEWARD:  Our contention is that the
 6          Court has not been impartial and has shown that the Court
 7          has not been impartial.  The Court has taken it upon
 8          itself --
 9                    THE COURT:  Specifically, how?
10                    MR. SEWARD:  First of all, by finding the
11          article from the Windsor Star that's dated August 20th, I
12          believe, when it had not been admitted by anyone and had
13          not been objections -- it's clear to the defendants --
14                    THE COURT:  How else?
15                    MR. SEWARD:  Second of all, it's in
16          restricting the defendants' cross-examination -- or the
17          questioning of Dave Gillam and myself in regards to what
18          the terms are and so forth.  The Court seems to apply two
19          different standards; one for the plaintiff where it's
20          wide open and anything can be brought it.  And then as to
21          the defendants any time that holds against what appears
22          to be the Court's preconceived decision, the Court will
23          find ways to not allow it in.
24                    THE COURT:  And specifically, anything
25          else?  Specifically.
```

                           *    *    *

1                MR. SEWARD:  As of today, that is it.

2                THE COURT:  Your motion is denied.  It has

3     no basis.  Again, another motion to disqualify to recuse,

4     no basis.  Another attempt to delay this proceeding, the

5     resolution of this case.

6                All right.  Everybody -- I'm ordering Mr.

7     Duffy, Mr. Warner, Gale, Gillam at the Flint courthouse

8     tomorrow no later than 8:00 tomorrow morning.  Okay?

9                MR. ROBINSON:  Your Honor, are you

10    including Mr. Ryan?

11               THE COURT:  I thought I said Mr. Ryan.

12               MR. ROBINSON:  You didn't but --

13               THE COURT:  I thought I did.  All right.

14    Everyone that was here today, 8:00 tomorrow morning in

15    Flint.  Are you anticipating -- am I going to see some

16    motions filed in the middle of the night?

17               MS. MILLER:  Not from us, Your Honor.

18               MR. SEWARD:  We have to discuss that, Your

19    Honor.

20               THE COURT:  Well, I hope they won't be

21    frivolous or go over that which has already been covered.

22    Because if it is, then you're looking at sanctions.  All

23    right?  Severe sanctions.  All right.  See everyone up

24    tomorrow morning, Flint.

25               And defendants -- after Mr. Gillam, it's

                         *   *   *

1    my understanding it's Mr. Warner and Mr. Gale; is that

2    correct?

3                      MR. SEWARD:  And Mr. McGuire.

4                      THE COURT:  We'll see about Mr. McGuire.

5    And what is the anticipated testimony again of Mr. Gale

6    and Mr. Warner?

7                      MR. SEWARD:  That they did not disclosure

8    "six-figure settlement."

9                      THE COURT:  Okay.  That's what's been

10   represented to me, I thought by Ms. McLaughlin earlier

11   before we broke for lunch as well as what's on your

12   witness list.

13                      Okay.  Thank you.

14              (Court in recess at 2:40 p.m.)

15                      *    *    *

16

17

18

19

20

21

22

23

24

25

                        *    *    *

**$**

**$40** [1]  16/22

**'**

**'09** [1]  109/21

**-**

**-v** [1]  1/6

**0**

**05-40185** [3]  1/6 4/9 138/6

**1**

**12** [4]  1/12 2/3 4/2 130/19
**12:30** [2]  76/23 77/3
**12:31** [1]  137/25
**13** [1]  112/10
**13th** [4]  93/22 93/23 94/3 94/8
**16** [1]  138/20
**18th** [3]  33/5 62/20 156/25
**1983** [3]  93/10 127/13 145/16
**1986** [1]  83/3
**1990s** [1]  162/14
**19th** [29]  9/3 11/1 11/21 20/7 21/9 21/24
22/22 23/3 47/6 47/11 64/8 68/21 83/17
84/5 88/19 91/21 92/13 94/1 96/1 110/1
112/10 118/11 120/5 120/20 122/23
130/19 159/19 160/8 160/16
**1:15** [2]  77/5 137/11
**1:38** [1]  138/2

**2**

**20** [1]  142/8
**2009** [29]  1/12 2/3 4/2 9/13 20/8 21/9
21/25 22/23 23/3 33/5 47/6 47/12 68/21
84/5 88/20 91/21 92/13 110/1 118/11
120/5 120/10 122/3 122/16 122/23
140/10 156/25 159/19 160/8 176/1
**20th** [8]  9/12 120/10 139/6 141/2 141/16
155/5 174/7 178/11
**21** [1]  9/13
**21st** [3]  141/21 155/4 174/8
**231** [2]  1/11 1/19
**23rd** [1]  127/13
**257** [2]  1/10 1/19
**26** [1]  145/17
**28** [2]  177/20 177/22
**2:30** [2]  76/24 77/6
**2:35** [1]  177/25
**2:36** [1]  178/1
**2:40** [1]  180/14
**2nd** [1]  140/9

**3**

**31st** [2]  112/9 130/16

**4**

**40185** [3]  1/6 4/9 138/6
**45** [4]  5/10 16/12 16/15 16/16
**455** [5]  177/14 177/19 177/20 177/22
178/2
**48226** [2]  1/11 1/20

**5**

**50** [6]  52/21 52/22 59/14 59/17 59/17
59/18

**6**

**60** [3]  119/18 138/17 139/25
**611** [6]  37/11 40/19 43/4 43/14 103/5
134/24

**8**

**8:00** [7]  77/1 77/9 96/5 96/7 176/10

179/8 179/14
**8:30** [1]  96/6

**A**

**a.m** [1]  4/3
**abide** [1]  91/24
**abided** [2]  22/15 22/21
**able** [6]  15/11 84/9 135/24 136/3 172/24
173/4
**about** [151]  4/3 5/9 9/25 10/21 10/23
11/1 11/19 12/4 21/17 21/22 22/10
22/12 30/17 30/23 32/8 31/13 31/24
32/8 33/13 33/19 34/21 34/23 35/2
35/17 36/10 36/21 36/24 37/8 37/9
37/22 37/22 38/7 38/7 38/10 38/18
38/25 39/1 39/8 39/10 39/18 40/7 40/7
41/18 41/25 42/3 42/5 42/6 42/17 43/2
43/18 46/12 46/16 46/17 48/7 53/14
54/7 54/8 55/13 65/12 70/25 71/8 74/11
74/14 75/13 76/24 77/5 79/13 79/21
80/11 80/14 81/5 81/7 82/6 82/12 83/24
83/25 93/16 94/6 94/22 95/8 95/11
96/23 97/4 97/20 97/24 98/17 98/22
99/7 99/19 100/7 100/8 103/3 104/19
105/7 106/13 107/18 108/15 109/6
110/22 113/21 114/10 115/5 115/15
116/4 116/4 117/17 118/8 118/9 118/14
118/15 119/9 119/10 121/20 122/19
123/6 124/24 125/20 126/20 129/11
129/12 129/15 131/1 135/25 137/9
137/10 145/17 146/19 147/9 147/14
147/22 148/2 148/7 148/23 150/12
150/13 150/18 153/9 153/12 158/3
158/6 158/8 158/13 163/22 164/8
165/22 172/9 172/9 174/6 175/24 176/8
180/4
**above** [2]  169/24 170/8
**absolutely** [40]  9/5 15/17 18/10 37/13
48/11 51/24 51/25 55/21 59/25 73/20
92/12 95/24 97/3 104/8 105/21 105/23
107/16 108/7 109/10 110/17 111/10
112/22 117/15 119/22 123/17 124/4
126/22 128/1 128/9 128/14 130/9
133/12 133/15 140/15 142/6 149/2
164/18 164/22 177/23 177/4
**acceptable** [2]  79/20 113/17
**accompanied** [1]  114/20
**accurately** [4]  34/15 34/18 35/4 35/13
**acknowledged** [6]  50/23 54/25
**across** [1]  155/18
**act** [10]  99/8 108/2 132/15 132/21 133/4
133/9 134/8 135/12 135/20 163/23
**activities** [1]  171/19
**actual** [6]  82/17 99/9 123/9 133/19
134/21 172/1
**actually** [4]  13/25 19/3 35/23 103/25
**add** [2]  157/22 172/25
**addition** [3]  39/2 40/8 42/10
**additional** [1]  42/3
**addressed** [1]  74/5
**adequately** [1]  51/2
**adjusted** [1]  77/2
**adjustor** [1]  156/22
**administrator** [3]  13/25 14/1 171/20
**administrators** [1]  170/16
**admissible** [1]  54/19
**admission** [6]  92/18 97/24 98/10 133/22
141/11 141/12
**admit** [3]  138/14 142/12 142/13
**admitted** [21]  6/8 7/11 8/14 9/23 25/21
29/24 54/9 55/15 56/15 99/4 99/14
112/8 139/5 140/6 140/18 141/2 141/20
142/17 142/21 143/14 178/12
**advance** [1]  65/15
**adverse** [1]  136/6

**advise** [1]  135/7
**advisement** [1]  60/1
**affidavit** [14]  109/5 109/20 109/22 111/4
112/9 112/14 112/19 130/13 130/15 130/22
131/14 131/18 132/10 137/22 164/14
**after** [37]  17/25 21/9 33/17 45/23 48/18
55/1 58/18 63/18 64/3 70/24 76/23
79/13 91/9 94/6 94/8 94/9 95/1 99/18
100/15 101/16 102/10 106/25 112/10
114/16 117/12 117/25 118/2 118/4
119/13 130/19 137/13 154/24 155/4
155/20 155/22 159/19 179/25
**afternoon** [2]  33/18 68/22
**afterwards** [1]  84/7
**again** [30]  11/6 11/24 17/23 26/7 32/17
37/15 49/5 60/7 60/10 80/9 80/10 87/19
88/21 94/19 98/7 105/3 115/14 134/24
144/13 151/18 159/8 171/22 173/3
173/24 175/14 175/20 176/7 177/21
179/3 180/5
**against** [7]  20/8 124/6 124/8 149/6
167/9 177/15 178/21
**agency** [1]  136/18
**ago** [2]  5/10 132/14
**agree** [40]  9/2 9/16 9/20 30/8 30/12
62/14 65/1 70/3 72/12 72/16 73/8 73/21
79/25 83/11 86/1 86/7 86/18 86/25 87/3
87/7 87/11 87/15 88/3 88/8 89/11 89/15
89/15 89/21 90/16 90/18 90/19 90/21
91/3 101/13 101/14 120/3 124/23
128/22 166/19 174/12
**agreeable** [5]  60/9 60/16 61/3 61/6
61/11
**agreed** [10]  5/16 64/10 87/22 88/18
109/5 126/4 126/24 138/13 142/6 155/3
**agreeement** [1]  6/7
**agreement** [233]
**agreement's** [1]  59/1
**agreements** [4]  83/8 133/7 136/20 144/6
**ahead** [16]  24/12 34/17 37/18 57/24
63/15 105/2 114/12 116/6 117/3 117/9
131/6 145/22 151/21 151/25 153/13
168/14
**al** [2]  1/4 1/7
**Alberta** [1]  176/20
**all** [122]  5/11 6/4 7/7 7/12 10/9 12/1
12/21 13/10 13/17 18/7 19/15 24/14
25/1 25/4 25/5 27/3 27/7 28/14 28/24
30/9 40/22 41/15 42/18 46/2 47/15 49/1
49/10 49/21 50/17 50/21 51/4 52/18
54/15 55/5 56/4 57/24 58/4 58/17 60/6
61/16 63/15 64/24 65/14 65/15 67/16
69/4 69/7 69/20 72/19 72/20 72/20
74/18 75/11 76/5 76/19 83/11 83/14
86/1 89/11 89/17 90/7 92/5 93/16 97/14
98/16 101/10 101/12 102/7 102/20
105/17 106/13 106/14 107/8 107/11
108/3 108/14 108/24 116/8 116/24
119/20 120/19 123/6 124/9 125/5 125/7
125/17 129/6 134/1 134/3 134/4 138/15
140/6 140/23 143/14 143/17 144/7
144/7 146/18 147/8 150/8 152/11
153/14 153/23 154/2 155/25 156/11
161/25 164/6 165/7 165/19 168/22
171/11 176/2 176/9 177/16 178/2
178/10 178/15 179/6 179/13 179/22
179/23
**allegation** [8]  23/18 23/19 23/24 24/2
24/4 24/7 45/16 49/7
**allegations** [2]  51/15 54/16
**allege** [1]  120/9
**allow** [4]  40/19 107/25 132/7 178/23
**allowed** [2]  151/23 167/14
**allows** [3]  7/4 7/5 85/23
**almost** [1]  129/21

# A

2:05-cv-40185-SFC-SDP  Doc # 12  Filed 12/13/06  Pg 213 of 230

**along [2]** 108/3 152/3
**already [21]** 10/7 10/9 11/7 12/8 14/2 31/16 41/22 45/13 45/14 46/20 46/21 55/2 58/23 67/21 87/14 149/6 149/13 150/16 150/21 155/20 179/21
**also [15]** 12/14 28/5 39/11 42/9 46/10 46/11 79/24 81/3 105/24 115/9 132/13 149/3 163/5 173/22 175/21
**alternatives [1]** 66/25
**although [4]** 29/24 51/14 52/12 54/15
**always [3]** 93/21 97/5 99/11
**am [21]** 5/5 14/11 30/21 30/22 50/6 50/12 50/15 52/3 68/19 70/17 75/17 79/2 98/21 119/3 122/9 123/3 131/15 133/9 151/23 173/21 179/15
**ambiguity [1]** 130/4
**ambiguous [2]** 125/15 130/8
**amendment [5]** 84/8 84/10 84/21 124/10 124/12
**among [1]** 102/22
**amount [43]** 13/12 21/8 21/10 21/17 22/8 22/13 23/5 24/3 29/16 47/8 47/18 47/21 48/2 48/4 57/18 57/19 58/2 58/3 75/13 76/4 76/7 83/22 84/1 84/2 84/13 85/5 86/14 91/25 96/23 99/10 103/13 104/21 105/9 108/11 120/5 123/10 126/24 130/7 134/10 135/1 144/3 149/20 171/9
**amounts [4]** 7/25 8/2 13/9 13/11
**analysis [1]** 174/10
**and-a-half [1]** 162/15
**and/or [5]** 71/2 87/17 92/17 94/13 101/18
**ANN [1]** 1/16
**Anne [2]** 4/22 122/1
**another [6]** 67/7 86/15 167/8 167/16 179/3 179/4
**answer [30]** 23/23 31/9 32/1 36/4 40/2 67/8 87/23 89/6 90/10 90/10 90/11 100/13 111/15 114/17 120/25 127/5 127/6 131/9 145/18 146/15 151/1 151/24 160/14 165/23 165/25 166/2 168/18 169/18 174/3 175/1
**answered [6]** 36/2 110/14 121/19 135/9 135/10 147/21
**answering [1]** 98/19
**answers [2]** 37/9 151/21
**Anthony [2]** 77/18 77/19
**anticipate [1]** 108/24
**anticipated [2]** 172/7 180/5
**anticipating [1]** 179/15
**any [133]** 5/20 5/21 8/21 8/21 9/15 11/2 11/23 14/13 14/22 14/24 15/15 16/1 16/2 18/17 21/9 21/24 22/25 23/2 23/5 23/18 24/2 28/1 35/23 43/5 43/12 45/17 45/17 45/23 46/2 48/9 49/4 49/5 51/12 51/15 51/22 52/19 52/19 54/19 55/25 56/1 56/12 56/20 57/8 57/10 58/14 59/25 62/9 62/11 63/11 65/16 66/17 66/17 66/17 70/7 70/9 70/10 71/24 72/2 72/3 72/6 74/5 74/8 75/18 76/12 80/11 80/24 82/6 84/6 84/17 86/16 90/19 92/7 94/21 95/7 97/8 97/9 97/24 98/9 99/1 99/2 99/3 99/3 99/12 104/19 105/7 108/8 109/9 112/18 113/7 117/25 118/8 118/10 118/13 118/13 118/21 118/22 125/14 129/16 132/18 133/13 133/22 134/3 137/13 138/14 142/25 143/9 143/12 145/7 146/2 148/12 149/24 151/6 152/2 154/4 155/13 155/15 156/2 157/15 157/22 161/10 161/18 163/3 164/11 164/25 165/20 167/5 170/12 172/9 173/2 173/4 173/7 177/8 178/21

**anybody [9]** 21/10 22/10 22/13 24/18 45/16 72/3 80/20 106/13 125/20
**anyone [26]** 22/11 24/3 28/14 28/24 30/9 47/15 49/21 50/21 55/19 70/8 74/18 75/11 76/5 105/17 107/13 125/6 133/24 134/2 135/14 135/25 136/5 150/9 161/6 168/22 171/11 178/12
**anyone's [2]** 28/5 84/20
**anything [39]** 21/17 22/7 22/12 23/11 35/1 42/18 48/8 48/8 49/8 55/22 57/13 58/15 71/4 72/9 80/20 80/23 81/7 88/6 90/14 91/25 92/6 107/10 107/24 110/22 113/16 113/19 114/21 122/24 130/10 132/10 145/8 146/3 147/4 152/8 154/1 160/20 161/22 175/9 178/20 178/24
**anyway [1]** 173/1
**anywhere [2]** 23/19 57/12
**apologize [9]** 20/8 25/24 34/8 49/23 50/8 53/6 81/14 135/15 144/20
**apology [13]** 35/18 36/10 37/8 38/17 39/1 39/12 39/15 40/6 40/9 42/1 42/13 42/16 48/8
**apostrophe [1]** 32/3
**apparent [1]** 57/14
**apparently [10]** 10/25 13/19 140/19 155/5 175/20 176/17
**appeals [1]** 149/24
**appear [3]** 10/19 16/2 167/9
**appearance [2]** 18/19 99/1
**appearances [2]** 1/13 4/11
**appeared [5]** 132/14 133/14 168/24 169/23 175/5
**appearing [5]** 1/14 1/17 4/14 4/17 4/22
**appears [3]** 153/20 175/24 178/21
**applies [3]** 52/24 136/9 136/16
**apply [4]** 134/8 135/20 136/15 178/18
**appointed [1]** 176/3
**appreciate [2]** 88/21 153/7
**approach [8]** 11/17 13/4 18/14 27/8 72/25 109/14 139/7 140/21
**approached [1]** 14/17
**appropriate [3]** 59/18 64/23 106/23
**approve [1]** 163/13
**approved [1]** 163/14
**approximately [2]** 162/10 162/11
**are [101]** 5/1 5/25 6/1 6/4 9/15 9/23 9/24 10/9 10/11 10/23 14/6 15/5 18/22 19/8 23/16 25/20 26/11 38/2 39/14 40/13 41/6 44/21 49/20 50/13 50/19 51/15 51/21 51/22 52/1 52/16 54/6 54/21 55/5 57/20 60/21 66/14 66/25 67/6 68/18 70/14 77/2 81/11 81/11 81/17 83/11 85/1 88/7 92/25 93/6 111/3 113/20 114/24 116/9 116/18 117/1 117/22 121/23 121/24 122/8 122/12 122/15 123/1 123/8 125/12 128/21 129/11 129/20 132/22 133/7 134/23 137/7 138/17 138/22 138/25 139/2 139/14 140/13 140/24 145/1 147/19 147/20 147/21 156/22 162/7 164/6 165/11 168/22 175/17 176/22 176/22 178/19 179/15 175/17 178/18 179/9 179/15
**aren't [2]** 122/23 129/18
**arguably [1]** 50/2
**argue [1]** 151/17
**arguing [1]** 36/2
**argument [9]** 49/19 50/9 54/2 55/8 56/3 56/25 57/1 89/3 133/6
**arguments [1]** 53/25
**arise [1]** 93/18
**arose [2]** 97/1 148/25
**around [6]** 45/3 45/6 45/10 88/9 95/1 150/14
**arriving [1]** 134/19

**article [58]** 9/11 9/14 29/8 30/2 31/17 34/13 35/13 46/7 48/18 55/6 57/23 53/24 122/3 122/15 122/19 132/13 132/17 132/23 139/4 139/6 139/24 140/17 141/1 141/16 141/22 141/25 142/8 142/11 142/12 142/21 152/14 153/10 153/12 153/18 153/25 154/1 154/12 154/13 154/16 154/25 155/2 155/13 155/16 155/19 155/22 167/25 168/24 173/13 173/24 173/25 174/24 174/25 175/6 175/10 175/12 175/16 175/16 178/11
**articles [26]** 5/23 5/23 5/25 6/2 106/16 106/20 107/17 107/18 138/12 138/16 138/16 139/14 139/20 140/6 140/17 140/18 141/12 141/20 141/23 142/4 142/16 155/13 168/25 169/24 174/20 174/22
**as [152]** 7/5 10/8 10/11 11/2 12/2 12/21 13/14 13/14 13/22 13/22 14/22 15/4 15/22 15/25 16/2 20/24 21/15 21/21 22/4 23/17 24/7 26/11 29/5 33/9 36/5 40/24 40/25 41/6 41/9 42/20 43/12 46/13 50/13 50/18 52/15 54/5 54/24 55/4 55/18 56/14 56/25 57/15 57/16 57/17 58/4 58/21 58/22 59/5 59/6 59/20 59/20 59/21 59/21 60/2 60/22 63/8 63/24 65/1 65/11 65/23 66/1 66/8 66/11 66/12 66/17 74/2 74/13 76/10 81/24 82/9 83/22 84/3 84/4 84/13 85/4 85/7 86/22 87/19 89/1 92/12 95/10 97/2 97/12 97/23 98/9 102/2 102/2 103/12 109/18 110/15 112/4 112/7 112/14 113/6 115/1 117/12 117/12 120/2 121/4 121/4 124/6 126/23 129/6 131/21 132/19 135/13 136/20 136/24 140/19 141/3 141/7 141/15 142/18 142/24 143/3 143/11 143/23 144/11 144/23 149/17 149/20 150/13 150/14 152/25 154/7 154/9 154/9 154/13 154/13 156/22 158/23 158/24 160/7 160/7 162/6 163/5 163/24 166/19 169/7 170/3 170/7 170/14 171/17 172/7 173/2 176/11 176/25 177/8 178/20 179/1 180/11 180/11
**aside [3]** 44/18 119/18 149/7
**ask [36]** 6/7 29/13 30/4 31/8 38/2 38/10 39/13 40/21 41/10 41/17 41/21 41/23 43/3 43/13 43/17 49/4 52/8 67/16 78/8 80/9 90/6 103/1 113/6 116/3 116/4 147/23 151/25 153/9 153/11 157/22 161/13 165/13 168/13 168/14 175/20 176/14
**asked [79]** 14/20 23/21 28/14 28/24 30/9 30/25 31/13 31/15 34/22 35/4 35/6 35/8 36/5 38/13 42/1 46/19 47/7 47/8 47/15 47/17 47/21 49/21 50/20 64/9 74/18 75/9 75/13 76/5 83/25 84/1 84/20 88/14 88/22 89/23 90/2 90/4 90/21 95/16 99/6 100/7 102/11 103/25 105/17 106/13 108/13 112/12 113/6 116/3 117/19 121/11 121/13 121/15 125/9 125/11 125/12 129/10 129/10 129/11 129/15 131/12 146/18 147/20 147/22 148/2 148/7 150/8 150/9 151/3 151/13 160/25 164/6 165/11 165/24 166/11 168/22 171/11 174/12 175/17 178/18 179/9 175/17 178/18 179/9 175/17 178/18 179/15

**asking [27]** 16/14 17/8 17/11 32/2 35/25 38/7 39/14 39/16 39/19 40/13 40/15 40/20 43/1 46/16 52/21 62/16 67/24 90/7 90/7 119/18 120/24 129/12 132/22 134/24 145/11 145/12 149/13
**aspect [1]** 72/6
**asserted [1]** 169/13
**assigned [1]** 156/22
**associated [1]** 107/13

**A**

**assume** [2] 61/17 139/8
**assuming** [7] 17/17 60/14 114/24 116/9 116/10 121/12 121/14
**assured** [2] 150/23 152/8
**at** [102] 4/3 7/3 7/4 7/10 13/8 13/9 13/20 14/4 14/12 16/1 16/1 16/19 20/13 21/9 33/12 33/16 34/3 34/18 37/14 42/18 45/22 49/11 52/7 55/18 58/25 59/14 61/9 64/19 66/16 66/25 68/24 69/2 70/10 74/5 76/23 77/1 77/3 77/4 77/9 78/1 78/4 79/10 84/6 86/3 94/4 94/21 94/23 95/6 95/19 96/13 96/19 96/22 97/1 97/11 99/6 101/5 101/9 101/12 101/17 102/13 102/25 104/9 108/24 109/4 111/24 113/5 113/23 114/16 116/22 117/4 124/8 126/2 126/14 127/17 127/21 128/4 131/11 131/14 134/3 134/19 137/21 137/25 138/2 150/22 151/11 151/16 155/22 156/9 157/3 165/7 165/19 167/14 176/9 176/10 176/24 177/2 177/6 177/25 178/1 179/7 179/22 180/14
**attached** [6] 139/1 139/24 140/8 141/2 141/3 153/6
**attaching** [1] 139/15
**attempt** [2] 83/13 179/4
**attempted** [1] 41/23
**attendant** [2] 118/16 128/12
**attention** [7] 15/10 20/14 33/4 62/4 79/3 152/11 152/13
**attitude** [2] 114/7 114/15
**attorney** [13] 75/16 79/1 83/2 93/6 96/14 104/15 115/10 145/15 158/15 162/8 162/9 162/15 179/10
**attorney/client** [2] 115/10 158/15
**attorneys** [10] 14/13 20/19 33/24 71/4 74/9 74/14 95/15 144/8 144/22 164/16
**attributable** [2] 175/10 175/17
**attribute** [1] 29/10
**August** [39] 9/3 9/12 9/13 11/1 11/21 20/7 21/9 21/24 22/22 23/3 33/5 47/6 47/11 68/21 84/5 88/19 91/21 92/13 93/14 93/22 110/1 112/9 118/11 120/4 122/23 130/16 130/19 131/16 139/6 141/2 141/3 141/16 142/8 155/4 155/5 156/25 159/19 160/8 178/11
**authored** [1] 153/23
**authority** [4] 59/16 63/5 66/13 96/15
**automatically** [1] 79/17
**available** [3] 66/25 67/6 76/24
**avoid** [1] 174/4
**aware** [11] 70/14 70/17 123/8 133/9 135/22 136/1 136/22 147/16 173/19 173/22 174/6
**away** [1] 45/15

**B**

**back** [23] 8/9 13/10 18/13 27/22 29/14 33/4 47/8 47/17 64/17 72/20 76/6 77/4 84/1 88/22 89/2 90/1 91/10 96/18 98/17 137/10 138/4 152/13 157/22
**bandy** [1] 41/18
**based** [14] 11/11 52/2 52/8 52/9 60/5 60/7 60/10 61/11 63/4 114/3 157/6 158/15 167/2 177/11
**basis** [8] 8/15 46/18 162/12 162/21 167/18 173/2 179/3 179/4
**be** [189]
**bear** [1] 11/8
**bearing** [1] 153/3
**became** [1] 93/21
**because** [53] 7/1 8/17 10/6 12/7 12/8 15/3 22/3 25/13 26/2 27/22 36/21 36/25

**both** [16] 13/21 20/14 23/7 47/20 62/19 100/1 100/11 117/19 161/11 19/14 127/6 136/24 146/7 168/24 173/16 174/7
**bothering** [3] 78/10 78/11 78/13
**bought** [1] 123/11
**bound** [1] 145/5
**breach** [39] 43/10 43/15 49/16 50/3 50/3 51/1 52/15 54/1 54/13 55/2 55/4 57/1 58/12 58/23 58/23 59/3 59/4 59/20 59/22 76/12 106/9 108/2 120/19 120/21 126/7 126/13 126/16 145/8 146/3 146/9 149/4 154/21 155/8 164/3 168/3 168/14 168/16 169/22 172/10
**breached** [9] 41/7 49/7 52/17 57/2 59/2 90/18 125/23 125/25 154/19
**break** [9] 19/13 51/18 65/5 72/19 77/3 137/8 137/10 142/15 155/5
**breaking** [1] 76/23
**brief** [13] 5/14 19/14 19/25 51/19 59/15 65/7 94/23 103/19 137/5 137/20 137/23 139/12 141/9
**briefed** [1] 56/10
**briefly** [2] 46/4 173/8
**briefs** [4] 10/25 11/12 41/17 41/17
**bring** [2] 62/3 150/6
**bringing** [1] 51/22
**broke** [1] 180/11
**brought** [11] 15/9 15/10 53/12 82/17 100/17 114/4 114/11 115/15 147/4 151/15 178/20
**burden** [14] 19/11 49/15 52/13 53/11 54/18 58/11 59/20 126/1 126/3 126/6 126/12 126/15 149/4 149/5
**business** [2] 170/15 171/18
**but** [64] 5/19 6/24 10/17 13/11 14/1 18/3 29/16 30/21 33/18 35/9 38/16 41/9 42/17 42/18 45/5 45/6 46/19 51/12 53/6 54/7 61/20 62/14 65/16 66/3 67/8 87/23 88/21 90/1 90/3 92/1 93/21 95/16 96/18 96/19 97/18 98/22 100/11 103/14 120/21 120/22 121/18 127/6 128/12 135/6 136/7 137/19 137/23 139/3 143/5 143/12 147/12 147/14 147/16 149/15 151/6 151/18 153/8 155/21 158/3 160/13 167/24 170/8 175/15 179/12
**buy** [4] 15/8 123/14 123/22 124/2
**buying** [1] 99/14

**C**

**call** [10] 19/18 51/22 68/2 89/2 94/1 156/10 169/1 169/9 169/10 173/5
**called** [8] 2/5 2/10 15/25 65/23 66/1 86/20 90/21 176/11
**calls** [2] 4/9 75/23
**came** [19] 31/17 35/21 36/21 37/21 38/7 38/16 39/10 40/7 41/25 64/17 84/13 89/20 95/13 96/22 99/17 103/2 128/12 134/19 155/18
**can** [90] 6/16 8/7 8/9 9/7 9/16 9/16 11/24 15/6 15/21 15/22 24/18 28/11 28/14 28/24 31/8 31/10 37/10 39/13 40/2 41/9 41/21 43/3 47/10 47/15 49/21 49/23 50/21 55/5 55/19 59/3 62/22 62/25 63/5 63/6 63/13 64/20 64/21 64/24 69/7 69/15 69/20 74/18 75/11 75/16 75/25 77/13 78/4 79/5 79/11 79/14 82/7 99/16 101/6 101/8 101/10 102/18 103/4 104/4 105/17 108/14 116/11 120/12 120/22 123/4 123/6 125/12 126/5 129/10 129/22 133/9 133/6 146/14 150/9 150/19 150/25 160/14 160/15 162/17 164/6 164/7 166/20 167/11 167/20 168/13 168/22 169/21 171/11 172/16 172/22 178/20

**38/15 49/20 49/24 50/14 53/20 54/13 54/21 55/9 58/25 63/2 63/22 72/2 72/24 73/16 88/24 89/3 89/4 94/25 95/17 99/8 100/6 103/12 107/24 115/9 116/15 119/19 121/11 121/13 121/15 131/9 133/21 133/25 134/14 137/8 150/11 150/15 152/10 154/5 160/7 167/19 179/22**
**become** [2] 104/16 132/20
**becomes** [2] 13/12 18/13
**been** [118] 7/10 8/20 10/25 18/9 21/23 27/5 28/15 29/21 30/16 30/20 39/11 41/6 42/10 45/10 45/16 46/14 48/18 49/6 49/15 49/22 50/5 50/10 50/21 51/8 51/10 54/11 55/8 55/21 58/9 58/10 58/12 58/21 59/1 59/6 59/21 64/25 66/5 69/5 69/8 69/21 70/4 71/1 72/23 74/5 74/18 75/11 76/5 79/6 79/14 79/16 79/17 79/22 80/4 83/2 84/3 88/16 88/16 89/19 89/24 91/8 92/2 93/9 93/22 95/2 95/11 95/11 97/14 101/11 105/17 106/14 107/8 107/11 108/14 109/2 109/25 121/4 127/4 121/8 123/7 125/6 125/7 125/13 127/4 127/12 129/8 129/10 129/13 133/1 133/25 134/2 134/4 135/24 136/3 142/17 143/14 145/16 148/22 150/9 150/20 151/9 152/25 153/5 155/12 155/21 159/4 160/10 162/9 163/22 168/23 169/25 170/9 171/11 176/11 178/6 178/7 178/12 178/13 179/21 180/9
**before** [35] 1/9 13/18 19/24 27/11 27/17 33/18 50/4 50/15 55/3 55/25 58/22 58/24 59/24 62/19 80/17 84/18 85/4 93/22 93/25 96/6 103/12 113/5 122/23 127/8 127/10 128/8 130/22 148/22 148/25 157/19 162/11 162/13 171/17 175/18 180/11
**beforehand** [2] 58/20 97/7
**began** [2] 93/14 101/17
**beginning** [1] 96/12
**behalf** [7] 1/14 1/17 4/14 4/17 4/20 105/22 126/4
**being** [19] 8/14 10/1 10/4 15/19 33/9 58/23 62/2 80/6 83/25 84/16 91/24 100/7 109/19 118/15 129/19 136/21 142/21 144/2 150/15
**belabor** [1] 56/12
**belief** [3] 22/4 51/2 145/6
**believe** [58] 10/6 11/20 14/10 16/18 21/23 25/8 25/23 33/5 35/23 39/22 42/5 43/7 44/8 52/20 52/23 56/18 57/23 58/10 58/17 58/25 64/5 67/9 68/21 69/6 69/9 69/10 69/12 69/12 72/4 72/18 79/21 85/2 93/20 94/23 102/22 103/25 104/14 108/5 109/8 119/6 124/8 126/1 127/13 135/10 138/16 138/25 139/2 139/5 140/2 140/18 141/14 152/2 155/25 155/12 168/3 169/21 174/1 178/12
**benefit** [1] 170/2
**benefits** [1] 170/9
**best** [6] 5/10 16/1 16/1 55/19
**better** [6] 130/25 130/25 131/13 131/14 131/16 138/10
**between** [13] 15/4 41/5 74/1 84/15 86/4 87/13 89/13 94/7 97/21 127/22 127/22 127/23 137/2
**beyond** [9] 23/2 58/3 74/14 92/1 151/9 152/22 161/2 169/24 170/8
**bias** [2] 167/9 177/15
**binding** [3] 50/14 51/3 54/13
**bit** [3] 19/12 138/7 151/9
**blacked** [3] 7/25 8/2 8/10
**blacked-out** [1] 8/10

**can't [9]** 63/3 72/18 101/13 101/14 102/5 120/22 121/2 125/22 175/6
**Canada [1]** 176/20
**cannot [3]** 63/9 66/16 67/2
**care [2]** 26/6 109/2
**career [1]** 83/4
**case [161]** 1/6 4/9 10/15 13/22 18/13 20/16 20/22 21/14 23/8 28/15 28/25 30/10 30/15 30/20 32/4 32/12 32/25 33/13 34/23 35/2 35/22 36/13 36/16 36/18 37/23 38/8 38/11 38/18 38/21 41/21 42/19 42/21 45/23 46/12 49/15 49/22 50/21 52/19 54/11 56/11 58/4 58/19 60/10 60/18 62/6 64/22 64/25 66/7 66/17 69/4 69/8 69/16 69/20 70/15 72/7 74/14 74/18 75/11 76/5 79/6 79/12 79/14 79/22 80/17 84/12 84/12 85/7 86/13 87/19 92/11 92/12 92/12 98/25 100/4 100/20 101/6 101/8 101/11 105/17 106/14 106/14 107/8 107/11 107/14 107/20 107/21 108/14 113/7 113/16 115/21 115/23 117/14 117/18 117/22 118/6 118/16 119/13 119/23 120/1 123/6 125/6 125/7 125/13 125/21 126/25 127/3 128/3 128/11 128/13 128/17 128/21 129/7 129/8 129/13 129/14 129/15 133/11 133/21 134/1 134/4 135/13 135/14 135/25 136/2 136/23 138/6 142/15 143/22 144/2 146/20 148/9 149/23 150/2 150/9 151/12 152/12 156/23 157/4 158/7 159/23 160/4 160/8 160/10 160/13 160/16 160/23 161/16 162/17 163/17 163/25 164/7 164/10 168/22 169/25 170/3 170/15 171/11 171/17 174/7 176/12 179/5
**cases [11]** 88/12 100/11 118/18 118/22 118/24 119/6 119/8 119/11 127/8 127/10 127/15
**caught [2]** 97/7 126/9
**cause [3]** 10/19 56/23 116/1
**caused [1]** 107/18
**certain [8]** 14/12 20/18 29/6 29/10 50/25 94/7 96/11 102/23
**certainly [15]** 34/22 50/13 54/6 60/17 84/24 97/8 99/18 110/19 124/23 132/9 133/6 145/6 151/9 153/20 176/25
**chamber [4]** 79/3 100/18 129/4 129/5
**chambers [16]** 18/1 64/16 64/17 68/20 70/24 71/8 80/13 81/21 96/12 96/18 99/21 104/14 139/11 150/12 150/18 164/18
**chance [9]** 73/4 99/9 99/9 123/4 123/9 133/18 133/19 134/21 167/23
**change [10]** 88/17 114/7 114/15 115/6 115/7 115/18 115/20 115/23 116/2 158/16
**changed [4]** 37/15 37/16 96/11 113/23
**changes [1]** 109/6
**characteristically [1]** 160/3
**characterization [1]** 166/24
**chase [1]** 38/2
**check [11]** 16/20 16/21 17/4 17/13 17/25 18/7 51/18 102/16 150/5 159/16 159/20
**checked [1]** 6/11
**checks [2]** 150/5 161/17
**chief [12]** 46/11 46/17 67/7 173/19 173/21 173/22 174/6 174/12 174/17 175/10 175/17 175/21
**Christopher [1]** 46/11
**circumstances [1]** 151/4
**cite [1]** 66/16
**cited [1]** 59/16

**city [31]** 29/24 31/23 96/14 132/19 144/8 162/8 162/8 162/9 162/13 162/15 162/16 162/18 163/14 163/15 163/19 166/5 170/2 170/4 170/5 170/14 170/15 170/16 170/16 170/25 171/3 171/18 171/19 171/20 171/20 175/25 176/3
**city's [2]** 172/25 173/5
**claims [1]** 156/22
**clarification [1]** 56/21
**clause [1]** 151/3
**clauses [1]** 88/7
**clean [3]** 12/4 13/2 26/22
**clear [23]** 8/13 23/17 24/11 40/11 58/1 58/19 58/22 58/25 59/11 59/25 61/20 61/23 64/1 70/3 86/10 90/10 101/23 102/2 136/25 141/10 152/10 177/15 178/13
**clearer [2]** 125/5 129/16
**clearly [12]** 49/20 54/9 55/10 57/16 58/17 59/10 65/22 65/25 72/13 86/2 102/8 107/4
**clerk [3]** 14/4 16/5 18/2
**client [10]** 57/3 83/10 89/24 91/9 107/25 115/10 118/15 126/20 147/6 158/15
**client's [4]** 84/8 97/24 98/9 123/12
**clients [22]** 85/19 86/5 86/16 96/9 105/22 106/21 106/22 109/5 113/12 113/15 115/7 117/23 118/9 118/22 119/9 119/10 123/8 126/4 126/23 127/1 135/7 167/9
**clients' [3]** 123/22 124/2 150/5
**close [2]** 44/24 65/12
**closing [1]** 89/18
**clue [1]** 120/8
**CM [1]** 1/18
**CMDA [1]** 121/23
**come [12]** 20/14 22/11 65/20 77/4 97/4 123/13 123/19 128/18 128/20 160/1 160/17 166/23
**comes [3]** 118/25 143/15 160/4
**comfortable [1]** 152/9
**coming [8]** 9/1 12/2 12/6 54/18 54/22 135/7 159/22 177/8
**comment [12]** 46/12 74/9 79/13 79/14 101/13 102/2 102/5 118/21 121/20 125/20 134/3 174/10
**comments [19]** 46/16 46/20 47/3 49/5 99/12 118/9 123/7 123/11 124/24 170/12 172/24 173/4 173/23 173/25 174/6 174/12 175/15 175/17 175/21
**commission [4]** 163/15 163/16 170/16 171/20
**committing [1]** 89/25
**complaint [1]** 144/1
**complete [3]** 140/14 143/24 143/25
**completely [1]** 131/5
**complies [2]** 16/14 16/16
**comply [1]** 16/11
**conceding [1]** 107/23
**concept [2]** 124/13 124/15
**concern [6]** 107/19 158/3 158/5 158/6 158/7 158/8
**concerned [5]** 21/16 80/11 100/7 117/12 160/7
**concerns [1]** 80/22
**concession [1]** 99/2
**conclude [1]** 77/8
**concluded [2]** 77/10 159/3
**conclusions [1]** 75/23
**condition [1]** 92/7
**conditioned [1]** 91/25
**conduct [1]** 176/2
**conference [1]** 10/20 127/21
**confidential [12]** 21/5 22/9 28/20 58/6 74/3 85/2 85/6 97/19 108/9 129/2

**confidentiality [62]** 48/18 51/7 55/14 57/2 58/2 59/9 66/3 77/8 77/11 71/15 72/15 73/10 73/15 73/22 73/24 76/12 81/22 81/25 82/4 82/8 86/12 88/4 88/7 92/17 97/1 97/5 97/14 97/20 98/1 101/18 101/21 104/20 105/8 105/25 106/8 106/10 106/12 108/9 122/20 128/10 128/11 128/16 128/22 135/23 136/20 150/1 150/3 150/13 158/4 158/8 159/7 163/5 163/9 163/17 164/8 165/3 165/7 165/15 166/6 172/8 172/21 175/25
**confused [1]** 172/11
**consequence [1]** 84/13
**consider [3]** 61/12 66/20 67/3
**consideration [2]** 149/19 149/22
**considered [2]** 59/3 66/21
**consistent [3]** 23/6 30/14 112/19
**constantly [1]** 102/12
**constitute [1]** 54/12
**constitutes [1]** 51/1
**construction [1]** 75/21
**contacted [2]** 106/21 106/22
**contain [1]** 134/10
**contained [4]** 23/3 88/18 132/23 135/1
**contemplates [1]** 59/10
**contemplating [1]** 134/25
**contend [1]** 60/17
**contention [2]** 178/4 178/5
**CONTENTS [1]** 2/1
**contested [2]** 114/9 133/21
**context [2]** 38/25 130/2
**contextual [1]** 114/20
**contingencies [1]** 62/3
**contingency [1]** 14/9
**continue [2]** 6/7 140/24
**CONTINUED [1]** 143/20
**contract [4]** 41/5 43/13 74/1 130/3
**contracts [1]** 129/24
**contrary [1]** 168/25
**conversation [7]** 21/12 34/20 35/15 37/22 81/8 128/25 166/1
**conversations [5]** 38/14 56/20 61/25 81/21 82/2
**copy [13]** 6/23 8/1 12/4 13/2 24/18 24/18 24/21 24/22 25/13 26/22 27/23 121/25 153/18
**corners [4]** 57/12 76/13 88/19 130/1
**correct [129]** 6/2 6/3 18/5 18/21 18/23 23/19 24/8 26/12 27/15 27/16 27/19 27/20 28/3 28/4 28/8 28/9 29/1 29/2 29/11 30/10 30/11 31/1 31/18 31/20 31/23 32/6 32/9 32/10 32/14 32/15 32/18 32/19 33/2 33/3 34/11 34/12 34/23 36/19 36/20 36/22 36/23 37/5 38/8 38/18 40/17 46/8 46/9 47/3 47/4 47/16 47/23 48/3 48/20 50/11 61/4 66/15 68/25 70/6 73/22 74/22 74/24 75/16 80/25 81/2 83/6 83/12 83/18 89/8 90/3 90/5 93/16 94/2 95/20 96/1 96/2 96/24 105/18 110/12 111/5 111/14 112/20 112/22 112/23 114/21 117/14 117/17 117/20 118/6 118/11 120/5 121/5 122/4 127/19 127/24 130/1 130/4 138/19 139/14 139/16 139/17 139/22 140/20 142/2 144/9 153/21 155/24 156/21 156/24 157/5 157/20 157/21 158/1 159/12 159/18 159/20 159/23 160/2 160/12 160/18 161/12 163/15 169/14 171/4 173/12 173/23 174/8 174/14 175/22 180/2
**correctly [1]** 50/1
**coughed [1]** 117/6
**could [62]** 5/11 7/9 13/12 16/5 19/19

**C**

**could** [57] 23/23 30/9 45/10 45/1 54/5
59/11 64/22 68/3 70/4 70/25 70/25 72/6
74/2 74/2 74/4 74/4 74/9 74/13 74/13
74/15 77/17 79/22 79/25 82/10 82/10
87/23 90/9 103/3 103/3 105/2 106/14
107/8 107/11 108/12 108/13 111/1
121/4 121/7 121/7 124/25 125/5 125/6
125/7 129/7 129/16 131/11 134/1
135/17 136/8 150/18 151/17 152/11
168/19 174/2 174/5 175/6 175/7
**couldn't** [4] 29/16 47/22 65/1 121/22
**counsel** [9] 4/11 20/15 25/12 93/11
106/18 150/5 163/14 165/1 167/5
**counter** [1] 52/15
**couple** [4] 50/15 132/14 137/15 147/17
**course** [19] 38/1 64/21 65/9 69/15 79/11
83/4 84/7 97/13 101/8 114/4 127/14
128/19 129/25 138/14 147/5 147/7
150/22 171/19 176/23
**court** [166] 1/1 1/10 1/20 4/6 4/8 4/9
5/16 7/1 7/2 8/18 8/22 10/23 11/8 12/9
12/11 12/12 12/15 12/25 13/14 13/23
13/25 14/1 14/3 14/5 14/20 15/12 17/12
18/8 19/9 19/20 25/16 27/22 33/12 34/5
34/6 37/14 43/17 43/21 49/12 50/6
50/14 50/15 50/18 50/19 51/1 51/3
51/12 51/13 52/8 52/8 52/10 52/13
54/10 54/13 54/13 55/19 56/15 56/22
58/22 60/14 61/8 62/18 62/19 63/8
63/13 63/19 63/23 64/4 64/5 64/7 64/9
64/10 64/10 64/15 64/17 64/19 65/2
65/11 65/18 65/23 66/1 66/4 66/17
67/16 67/18 67/19 71/10 72/17 75/19
76/24 77/17 80/3 80/11 81/4 81/22
81/24 82/3 82/6 82/13 82/15 82/16
84/19 89/1 91/5 91/6 91/9 92/15 94/14
94/16 94/25 95/3 95/6 95/17 96/5 96/5
96/12 96/18 97/6 97/21 98/17 99/6
99/16 99/19 99/20 100/8 100/18 100/23
101/17 101/20 101/21 101/23 102/11
102/16 102/23 103/12 104/15 108/24
109/8 119/18 134/9 137/24 137/25
138/2 138/4 138/6 142/10 149/17
150/12 150/17 161/2 164/22 165/4
166/8 166/22 168/8 168/11 170/20
177/16 177/25 178/1 178/6 178/6 178/7
178/18 178/22 180/14
**court's** [32] 6/23 10/7 10/10 10/11 11/7
12/3 13/13 13/22 17/4 17/5 17/24 61/20
62/4 63/2 63/9 64/1 64/2 96/16 96/21
99/21 100/4 100/17 104/15 126/9 129/4
129/5 142/12 142/12 149/6 149/8
166/11 178/22
**courthouse** [3] 1/10 1/19 179/7
**courtroom** [9] 33/24 44/15 45/12 45/14
63/20 64/12 95/14 95/22 100/9
**cover** [1] 77/11
**covered** [1] 179/21
**COX** [4] 1/9 4/7 16/24 164/15
**Cox's** [1] 68/20
**cross** [30] 2/8 2/14 2/17 2/22 3/5 3/10
23/14 38/1 40/23 60/22 75/5 82/25
104/4 109/16 146/19 146/22 147/3
147/5 147/7 148/2 149/3 149/16 151/10
151/16 151/18 152/22 153/2 157/17
173/9 178/16
**cross-exam** [2] 147/3 149/3
**cross-examination** [23] 2/8 2/14 2/17
2/22 3/5 3/10 23/14 38/1 75/5 82/25
109/16 146/19 146/22 147/5 147/7
148/2 149/16 151/16 151/18 153/2
157/17 173/9 178/16
**cross-examine** [3] 40/23 60/22 104/4

**cumulative** [1] 16/2
**cut** [1] 28/1
**CVR** [1] 1/18

**D**

**DANIEL** [1] 1/3
**Danny** [1] 33/9
**date** [4] 8/22 93/15 107/24 130/18
**dated** [5] 139/6 141/1 155/3 155/5
178/11
**dates** [1] 173/16
**Dave** [1] 97/22 109/3 123/13 178/17
**DAVID** [16] 1/13 2/15 3/8 4/14 77/18
77/19 78/25 112/5 119/22 128/15
128/25 162/1 162/2 162/6 163/2 164/16
**day** [18] 33/6 33/12 33/16 33/18 40/22
41/15 50/24 55/3 58/24 64/8 71/14 84/2
85/19 95/2 113/4 117/18 117/21 155/17
**days** [2] 112/10 130/19
**deal** [3] 13/18 92/5 92/13
**dealing** [2] 51/6 128/6
**dealings** [1] 165/20
**dealt** [3] 14/2 141/11 149/13
**debating** [1] 41/2
**decide** [2] 12/21 168/9
**decided** [1] 116/22
**deciding** [1] 137/1
**decision** [13] 39/25 67/17 146/19 148/8
148/12 151/7 152/4 170/14 170/15
171/18 172/25 173/2 178/22
**decisions** [1] 147/10
**defendant** [7] 18/18 32/12 58/11 59/22
70/12 95/13 140/17
**defendants** [37] 1/8 1/17 2/10 4/20 4/22
25/21 25/22 32/14 32/16 32/17 32/24
33/1 33/1 34/4 39/15 53/9 55/23 64/6
71/5 74/10 79/20 87/17 87/18 93/11
96/20 99/2 99/13 119/24 137/18 138/15
171/4 171/16 172/1 177/16 178/13
178/21 179/25
**defendants'** [18] 5/6 5/24 5/25 25/18
25/19 25/20 33/20 49/13 57/22 68/13
77/19 91/23 93/3 138/10 141/14 156/12
162/2 178/16
**defense** [7] 4/21 114/10 114/11 115/15
**defense's** [2] 5/21 138/9
**define** [2] 75/18 106/8
**definitely** [4] 55/24 97/15 103/6 152/22
**delay** [1] 179/4
**demand** [1] 33/20
**demanded** [1] 64/6
**demanding** [1] 95/12
**demeanor** [1] 70/2
**denied** [2] 65/19 179/2
**deny** [2] 60/14 61/9
**denying** [6] 5/6 6/8 8/23 10/12 10/15
114/9
**deputy** [1] 162/15
**description** [1] 65/14
**desire** [2] 83/11 165/3
**desiring** [1] 81/22
**detailing** [1] 86/11
**Detroit** [33] 1/11 1/20 4/1 5/22 6/1 9/12
14/8 21/13 21/13 29/4 29/5 44/7 44/10
48/18 50/24 55/1 58/24 70/15 95/20
106/16 106/24 107/14 107/17 141/13
146/7 152/14 153/21 154/24 155/13
167/25 174/11 174/23 175/16
**dictate** [2] 35/23 111/1
**dictates** [1] 10/17
**did** [185]
**didn't** [48] 22/10 35/22 38/10 45/15 52/4
87/5 90/6 90/7 90/13 91/1 94/25 97/8
100/24 101/5 103/5 103/8 111/9 112/18
112/22 113/23 114/7 114/15 114/18

116/3 116/4 118/17 119/21 119/23
120/2 120/11 120/23 123/7 123/13
123/15 126/9 128/18 128/18 128/20
131/24 132/24 135/16 135/16 147/12
157/22 159/8 159/16 166/16 179/12
**difference** [1] 42/20
**different** [6] 14/19 88/6 127/18 132/11
167/19 178/19
**dime** [2] 113/12 113/18
**direct** [23] 2/7 2/13 2/16 2/21 3/4 3/9
20/3 39/13 40/22 41/10 41/14 41/17
68/14 78/21 93/4 114/4 151/9 151/15
151/20 156/13 162/3 174/2 174/3
**directed** [2] 39/20 56/22
**directional** [1] 45/4
**directive** [1] 92/15
**directly** [2] 163/10 165/21
**disagree** [4] 81/8 118/12 121/22 124/25
**disagreement** [1] 132/18
**disagrees** [1] 132/23
**disbursement** [1] 128/8
**disclose** [4] 28/1 47/22 74/15 161/6
**disclosed** [14] 24/2 45/17 57/19 80/20
84/3 99/10 122/20 122/25 123/1 123/10
133/8 133/20 134/22 150/21
**disclosure** [8] 15/20 95/23 104/21 105/8
123/5 133/4 170/10 180/7
**discuss** [16] 14/20 22/7 28/7 38/20
41/20 50/5 62/5 71/15 72/6 97/17
158/12 161/10 165/7 165/15 169/9
179/18
**discussed** [13] 5/18 40/14 55/12 64/4
76/7 82/15 82/19 94/4 97/9 97/16 100/7
106/22 129/8
**discussing** [6] 35/21 40/10 64/18 68/24
104/18 136/4
**discussion** [29] 11/1 33/9 33/19 36/10
36/12 36/14 38/17 42/9 43/1 44/12
64/11 69/2 72/2 72/3 72/5 74/11 82/13
84/11 94/24 97/20 99/18 108/12 118/8
119/9 127/22 128/15 129/6 150/18
165/22
**discussions** [58] 20/18 33/13 33/22
34/10 37/4 37/7 37/9 37/21 38/6 38/14
39/1 39/17 40/5 40/7 44/6 44/10 48/17
62/2 62/21 63/18 63/21 63/22 64/3
64/16 64/17 64/25 70/25 71/7 72/2 79/4
80/3 80/12 82/6 83/14 93/24 94/7 94/21
95/2 95/5 95/11 95/12 96/7 96/11 97/9
97/11 99/11 99/19 100/23 101/12 105/5
117/17 117/25 118/13 129/3 148/13
150/13 157/1 163/3
**dismiss** [2] 49/12 138/9
**dismissal** [5] 9/24 10/1 10/24 11/11
26/19
**dismissed** [1] 149/23
**disparaged** [1] 108/1
**disparaging** [9] 99/12 118/9 118/14
118/14 119/10 121/20 123/7 123/11
124/24
**dispersed** [1] 155/18
**dispositive** [1] 66/17
**disprove** [1] 58/12
**dispute** [5] 14/22 14/24 15/4 41/5 89/12
**disputed** [2] 98/25 107/21
**disputing** [2] 18/6 50/5
**disqualify** [3] 10/12 177/11 179/3
**disseminated** [1] 154/3
**DISTRICT** [8] 1/1 1/1 1/10 4/6 4/6 4/7
138/3 138/4
**divided** [3] 103/13 137/2 144/4
**DIVISION** [1] 1/2
**do** [150] 6/12 7/4 7/25 8/6 9/2 10/1 10/4
15/1 19/5 19/17 20/24 21/20 22/15
22/21 24/25 25/1 25/4 25/8 29/12 29/19

**D**

**do...** [130] 33/5 33/10 33/13 33/20 33/23 33/25 34/3 34/6 35/18 39/7 41/12 42/15 42/18 43/5 43/12 44/13 47/12 49/24 58/14 59/23 60/3 60/9 61/19 62/11 63/5 65/21 65/21 66/11 68/16 69/19 69/25 70/18 70/19 70/21 70/22 70/24 71/7 71/10 71/12 71/13 71/17 71/18 71/19 71/20 73/23 74/23 75/4 75/18 75/20 78/23 78/23 79/8 79/10 79/19 79/24 80/3 80/10 81/13 81/21 82/2 82/6 82/13 82/16 83/13 84/9 85/17 87/1 88/15 92/14 94/10 102/18 106/20 107/24 108/19 109/23 110/1 111/15 111/20 111/23 112/12 112/5 113/4 113/8 113/12 113/21 120/2 120/11 120/17 121/3 121/9 121/10 121/16 121/18 123/15 124/10 124/10 124/13 124/15 125/2 126/1 127/5 128/6 128/11 128/12 130/6 132/17 137/15 143/7 143/25 145/7 146/2 148/4 148/6 148/9 148/10 149/8 152/19 154/1 155/15 156/15 161/13 162/5 163/21 165/9 168/3 168/16 172/15 175/9 177/2 177/17

**docket** [1] 77/12

**doctrine** [6] 75/20 75/25 76/9 136/9 136/15 136/19

**document** [39] 16/6 16/7 20/25 21/2 21/5 22/25 27/11 50/14 51/7 73/16 74/20 76/13 82/19 83/23 84/4 86/3 86/11 87/12 87/16 88/19 89/4 89/18 89/18 89/20 90/17 90/20 91/4 92/7 95/17 102/11 109/18 113/1 120/4 122/8 128/4 129/14 159/9 160/1 160/7

**documents** [8] 51/6 55/11 59/11 82/17 82/17 86/11 88/9 109/25

**does** [31] 6/9 7/6 10/17 16/11 16/13 16/18 17/5 54/12 60/18 74/19 74/20 88/4 101/22 110/9 110/10 110/13 128/24 129/2 129/14 129/15 132/2 134/8 135/12 135/20 136/10 136/15 136/19 154/20 159/1 161/17 163/13

**doesn't** [11] 11/7 11/8 35/23 73/13 74/17 79/15 88/17 110/10 125/9 131/19 132/2

**doing** [4] 24/4 29/25 125/12

**dollar** [11] 57/18 57/19 58/2 58/3 58/8 75/13 76/4 76/7 99/10 123/9 130/7

**don't** [129] 5/19 5/20 6/20 6/22 7/19 8/24 9/22 10/7 10/12 10/16 12/10 15/22 16/3 16/19 17/24 23/10 26/5 29/20 30/2 34/7 34/20 35/1 35/3 35/5 36/13 38/13 39/4 42/2 43/13 43/19 43/20 43/24 44/8 44/25 45/4 45/9 45/10 49/4 49/8 50/8 51/21 58/10 58/17 62/14 62/22 62/25 63/4 65/13 65/16 65/19 66/9 66/21 67/3 67/8 67/20 69/19 69/12 69/12 69/12 69/19 70/2 71/6 71/16 71/24 72/4 77/8 77/24 79/7 80/9 81/6 81/10 81/24 83/25 85/25 89/15 89/15 95/13 96/6 98/2 99/6 99/25 101/20 102/14 103/10 103/11 103/14 104/6 112/7 113/2 113/13 113/18 115/13 116/11 117/25 120/11 120/12 120/13 121/8 121/18 121/19 122/5 124/8 125/5 128/4 129/16 130/5 130/10 131/10 134/19 135/4 136/7 139/18 140/3 142/9 143/11 144/24 146/14 146/15 147/23 149/11 156/3 164/24 165/10 166/19 173/17 174/15 174/22 175/14 175/15

**done** [12] 6/25 54/23 66/9 76/25 87/20 92/5 92/13 102/18 129/21 155/20 155/21 167/19

**door** [1] 99/21

**doubt** [1] 108/8

**DOUGLAS** [1] 1/7

**down** [6] 7/15 45/23 92/22 103/14 103/25 112/21

**draft** [6] 65/3 89/23 92/16 103/8 112/18 127/1

**drafted** [30] 51/8 73/10 83/8 86/4 102/20 103/5 103/6 104/3 104/8 108/23 110/7 110/10 110/12 111/11 111/17 111/18 111/20 112/2 112/6 112/7 112/8 112/11 112/4 125/11 129/3 131/18 131/20 132/2 158/19 159/2

**drafter** [1] 112/14

**drafting** [3] 71/8 110/15 159/9

**drafts** [2] 128/9 157/6

**drama** [1] 42/8

**draw** [2] 33/4 79/3

**due** [1] 147/8

**DUFFY** [17] 3/3 64/7 95/4 96/14 96/21 97/18 97/22 137/19 145/2 156/10 156/11 156/12 156/16 157/19 161/9 176/14 179/7

**during** [23] 20/8 38/1 64/16 65/9 72/19 77/22 80/18 93/11 93/19 105/5 114/4 127/18 138/8 142/15 147/5 147/7 149/17 151/17 151/19 151/19 154/8 156/25 164/15

**E**

**e-mail** [3] 71/11 82/8 101/17

**each** [2] 136/23 144/3

**earlier** [9] 21/24 35/8 89/19 130/16 145/19 149/3 161/4 163/22 180/10

**early** [1] 93/14

**earnest** [3] 93/21 93/23 148/3

**EASTERN** [1] 1/4 4/6 138/4

**effect** [30] 7/2 29/16 29/23 30/7 30/13 31/15 31/18 38/17 40/6 54/23 69/6 69/15 69/18 69/20 79/8 79/10 79/15 101/8 101/14 113/8 113/14 113/15 117/22 123/24 123/25 124/1 132/15 133/13 133/16 146/9

**effort** [2] 55/20 102/22

**Egan** [38] 9/11 14/8 29/14 29/15 29/23 30/19 31/13 44/6 44/12 44/21 44/22 45/19 45/21 47/20 54/11 56/16 56/20 58/18 62/3 63/20 64/11 70/8 71/5 80/5 80/20 80/23 85/14 85/23 95/19 95/22 99/23 100/6 100/20 106/25 107/13 120/7 150/15 153/23

**either** [9] 8/21 21/12 66/18 74/12 84/8 118/9 119/9 157/23 165/21

**ejusdem** [2] 75/21 75/25

**elected** [1] 176/3

**electronic** [1] 6/24

**elements** [1] 149/21

**elicited** [1] 54/19

**eliminate** [1] 170/11

**else** [16] 23/11 48/8 49/9 64/22 69/15 72/9 79/12 80/20 101/8 130/10 160/9 160/20 161/22 166/20 178/14 178/25

**embodied** [1] 92/3

**employed** [3] 156/17 162/7 162/13

**end** [5] 33/12 33/16 34/3 131/24 150/6

**ended** [3] 36/25 63/19 64/3

**enforce** [5] 18/22 19/9 19/16 52/11 53/12

**enforcement** [1] 136/17

**engage** [1] 83/5

**ensure** [1] 83/10

**enter** [1] 7/2

**entered** [9] 6/15 23/6 80/17 89/19 91/20 92/2 120/20 133/10 136/21

**entering** [1] 56/16

**enters** [1] 13/14

**entertained** [1] 117/14

**entire** [4] 39/8 112/11 131/20 132/2

**entirety** [2] 31/24 31/25

**entities** [1] 156/20

**entitled** [1] 9/9

**entity** [4] 132/19 133/5 136/17 136/17

**escorted** [1] 18/1

**ESQUIRE** [4] 1/13 1/14 1/16 1/16

**establish** [4] 15/14 53/12 116/19 176/2

**established** [9] 49/17 50/11 51/9 52/10 53/1 53/18 54/1 59/21 174/16

**establishing** [3] 50/7 52/14 59/20

**establishment** [1] 57/5

**estimation** [2] 174/12 175/21

**et** [2] 1/4 1/7

**even** [14] 6/8 30/23 62/22 62/25 81/4 84/9 95/15 99/5 99/9 101/5 111/17 121/20 123/9 134/22

**event** [2] 18/17 116/1

**eventually** [1] 20/21

**ever** [19] 21/10 29/21 55/22 65/13 65/16 72/1 72/3 72/5 85/7 106/24 107/13 107/22 109/8 117/14 117/16 118/5 119/16 157/12 162/13

**every** [7] 83/13 85/7 87/19 92/12 122/13 128/3 155/17

**everybody** [3] 110/1 152/10 179/6

**everyday** [1] 171/19

**everyone** [8] 4/23 77/1 143/13 145/5 176/10 176/11 179/14 179/23

**evidence** [28] 5/17 8/14 9/1 9/17 9/23 10/2 10/5 11/2 12/12 18/25 46/21 50/3 52/15 54/22 55/18 55/22 56/1 58/22 60/5 60/8 60/11 60/14 60/19 61/12 61/13 67/2 114/24 116/10

**evidentiary** [9] 1/9 10/18 11/9 12/15 19/4 19/10 53/10 120/15 172/17

**exactly** [11] 29/12 30/3 35/15 44/13 79/7 82/21 115/2 123/5 128/23 154/10 163/7

**exam** [2] 147/3 149/3

**Examiantion** [1] 2/19

**examination** [49] 2/7 2/8 2/9 2/13 2/14 2/16 2/17 2/18 2/21 2/22 2/23 3/4 3/5 3/6 3/9 3/10 20/3 23/14 38/1 46/5 48/15 68/14 72/10 75/5 78/21 82/25 85/12 91/17 93/4 109/16 114/5 130/13 143/20 146/19 146/22 147/5 147/7 148/2 149/16 151/16 151/18 151/20 153/2 156/13 157/17 160/21 162/3 173/9 178/16

**examine** [4] 40/23 40/23 60/22 104/4

**examined** [2] 147/9 153/1

**exception** [1] 8/25

**exchange** [1] 109/3

**exchanged** [3] 51/6 89/13 94/12

**excuse** [6] 16/13 44/5 46/15 117/7 124/16 169/15

**excused** [2] 95/2 176/15

**execute** [1] 131/14

**executed** [5] 9/3 55/12 73/11 87/16 88/16

**executing** [1] 88/9

**execution** [3] 57/9 73/18 91/4

**exhibit** [67] 5/21 5/24 5/25 6/1 7/5 7/25 9/4 9/9 9/10 9/11 10/8 10/18 11/14 12/22 13/8 13/10 13/11 25/5 25/19 25/21 25/21 27/6 29/4 34/17 37/12 46/20 46/21 50/17 53/14 56/2 57/21 57/22 72/12 72/23 73/19 91/20 92/3 99/17 102/25 104/16 106/6 109/20 125/2 125/3 133/14 138/10 138/18 138/18 139/9 139/13 139/14 140/9 141/4 141/14 142/24 143/5 143/13 143/6 144/7 144/9 143/19 152/25 153/16 155/6 167/23 168/19 174/14

# E

exhibits [26]  5/13 5/16 7/10 7/10 7/12
7/13 7/21 9/7 9/15 9/19 10/11 23/16
24/13 25/1 25/4 58/9 60/2 72/20 138/14
138/15 139/4 139/15 141/6 141/11
143/4 143/12
existence [2]  57/5 99/17
expect [4]  61/24 63/8 134/4 137/19
expectations [1]  106/11
expected [3]  134/3 163/3 177/7
expecting [1]  170/4
expense [2]  176/24 177/3
experienced [1]  100/25
explain [5]  162/17 168/18 169/12
169/21 172/22
explained [1]  51/2
explaining [1]  151/3
express [2]  14/19 165/5
expressed [6]  61/7 62/1 95/18 100/18
148/22 165/2
expression [2]  23/2 84/14
extant [4]  39/20 40/24 149/12 170/22
extensive [1]  41/17
extensively [1]  147/9
extent [6]  55/3 142/10 163/19 170/9
172/23 173/3
eye [1]  134/15
eyesight [1]  45/1

# F

face [1]  92/6
facing [2]  45/4 45/5
fact [26]  29/25 31/16 31/18 32/11 32/24
36/25 62/18 63/21 66/8 66/9 66/10
66/14 74/14 82/2 88/17 90/3 90/5 99/23
114/18 122/24 132/18 134/6 146/16
164/9 169/1 169/8
factor [3]  148/8 148/11 164/9
factors [5]  147/10 148/3 151/6 152/3
152/5
facts [2]  114/24 116/9
failed [1]  56/1
fair [2]  58/11 168/12
fall [1]  100/24
familiar [12]  121/23 122/8 122/9 122/12
122/15 122/18 122/21 122/23 123/2
123/3 175/15 176/1
families [2]  71/4 99/25
family [11]  14/11 22/7 22/11 33/25 80/5
81/4 81/7 85/20 85/21 101/2 101/4
far [9]  8/20 21/15 45/15 52/2 102/2
117/12 121/4 160/7 169/24
fashion [3]  99/3 109/9 117/23
father [1]  101/3
favor [13]  49/13 64/20 69/5 69/17 70/5
71/1 79/6 79/12 79/17 101/7 101/9
108/14 150/20
fax [3]  71/11 82/7 101/18
fee [3]  16/10 16/21 17/18
feel [4]  22/15 22/21 22/24 48/9
feelings [1]  48/7
feels [1]  22/18
feet [1]  45/7
felt [8]  21/22 39/8 42/5 42/17 62/4 108/1
114/9 152/9
fever [1]  15/11
fifteen [1]  45/7
Fifty [1]  177/18
Fifty-five [1]  177/18
figure [11]  29/17 54/17 57/19 58/8 70/16
75/13 85/14 85/24 161/10 163/4 180/8
figures [2]  107/15 120/7
file [2]  14/5 167/20
filed [9]  6/25 7/5 41/16 67/19 109/21

final [4]  81/22 82/17
119/17 119/17 160/25 179/16
finalized [1]  53/15
finalizing [1]  89/18
find [8]  23/22 36/6 120/17 136/7 154/3
155/12 177/17 178/23
finder [2]  66/8 66/10
finders [2]  66/9 66/14
finding [1]  178/10
finds [1]  12/25
fine [7]  7/15 11/4 37/18 43/22 43/25
62/15 137/12
finish [3]  131/22 151/23 154/14
firm [3]  101/22 122/13 162/12
firm's [1]  132/14
first [41]  12/1 18/23 19/1 19/6 28/22
43/14 50/17 58/13 58/16 61/21 65/21
67/16 74/17 84/8 84/10 84/21 93/18
93/20 95/13 103/8 103/11 103/11 104/9
112/8 113/4 117/13 117/16 117/18
117/21 118/4 124/10 124/12 127/6
127/6 127/7 149/22 153/1 154/2 168/21
177/16 178/10
five [12]  12/22 12/23 12/24 25/10 25/22
26/2 26/5 26/17 26/20 143/6 177/18
177/18
Flint [8]  76/25 77/9 77/11 77/12 176/10
179/7 179/15 179/24
fly [2]  176/24 177/2
focus [1]  39/10
focused [2]  39/20 56/25
FOIA [4]  122/20 122/24 122/25 123/3
fold [2]  53/24 53/25
follow [2]  76/2 100/12
followed [1]  76/4
following [2]  117/25 171/12
forgot [1]  139/3
forgotten [1]  153/5
form [13]  101/24 104/22 105/10 106/1
114/23 115/1 116/9 131/2 131/21
144/11 145/11 148/14 148/16
forma [1]  92/1
format [2]  100/13 151/1
forth [12]  6/9 11/9 28/19 33/20 59/8
72/15 73/14 96/18 99/20 158/4 171/13
178/18
forthcoming [1]  88/11
forward [12]  19/12 36/19 51/11 53/9
54/18 54/22 59/2 61/8 80/1 149/10
149/23 150/4
found [1]  155/22
foundation [7]  31/3 31/7 46/13 46/18
146/13 146/15 174/16
foundational [1]  31/4
four [18]  11/15 25/8 25/19 25/21 26/2
26/5 26/12 26/13 26/14 26/15 26/16
26/19 57/12 76/13 88/18 119/25 130/1
143/5
framed [1]  11/8 12/15
Free [2]  21/13 29/4
Freedom [9]  99/8 132/15 132/20 133/3
133/8 134/8 135/12 135/20 163/23
Friday [3]  94/12 94/14 118/3
frivolous [1]  179/21
front [11]  7/11 12/20 30/2 38/3 47/12
52/13 54/14 66/14 99/21 154/18 178/3
fuel [1]  172/25
fulfillment [1]  54/3
full [14]  19/20 68/4 77/17 163/19
fullest [3]  170/9 172/23 173/3
funds [1]  92/9
further [9]  58/15 59/10 64/25 85/9 92/19
101/11 106/7 108/16 143/12
furthermore [1]  118/19
future [1]  73/11

# G

G-H-I-a-m [1]  162/6
gag [3]  72/2 72/3 124/18
Gale [11]  4/10 20/11 20/14 23/1 23/7
31/22 121/4 145/2 179/7 180/1 180/5
game [1]  168/12
games [1]  150/15
gave [5]  7/21 25/12 139/4 139/21
139/22
general [2]  76/2 97/18
generated [3]  37/7 37/21 163/24
generic [1]  76/2
generis [2]  75/21 76/1
Gentlemen [1]  116/24
germane [3]  39/23 60/20 84/18
get [13]  5/5 79/12 82/3 82/9 101/22
102/11 104/25 121/25 136/25 137/10
139/10 166/20 166/21
getting [5]  88/22 90/1 151/20 162/25
169/15
GILLAM [18]  3/8 64/7 95/4 96/14 96/20
97/17 97/22 137/19 145/2 162/1 162/2
162/6 163/2 173/11 173/12 178/17
179/7 179/25
Gilligan [1]  113/24
Gillikin [6]  84/16 114/17 114/18 115/17
116/16 149/1
Gillikin's [13]  84/14 115/5 115/24
115/25 116/4 116/10 117/13 118/2
118/4 147/11 147/15 148/7 148/11
give [16]  5/13 8/9 19/20 19/23 68/3
75/19 77/17 81/9 98/6 99/1 105/2
118/18 144/12 174/2 177/21 177/24
given [2]  78/1 90/2
giving [2]  41/13 41/15
glean [1]  55/19
go [37]  18/23 19/6 24/12 29/13 34/17
36/19 37/18 57/24 59/2 63/15 77/6
77/11 79/25 98/14 105/2 114/12 116/6
116/11 117/3 117/9 131/6 144/25
145/22 147/12 149/23 150/17 151/21
151/25 153/13 154/20 157/22 162/19
163/10 168/14 169/24 177/21 179/21
goes [6]  28/5 43/7 98/16 115/9 164/4
170/19
going [116]  6/4 7/7 11/10 13/15 14/10
14/6 15/10 19/18 24/5 24/9 27/5 29/3
34/24 36/6 40/19 40/22 40/23 41/15
41/18 43/9 49/3 50/18 53/9 55/11 55/12
55/20 55/25 56/6 59/23 59/23 60/3
60/14 61/8 61/9 63/14 65/23 66/1 66/4
66/11 66/11 66/12 66/19 66/20 67/1
67/10 72/23 73/10 73/21 73/25 76/22
76/25 77/1 78/2 78/3 78/6 79/20 81/16
86/3 86/4 86/10 87/1 87/11 87/12 87/13
87/15 87/16 87/25 88/2 91/4 91/7 96/18
100/12 101/12 102/13 102/14 102/25
103/13 106/9 106/13 107/22 114/1
116/14 117/22 117/24 118/17 123/14
124/21 128/21 129/1 133/22 133/24
136/25 137/7 142/12 142/13 144/4
149/10 150/16 151/15 151/18 152/13
153/16 159/22 160/1 161/3 161/5 163/1
163/8 169/9 171/21 171/23 172/16
172/24 173/1 173/5 179/15
gone [4]  33/16 136/2 151/9 174/13
good [17]  4/13 4/16 4/19 4/21 4/23 4/25
5/1 10/22 24/1 56/8 56/9 61/16 99/9
133/19 134/20 140/4 166/3
Google [2]  154/2 154/17
got [20]  5/7 5/9 17/7 31/6 39/25 49/17
66/25 73/7 77/2 85/23 88/8 102/17
106/3 113/6 113/24 131/22 137/1
150/17 176/18 178/2

## G

gotten [2] 35/18 42/13
government [1] 136/10
grant [1] 67/18
granted [3] 19/9 63/23 149/8
granting [1] 10/14
Great [4] 7/17 9/6 27/2 143/17
greater [1] 23/2
group [5] 44/24 45/5 45/7 99/22 150/14
guard [2] 97/8 126/10
guess [9] 5/24 31/24 34/2 88/13 90/9 128/2 138/9 139/3 166/18
guessed [1] 173/1
guessing [1] 172/25

## H

had [118] 14/4 17/12 17/16 17/17 29/9 33/8 33/12 34/4 34/10 35/14 35/15 36/12 36/14 37/4 37/8 38/6 40/7 42/1 44/6 44/9 46/11 48/18 58/5 60/1 61/24 62/20 63/18 63/20 64/3 64/3 64/9 64/11 64/16 64/18 64/25 65/9 65/11 65/20 66/3 69/24 71/1 72/2 73/4 80/4 80/12 80/16 80/19 80/20 80/21 80/23 83/4 85/7 86/20 88/10 88/15 89/23 90/2 90/4 91/9 91/19 92/2 94/11 95/2 95/11 95/11 95/13 96/11 99/18 100/19 107/22 108/3 108/12 109/5 117/17 118/8 118/11 118/13 118/18 118/22 118/24 119/5 119/9 119/14 119/25 125/24 128/10 128/12 128/15 128/25 131/10 133/25 134/17 135/7 136/2 136/3 142/17 148/22 149/17 150/11 150/18 151/19 152/7 153/3 155/12 155/20 155/21 157/1 158/3 158/19 159/3 159/24 160/10 165/20 165/22 167/23 171/10 178/12 178/12
half [1] 162/15
hall [1] 85/19
hallway [1] 99/22
hand [3] 9/19 16/5 174/14
handed [2] 8/1 25/16
handing [1] 26/20
handle [1] 56/7
handling [3] 81/12 81/16 81/17
hands [1] 166/22
handwriting [5] 103/17 104/7 112/25 113/1 113/2
handwritten [2] 64/24 103/15
happen [4] 87/12 90/7 90/8 159/21
happened [6] 33/17 96/4 100/16 100/22 102/10 104/12
Happenings [1] 121/23
happens [1] 160/4
happy [1] 174/18
hard [1] 115/2
has [99] 6/23 8/20 10/8 10/10 10/22 11/8 11/20 18/9 23/22 27/22 28/15 30/15 30/20 36/13 49/5 49/14 49/15 49/16 49/17 49/22 50/5 50/21 50/22 50/22 50/23 51/10 51/11 52/9 52/10 52/13 52/15 53/1 53/11 53/18 53/25 54/9 54/11 54/14 54/25 55/8 55/15 56/1 58/12 59/6 59/19 59/21 60/20 64/25 69/5 69/8 69/21 71/4 72/17 74/5 74/18 75/11 76/5 79/6 79/14 79/22 84/3 89/18 97/13 101/11 105/17 106/14 107/8 107/11 108/14 109/25 123/1 123/6 125/6 125/7 125/13 129/8 134/1 134/4 143/14 145/3 149/10 150/9 151/8 152/25 153/3 153/5 159/21 168/22 169/25 171/11 176/7 176/18 177/15 178/6 178/6 178/7 178/7 179/2 179/21
hash [2] 71/14 109/6

hasn't [1] 49/19
hate [1] 100/10
have [239]
haven't [8] 13/25 17/14 23/18 24/6 27/11 54/1 118/19 165/20
having [2] 22/12 30/2 42/18
he [96] 9/20 10/10 15/16 22/18 23/22 31/8 31/15 34/6 36/1 36/12 36/13 36/14 38/10 38/13 38/20 38/20 39/14 40/13 41/20 41/20 41/22 42/3 45/13 45/14 45/14 46/14 46/18 46/19 46/20 49/16 49/17 49/19 49/25 50/5 50/22 50/22 50/23 50/24 50/25 54/10 54/20 55/15 56/16 56/18 58/20 63/13 71/13 84/20 87/6 95/7 95/18 98/19 98/20 100/23 100/25 101/1 102/14 107/2 107/3 109/4 109/5 109/6 112/12 125/21 125/25 132/22 132/23 146/14 147/9 147/12 147/14 148/7 151/3 151/19 154/16 154/16 161/5 161/9 163/3 163/4 164/11 164/13 164/20 164/25 165/2 165/5 165/5 165/12 166/16 166/19 167/5 168/13 169/12 172/7 174/2 174/16
he's [20] 31/6 31/6 36/2 41/22 46/16 49/18 49/18 78/2 78/3 106/3 112/13 114/24 116/9 145/11 145/15 145/16 145/16 145/17 169/16 174/15
head [2] 18/2 166/8
heads [1] 116/25
hear [11] 60/24 66/9 66/22 67/1 67/3 67/10 69/14 79/5 126/9 131/24 135/16
heard [5] 64/19 66/14 93/16 132/16 173/25
hearing [20] 1/9 8/14 10/18 10/20 11/9 12/16 19/4 19/10 34/3 37/25 39/21 40/24 53/10 64/11 65/16 77/10 79/19 120/16 172/17 177/6
hearsay [3] 102/8 107/4 169/16
heart [1] 151/12
held [1] 21/5
help [2] 122/18 175/1
her [11] 14/17 14/20 15/2 15/10 15/14 17/3 17/17 18/10 54/2 100/4 131/22
here [34] 8/17 9/8 13/1 13/7 13/20 18/19 23/21 24/18 25/6 35/2 40/22 41/15 45/5 57/4 78/11 85/22 100/12 111/14 111/16 111/20 111/23 112/12 112/5 125/18 129/19 149/9 153/3 155/7 163/2 176/23 176/24 177/1 177/8 179/14
Hernandez [15] 13/19 13/22 14/7 15/16 16/9 16/25 17/6 17/16 17/19 18/5 18/8 18/17 61/22 66/12 100/3 100/15
Hernandez' [1] 62/7
Hernandez's [1] 17/13
highlighted [1] 12/3
highlights [2] 26/25 27/1
him [46] 23/21 35/6 35/8 35/10 35/15 38/7 39/13 39/14 39/16 40/7 40/13 40/15 41/10 41/21 41/21 43/13 43/17 44/18 44/20 46/19 54/14 55/3 77/24 77/25 78/9 85/23 107/7 107/8 132/16 132/22 145/17 151/3 151/13 153/9 153/11 161/14 165/8 165/11 165/13 168/13 169/12 172/9 174/2 174/19 176/24 177/2
himself [1] 84/15
hinted [1] 118/5
his [49] 22/4 36/4 36/15 41/20 44/9 49/17 50/12 51/2 54/12 56/22 56/25 56/25 57/6 60/22 62/13 77/22 77/25 87/8 92/18 96/12 98/8 98/9 109/4 114/4 116/12 120/25 124/2 127/24 145/13 147/3 147/7 147/13 149/16 151/19 153/2 154/24 161/4 162/22 164/24 165/2 165/2 165/3 166/8 166/20 167/2

170/21 172/6 176/24 177/6
hold [4] 30/24 51/17 94/15 174/13
holding [1] 94/16
holds [1] 178/21
honest [1] 173/18
honestly [2] 45/8 71/6
Honor [189]
HONORABLE [3] 1/9 4/7 16/24
hope [1] 179/20
hotly [4] 98/25 107/21 114/8 133/21
hour [3] 41/19 138/8 142/15
hours [1] 41/19
house [2] 162/10 162/11
housekeeping [1] 138/7
how [66] 4/23 10/13 10/16 10/21 10/23 11/1 12/4 15/6 21/22 35/17 37/22 38/18 39/8 42/5 42/17 44/12 44/13 44/24 64/22 69/15 79/12 79/15 83/2 84/18 93/9 96/3 97/4 99/16 101/8 101/19 103/12 108/12 109/2 113/21 121/10 121/16 125/5 125/12 125/25 127/3 127/12 127/15 129/16 137/2 137/9 144/4 149/11 154/6 154/17 154/22 155/17 160/3 162/7 162/9 162/17 164/1 166/20 169/4 178/9 178/14
how's [1] 117/17
hundred [5] 14/12 88/12 88/14 96/19 100/1
Hundreds [2] 83/7 83/8

## I

I'd [9] 61/22 102/16 109/3 122/5 136/6 136/6 136/7 167/18 175/20
I'll [18] 12/21 13/11 19/17 30/4 46/25 59/14 60/3 72/19 98/14 115/1 132/5 132/7 132/25 144/14 144/15 144/25 158/16 176/10
I'm [133] 7/7 7/24 11/10 13/9 13/10 16/14 17/8 17/11 18/6 18/7 18/21 19/18 23/17 23/20 26/20 27/5 29/3 30/17 30/23 31/10 32/1 33/15 33/17 34/24 34/24 35/1 35/25 36/6 36/25 38/4 39/19 39/24 40/18 40/20 41/2 41/11 41/13 41/15 43/1 43/16 43/16 43/24 47/10 49/3 50/5 50/5 50/19 51/20 51/25 53/6 59/17 59/17 59/17 59/23 59/23 60/3 63/7 66/8 66/10 66/11 66/12 66/19 66/20 67/1 67/10 67/21 67/23 72/23 77/16 78/6 78/18 84/17 86/6 87/1 90/7 90/7 90/24 95/16 96/19 98/6 102/4 101/4 102/25 104/7 104/9 105/1 110/4 111/15 114/1 115/8 116/13 116/14 117/2 117/5 120/24 122/17 123/14 132/10 134/24 135/3 135/22 136/1 136/22 137/21 138/20 142/9 146/1 146/23 147/16 147/18 150/8 150/15 150/20 151/15 150/16 154/15 157/25 158/6 158/6 162/8 163/16 171/21 171/23 172/11 174/4 174/4 179/6
I've [16] 26/19 39/25 40/21 66/21 67/21 77/2 85/7 87/19 134/17 165/21 173/17 173/24 173/25 174/21 174/22 178/2
idea [6] 45/8 85/18 85/22 94/15 127/16 159/14
identified [1] 33/9
identify [1] 109/18
if [127] 8/24 9/18 9/20 10/21 10/23 11/1 13/11 13/14 16/14 17/16 17/25 18/7 18/21 23/19 23/22 27/7 28/4 28/5 28/14 28/24 30/3 30/4 30/9 30/21 30/23 31/17 32/23 33/17 34/18 35/3 35/4 37/14 45/3 45/6 46/16 46/19 47/7 47/8 47/15 47/17

**I**

if... [87] 47/21 49/21 49/25 50/20 51/1
59/2 60/8 60/18 62/1 63/2 63/9 65/1
67/18 74/18 75/9 75/13 76/5 76/24 77/2
77/7 77/8 77/10 78/2 78/3 79/24 81/6
81/9 83/25 84/8 84/20 89/1 89/23 93/22
95/15 96/7 98/2 99/6 100/1 101/13
105/17 106/9 106/13 107/2 107/22
109/4 109/5 112/7 112/21 112/22
115/25 116/11 120/12 125/9 125/11
125/11 126/5 126/11 126/20 129/10
129/10 129/11 129/14 129/22 131/18
132/22 135/4 136/2 136/6 142/12
143/12 144/24 148/18 150/8 150/8
151/6 152/24 163/23 164/6 168/13
168/22 171/10 173/17 174/22 175/6
175/14 175/15 179/22
**immediately [1]** 33/17
**impact [1]** 62/5
**impartial [1]** 178/6 178/7
**important [3]** 170/13 171/16 172/1
**impossible [1]** 176/23
**impression [3]** 7/24 19/2 140/6
**in [327]**
**In-house [1]** 162/10
**inappropriate [2]** 67/9 108/4
**incentive [1]** 146/11
**inclined [1]** 67/18
**include [1]** 139/4
**included [2]** 14/12 141/16
**includes [1]** 5/22
**including [3]** 36/22 85/19 179/10
**inconsistent [2]** 84/14 84/15
**incorporated [2]** 83/12 83/15
**indicate [3]** 17/5 47/20 65/22
**indicated [22]** 8/19 22/12 34/4 61/22
65/22 80/10 80/19 81/3 85/4 100/4
101/21 102/15 103/12 112/4 112/7
130/16 152/7 152/14 161/2 166/20
167/8 171/17
**indicates [10]** 55/11 66/1 72/13 73/9
86/2 86/10 92/7 105/17 105/24 109/24
**indicating [4]** 21/21 79/24 82/16 117/23
**indication [1]** 55/17
**individual [4]** 14/11 80/4 144/3 144/20
**individually [2]** 136/24 143/23
**individuals [1]** 14/6
**influential [1]** 148/8
**information [14]** 24/7 65/16 85/23 99/8
132/15 132/21 133/4 133/9 134/8
135/12 135/20 163/23 167/3 174/9
**informed [2]** 17/25 18/2
**initials [1]** 145/3
**initiate [2]** 148/12 148/12
**input [1]** 112/23
**inquiring [1]** 161/3
**inquiry [2]** 24/5 24/10
**insist [3]** 99/11 103/1 123/10
**insisted [5]** 79/21 99/10 102/24 103/2
105/20
**instance [1]** 58/13
**Instead [2]** 28/17 59/7
**instructed [1]** 28/6
**insurance [1]** 156/19
**intelligible [1]** 38/20
**intended [2]** 102/3 102/6
**intent [2]** 132/9 159/20
**intention [2]** 86/20 153/8
**intentional [1]** 108/2
**intents [2]** 89/17 92/5
**interest [2]** 115/20 115/23
**internet [1]** 155/14
**interrupt [3]** 49/23 100/10 103/4
**interview [2]** 55/1 154/24

**interviewed [1]** 30/19
**into [34]** 5/17 8/14 9/19 16/8/33 10/1
10/5 11/2 23/6 56/16 80/18 83/12 83/15
83/17 84/13 89/19 91/20 92/2 94/25
99/17 100/17 116/12 120/20 133/10
134/19 146/19 147/10 147/12 150/17
151/6 151/7 151/9 152/3 173/5
**introduce [3]** 139/23 141/21 153/8
**introduced [5]** 10/8 142/1 152/25 153/1
153/5
**introducing [1]** 54/22
**introduction [1]** 142/8
**involve [1]** 91/6
**involved [3]** 108/24 109/9 137/1
**involving [3]** 132/19 133/5 162/17
**irrelevant [2]** 22/4 167/4
**is [354]**
**isn't [13]** 30/16 30/18 30/24 31/14 32/4
39/3 48/18 69/2 97/2 111/7 112/19
118/6 160/3
**issue [32]** 13/12 13/17 14/2 14/20 15/9
15/13 15/15 18/13 39/9 41/10 41/19
42/6 42/7 50/4 50/22 60/20 65/12 66/18
93/21 97/6 103/13 114/11 144/5 147/6
149/13 149/15 155/7 159/20 161/5
165/7 168/9 172/4
**issued [5]** 67/22 127/1 157/6 159/16
161/17
**issues [20]** 11/8 12/15 12/17 12/20 15/7
38/3 39/20 39/23 40/24 49/16 49/20
56/11 84/18 147/12 149/12 153/3 154/8
154/18 170/22 172/12
**it [366]**
**it' [1]** 149/9
**it's [94]** 8/1 10/6 11/7 12/2 12/3 12/8
12/9 12/14 15/3 16/3 17/1 19/1 19/3
19/8 19/10 22/4 27/13 29/5 30/5 30/5
33/5 35/16 37/15 37/16 51/13 52/5 52/7
53/24 54/17 54/20 58/11 58/19 58/22
61/8 62/13 62/20 70/4 77/11 78/10
78/11 78/11 78/19 79/16 79/17 82/7
85/24 93/25 98/4 101/9 101/25 106/2
111/4 111/7 115/1 115/2 118/23 124/8
125/17 125/18 126/1 126/6 126/12
126/14 126/15 126/15 127/13 129/1
129/10 133/21 135/6 139/14 139/18
140/11 141/5 142/3 142/11 142/18
146/25 147/2 148/17 149/4 150/20
154/8 155/6 167/19 170/6 170/21
175/15 177/8 178/13 178/15 178/19
179/25 180/1
**item [1]** 42/3
**its [7]** 11/9 31/25 62/19 67/17 92/2
132/15 175/25
**itself [10]** 30/17 30/23 34/7 42/19 50/14
57/19 135/13 152/16 177/16 178/8

**J**

**JAMES [10]** 2/6 3/3 19/21 19/22 20/6
96/14 156/10 156/12 156/16 161/9
**Jenke [13]** 46/11 46/17 57/15 58/3 58/21
173/20 173/21 173/22 174/6 174/17
175/10 175/17 175/21
**Jenke's [3]** 57/20 59/3 174/12
**Jennifer [9]** 13/22 16/25 17/6 17/12
17/19 18/5 18/8 61/22 100/3
**Jim [2]** 33/1 97/22
**Joe [2]** 4/20 113/6
**joint [20]** 7/13 9/10 9/15 25/20 26/3 26/4
26/5 26/11 30/5 55/20 92/3 99/16
102/22 102/25 141/6 142/11 142/11
142/24 143/5 144/7
**jointly [1]** 155/3
**JOSEPH [8]** 1/16 2/6 2/20 14/7 19/21
19/22 20/6 93/3

**judge [17]** 1/10 4/8 10/12 18/6 34/4
39/25 42/22 67/7 67/8 68/20 71/25
97/15 102/3 102/6 145/3 162/17 164/15
**judgment [2]** 13/15 173/5
**juror [1]** 119/19
**jurors [1]** 119/24
**jury [17]** 33/16 95/1 95/1 95/8 96/16
96/21 97/10 99/19 119/12 119/13
119/15 119/20 136/2 136/2 150/12
154/4 170/8
**just [83]** 5/7 5/13 7/4 7/5 7/21 8/12
10/24 11/1 11/24 14/24 17/8 17/11
19/23 23/17 24/11 26/5 26/10 27/22
34/24 35/9 37/10 38/1 38/20 40/11 41/3
44/15 44/20 46/4 46/19 46/20 49/3 50/8
52/4 52/7 52/24 56/21 60/22 61/19
61/21 61/23 63/7 63/25 67/23 76/6
76/22 77/11 78/19 81/10 81/16 87/6
88/1 88/23 90/10 100/15 102/17 104/25
108/18 116/14 119/24 121/19 126/5
137/4 137/8 141/10 144/15 144/25
145/10 147/19 147/20 147/23 148/14
151/18 152/3 154/3 159/15 159/16
162/18 169/18 173/8 175/9 176/12
177/12 177/24

**K**

**keep [10]** 7/12 13/9 13/11 22/8 41/14
41/14 85/2 85/6 122/25 134/14
**Kelly [3]** 13/19 13/21 18/1
**kept [1]** 102/16
**key [2]** 99/4 107/20
**kind [1]** 129/19
**knew [1]** 95/19
**know [94]** 6/11 6/24 8/24 9/22 10/7
11/19 17/24 22/1 29/19 30/1 30/3 30/14
32/16 33/1 34/21 35/3 36/13 37/24
39/24 41/8 44/25 45/9 45/11 45/15
56/24 61/20 63/5 65/4 65/20 66/8 66/19
66/24 67/8 67/9 70/18 70/22 70/23
72/18 74/23 75/18 83/25 85/17 85/18
89/12 90/23 98/2 99/23 99/24 100/10
101/5 102/6 102/12 104/7 104/24 116/6
116/11 116/18 120/17 120/23 121/3
121/5 121/8 121/9 121/10 121/16
121/18 121/19 122/5 122/13 123/3
124/6 125/5 130/5 131/24 133/10
134/19 135/4 142/9 143/12 144/24
144/24 146/14 146/15 146/21 146/25
147/16 150/2 165/9 172/15 173/17
173/18 174/15 174/21 174/22
**knowledge [1]** 133/13
**known [1]** 170/7
**knows [2]** 67/19 174/16

**L**

**lack [1]** 138/9
**Lafayette [2]** 1/11 1/19
**laid [1]** 20/25
**language [20]** 29/10 47/5 75/7 79/21
102/24 103/1 104/1 105/20 106/12
129/16 131/18 131/19 132/1 133/14
150/7 151/7 152/4 157/23 158/18
168/25
**last [16]** 30/5 59/5 62/20 72/19 73/5
73/5 86/2 86/7 86/8 103/7 105/16
109/19 134/2 147/17 162/6 171/16
**later [7]** 102/19 108/23 128/12 160/1
160/5 160/17 179/8
**law [14]** 58/25 59/19 75/23 76/9 122/4
122/11 122/16 122/25 123/1 127/18
136/17 163/20 170/10 172/23
**lawsuit [1]** 144/1
**lawyer [13]** 68/16 76/10 120/11 123/19
124/7 127/4 127/12 127/23 128/5 128/5

## L

**lawyer...** [5] 145/16 157/25 169/2
**lead** [1] 93/11
**leading** [10] 101/25 102/4 106/2 131/3 131/5 132/4 136/11 136/13 144/11 148/17
**learned** [1] 95/21
**least** [4] 86/3 97/11 117/4 157/3
**leave** [2] 48/24 49/1
**LEE** [4] 2/6 19/21 19/22 20/6
**left** [7] 33/18 51/12 99/20 100/9 139/10 140/19 159/4
**legal** [5] 75/18 103/15 104/1 145/15 145/18
**let** [12] 7/23 29/13 41/3 80/10 86/9 98/14 104/25 111/22 122/6 122/18 131/22 154/14
**let's** [8] 7/3 19/13 26/6 27/21 29/14 101/22 102/17 102/18
**letter** [3] 121/25 122/14 132/14
**level** [1] 97/9
**liability** [6] 97/24 98/10 98/25 107/21 114/9 133/23
**licensed** [3] 68/18 93/6 93/9
**lie** [2] 110/17 121/17
**lied** [3] 110/14 111/9 111/16
**like** [18] 40/6 40/8 42/4 42/16 60/13 61/22 67/15 80/18 97/11 113/11 119/24 127/24 136/6 136/7 167/18 172/24 173/4 174/25
**liked** [2] 35/18 39/2
**likelihood** [2] 123/9 134/21
**Likewise** [2] 51/14 177/7
**limit** [4] 30/19 170/10 172/24 173/4
**limitations** [1] 162/22
**limited** [6] 30/21 30/22 41/18 48/1 108/10 134/18
**limiting** [2] 104/20 105/7
**line** [8] 74/17 103/11 117/12 148/4 152/16 152/18 153/19 153/25
**lines** [2] 73/5 152/9
**list** [14] 5/16 5/21 14/4 65/22 65/25 138/10 138/18 141/15 160/25 161/8 162/21 177/5 177/7 180/12
**listen** [6] 14/24 35/25 87/8 113/6 123/13 159/25
**litigation** [1] 84/7
**litigator** [1] 100/21
**little** [2] 119/3 138/7
**long** [8] 45/15 56/12 66/4 83/2 93/9 127/4 127/12 162/9
**look** [12] 16/19 34/18 34/24 59/13 66/25 78/1 78/4 102/25 109/4 114/16 131/11 175/15
**looked** [3] 14/4 45/3 97/11
**looking** [4] 45/8 137/21 151/16 179/22
**looks** [1] 37/14
**lot** [1] 85/18
**loved** [1] 42/16
**lunch** [5] 76/23 138/8 142/15 155/5 180/11
**lying** [1] 121/16

## M

**ma'am** [3] 69/2 72/12 93/8
**made** [42] 8/21 23/18 23/24 24/2 24/4 24/6 38/25 40/21 46/11 49/5 49/18 50/25 54/16 57/15 63/21 64/10 65/13 79/13 80/15 80/21 94/4 95/6 95/23 97/21 101/1 101/13 109/25 112/24 115/6 115/6 115/18 118/21 120/22 133/6 136/25 141/4 145/19 167/16 168/10 173/2 173/22 174/6
**mail** [3] 71/11 82/8 101/17

**mails** [1] 94/12
**major** [1] 17/21
**make** [34] 11/14 24/5 24/10 39/25 59/18 59/25 61/11 62/23 63/1 63/15 65/8 65/8 65/17 65/20 67/15 70/7 70/9 77/1 77/21 78/13 79/15 83/13 95/7 116/7 124/24 125/20 128/3 134/17 143/6 143/13 144/13 167/7 167/11 169/16
**makes** [2] 130/7 145/17
**making** [8] 29/6 52/1 81/14 118/9 118/14 139/9 159/25 177/12
**malpractice** [1] 89/25
**Management** [1] 96/15
**manager** [2] 13/22 100/4
**mandamus** [1] 67/19
**mandate** [1] 128/5
**many** [5] 33/22 36/22 42/17 127/15 169/5
**MARIE** [1] 1/18
**mark** [3] 26/5 141/7 143/3
**marked** [6] 25/13 26/19 27/5 59/6 72/23 142/24
**Marshal's** [1] 18/1
**Mary** [1] 162/6
**material** [45] 13/12 15/5 15/8 15/13 15/13 41/4 41/4 43/6 43/8 43/13 43/18 49/16 49/20 50/10 50/13 50/19 50/22 54/1 54/5 55/4 57/1 58/1 60/21 83/11 83/20 83/22 84/4 86/14 88/17 120/4 120/6 164/2 164/5 164/9 164/9 166/5 166/12 166/21 168/3 170/19 170/25 171/2 172/4 172/4 172/9
**matter** [11] 31/1 31/14 56/14 66/5 68/25 79/4 93/12 99/5 104/18 114/16 169/13
**matters** [1] 94/16
**may** [44] 10/25 11/17 13/3 14/18 16/3 18/14 19/16 20/1 27/22 31/15 34/16 41/8 46/17 48/23 58/21 64/14 72/25 91/14 92/22 93/10 94/12 97/14 103/14 103/20 109/13 110/18 113/6 116/15 117/9 118/7 120/12 127/13 127/21 127/21 132/20 133/4 139/7 140/20 143/18 152/24 159/4 175/2 176/12 176/14
**maybe** [5] 15/21 52/5 84/17 123/9 151/17
**MCCLOREY** [5] 1/16 4/22 112/24 121/7 122/1
**McClorey's** [1] 110/15
**MCGUIRE** [38] 1/3 4/10 4/14 4/17 22/12 23/20 24/2 32/21 33/2 44/5 44/16 45/16 45/19 49/5 49/7 51/14 54/16 54/20 57/4 99/24 123/15 125/20 125/24 126/19 126/24 127/2 144/2 144/20 144/22 145/1 176/19 176/19 176/23 177/1 177/6 177/8 180/3 180/4
**McGuire's** [2] 57/16 101/3
**MCLAUGHLIN** [44] 1/16 2/21 2/23 4/22 81/16 92/25 93/5 99/15 100/14 102/1 102/9 103/16 103/24 104/11 104/25 105/4 105/15 106/4 107/6 108/22 122/1 130/11 130/14 131/8 131/12 131/17 132/12 133/2 135/11 135/19 136/14 140/24 143/18 143/21 145/24 146/17 148/1 148/24 149/18 151/5 152/1 152/15 155/10 180/10
**me** [136] 5/13 7/21 7/23 8/1 10/3 12/19 12/20 16/13 17/10 18/20 18/21 19/23 19/25 25/3 26/10 28/12 29/13 30/1 30/2 30/8 30/12 30/13 31/15 38/13 43/11 43/17 43/21 44/5 44/19 45/2 46/15 51/21 59/17 60/5 60/11 61/13 61/25 62/24 63/3 63/9 65/10 65/10 65/24 66/12 67/9 69/11 69/20 70/3 70/20 70/23 71/10 72/12 73/4 73/8 73/21

78/10 78/13 79/24 80/8 80/10 80/21 81/3 82/3 86/1 86/7 86/9 87/3 87/11 87/15 88/3 88/8 88/16 89/22 89/23 91/3 98/6 101/17 106/22 107/3 108/18 109/6 110/23 111/15 111/22 115/2 115/12 117/7 117/16 118/5 118/8 118/13 118/21 119/9 119/16 119/21 120/3 120/13 120/14 122/6 122/18 123/13 123/19 123/20 124/16 126/8 126/9 127/5 127/9 128/16 128/18 128/18 128/20 128/20 134/23 136/12 139/4 139/21 141/24 143/15 144/12 152/8 154/14 154/18 159/22 161/4 163/2 168/11 169/9 169/15 174/5 175/1 175/6 177/21 177/24 178/3 180/10
**mean** [28] 14/9 20/15 29/12 30/21 31/24 35/14 42/15 44/13 44/21 45/4 50/2 50/8 69/25 74/23 75/8 75/15 95/10 126/20 143/25 149/5 149/6 151/20 153/4 159/1 161/17 163/21 170/6 170/6
**meaning** [2] 71/3 112/21
**means** [5] 36/18 73/18 74/3 83/25 159/2
**meant** [1] 151/13
**mechanical** [1] 162/18
**media** [19] 30/22 33/25 70/8 70/9 72/7 100/6 108/1 133/20 133/25 133/25 134/1 135/21 150/21 152/8 152/10 152/13 157/12 161/10 163/4
**meet** [2] 96/4 96/5
**meeting** [8] 54/3 55/8 57/3 57/14 57/17 57/25 80/6 80/13
**members** [9] 14/1 13/25 78/23 80/5 81/4 81/7 100/19 101/2 101/4
**memory** [5] 77/25 94/19 104/7 140/3 140/4
**mention** [1] 82/11
**mentioned** [7] 80/14 87/4 87/5 112/13 132/13 152/3 155/23
**merely** [1] 161/5
**Messrs** [6] 20/8 44/16 99/24 127/2 144/20 144/22
**met** [4] 41/7 49/17 53/11 92/8
**metcalf** [2] 1/18 1/20
**Michelle** [2] 68/5 68/17
**MICHIGAN** [10] 1/1 1/11 1/20 4/1 4/6 68/18 93/7 96/15 138/4 156/20
**middle** [3] 35/17 67/22 179/16
**might** [6] 9/18 18/12 114/25 127/25 135/21 141/7
**MILLER** [36] 1/14 2/12 2/17 2/19 4/17 44/17 56/6 68/2 68/3 68/5 68/13 68/17 72/1 75/7 76/17 79/7 82/23 83/1 84/25 91/13 91/18 100/1 101/5 104/19 105/6 108/13 144/25 145/2 150/19 164/16 164/21 165/6 165/16 165/19 165/21 166/1
**mind** [24] 36/15 41/20 57/14 68/16 76/3 78/23 78/23 108/8 115/6 115/7 115/18 116/2 116/12 119/1 123/17 123/18 125/16 125/17 125/18 129/17 146/1 156/15 160/9 162/5
**minds** [5] 54/3 55/9 57/3 57/17 58/1
**minimize** [1] 170/11
**minute** [5] 5/13 19/23 59/14 103/18 177/24
**minutes** [2] 5/10 9/8
**mismarked** [1] 26/2
**misrepresented** [1] 56/15
**miss** [1] 172/6
**missed** [1] 52/5
**missing** [2] 43/16 84/17
**mistaken** [1] 116/2
**misunderstanding** [1] 152/11
**MMRA** [3] 144/9 156/18 156/19
**moment** [2] 7/23 9/19

**M**

momentum [1] 114/18
Monday [2] 94/13 94/14
monetary [1] 84/13
money [12] 23/5 42/10 55/25 86/15
113/7 117/24 120/5 123/14 126/3 137/2
149/20 172/2
monies [3] 53/14 54/7 57/10
month [2] 65/12 122/13
months [1] 132/14
more [22] 30/15 34/25 38/11 52/24
54/11 59/11 80/7 93/21 95/2 105/24
106/12 106/15 107/10 108/20 119/5
121/22 124/25 125/7 127/3 129/9
137/16 148/3
morning [16] 4/13 4/16 4/19 4/21 4/23
56/8 56/9 77/9 94/24 96/13 141/3
155/14 176/11 179/8 179/14 179/24
most [1] 6/9
mother [1] 101/2
motion [36] 5/6 5/10 6/9 8/24 10/12
10/15 52/1 52/6 53/1 53/7 53/8 53/11
53/21 53/22 60/4 60/14 61/9 61/12
65/19 67/18 109/21 119/17 138/9
138/13 138/17 138/23 140/9 149/7
149/9 167/8 167/11 167/16 167/20
177/11 179/2 179/3
motions [2] 67/16 179/16
motivation [1] 119/20
mouth [1] 38/17
move [5] 6/5 36/4 49/12 51/10 86/22
moved [3] 19/8 25/21 25/22
moving [5] 19/10 19/11 49/14 54/21
124/19
Mr [434]
Ms [82] 2/17 2/19 2/21 2/23 13/19 14/7
15/16 16/9 18/17 44/16 56/6 62/7 64/19
66/11 68/3 72/1 75/7 76/17 79/5 79/7
80/22 81/16 82/23 83/1 84/25 91/13
91/18 92/25 93/5 99/15 100/1 100/14
100/15 101/5 102/9 103/16 103/24
104/11 104/19 104/25 105/4 105/6
105/15 106/4 107/6 108/12 108/22
110/14 112/24 121/7 130/11 130/14
131/8 131/12 131/17 132/12 133/2
135/11 135/19 136/14 140/24 143/17
143/21 144/24 145/2 145/24 146/17
148/1 148/24 149/18 150/19 151/5
152/1 153/15 155/10 164/21 165/6
165/16 165/19 165/21 166/1 180/10
msn.com [1] 1/20
much [6] 47/1 48/23 92/21 125/5 156/6
175/5
multiple [1] 53/25
municipal [3] 96/15 136/16 156/20
must [4] 92/8 122/20 129/25 176/12
my [91] 8/19 10/9 11/11 14/19 23/23
34/20 35/3 39/7 40/2 40/21 46/25 50/1
53/8 59/18 60/24 61/7 61/21 62/1 63/17
64/1 64/22 67/12 67/21 79/14 80/21
82/3 84/24 86/16 86/17 86/23 87/23
89/2 89/2 89/3 89/14 90/1 91/8 94/19
101/18 104/7 106/21 106/21 106/22
107/25 111/4 113/1 113/15 117/23
118/22 118/25 119/9 122/2 122/13
123/8 123/17 123/18 123/21 125/16
126/14 126/15 126/20 127/1 131/15
135/6 135/7 135/8 135/10 136/16
139/10 145/6 146/1 149/9 150/4 150/5
151/10 151/16 152/22 155/14 158/7
159/25 160/9 163/19 167/9 167/11
168/5 168/17 168/23 170/14 176/18
176/18 180/1
myriad [1] 56/11

**N**

name [10] 19/20 20/5 68/4 68/16 77/17
78/24 156/15 162/5 162/6 173/19
narrative [2] 100/12 151/20
nature [2] 97/18 108/9
necessary [2] 56/13 77/7 77/10
necessity [4] 163/5 163/8 172/8 172/21
need [17] 9/23 10/18 15/1 15/14 51/17
51/18 56/24 57/4 65/4 66/13 67/5 77/2
81/13 100/12 102/14 163/17 165/3
needing [1] 97/20
needs [4] 13/1 15/24 141/3 141/3
negotiate [5] 71/14 164/25 165/18
166/16 166/19
negotiated [5] 50/23 87/13 88/10 89/4
167/4
negotiations [14] 80/19 83/6 83/14
87/14 89/19 95/9 96/1 118/10 148/4
159/3 164/12 164/15 164/21 167/6
neither [1] 80/22
never [14] 37/16 82/15 86/19 87/19 88/8
89/12 89/20 89/21 118/8 118/13 118/21
119/8 133/22 165/11
news [33] 5/22 6/1 9/12 14/8 21/13 29/5
44/7 44/10 48/18 50/24 55/1 58/24
70/15 95/20 106/16 106/24 107/14
107/17 121/25 122/14 132/14 146/7
152/14 153/21 154/25 155/13 168/1
168/24 173/24 174/11 174/23 175/5
175/16
newspaper [6] 21/21 41/20 150/2
152/16 167/25 169/24
next [14] 13/17 28/10 38/23 49/2 64/8
64/15 67/12 67/14 67/25 76/19 92/23
156/8 161/25 164/8
nice [3] 39/11 39/15 42/10
night [1] 179/16
nine [1] 109/24
no [189]
nobody [2] 80/20 82/19
nodding [1] 116/25
non [1] 62/6
non-settlement [1] 62/6
nondisclosure [1] 136/21
Nope [1] 29/22
nor [5] 8/21 51/8 88/16 92/10 107/25
not [288]
note [1] 160/24
notepad [5] 77/13 77/21 78/3 78/3 78/7
notes [3] 50/1 139/10 151/16
nothing [9] 108/16 125/6 128/10 128/12
129/8 152/8 155/21 160/19 172/8
notice [1] 176/25
November [3] 1/12 2/3 4/2
now [37] 5/7 25/2 26/6 26/18 27/21 30/8
33/4 35/17 35/21 36/2 37/11 37/21 53/8
54/5 55/7 60/3 66/8 66/24 67/8 70/7
70/24 75/16 75/18 114/3 114/24 131/1
131/10 137/10 137/13 146/18 149/3
149/8 166/5 167/3 167/13 170/22
175/15
nowhere [1] 87/4
number [29] 4/9 16/4 21/18 30/5 30/9
34/17 50/18 53/15 56/11 59/6 86/8 88/4
92/3 97/12 99/7 118/18 134/17 134/21
138/6 141/14 149/21 155/6 157/7 171/8
171/9 171/12 175/22 176/1 177/5
numbers [4] 80/24 81/5 95/18 98/18
numerous [1] 83/5

**O**

oak [16] 31/23 32/4 32/12 32/14 32/16
32/17 32/24 32/25 33/1 96/14 132/20
144/8 162/8 162/16 162/18 176/1
Oakland [1] 154/4
oath [1] 110/14
object [27] 5/19 8/3 8/13 10/1 10/4 11/6
12/1 22/3 31/2 46/13 46/17 75/22 104/3
104/22 105/10 106/1 114/2 116/8 131/2
144/10 145/11 146/12 148/14 158/14
162/20 171/22 176/8
objected [2] 69/22 69/25
objecting [1] 115/8
objection [32] 5/20 5/21 8/16 10/20 11/2
11/23 12/3 12/6 12/13 22/17 46/24
46/25 62/9 62/11 63/11 81/14 98/11
98/12 101/24 102/4 114/23 116/7
131/21 141/19 142/7 142/10 142/21
142/23 145/13 145/19 148/18 168/10
objections [1] 178/13
obligation [8] 51/10 51/13 54/20 54/22
55/18 59/2 91/24 126/21
obligations [1] 49/17
observed [1] 117/8
obvious [1] 67/1
obviously [4] 55/8 66/21 73/17 149/22
occasions [1] 56/11
occur [4] 73/18 96/3 127/21 127/21
occurred [6] 55/1 58/18 58/24 59/4
101/16 134/18
occurring [1] 151/19
off [4] 40/23 97/8 114/19 126/9
offer [6] 104/19 105/7 113/16 116/16
117/19 169/13
offered [5] 34/4 64/6 95/11 95/13 176/8
offering [1] 117/24
offers [3] 33/20 70/11 94/4
office [11] 86/20 89/13 89/14 91/8
106/21 122/4 127/23 127/24 150/4
176/18 176/19
Officer [2] 31/22 31/23
officers [4] 29/24 121/21 124/24 133/23
officials [1] 176/3
oh [32] 9/5 34/9 37/13 51/24 53/2 77/16
84/22 97/3 98/4 99/18 105/19 106/19
108/19 110/25 114/3 118/12 119/22
121/22 128/1 128/14 128/19 130/9
132/8 133/12 134/12 137/12 142/22
142/25 149/2 151/2 157/10 169/11
okay [269]
older [1] 119/3
on [147] 1/14 1/17 4/14 4/17 4/20 6/24
7/11 8/18 9/3 11/1 11/21 13/11 13/20
14/1 15/10 16/9 17/3 17/17 18/4 20/7
21/24 22/22 24/14 25/5 25/17 26/3 28/5
28/16 30/24 32/11 33/19 39/10 40/23
40/23 40/23 41/19 41/19 46/17 47/11
51/11 53/9 56/11 56/25 60/18 62/6
63/18 64/3 65/12 66/18 68/20 71/14
72/20 79/21 83/17 84/5 84/16 88/18
88/19 91/20 92/6 92/13 94/5 94/11
94/12 94/13 94/14 94/17 94/19 95/7
96/1 98/18 99/6 100/12 101/12 101/13
102/5 102/13 102/24 103/1 103/2
103/15 104/1 105/20 105/22 109/23
109/23 110/1 112/23 112/25 113/1
113/3 113/24 118/11 120/4 120/20
122/3 122/11 122/16 123/14 124/18
124/19 126/4 127/23 130/16 132/16
133/13 138/9 139/19 141/14 141/14
142/15 146/18 148/2 149/3 149/3 149/7
149/16 150/17 151/9 152/16 152/18
152/18 153/3 153/19 153/25 155/3
155/18 158/4 158/23 158/24 159/1

# O

on... [16]  159/2 159/16 159/19 160/8
160/16 161/4 161/5 162/11 162/20
168/11 171/18 172/16 173/1 174/7
177/7 180/11
on-line [4]  152/16 152/18 153/19 153/25
on-the-agreement [1]  159/1
on-the-spot [3]  158/23 158/24 159/2
once [2]  89/5 150/2
one [101]  5/24 7/13 9/4 9/9 9/10 13/8
15/7 16/4 20/25 21/18 24/17 24/18
24/19 24/19 24/22 24/22 25/7 25/19
25/20 26/10 27/6 30/9 33/8 37/12 50/18
51/5 53/15 53/24 53/25 54/6 54/16 56/2
59/7 64/19 69/2 71/3 72/13 72/24 73/19
80/7 86/2 86/3 86/8 88/4 89/21 90/2
91/20 91/24 92/3 99/17 103/1 104/7
104/17 106/6 108/20 111/16 111/24
116/1 118/20 118/24 120/6 125/3 127/3
127/6 127/7 127/25 133/14 138/18
139/10 139/21 139/23 143/4 144/1
144/1 144/2 144/6 144/7 144/19 146/15
151/17 152/7 155/4 157/7 164/6 164/7
167/23 168/11 170/8 171/9 172/14
173/17 173/18 173/24 174/14 174/21
174/23 175/7 175/22 177/6 177/18
178/19
one-page [1]  20/25
ones [4]  18/22 19/8 140/4 147/22
only [29]  30/21 30/22 33/23 58/6 61/12
79/14 79/18 79/22 82/11 95/14 104/21
105/8 108/11 110/15 111/17 115/1
115/24 116/11 118/24 125/13 128/17
128/19 136/16 139/21 142/23 148/11
148/21 157/7 164/14
open [1]  178/20
opinion [18]  6/8 10/11 10/14 11/9 13/13
14/2 50/13 54/12 145/12 145/13 145/16
147/13 163/19 166/11 168/5 168/17
168/23 172/12
opinions [1]  8/21
opportunity [7]  41/16 60/1 65/17 65/21
78/1 83/5 91/19
oppose [1]  8/25
opposed [1]  170/7
opposite [1]  45/5
option [1]  67/6
options [2]  67/6 67/13
or [133]  13/12 18/25 21/13 22/9 22/11
23/1 23/1 27/25 29/4 29/8 30/12 40/13
41/7 41/19 43/15 44/5 45/17 47/14 48/8
50/3 51/5 51/22 52/8 52/19 54/17 55/23
57/8 60/20 62/6 64/11 66/17 69/4 70/8
70/11 70/11 71/2 71/3 71/4 74/2 74/4
74/9 74/13 76/2 77/25 78/10 80/4 80/5
80/14 80/15 80/18 80/18 80/20 82/7
82/8 82/10 84/7 84/8 86/11 86/21 87/17
88/1 89/3 92/15 92/17 94/4 94/13 94/14
96/7 99/4 99/7 99/12 99/13 100/1 100/1
101/18 103/3 104/9 104/15 104/15
104/19 105/6 105/16 107/13 108/9
112/3 112/24 113/7 113/18 116/19
118/20 118/24 119/9 120/10 121/4
122/13 123/23 128/5 129/7 130/19
130/25 131/13 131/13 133/8 134/18
134/25 135/4 136/20 136/24 139/15
140/4 143/4 143/12 143/14 143/23
147/20 147/21 148/12 148/23 150/5
151/24 152/16 154/4 158/10 165/7
165/16 165/19 165/21 170/11 172/10
173/17 175/16 178/16 179/21
order [37]  5/5 6/12 6/12 6/16 6/18 7/1
7/2 7/4 7/6 7/7 8/23 9/24 9/25 10/11
10/14 10/19 10/24 11/11 13/13 14/2

14/5 18/22 25/10 26/13 26/14 26/16
26/19 37/25 38/9 56/23 56/24 66/3 72/2
72/3 95/7 124/18 125/23
order's [1]  26/15
ordered [2]  6/15 95/3
ordering [2]  64/7 179/6
orders [2]  67/21 172/15
ordinance [2]  176/1 176/2
original [6]  8/1 8/5 8/7 8/13 17/24
109/21
originally [1]  8/18
other [39]  9/15 10/10 22/25 45/25 49/4
51/4 51/12 54/2 71/21 75/2 82/22 86/3
91/5 91/11 94/16 95/7 101/4 116/5
117/18 117/25 119/25 137/13 141/8
142/10 148/25 151/6 152/2 152/3 152/5
154/4 155/13 155/15 157/9 157/14
157/23 161/18 173/25 174/25 175/7
our [42]  6/9 7/12 8/23 9/19 10/12 16/5
19/8 19/20 25/13 27/22 53/22 54/20
56/3 60/19 62/17 65/19 65/22 65/25
71/11 80/12 86/5 89/4 97/5 97/11 116/2
121/25 126/1 126/15 129/6 132/14
138/22 139/19 141/5 141/6 145/3 149/4
149/7 153/8 161/8 166/22 177/7 178/5
out [32]  6/11 7/25 8/2 8/10 18/1 20/25
23/22 31/17 32/23 38/16 41/25 51/18
66/10 71/14 85/19 99/22 104/25 109/7
120/14 120/16 120/18 122/13 134/15
140/19 150/14 151/15 154/3 159/4
162/11 166/20 170/4 172/15
out-house [1]  162/11
outlining [1]  149/25
outside [13]  44/15 45/12 45/14 91/5
91/8 95/8 99/21 146/21 146/25 147/2
147/17 174/13 175/22
over [9]  71/11 82/7 82/18 101/18 109/3
119/13 151/15 151/18 179/21
overall [1]  68/25
overruled [9]  22/5 22/19 75/24 98/14
105/12 115/13 145/21 148/19 168/11
oversight [3]  139/9 139/15 139/19
own [12]  84/24 92/18 113/24 114/19

# P

p.m [5]  137/25 138/2 177/25 178/1
180/14
package [1]  9/19
packet [1]  142/16
page [6]  2/10 20/25 35/17 109/19
109/23 109/23
pages [2]  109/19 112/24
paid [3]  49/25 50/6 149/20
paper [6]  23/3 103/15 104/1 104/13
131/11 152/15
papers [1]  154/5
paperwork [2]  159/21 161/18
paragraph [28]  28/10 28/11 28/12 28/23
47/7 47/14 47/14 50/20 51/5 54/8 55/10
73/6 74/17 103/7 103/9 104/8 104/9
105/16 105/16 106/5 109/24 110/2
110/7 112/8 112/9 123/6 164/6 168/22
paragraphs [1]  54/6
Pardon [16]  10/3 12/19 17/10 25/3 43/11
44/19 62/24 65/24 69/11 70/20 80/8
110/23 115/12 126/8 127/9 136/12
parents [1]  99/25
part [39]  10/7 10/9 10/14 10/15 10/25
11/7 12/12 12/8 12/11 53/24 55/7 77/12
78/15 84/11 110/10 110/15 110/22
111/11 111/17 111/18 111/20 112/2
112/6 138/16 138/17 139/9 139/19
141/4 141/6 141/8 142/16 143/14
152/25 159/8 163/24 167/5 168/25
171/18 173/2

participate [2]  164/11 164/20
particular [7]  52/19 57/18 93/20 153/10
156/23 163/17 171/5
particularly [1]  73/5
parties [29]  9/3 9/16 15/4 28/17 33/24
41/6 56/10 56/22 59/7 60/9 64/5 65/3
72/13 73/13 74/2 80/15 85/1 95/15 96/8
96/17 96/17 106/7 124/23 129/10 139/8
144/7 160/10 164/15 167/4
partner [3]  122/2 122/15 122/19
party [9]  19/11 27/25 28/6 37/1 49/14
54/21 129/6 146/6 149/24
party's [4]  27/25 145/7 146/2 146/10
passenger [1]  84/16
past [2]  134/16 167/19
patience [1]  67/21
Paul [4]  9/11 95/19 106/25 153/23
pause [10]  5/14 19/14 19/25 51/19
59/15 65/17 103/19 137/5 139/12 141/9
pay [6]  113/12 113/19 126/3 126/6
126/21 126/24
payable [1]  17/18
paying [2]  114/21 137/1
payment [7]  53/13 53/19 54/7 57/8
57/10 91/25 92/8
payments [1]  55/25
penalties [1]  106/9
people [3]  85/18 101/12 133/18
percent [5]  14/12 88/12 88/15 96/19
100/1
period [5]  66/4 88/2 127/14 138/8
162/14
permissible [1]  170/10
perpetrator [1]  33/10
person [5]  28/1 70/18 161/10 163/4
173/19
personally [1]  126/21
persons [3]  33/23 36/22 95/14
perspective [3]  97/12 170/3 170/14
persuade [1]  51/13
persuasion [1]  19/12
phone [2]  94/11 127/23
phrase [9]  59/6 73/17 75/9 75/14 76/2
76/6 79/13 86/2 86/7
piece [4]  23/3 103/15 104/12 131/11
place [17]  44/12 48/17 55/15 64/9 69/3
71/17 80/12 81/8 87/14 91/4 96/10
114/23 116/1 127/23 129/3 131/1 148/4
placed [2]  8/19 25/5
placement [1]  37/25
plaintiff [28]  11/20 25/23 25/25 49/14
51/11 52/9 52/10 52/13 52/14 53/1
53/10 53/18 56/1 59/19 64/6 69/4 70/4
70/25 79/5 79/11 95/12 106/17 136/23
138/13 138/14 149/10 176/12 178/19
plaintiff's [5]  19/22 128/5 143/23 144/20
155/6
plaintiffs [30]  1/5 1/15 2/5 14/11 14/15
18/21 55/23 71/3 72/6 74/8 79/18 80/5
80/15 80/16 80/22 87/17 100/5 101/6
108/2 113/17 120/10 123/20 135/13
135/21 135/24 136/14 136/24 144/18
149/20 177/17
plaintiffs' [31]  10/15 14/8 25/12 26/19
26/20 33/19 54/18 62/2 64/20 69/5
69/16 70/5 71/1 71/3 79/6 99/22 100/19
101/2 101/7 101/9 106/18 108/13 143/4
143/5 149/9 150/5 150/14 150/20
164/16 165/1 177/5
plan [1]  172/16
planned [1]  108/3
play [1]  84/13
played [1]  150/16
pleading [5]  8/21 120/9
please [16]  4/8 4/12 7/9 19/20 23/19

2.05 nr 40185 SEC SDR - Document 1 Filed 05/26/09 - Pg 224

**P**

**please...** [11] 32/2 35/25 67/20 68/4 72/16 77/14 90/11 138/5 150/25 168/18 172/22
**point** [45] 10/22 14/12 16/4 20/13 21/9 45/22 52/7 56/21 58/25 60/5 60/8 60/11 61/9 61/13 64/19 66/16 68/24 69/2 70/10 79/11 80/23 95/19 96/13 96/20 96/22 97/2 99/6 101/5 101/10 101/17 104/10 106/3 113/23 114/19 116/22 121/18 125/24 126/2 126/14 128/2 133/17 150/23 155/22 167/15 176/10
**points** [2] 56/12 127/18
**police** [2] 46/11 173/21
**policy** [2] 124/6 124/8
**polygraphing** [1] 99/20
**portion** [1] 53/10
**position** [20] 19/8 37/11 41/16 44/2 50/8 50/10 52/25 53/13 63/19 70/11 71/5 84/15 88/24 89/3 89/4 97/5 126/7 126/15 141/6 149/10
**positions** [2] 64/5 96/8
**possibility** [1] 118/5
**possible** [4] 35/16 163/19 172/23 173/3
**possibly** [2] 115/10 154/17
**posture** [1] 70/11
**potentially** [1] 170/7
**practice** [1] 93/6
**practiced** [1] 169/4
**practicing** [1] 145/17
**precedent** [1] 92/8
**preconceived** [1] 178/22
**precondition** [3] 55/24 57/8 57/10
**preconditions** [2] 57/13 59/5
**preliminary** [10] 37/1 37/12 54/4 55/9 56/14 131/19 138/10 138/18 161/8 162/21
**premise** [1] 36/11
**prepared** [5] 51/8 55/12 88/16 109/20 109/24
**preparing** [1] 134/25
**presence** [4] 66/10 91/5 95/8 97/22
**present** [30] 18/25 20/7 41/16 44/5 44/9 44/17 46/14 57/4 60/10 60/13 63/20 64/7 64/12 64/16 68/20 77/22 78/9 95/16 99/24 99/25 101/3 101/3 119/14 133/25 156/25 164/15 165/4 172/13 176/12 177/6
**presentation** [1] 66/6
**presented** [12] 35/10 52/9 52/15 55/22 60/5 60/8 60/11 60/19 61/13 67/7 81/23 86/19
**preserve** [1] 61/21
**presiding** [1] 4/8
**press** [4] 21/13 23/20 29/4 57/15
**presume** [1] 131/9
**presuming** [2] 61/8 131/15
**pretty** [3] 4/25 137/23 175/4
**prevent** [5] 135/12 135/13 135/24 136/4 136/19
**previously** [4] 76/7 153/1 167/24 171/10
**printed** [4] 5/23 6/1 6/2 138/12
**printing** [1] 6/24
**prior** [11] 56/20 80/5 80/6 80/12 92/8 118/13 124/13 124/15 136/9 136/15 136/19
**private** [1] 136/20
**privilege** [2] 115/10 158/15
**pro** [1] 92/1
**probably** [6] 18/12 77/5 88/12 89/24 106/21 134/12
**problem** [4] 17/22 78/16 142/25 143/9
**procedural** [1] 149/13
**procedurally** [2] 60/23 61/3
**procedure** [3] 18/21 60/15 61/10
**proceed** [11] 5/2 10/16 20/1 23/18 63/10 64/14 65/2 101/1 103/20 143/11 143/18
**proceeded** [3] 93/15 94/24 95/25
**proceeding** [7] 5/17 7/8 11/12 24/8 67/22 117/4 179/4
**proceedings** [17] 2/3 5/14 10/13 10/16 10/17 11/21 13/1 13/6 19/14 19/25 51/19 59/15 65/7 103/19 137/5 139/12 141/9
**process** [2] 18/4 127/18
**produce** [1] 95/4
**producible** [1] 133/8
**product** [1] 115/9
**proffer** [25] 61/23 62/7 62/12 62/13 62/18 62/23 63/1 63/11 63/16 63/17 64/15 64/18 65/9 65/13 65/17 65/20 66/6 66/11 66/16 66/20 66/21 66/22 67/1 67/7 67/10
**proffers** [3] 66/9 66/14 67/11
**program** [1] 156/19
**prompted** [1] 69/3
**prompts** [1] 164/10
**pronouns** [1] 32/23
**proof** [2] 49/15 61/23
**proofs** [4] 49/19 51/12 51/16 52/2
**proper** [4] 14/14 14/15 18/9 51/3
**properly** [1] 18/18
**proposed** [5] 5/21 10/11 109/4 141/14 160/25
**proposition** [1] 76/1
**protect** [1] 63/7
**proved** [1] 58/12
**proven** [2] 58/9 58/10
**provide** [1] 16/3
**provided** [1] 167/3
**provision** [1] 122/20
**public** [7] 8/21 124/6 124/8 132/19 132/20 133/5 136/4
**public's** [1] 134/15
**publication** [2] 122/4 122/16
**publicly** [1] 135/14
**published** [3] 48/18 55/2 154/25
**purported** [3] 45/17 58/12 165/1
**purposes** [1] 7/7 7/8 89/17 92/5
**pursuant** [9] 14/5 26/8 37/11 40/18 43/4 43/14 103/4 133/8 134/24
**put** [26] 7/9 7/11 8/18 12/17 12/20 25/17 26/2 28/16 32/23 34/4 60/18 61/23 72/19 95/18 102/17 103/14 120/14 120/16 123/14 140/14 150/10 151/3 151/7 152/4 161/8 177/7
**puts** [1] 122/13

**Q**

**qualified** [2] 145/15 145/18
**question** [104] 7/18 17/11 23/23 31/5 31/8 31/9 31/11 32/1 35/3 35/6 35/9 35/25 36/2 36/5 36/11 38/19 38/23 39/5 39/7 39/14 40/2 40/19 40/22 42/23 43/3 47/21 49/24 51/12 60/24 80/9 86/23 87/8 87/23 88/1 88/14 88/22 89/7 90/1 90/12 90/25 98/7 98/19 100/13 101/25 104/3 104/25 105/11 106/2 106/2 108/15 110/15 111/15 111/24 112/13 113/7 114/23 114/25 115/3 116/9 120/25 123/18 125/19 126/9 127/5 131/3 131/5 131/9 131/23 131/25 132/4 135/10 135/16 136/13 144/11 144/13 144/15 145/18 146/1 146/2 147/17 147/24 148/9 148/15 149/12 149/16 150/19 150/25 151/25 152/2 159/15 159/25 160/14 165/12 165/13 165/23 165/25 168/8 168/14 169/18 173/5

**questioning** [2] 148/5 178/17
**questions** [32] 30/25 31/13 31/15 34/23 37/9 38/2 39/19 41/10 41/18 43/5 43/12 43/18 46/1 58/14 71/22 71/24 75/2 82/22 85/9 91/12 92/20 103/2 114/10 119/14 125/14 147/20 156/1 156/2 157/9 157/14 157/16 173/7
**quick** [3] 9/7 59/14 159/15
**quite** [4] 35/16 40/17 58/25 95/17
**quotations** [1] 175/5
**quote** [7] 31/18 34/15 35/13 37/7 37/21 59/7 114/8
**quoted** [5] 29/5 34/18 35/4 58/21 106/18
**quoting** [1] 150/8

**R**

**r-e** [1] 32/3
**RACINE** [12] 1/14 2/12 4/17 64/19 68/2 68/5 68/13 68/17 79/5 80/22 144/24 164/16
**racing** [1] 146/1
**raised** [4] 114/11 149/16 154/8 155/4
**ran** [1] 154/2
**rather** [1] 21/14
**re** [1] 148/12
**re-initiate** [1] 148/12
**reached** [3] 93/16 106/25 150/11
**read** [37] 8/22 8/23 27/15 27/17 28/4 28/11 29/6 29/9 34/13 34/14 46/7 46/10 46/20 46/21 47/3 47/7 73/4 74/24 74/25 77/25 106/16 106/20 107/17 110/20 111/5 122/17 132/24 152/15 152/15 152/16 153/18 153/25 157/19 173/13 174/20 175/13 175/14
**reading** [2] 91/10 110/4
**ready** [4] 5/1 93/1 140/24 169/16
**real** [2] 9/7 119/20
**realize** [1] 149/14
**really** [6] 88/1 98/3 115/11 115/13 117/14 146/11
**reason** [12] 15/19 15/22 15/23 62/2 98/16 119/16 121/17 128/17 128/19 148/22 150/23 165/12
**reasonable** [1] 176/25
**reasons** [2] 67/2 172/14
**rebuttal** [1] 176/13
**recall** [48] 6/20 14/10 21/20 33/11 33/21 33/22 33/23 34/1 34/3 34/6 34/20 42/2 50/1 69/19 70/24 71/7 71/10 71/13 71/19 79/8 79/10 79/19 79/24 80/3 80/10 81/10 81/21 81/24 82/2 82/6 82/11 82/13 82/16 92/14 95/10 95/13 95/14 99/6 99/25 112/7 113/2 113/5 117/21 117/23 117/25 131/10 148/4 148/9
**recalled** [1] 50/22
**recalling** [1] 35/14
**recalls** [1] 138/6
**receive** [7] 5/17 10/21 10/24 11/1 11/10 12/21 42/11
**received** [8] 6/5 9/16 10/1 10/5 22/25 23/5 169/1 169/8
**recess** [4] 137/24 137/25 177/25 180/14
**recognize** [3] 98/24 99/5 99/8
**recognized** [2] 98/18 133/18
**recollection** [5] 62/19 130/25 131/13 131/16
**reconsider** [1] 67/17
**reconsideration** [1] 65/19
**record** [28] 4/11 8/13 8/18 10/23 11/7 12/3 12/9 12/11 12/12 20/5 24/11 26/2 26/18 28/16 33/19 40/11 41/3 61/20 61/21 61/23 63/8 63/18 63/25 95/7 99/7 141/10 152/25 161/4

## R

records [2] 107 10/10
recover [1] 52/11
recreational [1] 84/16
Recross [4] 2/19 48/13 48/15 91/17
Recross-Examiantion [1] 2/19
RECROSS-EXAMINATION [2] 48/15
91/17
recuse [3] 167/8 167/17 179/3
redacted [3] 24/21 24/22 27/23
redirect [13] 2/9 2/18 2/23 3/6 46/3 46/5
72/10 85/10 85/12 130/13 143/20
146/24 160/21
reduced [1] 83/20
refer [4] 31/22 78/2 132/16 168/19
reference [9] 80/16 83/24 99/3 109/25
112/24 130/7 134/17 160/1 171/12
referenced [2] 138/22 171/10
referencing [2] 32/4 64/23
referring [8] 33/15 36/25 89/2 147/11
147/19 147/20 147/21 149/15
refers [3] 32/13 32/17 32/20
reflect [1] 41/4
reflected [4] 9/4 13/13 56/2 138/17
reflects [1] 129/6
refresh [1] 77/25
refuse [1] 67/17
regard [11] 20/19 20/21 21/14 21/21
22/8 76/13 84/11 84/12 89/18 118/10
119/17
regarding [26] 14/7 15/11 36/12 36/15
41/14 43/6 65/10 70/10 71/5 79/4 80/3
80/24 81/1 81/21 82/2 95/3 97/9 98/9
98/10 105/5 106/11 112/13 132/15
134/3 161/10 163/4
regards [13] 21/15 39/2 39/8 39/17 40/5
42/4 42/17 54/8 55/23 67/12 98/1
163/16 178/17
regular [1] 173/2
regulatory [1] 136/18
relate [1] 76/6
related [4] 83/23 153/12 155/15 170/12
relates [3] 83/22 84/1 110/15
relating [2] 47/8 47/17
relationship [1] 175/25
relative [10] 23/1 23/7 28/6 28/7 64/4
80/17 81/5 86/16 96/8 98/17
relay [1] 14/21
release [30] 57/7 57/9 82/12 82/14 86/15
86/21 87/3 87/22 88/2 88/11 88/25
89/17 89/23 90/22 91/7 92/1 92/17
128/4 133/19 134/10 134/25 150/3
159/5 159/22 159/23 159/24 159/24
160/4 160/17 163/24
released [2] 87/18 160/11
releases [1] 88/7
relevance [8] 114/2 162/23 162/24
162/25 163/2 166/10 166/13 170/17
relevancy [3] 98/12 176/4 176/6
relevant [25] 10/13 10/16 11/12 12/9
12/14 13/1 13/6 15/3 16/4 22/18 38/2
41/14 98/3 98/4 114/3 149/12 154/6
154/8 154/10 154/17 155/7 164/1
164/25 170/21 170/22
relied [2] 8/20 138/15
relieve [1] 80/21
relying [1] 177/5
remain [1] 58/6
remarks [3] 99/12 118/15 119/10
remember [22] 33/6 33/10 33/14 35/16
38/13 69/9 69/22 70/2 71/6 71/16 71/17
79/7 81/6 94/10 96/6 107/2 113/8
113/12 113/13 113/18 113/21 175/14
render [1] 145/15

reopen [1] 10/15
repeat [2] 31/10 174/5
repetitive [1] 125/19
rephrase [7] 40/3 115/1 132/5 132/25
135/17 144/14 144/15
report [1] 29/4
REPORTED [1] 1/18
reporter [14] 19/20 34/22 36/12 36/14
37/5 38/6 38/21 39/14 40/14 41/22 42/1
77/17 95/20 106/24
reporters [4] 47/21 48/7
representations [3] 71/2 80/21 101/1
representative [8] 27/25 59/7 126/23
129/7 146/2 146/6 146/10 170/4
representatives [5] 28/18 72/14 96/17
144/8 145/7
represented [2] 161/3 180/10
representing [2] 81/11 132/17
represents [1] 123/19
request [14] 8/19 13/20 63/21 65/8
65/10 65/13 65/14 66/5 77/20 77/21
78/14 122/21 165/2 165/6
requested [7] 11/20 34/5 65/17 97/6
139/20 140/17 172/18
requesting [2] 19/3 140/13
require [2] 133/4 133/21
requirement [1] 166/5
requirements [1] 166/20
requiring [1] 81/25
rescind [1] 59/1
resolution [27] 31/1 31/14 34/23 35/2
35/22 35/24 36/13 36/15 36/16 36/18
36/24 38/7 38/21 41/21 42/19 42/21
58/19 68/25 79/4 80/6 80/17 84/11
84/12 99/5 117/18 118/16 179/5
resolve [8] 20/15 33/13 82/9 114/16
118/17 126/24 146/20 157/4
resolved [53] 28/15 28/25 30/10 30/16
30/20 50/21 54/12 58/4 64/20 64/22
64/25 69/5 69/8 69/16 69/21 70/5 71/1
74/19 75/11 76/6 79/6 79/11 79/12
79/14 79/16 79/17 79/23 101/6 101/9
101/9 101/11 105/18 106/14 107/9
107/12 108/13 108/15 123/7 125/6
125/7 125/13 129/8 129/11 134/2 134/5
143/22 150/9 150/20 152/12 164/7
168/23 169/25 171/11
resolving [4] 115/21 115/23 117/14
118/5
respect [13] 13/8 14/3 42/14 42/15 47/5
48/8 57/5 88/10 97/25 147/8 149/8
154/1 175/9
respond [2] 101/19 111/22
responding [1] 69/9
response [8] 10/9 37/8 39/1 64/23 69/7
106/23 113/9 134/1
responses [1] 53/3
responsibility [4] 22/8 47/25 92/14
92/16
rest [1] 65/15
restraint [5] 124/14 124/15 136/9
136/15 136/19
restricting [1] 178/16
result [1] 149/21
returned [2] 94/17 136/3
reveal [5] 21/10 21/17 21/20 48/1 48/4
revealed [4] 22/12 117/16 119/19
155/21
revelation [1] 120/22
review [6] 7/20 11/11 60/1 91/19 130/22
167/23
reviewing [1] 34/7
revisiting [1] 67/21
right [97] 5/9 5/11 6/4 12/21 13/10 13/17
16/2 16/11 18/5 19/15 24/14 25/24

26/23 27/3 27/7 41/9 42/24 45/12 46/2
49/2 49/10 52/10 52/11 52/18 53/8
53/12 53/19 53/21 56/4 57/24 59/1
59/14 60/3 60/6 60/21 61/10 61/14
61/16 63/15 67/8 69/4 76/19 78/11
81/23 81/25 84/8 84/10 86/1 93/12 94/1
94/18 94/24 102/7 102/20 110/8 110/16
111/3 113/14 113/25 116/8 116/24
120/19 126/22 127/8 127/10 127/24
128/6 129/17 129/24 130/1 130/17
131/10 137/10 139/1 140/23 143/17
146/18 153/14 153/23 156/11 158/22
159/6 159/9 159/11 160/8 161/25 167/3
167/13 170/22 176/9 176/21 177/13
178/2 179/6 179/13 179/23 179/23
rights [1] 84/21
Risk [1] 96/15
ROBINSON [118] 1/13 2/7 2/9 2/14 2/15
2/22 3/5 3/10 4/14 6/18 7/20 19/15 20/4
20/10 22/6 22/20 25/11 44/9 44/16
45/21 46/2 46/6 47/2 56/5 60/16 64/21
69/14 69/23 71/2 71/13 71/23 75/3 75/6
76/8 76/20 76/21 77/16 77/18 77/19
77/22 78/25 81/17 83/2 84/6 90/11
91/19 94/8 94/11 100/1 100/25 101/7
102/12 102/13 102/16 102/23 104/19
104/24 105/6 106/18 109/12 109/17
110/6 111/10 112/1 112/5 112/17 113/2
114/6 114/12 114/14 115/4 115/16
115/22 116/21 117/11 118/24 119/7
121/1 123/22 124/2 124/5 124/17
124/22 126/18 128/16 128/16 128/21
128/25 129/23 130/15 132/13 144/24
145/2 146/18 147/7 148/2 149/15
150/22 151/12 152/7 153/2 156/2
157/15 157/18 158/17 161/22 164/16
164/21 165/6 165/16 165/19 165/21
166/1 169/7 173/10 174/4 174/24 175/8
Robinson's [1] 146/6
Robinsons' [1] 147/5
room [6] 96/16 96/21 97/10 99/19
119/20 165/4
roughly [1] 162/14
Royal [16] 31/23 32/4 32/12 32/14 32/16
32/17 32/24 32/25 33/1 96/14 132/20
144/8 162/8 162/16 162/18 175/25
rule [22] 16/12 16/15 37/11 40/19 49/12
52/8 52/19 52/20 52/22 53/10 59/14
59/17 59/17 59/18 59/18 66/17 103/5
119/18 134/24 138/17 138/20 139/25
ruled [1] 149/6
rules [1] 65/18
ruling [11] 40/21 50/18 59/25 60/4 60/7
60/10 61/11 61/20 63/4 65/10 65/11
runs [1] 154/17
RYAN [39] 2/6 4/10 4/15 4/18 19/18
19/19 19/21 19/22 20/5 20/6 20/7 20/13
20/14 22/15 22/21 23/5 24/25 27/5
32/13 32/25 33/1 44/5 46/7 48/22 49/25
54/9 54/25 56/15 58/17 99/24 106/17
127/2 144/2 144/21 145/1 154/23
168/11 179/10 179/11
Ryan's [10] 56/18 57/17 59/24 60/1
101/2 121/20 123/15 144/22 154/9
174/10

## S

sacrosanct [1] 84/10
said [72] 14/16 14/18 29/21 30/7 30/15
31/19 31/21 34/6 35/14 38/14 40/5
41/22 42/16 46/17 48/8 54/8 54/17
58/18 58/20 64/5 64/19 64/21 64/24
69/23 69/24 70/3 70/15 71/4 71/13 74/2
74/5 74/14 79/7 79/8 79/18 80/4 80/16
80/23 81/6 81/6 81/10 82/10 85/1 86/20

said... [28] 68/6 94/9 97/13 97/14 98/8
100/25 101/6 101/7 101/10 101/10
102/12 102/12 103/3 108/14 111/16
111/17 111/17 115/17 124/1 132/1
134/6 150/18 152/8 152/9 154/7 159/15
169/10 179/11
same [1] 10/20 22/17 57/16 101/13
102/13 119/23 120/1 128/4 145/18
155/17 168/10 169/7 175/5
sanctions [2] 179/22 179/23
satisfied [3] 38/11 158/18 158/21
satisfy [1] 56/1
Saturday [2] 94/12 155/18
saw [5] 14/15 15/9 23/19 99/22 175/14
say [100] 28/5 28/14 28/24 29/16 30/10
32/11 38/15 43/17 47/15 49/21 50/21
55/5 57/8 58/11 59/5 63/13 64/20 64/21
64/24 69/3 69/4 69/8 69/14 69/15 69/20
69/25 70/4 70/25 72/14 73/13 74/18
74/18 74/19 75/11 76/5 79/5 79/5 79/11
79/14 79/16 79/19 79/22 80/7 85/23
96/5 96/6 96/13 101/6 101/11 102/14
103/5 105/17 106/6 106/13 106/14
107/2 107/8 107/10 107/11 108/14
110/10 113/20 120/22 121/2 123/6
123/13 123/20 125/6 125/8 125/13
125/22 126/11 128/18 128/24 128/25
129/2 129/7 129/10 129/14 129/15
131/19 132/2 132/10 134/1 134/4
135/21 140/4 150/9 150/19 151/19
152/11 159/17 160/15 160/23 161/16
164/7 168/7 168/22 171/11 175/6
saying [16] 18/7 30/22 43/25 50/12 58/3
58/22 59/17 69/20 79/10 82/7 112/22
117/21 119/9 120/19 123/22 135/3
says [26] 27/24 28/22 30/9 47/15 49/21
50/20 59/7 73/12 73/16 74/20 88/4
106/7 110/7 110/12 111/11 112/10
123/1 125/9 128/16 128/23 131/18
150/22 153/24 164/6 172/12 177/5
scenarios [1] 127/25
schedules [1] 77/2
school [1] 76/10
scope [10] 104/20 105/7 115/14 146/22
147/1 147/2 147/17 152/22 174/13
175/22
screw [1] 102/15
seal [8] 6/8 6/25 7/4 7/6 8/20 64/9 95/17
97/7
sealed [7] 7/7 7/8 13/10 13/11 13/14
34/6 63/22
sealing [4] 6/12 6/13 6/17 6/18
SEAN [3] 1/9 4/7 16/24
search [6] 40/12 154/2 154/17 155/14
155/17 155/21
searches [1] 155/15
seated [2] 4/8 138/5
sec [1] 108/18
second [34] 17/16 27/24 28/10 28/12
28/22 47/7 47/14 50/20 51/4 54/7 54/15
55/7 55/10 55/10 62/17 74/17 89/2 89/2
89/3 104/8 105/16 106/5 106/5 109/23
112/9 137/4 164/6 168/21 172/25 173/1
173/17 174/23 177/10 178/15
second-guessed [1] 173/1
second-guessing [1] 172/25
Secrest [1] 162/12
secretary [1] 111/1
see [41] 6/16 9/7 9/20 10/12 10/16 11/24
16/3 17/25 34/18 35/1 35/18 45/19
45/21 47/14 63/19 67/5 109/23 110/1
110/5 110/18 110/22 112/25 115/14
120/1 122/5 129/16 134/3 137/23 150/1

150/14 155/17 164/24 172/14 174/23
174/25 175/9 175/12 176/10 179/15
179/23 180/4
seeing [1] 72/16
seem [2] 18/20 151/14
seems [4] 17/21 151/14 166/22 178/18
seen [12] 7/22 13/25 17/14 27/11 64/18
100/19 167/25 173/17 173/18 173/24
174/21 174/22
sees [1] 154/16
self [1] 156/19
self-insurance [1] 156/19
send [6] 90/13 90/16 90/19 91/10 109/3
172/15
sending [1] 86/21
sense [1] 79/16
sent [3] 87/22 91/7 91/8
sentence [11] 27/24 28/22 30/5 51/4
55/10 86/8 91/24 106/5 164/8 168/21
171/13
separately [1] 10/8
September [5] 109/21 120/10 122/3
122/16 140/9
serious [1] 117/4
seriously [2] 116/23 117/5
served [12] 13/21 13/24 14/1 16/9 17/3
17/12 17/12 17/17 17/18 18/4 18/4 18/18
176/18
server [1] 18/4
service [2] 14/3 18/9
session [5] 4/7 94/14 138/2 138/5 178/1
set [6] 6/9 28/19 59/8 72/14 102/21
119/18 149/7 171/13
sets [1] 73/14
setting [1] 11/9
settle [20] 29/25 30/13 31/19 32/8 32/25
107/20 117/22 128/3 128/21 129/1
135/14 136/23 147/10 148/9 148/23
150/23 158/7 160/4 164/10 170/15
settled [24] 32/12 37/23 38/12 38/18
45/23 69/16 70/15 86/13 88/13 88/13
127/3 127/8 127/10 127/15 127/17
127/17 143/23 160/8 160/10 160/13
160/16 160/23 161/16 162/18
settlement [18] 5/22 5/24 6/7 11/21
19/9 21/8 21/10 21/14 21/15 21/17 22/9
22/13 23/8 24/3 28/2 28/8 29/17 30/17
30/23 32/8 39/3 39/11 39/18 40/8 40/14
42/4 45/17 47/9 47/18 47/22 48/2 48/5
49/18 50/25 52/11 52/12 53/12 54/9
54/17 56/17 57/9 57/12 57/18 58/7
58/8 62/6 62/6 64/4 70/11 70/16 71/5
74/15 75/14 80/18 80/19 81/1 83/5 83/8
83/23 84/2 84/3 85/5 85/15 85/24 86/14
86/16 87/22 88/11 89/20 91/20 92/2
93/15 93/18 94/4 94/22 95/3 95/4 95/9
95/25 96/23 97/9 97/25 98/10 100/24
102/15 104/21 104/23 105/9 106/25
107/14 107/22 108/10 108/10 119/19
123/4 127/1 127/21 128/8 128/11 130/8
132/19 133/5 133/7 133/11 134/4
134/11 134/20 135/2 143/24 143/25
144/4 148/3 148/12 149/7 149/21 150/7
155/23 157/1 157/6 161/6 161/11 163/4
163/13 163/23 164/12 165/19 165/22
167/4 167/6 170/2 170/7 170/11 170/12
171/9 171/17 173/3 180/8
settlements [1] 132/16
settling [8] 20/22 98/25 113/16 128/12
128/17 144/1 144/3 170/3
seven [2] 140/9 162/14
Severe [1] 179/23
SEWARD [154] 1/16 2/8 2/13 2/16 2/18
2/20 3/4 3/6 3/9 4/20 8/9 9/19 10/22
13/20 14/7 15/15 16/6 18/3 19/3 19/5

23/1 23/12 23/15 24/13 24/24 26/21
27/2 27/10 31/12 35/14 36/9 36/17
37/10 37/20 37/24 38/5 38/24 39/6 40/1
40/4 40/12 41/13 41/24 42/25 44/4
44/23 45/18 48/16 49/10 51/20 56/14
60/9 60/18 61/17 67/20 68/15 72/11
72/22 73/3 78/7 78/11 78/16 78/22
81/17 81/20 85/13 86/24 87/2 87/10
87/14 87/20 89/10 89/23 90/15 91/2
92/18 92/23 93/3 93/6 109/18 110/3
111/21 112/2 112/5 112/18 113/4 115/5
115/17 118/18 118/21 119/3 119/8
119/12 119/16 120/3 120/7 120/9
120/14 121/23 123/18 124/7 124/14
125/11 125/15 125/17 126/19 127/3
128/2 128/10 128/15 128/20 128/24
129/11 129/17 130/15 137/14 140/23
143/22 145/14 145/25 147/9 147/21
149/17 149/19 153/2 153/16 155/11
156/5 156/14 157/11 157/22 158/12
158/19 159/11 160/22 161/15 162/4
163/12 165/14 165/22 166/4 167/10
167/22 168/15 168/19 169/20 170/24
171/15 171/25 172/20 176/7 176/17
176/18 176/24
Seward's [5] 90/12 137/21 140/9 158/5
162/21
shaking [1] 166/8
shall [2] 137/23 143/3
share [1] 107/24
she [13] 14/15 14/16 15/6 15/10 15/22
15/24 17/7 61/24 79/8 100/9 108/13
122/1 122/3
she's [2] 122/2 145/11
shift [1] 114/18
Shortly [2] 100/9 100/17
should [6] 19/11 24/14 57/8 79/25 90/9
148/23
show [24] 10/19 15/4 15/12 27/5 29/3
30/4 34/17 54/20 56/23 72/23 86/9
120/13 122/6 125/25 126/1 126/6
126/12 126/15 149/4 153/16 163/2
172/3 174/18 175/6
showed [1] 130/15
shown [2] 177/15 178/6
side [5] 32/4 66/18 71/3 99/23 100/19
sign [9] 20/21 28/18 59/8 73/14 73/14
91/9 109/5 128/6 144/22
signature [1] 109/19
signatures [2] 58/5 145/1
signed [36] 21/1 21/3 21/24 22/22 27/13
27/17 36/22 37/1 47/6 47/11 47/25 51/8
74/21 76/14 83/17 83/21 84/5 85/1 86/4
86/16 88/19 88/25 102/17 105/6 109/25
111/4 112/9 130/16 130/20 144/7
144/18 144/21 145/5 150/3 157/19
159/19
significant [1] 41/5
signing [3] 54/10 86/21 92/1
silence [7] 15/8 15/12 99/14 123/12
123/15 123/23 124/3
Similar [1] 69/18
simply [3] 42/5 42/17 53/13
since [7] 51/11 65/11 67/1 83/3 93/10
127/13 145/16
sir [46] 5/3 5/4 30/18 30/18 30/24 32/1
35/25 36/10 39/7 40/2 76/11 76/15
81/13 81/18 83/18 85/8 86/25 90/18
110/20 111/6 111/8 111/9 112/4 112/7
115/19 117/7 120/17 121/10 121/14
122/12 122/18 123/13 126/3 127/11
141/18 157/24 158/2 158/6 159/10
160/10 161/16 169/2 169/3 175/11
175/19 176/1
sit [3] 7/19 40/22 92/22

**S**

sitting [1] 76/19 85/22
situation [1] 31/25
six [13] 29/17 42/8 54/17 70/16 85/14
85/24 107/15 120/7 143/6 155/6 161/10
163/4 180/8
six-figure [1] 29/17 54/17 70/16 85/14
85/24 161/10 180/8
Sixty [1] 138/21
smiles [1] 116/25
smirk [4] 113/11 113/21 113/21 114/19
smirks [1] 116/25
so [130] 5/10 5/23 7/7 7/9 7/13 8/12
8/20 8/24 10/10 13/10 13/17 14/14
15/14 15/21 17/21 18/17 18/22 19/4
19/16 23/17 24/11 25/18 26/4 26/6
28/22 32/8 32/23 33/20 36/24 37/4
37/10 37/15 38/23 40/2 40/11 44/8
44/24 46/24 50/15 51/9 52/2 52/5 52/18
52/23 52/25 53/16 53/17 54/20 54/23
54/24 55/2 55/25 56/2 59/2 59/23 60/3
61/3 61/20 61/23 63/25 63/25 65/21
66/5 66/10 66/19 66/24 67/3 67/5 72/4
74/12 76/22 77/1 77/3 80/21 83/13 84/1
84/9 85/22 87/18 88/23 89/6 89/21
90/10 93/9 93/22 93/25 95/25 99/2
99/20 100/11 101/23 106/22 110/14
111/1 111/9 120/15 123/14 127/14
128/2 130/19 131/11 134/9 134/23
137/3 137/22 141/6 141/10 141/23
142/7 143/3 144/13 147/19 148/25
149/9 151/20 151/21 152/10 153/9
154/16 155/6 156/3 158/4 158/4 165/23
168/11 169/8 172/15 175/6 177/8
178/18
solicited [1] 161/1
some [48] 20/13 31/17 33/8 33/13 33/19
34/10 34/24 37/8 39/1 61/24 62/20 63/5
63/18 66/13 68/24 69/2 71/1 71/7 74/1
74/1 79/10 83/24 95/10 96/7 96/13
96/19 96/22 97/1 97/10 99/6 99/19
100/23 109/5 112/24 112/25 113/23
117/23 123/14 133/7 133/18 136/7
136/17 155/22 159/21 167/14 169/16
177/15 179/15
somebody [2] 69/9 101/22
somehow [3] 99/12 118/15 118/22
someone [7] 70/15 81/9 82/7 97/13
104/14 104/16 169/10
something [21] 21/4 38/10 42/3 50/23
51/18 52/5 79/15 80/14 80/18 84/18
109/2 112/25 113/8 113/11 113/14
113/15 117/19 125/25 141/8 159/4
172/6
sometime [5] 29/3 33/18 67/7 68/21
93/14
Sometimes [1] 81/15
soon [2] 137/8 150/14
sorry [27] 25/19 31/10 34/24 43/16
44/22 47/10 77/16 78/18 86/6 90/24
98/6 105/1 111/15 122/17 126/8 126/22
138/20 141/13 146/1 146/23 147/18
154/15 157/25 158/6 163/16 174/4
177/22
sort [3] 136/17 160/3 169/16
SOUTHERN [1] 1/2
speak [4] 30/22 106/24 119/12 119/12
speaking [10] 14/8 30/17 30/21 30/23
44/20 45/19 45/21 135/14 135/24
152/13
specific [18] 28/20 59/8 70/2 72/15 73/9
73/15 74/4 76/3 81/24 97/18 99/7 104/6
105/24 106/12 112/13 134/17 171/14
174/16

specifically [15] 22/10 23/25 38/13
55/13 73/9 74/5 76/4 81/6 147/11
151/13 169/19 178/3 178/9 178/24
178/25
speculation [1] 63/13
spoke [7] 15/16 23/20 31/24 34/21
45/16 56/16 56/19
spot [3] 158/23 158/24 159/2
staff [1] 104/15
stand [4] 7/19 68/2 113/24 156/10
standard [5] 71/11 82/3 88/12 101/18
101/20
standards [2] 176/2 178/19
standing [2] 45/9 45/10
stands [1] 76/1
Star [38] 5/23 6/2 9/14 21/13 29/13
34/11 34/22 37/5 38/22 46/8 46/10
47/21 48/17 54/25 56/19 57/23 106/17
107/18 138/13 139/15 139/21 140/7
141/1 141/13 141/22 141/24 142/17
146/8 154/24 155/3 155/19 155/23
168/24 173/13 173/23 174/7 174/11
178/11
start [3] 13/18 19/24 24/7
started [5] 52/5 66/6 94/19 98/17 113/6
starting [1] 77/8
state [5] 20/5 68/18 81/24 93/7 136/10
stated [1] 76/4
statement [18] 8/25 14/5 28/11 30/16
30/20 31/14 32/21 48/19 70/14 83/24
88/21 89/11 114/20 146/7 164/19
169/16 169/24 171/10
statements [11] 29/6 54/24 57/15 57/20
58/18 59/3 70/7 70/9 95/7 168/23
169/23
states [7] 1/1 1/10 4/5 4/7 14/6 138/3
138/14
status [2] 10/20 95/8
statute [1] 66/17
statutory [1] 75/21
stay [6] 5/6 5/10 8/24 26/10 67/24 90/25
step [2] 7/3 48/23
stepped [1] 44/18
steps [1] 162/19
sticker [2] 25/17 26/3
stickers [1] 7/18
still [5] 6/10 12/5 60/21 76/25 120/1
stop [2] 63/3 176/9
stress [2] 42/8 42/18
strike [9] 36/4 66/11 66/12 66/20 67/10
86/22 138/11 145/4 171/24
strongly [1] 114/9
studied [1] 76/9
stuff [2] 116/5 123/6
subject [4] 93/18 97/1 122/25 123/4
submit [5] 15/8 18/8 51/1 89/16 92/16
submitted [5] 49/19 51/11 51/15 53/9
89/21
submitting [1] 50/19
subpoena [13] 14/1 16/8 16/17 17/2
17/5 17/7 17/12 17/18 17/22 18/4 18/5
176/19 177/1
subpoenaed [1] 13/19
subsequent [24] 51/6 54/10 55/11 55/24
56/16 56/19 57/7 59/4 73/18 86/11
87/12 87/16 87/25 88/2 88/9 89/4 89/13
90/17 90/20 91/3 92/10 92/16 149/25
171/13
subsequently [1] 146/7
success [2] 133/7 134/18
such [3] 132/19 135/13 136/20
sued [1] 87/19
suggest [3] 99/3 141/7 169/12
suggesting [4] 50/6 50/15 115/25 159/4
suggestions [2] 104/19 105/7

suggestive [1] 142/11
suit [1] 187/13
suni [1] 37/17
Sunday [1] 94/13
support [1] 49/19
supported [2] 119/24 119/25
supposed [2] 25/5 96/4
sure [31] 9/21 13/5 18/15 19/19 24/23
27/9 33/8 33/15 33/17 59/17 59/18 77/1
78/3 91/15 95/15 96/7 96/19 98/22
101/4 104/8 104/9 108/21 109/15 135/4
135/18 137/9 143/13 144/13 175/3
175/6 175/7
surprise [1] 177/9
surprised [1] 95/18
suspect [1] 137/22
sustain [1] 115/1
swore [1] 106/21
sworn [7] 19/22 68/13 77/19 93/3 111/7
156/12 162/2

**T**

t-h-e-y [1] 32/3
table [6] 2/1 7/11 24/15 25/5 72/20
113/5
take [21] 7/3 7/23 9/18 13/10 19/13 26/6
32/23 34/18 44/12 59/13 60/4 65/4
71/14 71/17 91/4 109/4 116/22 131/11
137/8 137/9 142/18
taken [6] 55/15 80/12 87/14 104/14
109/2 178/7
takes [1] 127/23
taking [1] 117/5
talk [12] 15/12 22/10 36/24 37/22 53/14
55/13 70/10 100/8 133/25 150/17
157/12 176/8
talked [10] 14/7 14/16 28/6 38/25 50/24
94/13 122/19 147/14 150/12 175/24
talking [17] 32/8 37/9 38/15 42/3 42/5
48/7 81/5 98/17 99/23 100/5 100/20
101/12 102/13 117/1 117/2 126/20
158/6
talks [4] 35/17 54/7 54/8 164/8
tangent [1] 40/23
telephone [3] 169/1 169/9 169/10
tell [20] 15/21 15/23 28/6 29/15 29/23
39/14 43/17 43/21 73/4 85/14 99/16
107/7 107/13 109/6 119/16 119/21
120/14 128/20 169/9 175/7
telling [11] 51/21 63/2 63/9 68/16 78/23
78/24 134/9 134/23 141/24 156/15
162/5
tells [4] 29/25 30/13 32/12 32/25
ten [1] 45/7
term [13] 13/12 15/13 75/18 76/12 84/4
87/3 107/20 113/18 120/4 130/2 130/6
138/10 151/13
terms [79] 15/5 20/24 22/16 22/22 23/2
28/1 28/15 28/20 41/4 43/6 43/8 43/13
43/18 45/17 48/9 50/10 50/13 50/19
52/12 52/14 52/16 53/1 54/1 54/5 55/5
55/13 57/1 57/6 58/17 58/7 58/7 59/9
60/21 65/1 71/15 72/15 73/9 73/15
73/22 74/4 74/15 82/14 82/19 83/11
83/20 83/22 83/23 85/2 85/3 85/4 85/6
86/11 86/14 88/10 88/18 91/24 97/18
101/5 102/20 106/8 108/5 120/6 130/6
132/18 133/4 149/25 161/6 164/2 164/5
164/25 165/15 165/18 170/11 170/25
171/2 171/14 172/4 172/9 178/18
testified [10] 31/16 49/25 100/15 111/14
114/17 130/23 145/16 149/1 149/3
154/23
testify [10] 14/6 15/6 15/11 61/24 63/14
65/10 66/5 67/17 163/5 172/7

**T**

**testifying [4]** 63/9 172/9 172/16 172/17

**testimony [54]** 13/18 13/20 14/14 14/15 16/2 16/3 50/2 54/19 54/19 55/21 56/18 57/4 58/10 58/20 59/24 62/7 64/1 64/2 65/15 77/22 81/9 84/14 111/7 115/6 115/24 115/25 116/4 116/10 116/17 117/13 118/2 118/4 118/23 137/19 137/22 145/12 147/11 147/15 148/8 148/11 154/9 161/1 161/1 161/4 162/22 163/3 163/22 164/25 166/21 167/2 170/22 171/24 172/7 180/5

**text [1]** 176/18

**than [16]** 30/15 52/24 54/11 56/12 88/6 107/10 117/18 119/3 119/5 127/3 141/8 142/10 152/3 155/13 167/19 179/8

**thank [75]** 5/12 11/13 11/16 13/16 18/11 18/16 20/2 23/13 24/23 30/6 44/1 45/25 47/1 48/12 48/14 48/21 48/22 48/24 57/25 59/12 63/17 68/1 71/21 72/21 73/2 75/1 76/16 76/17 76/18 78/5 79/24 82/21 82/24 84/6 84/23 85/8 85/11 87/23 91/11 91/16 92/19 92/21 98/15 103/23 104/5 105/13 108/17 109/11 109/13 114/13 117/10 119/4 122/7 130/12 131/7 132/8 132/25 140/12 140/22 143/16 143/19 144/25 145/23 148/20 151/22 153/14 153/17 156/5 156/7 161/20 161/24 167/21 168/21 173/6 180/13

**that [1034]**

**that's [124]** 8/24 10/9 15/8 15/24 16/4 17/2 17/7 18/5 24/9 25/18 25/19 26/22 27/16 27/20 27/23 28/4 28/9 29/2 30/3 30/4 32/6 32/10 32/15 33/3 36/20 36/23 36/24 38/14 40/17 41/9 41/11 42/22 43/25 44/2 46/9 46/20 46/21 47/16 47/23 48/3 48/20 50/1 53/21 56/3 58/9 58/10 60/8 62/15 70/6 73/12 73/16 74/3 74/20 75/14 77/10 78/15 79/18 86/17 88/1 89/8 93/23 94/3 94/19 97/6 98/3 99/10 111/13 112/21 117/7 117/16 118/25 119/20 120/6 120/17 123/5 123/10 125/7 125/18 128/23 130/18 131/4 132/4 133/17 133/20 134/6 136/13 137/12 139/17 139/22 142/2 142/6 143/5 145/6 146/16 146/21 148/18 149/9 153/24 155/5 155/24 155/25 159/12 159/22 160/1 160/2 160/18 161/7 161/7 161/12 161/20 163/7 163/15 164/9 164/9 164/19 166/24 167/1 168/3 168/7 173/2 174/15 176/11 178/11 180/9

**their [29]** 15/8 15/12 18/25 19/10 20/15 22/8 34/13 51/13 53/9 53/11 53/13 59/4 60/19 71/3 71/4 72/14 74/9 79/11 80/5 85/20 96/17 99/14 99/24 99/25 115/7 120/11 129/7 137/19 137/22

**theirs [1]** 5/19

**them [19]** 7/11 7/22 10/9 26/20 45/9 48/1 48/4 49/1 70/10 72/19 72/19 113/19 121/9 127/6 127/17 127/17 139/10 150/16 165/8

**themselves [1]** 137/2

**then [67]** 7/14 8/9 9/13 15/1 24/20 25/20 28/10 32/7 32/11 33/12 40/18 40/18 41/9 43/14 60/13 63/3 63/10 63/24 64/14 67/17 76/23 78/8 79/16 81/23 81/25 94/3 94/17 94/24 95/1 95/5 95/25 96/13 96/22 97/10 100/3 100/16 100/22 100/25 101/1 101/10 101/14 101/16 101/21 101/23 104/12 104/16 116/15 128/6 130/25 137/10 144/6 146/7 150/4 150/22 150/23 152/9 152/19 155/15

**there [160]** 6/14 6/18 9/15 11/2 15/4 15/20 17/21 17/25 17/25 18/7 21/4 21/6 27/21 28/11 29/5 33/8 33/19 33/24 35/19 37/22 40/25 41/4 41/5 43/15 48/25 49/1 49/15 50/2 51/6 51/10 51/10 51/14 54/2 54/3 54/6 55/3 55/8 55/11 55/17 57/1 57/3 57/13 57/17 58/17 58/19 58/23 67/24 70/14 71/1 71/7 72/1 72/3 72/5 73/21 73/25 74/8 74/11 74/12 74/12 74/13 75/20 76/1 77/1 77/9 78/19 81/23 82/1 82/8 82/11 83/24 85/18 86/2 86/10 86/15 87/12 87/15 87/25 88/2 88/24 89/3 89/12 89/12 91/7 92/6 92/7 93/23 94/7 94/21 94/23 95/2 95/10 95/12 95/16 96/7 96/16 97/10 97/12 97/13 99/1 99/19 99/19 100/2 100/9 100/23 101/3 101/11 101/12 102/12 102/23 105/16 106/9 107/22 107/22 108/8 108/12 108/15 112/25 113/7 120/15 120/16 123/7 123/11 124/18 125/4 125/19 126/7 126/12 126/16 126/8 128/8 133/18 133/22 133/23 142/20 143/4 143/12 148/22 149/23 149/24 150/10 150/13 150/23 152/2 152/5 152/10 154/18 155/12 157/3 157/3 160/14 163/17 163/23 164/2 164/3 168/14 168/16 172/21 173/25 174/14 176/25

**there's [31]** 6/12 7/6 23/18 24/19 28/11 45/15 49/6 54/15 55/18 55/21 55/25 59/5 59/21 66/5 99/9 123/3 123/8 124/10 124/12 126/16 126/11 133/6 133/7 134/20 146/11 146/15 150/15 159/5 159/7 159/21 163/22

**thereafter [1]** 100/17

**therefore [4]** 19/11 51/9 55/2 67/10

**thereof [1]** 172/10

**these [13]** 7/13 9/23 10/16 38/6 38/16 39/23 48/24 63/20 69/3 111/3 138/16 167/5 172/15

**they [72]** 7/25 9/23 10/9 10/23 18/22 19/8 19/11 24/14 29/10 29/25 30/1 30/1 30/13 30/14 30/14 31/19 31/22 32/13 32/13 32/16 32/16 32/17 34/15 34/16 34/18 35/4 35/13 35/16 38/7 45/9 45/10 45/15 51/2 51/9 51/15 52/16 53/11 53/25 54/1 54/18 54/21 54/21 54/23 59/4 73/13 80/16 83/16 83/19 87/18 99/13 101/4 108/3 109/5 114/9 121/17 124/23 125/7 125/12 129/11 134/1 135/21 138/22 138/24 138/25 139/2 150/3 152/6 172/16 172/16 175/17 179/20 180/7

**they're [9]** 19/7 19/10 25/5 26/4 26/5 32/3 66/9 66/15 121/16

**they've [2]** 41/6 150/21

**thing [11]** 17/16 42/4 58/6 79/18 79/22 82/11 115/24 119/21 123/14 134/2 177/10

**things [5]** 33/8 50/16 76/2 127/24 160/15

**think [61]** 1/12 12/10 14/18 15/3 16/1 35/5 36/1 41/22 46/19 47/7 50/1 52/23 58/17 62/20 62/22 62/25 65/12 65/13 65/21 72/17 80/14 80/15 81/16 94/3 94/11 94/13 96/16 100/11 102/14 103/10 103/11 112/12 115/9 118/17 119/2 119/11 129/20 130/6 130/6 131/12 133/18 135/9 136/6 136/8 139/18 140/11 145/17 145/18 146/16 147/17 148/17 150/15 151/11 155/6 155/7 156/3 158/14 167/2 168/16 169/23 171/8

**thinking [1]** 150/20

**thinks [1]** 169/12

**thirty [1]** 177/7

**this [187]**

**THOMAS [1]** 93/3

**those [26]** 5/19 6/5 23/2 31/19 31/21 41/6 50/25 51/7 63/22 65/1 69/18 82/14 85/6 88/9 106/20 107/18 113/20 114/10 119/8 138/14 138/15 148/25 152/9 164/15 171/16 172/12

**though [8]** 6/8 34/21 43/1 88/14 113/14 113/23 134/22 150/4

**thought [22]** 11/3 12/17 26/13 51/17 61/7 87/24 107/25 113/17 134/20 135/6 138/24 140/16 142/14 142/16 142/17 153/5 161/4 168/12 168/13 179/11 179/13 180/10

**thoughts [2]** 148/22 148/25

**three [20]** 6/1 7/10 7/14 24/17 24/19 25/7 25/20 26/11 34/17 138/12 139/15 140/18 141/8 141/12 141/14 143/4 162/10 169/6 171/8 171/12

**Threlfall [1]** 33/9

**through [13]** 20/15 34/24 60/19 93/15 99/21 100/24 144/25 162/19 164/22 166/21 167/5 170/16 171/19

**throughout [2]** 83/4 84/6

**Thursday [9]** 1/12 2/3 4/2 9/12 93/21 93/23 93/25 94/5 94/8

**Tigers [1]** 125/12

**time [39]** 7/4 13/9 13/9 20/13 21/9 45/22 45/23 49/12 65/20 66/4 71/14 73/11 74/5 77/4 80/7 84/6 93/20 94/4 94/21 95/6 96/16 101/13 102/13 111/25 113/24 116/22 117/12 117/13 117/16 118/4 118/13 127/14 128/3 128/4 131/14 138/8 149/17 156/9 178/21

**timeline [1]** 116/19

**timing [5]** 148/3 153/12 154/12 154/13 155/7

**TIMOTHY [2]** 1/3 177/6

**titled [1]** 9/10

**today [19]** 13/1 13/7 13/20 18/19 57/5 77/8 85/22 111/14 111/16 112/8 120/15 130/23 131/13 132/11 142/1 163/22 167/24 179/1 179/14

**today's [1]** 10/13

**together [4]** 118/19 118/24 119/6 137/10

**told [15]** 17/14 29/21 36/14 38/20 41/20 45/13 45/14 54/11 100/15 101/20 107/8 119/22 120/1 120/7 150/16

**tomorrow [8]** 76/25 77/8 77/11 176/10 179/8 179/8 179/14 179/24

**took [12]** 48/17 69/3 72/19 81/8 96/10 103/25 116/1 129/3 129/24 131/1 148/4 177/16

**top [1]** 6/24

**topics [2]** 34/21 35/15

**total [3]** 103/12 144/3 171/9

**touched [2]** 147/6 151/17

**towards [3]** 45/6 45/9 113/16

**transcript [17]** 11/19 11/20 12/10 12/21 25/9 25/13 26/11 26/17 26/20 26/23 34/5 34/7 59/24 60/2 63/22 64/9 97/7 117/19 117/21 118/3 149/22

**trial [22]** 20/8 33/17 36/18 36/25 38/1 63/18 64/3 65/2 65/9 79/25 93/12 93/14 93/19 94/15 94/18 94/25 101/15 113/4 117/19 117/21 118/3 149/22

**trials [1]** 52/24

**tried [2]** 100/11 134/16

**trier [1]** 146/16

**tries [1]** 122/13

**true [19]** 8/24 30/16 30/18 30/20 31/14 32/5 32/21 39/3 48/19 69/2 74/6 97/2

155/22 160/4 162/14 163/10 164/7 171/12 175/7 178/20 179/22

**T**

true...[17] 1/1 1/13 18/7 12/0/12 125/1 130/20 161/7 167/1
**truth [2]** 40/12 169/13
**try [6]** 56/12 67/20 80/10 134/22 136/6 136/7
**trying [17]** 33/13 38/4 38/15 41/11 43/17 43/21 51/20 53/6 63/7 114/16 116/18 120/17 122/25 124/20 132/10 166/22 174/4
**Tuesday [9]** 33/5 62/19 62/20 64/3 94/17 94/20 94/24 97/7 98/18
**turned [1]** 45/6
**Twenty [1]** 169/6
**Twenty-three [1]** 169/6
**two [45]** 5/25 7/13 9/11 19/1 24/17 24/19 25/7 25/20 26/10 29/4 30/5 35/17 41/19 51/5 51/5 53/2 53/24 53/25 54/6 57/22 67/10 67/16 73/5 77/7 109/18 118/20 118/24 119/5 119/8 119/24 119/25 123/19 138/18 139/13 139/14 139/15 141/11 143/4 153/16 160/14 160/15 171/9 171/16 174/22 178/18
**two-fold [2]** 53/24 53/25
**Two-thirty [1]** 77/7
**tying [1]** 166/22
**type [3]** 99/12 110/24 111/1
**typed [1]** 104/16
**types [1]** 99/11
**typically [1]** 75/20
**typing [1]** 102/21

**U**

**U.S [2]** 1/10 1/19
**U.S.C [2]** 177/20 177/22
**ultimately [3]** 37/23 134/22 146/16
**unacceptable [1]** 100/21
**unaware [1]** 81/4
**undecided [1]** 119/25
**under [23]** 6/8 6/25 7/6 7/24 8/19 19/2 40/19 47/25 49/17 52/20 53/11 60/4 64/9 110/14 122/24 123/1 132/20 138/12 140/5 140/18 163/20 170/10 172/23
**underlying [1]** 68/25
**understand [42]** 21/4 26/12 37/11 39/4 39/7 40/25 43/20 43/24 46/22 47/24 49/6 50/9 51/21 53/7 56/25 67/4 73/17 75/7 76/22 80/9 84/3 86/13 88/23 92/11 124/10 124/11 124/12 124/13 124/15 124/20 125/17 126/5 130/1 130/2 130/4 130/5 135/16 143/13 147/19 149/11 166/15 175/24
**understanding [25]** 20/24 21/2 50/9 57/16 58/4 59/19 60/13 61/15 73/24 75/19 82/10 86/17 91/23 97/23 98/9 107/23 115/2 133/3 136/16 141/12 141/15 142/3 142/18 170/1 180/1
**understood [4]** 27/19 74/21 74/23 75/14
**UNITED [5]** 1/1 1/10 4/5 4/7 138/3
**unknown [1]** 170/7
**unless [9]** 35/1 66/13 69/16 77/25 101/9 128/21 129/1 166/21 176/23
**unquote [1]** 114/8
**unredacted [1]** 8/13
**unresponsive [3]** 36/5 36/7 86/23
**until [6]** 65/18 66/6 76/24 77/10 80/23 117/25
**untrue [1]** 74/7
**up [29]** 7/10 7/11 19/1 25/14 29/14 35/21 39/10 60/5 60/8 60/11 61/13 62/4 65/20 71/14 76/4 76/25 80/12 80/23 94/19 100/3 102/15 103/2 104/16 114/4 114/11 146/16 147/4 176/10 179/23

**upon [33]** 5/16 8/20 9/16 11/8 11/11 17/12 50/14 51/3 52/13 53/8 53/9 54/13 60/5 60/7 60/10 61/11 63/4 74/9 87/22 91/25 114/3 122/20 126/24 138/15 147/6 151/17 157/6 158/15 167/3 177/5 177/11 177/16 178/7
**upset [11]** 14/18 15/16 15/20 15/22 15/23 61/25 62/2 100/5 100/5 100/19 150/15
**upsetedness [1]** 62/1
**upsetedness [1]** 14/19
**urged [1]** 65/2
**urging [3]** 71/10 101/17 102/17
**us [25]** 7/11 15/21 30/1 30/14 32/20 32/20 38/3 68/3 68/16 77/17 78/24 95/3 103/13 105/3 107/20 116/1 136/7 144/5 146/11 149/6 156/15 162/5 164/10 166/21 179/17
**used [5]** 14/19 32/7 75/20 79/13 102/15
**using [3]** 78/3 78/6 113/18
**usually [1]** 113/20

**V**

**vague [1]** 83/24
**vaguely [3]** 53/7 34/2 71/9
**value [2]** 170/5 170/6
**vehemently [1]** 118/12
**vehicle [1]** 84/16
**verbatim [5]** 34/20 35/14 38/16 113/10 113/10
**verdict [2]** 136/3 170/8
**version [4]** 152/17 152/18 153/25 154/4
**versus [1]** 4/10
**very [20]** 24/1 34/2 39/22 47/1 48/23 61/16 80/11 92/21 94/23 98/4 100/5 100/18 120/12 123/3 123/8 133/19 134/20 137/20 156/6 166/3
**view [1]** 119/23
**violated [1]** 108/5
**violating [1]** 48/9
**violation [1]** 21/23
**virtually [1]** 176/22
**visibly [1]** 61/25
**voice [1]** 94/12
**volunteering [1]** 92/15

**W**

**wait [5]** 38/19 95/1 103/18 111/24 111/24
**waiting [1]** 7/1
**waive [1]** 84/7
**waived [1]** 84/20
**walked [2]** 99/20 150/14
**walking [1]** 45/10
**want [48]** 5/16 7/25 8/5 13/18 18/12 19/5 33/4 38/10 40/3 41/3 50/8 51/21 59/13 59/25 61/21 62/3 62/5 66/22 67/3 71/13 74/23 77/24 89/11 90/10 94/25 95/1 96/5 96/6 96/13 97/8 99/1 100/24 101/14 111/15 114/22 114/25 123/22 127/5 128/3 134/14 141/7 141/23 143/6 153/9 153/11 161/13 176/12 177/2
**wanted [14]** 14/20 15/11 65/2 82/3 82/16 100/8 101/23 107/3 117/24 124/2 139/23 141/21 141/24 150/17
**wanting [1]** 36/10
**wants [1]** 176/24
**Wardle [1]** 162/12
**WARNER [14]** 1/7 4/10 20/9 20/11 20/15 23/1 23/7 31/23 84/15 121/4 145/1 179/7 180/1 180/6
**warning [1]** 41/14
**was [393]**
**wasn't [7]** 17/17 17/17 38/15 45/8 101/1 121/9 139/24 142/20 148/21

**way [6]** 38/11 45/5 89/19 119/23 120/1 177/1
**ways [2]** 136/7 178/23
**we [206]**
**we'll [8]** 11/14 29/13 72/14 77/6 137/10 143/6 176/9 180/4
**we're [18]** 24/9 40/22 41/14 41/18 52/21 76/22 76/24 76/25 77/8 82/8 102/14 120/17 125/18 128/17 149/9 162/24 163/8 173/1
**we've [5]** 23/21 61/22 93/16 119/5 167/19
**Weaver [1]** 18/2
**Wednesday [6]** 63/24 64/8 68/21 94/1 95/5 156/25
**well [90]** 5/9 12/5 13/14 13/22 13/24 17/20 17/23 19/7 29/3 30/4 30/24 35/13 38/14 39/24 40/25 42/16 49/11 57/11 57/15 59/20 59/21 60/2 63/2 63/12 64/21 65/15 66/19 67/15 67/23 69/15 74/17 78/15 82/2 88/21 90/1 93/20 95/10 96/11 97/2 97/5 97/15 98/1 101/8 101/22 102/11 111/22 113/6 119/2 120/6 120/12 123/8 133/9 134/12 140/11 141/5 141/15 142/18 144/23 144/25 145/9 146/6 146/11 148/22 149/6 149/17 150/11 150/19 151/2 152/7 152/20 153/4 153/11 154/2 154/9 154/13 154/20 159/5 160/14 162/24 163/1 163/10 163/22 165/13 166/18 167/11 167/18 170/6 171/8 179/20 180/11
**went [8]** 32/11 57/15 58/3 100/3 146/19 147/10 151/6 152/3
**were [118]** 7/1 8/17 15/22 15/23 17/25 18/1 20/7 20/25 23/2 24/5 29/25 30/13 30/18 30/25 31/13 31/19 32/24 33/24 33/25 38/11 42/5 42/10 44/9 44/17 45/9 45/15 47/7 47/17 55/12 56/20 57/13 58/1 58/2 58/6 58/8 68/20 68/24 69/1 73/10 81/4 81/5 81/9 83/14 83/15 83/20 84/9 88/18 93/11 93/23 94/3 94/7 94/21 95/2 95/14 95/15 95/16 96/4 96/9 96/16 96/17 96/18 96/20 96/21 97/10 99/3 99/4 99/13 99/13 99/14 99/24 99/25 100/2 100/5 101/3 104/18 106/11 106/18 107/23 113/5 113/15 114/10 117/23 118/17 118/22 119/14 119/25 122/18 122/21 133/23 134/25 136/25 137/1 138/16 138/16 138/24 139/1 140/4 144/1 144/2 147/17 152/2 152/5 152/6 154/8 156/25 157/1 158/18 158/21 161/3 161/16 162/13 164/2 164/4 164/15 169/9 173/25 176/25 177/4
**weren't [5]** 40/10 83/19 114/20 140/4 158/19
**West [1]** 1/11
**what [238]**
**what's [20]** 8/15 27/5 38/23 46/24 72/23 104/16 116/12 124/16 132/23 148/16 149/12 162/23 166/10 170/4 170/17 172/1 172/3 176/6 180/9 180/11
**whatever [4]** 42/10 87/11 135/1 154/4
**whatsoever [1]** 128/10
**when [75]** 8/17 8/18 15/9 15/9 15/16 30/18 33/16 34/3 36/24 37/22 38/16 39/10 40/7 41/25 41/25 43/1 43/17 44/6 44/9 44/14 50/24 57/14 63/20 64/10 64/17 69/25 73/4 74/21 79/16 86/19 90/21 93/18 93/23 94/9 94/10 94/17 95/22 96/9 96/17 97/10 98/17 103/2 104/18 106/20 107/7 107/10 108/13 110/14 111/16 113/24 117/19 127/17 129/3 130/19 133/10 140/17 140/17

# W

**when...** [16] 141/17 142/1 143/22 148/3
150/17 150/22 152/7 152/14 153/1
153/2 153/25 155/13 159/2 160/23
161/16 162/12 169/12 178/12
**whenever** [1] 129/7
**where** [26] 7/11 16/3 17/24 40/5 44/14
45/9 50/20 62/20 76/1 76/3 85/23 96/9
98/25 111/16 123/25 124/20 125/2
125/4 128/5 128/24 129/2 152/15 157/1
163/7 164/24 178/19
**whether** [19] 14/12 17/12 40/13 41/6
43/14 52/16 60/20 67/6 80/14 82/7
94/15 104/8 104/15 112/13 131/13
134/18 148/7 148/23 166/12
**which** [47] 5/22 9/4 10/24 13/13 14/4
15/11 25/8 25/21 25/22 28/19 38/25
41/22 53/13 55/13 56/2 58/12 58/24
59/6 59/8 64/8 69/3 72/14 73/14 76/7
86/8 88/11 91/8 92/1 92/8 94/1 95/13
106/17 111/15 112/10 114/19 127/5
127/23 138/17 139/10 140/4 141/2
141/13 141/21 145/17 171/13 172/24
179/21
**whichever** [1] 47/14
**while** [2] 82/8 150/16
**who** [33] 14/9 16/23 19/8 29/19 29/21
33/9 54/16 57/4 70/18 85/17 95/19
102/20 103/25 104/3 104/7 104/16
117/1 120/7 120/15 120/16 120/16
120/22 120/23 121/2 121/3 122/1
133/24 135/13 137/1 137/17 145/5
154/3 172/15
**whole** [7] 31/24 60/20 110/12 114/19
133/17 136/24 143/23
**whom** [4] 101/4 128/6 136/15 156/17
**whose** [6] 55/18 92/14 92/15 103/17
113/2 172/1
**why** [32] 15/1 15/22 15/23 15/24 16/19
24/9 26/4 30/4 38/14 43/13 71/19 77/23
90/7 97/6 99/10 120/17 123/5 123/10
125/18 133/20 147/23 149/9 150/7
150/9 151/3 168/6 169/12 169/21
170/13 171/16 172/14 172/21
**wide** [1] 178/20
**widely** [1] 155/18
**will** [40] 7/13 10/17 12/25 13/6 13/13
28/1 28/16 28/18 28/19 34/17 56/12
59/8 59/8 60/4 60/7 60/10 61/11 61/12
63/3 63/10 67/2 72/12 73/8 73/13 73/13
73/14 76/2 76/24 77/9 87/9 123/7
123/10 133/19 143/12 163/4 167/14
168/9 172/7 172/15 178/22
**willing** [6] 29/25 30/13 31/19 32/7 32/25
113/16
**Windsor** [39] 5/23 6/2 9/14 21/13 29/13
34/10 34/22 37/5 38/21 46/7 46/10
47/20 48/17 54/25 56/19 57/23 106/17
107/18 138/13 139/5 139/21 140/6
141/1 141/13 141/22 141/24 142/17
146/8 154/24 155/3 155/19 155/23
168/24 173/13 173/23 174/7 174/11
174/22 178/11
**wish** [8] 18/22 19/16 20/15 60/9 90/4
90/9 90/9 131/10
**wishes** [2] 97/24 98/9
**wishing** [1] 37/8
**withdraw** [1] 46/25
**within** [3] 45/7 57/12 115/14
**without** [11] 7/1 17/20 30/2 31/3 34/7
35/14 53/9 72/16 135/23 140/1 161/17
**witness** [46] 2/5 2/10 14/4 15/25 16/10
16/21 17/18 19/22 36/3 40/24 41/9
41/17 43/5 49/2 61/21 62/17 65/11
65/22 65/23 65/25 66/2 67/14 67/25
68/13 76/19 77/19 92/23 93/3 109/14
113/24 114/16 141/15 156/8 156/17
160/25 161/2 161/8 161/25 162/2
162/21 162/22 176/8 176/11 177/5
177/7 180/12
**witnesses** [10] 33/25 49/4 51/22 60/19
60/22 61/18 65/14 95/16 137/13 137/16
**woefully** [1] 56/1
**won** [1] 119/11
**won't** [1] 179/20
**word** [6] 14/19 32/3 32/13 62/1 69/10
69/13
**words** [40] 6/9 29/15 29/23 30/7 30/12
30/12 30/19 31/17 31/18 31/19 31/21
31/22 32/7 38/16 40/6 41/25 50/25
54/11 54/17 54/17 69/3 69/6 69/14
69/18 69/19 70/2 79/5 79/8 79/10 91/5
101/7 101/14 102/15 111/3 113/20
117/21 123/24 123/25 124/1 174/16
**work** [2] 115/9 177/17
**working** [2] 138/8 142/15
**worth** [1] 61/8
**would** [137] 5/24 6/7 6/25 7/15 8/3 8/19
8/25 9/20 11/4 11/6 12/1 12/5 14/15
15/10 16/2 18/8 18/20 18/23 20/5 30/8
30/12 34/6 35/18 38/10 39/2 39/11
39/15 40/6 40/8 42/4 42/9 42/13 42/16
45/6 46/18 50/25 51/6 57/19 60/13
60/17 61/21 61/24 62/5 62/7 62/8 62/14
62/17 62/18 63/8 63/12 63/17 64/1
64/15 64/18 67/9 67/15 67/16 68/2
69/15 73/18 75/19 77/20 78/8 79/12
81/8 82/14 82/20 86/15 86/15 87/1
87/19 89/11 89/24 90/2 91/6 91/8 91/9
93/22 96/23 97/19 99/10 102/13 106/7
107/25 108/24 109/2 109/3 109/4 109/5
109/6 109/6 109/8 113/17 115/20 120/3
124/23 126/4 134/10 134/18 134/21
135/1 135/4 135/23 136/3 137/22
137/22 141/7 145/10 149/23 149/23
149/24 149/24 150/2 150/4 152/9
156/10 157/6 159/15 160/24 161/17
162/22 168/7 169/11 169/13 170/9
170/10 171/12 172/24 173/4 174/11
174/13 174/18 174/25 175/1 175/21
176/22 177/6
**wouldn't** [7] 46/14 113/12 113/19
125/23 125/24 135/4 150/1
**writ** [1] 67/19
**writing** [1] 83/20
**written** [3] 83/12 83/15 167/20
**wrong** [12] 18/10 18/21 23/20 29/24
99/4 99/4 99/13 99/13 99/14 107/24
128/14 148/16
**wrongdoing** [2] 74/9 99/2
**wronged** [4] 30/1 30/14 32/20 33/1
**wrote** [5] 112/21 122/3 122/16 122/19
132/17

# Y

**yeah** [10] 21/3 26/15 32/15 73/1 78/3
122/10 125/3 125/4 129/25 140/16
**year** [1] 162/11
**years** [7] 42/8 42/18 145/17 162/10
162/15 169/5 169/6
**yellow** [5] 103/15 104/1 104/12 112/24
131/10
**Yep** [2] 91/22 130/21
**yes** [147] 5/3 5/4 6/6 6/14 6/22 9/5 11/16
11/18 13/21 20/12 20/17 20/20 20/23
21/6 22/24 27/12 27/14 27/18 32/22
34/14 35/20 37/3 44/22 47/13 47/19
48/3 49/1 52/3 53/5 58/16 60/13 61/2
61/15 61/19 67/12 69/6 71/12 71/18

72/12 73/23 74/20 75/10 75/12 76/11
81/13 81/18 82/18 85/7 88/1 89/3 89/7
90/18 91/10 91/22 93/2 93/8 93/13
93/17 94/7 94/19 94/23 95/10 95/21
96/25 98/20 98/21 105/19 106/19 107/1
107/11 110/15 110/5 110/13 110/21
111/6 111/8 112/3 114/17 116/20
121/25 122/12 122/14 123/17 123/18
123/23 123/24 125/10 127/11 127/20
130/3 133/9 134/7 137/15 139/2 140/25
141/18 142/2 143/8 144/20 145/9 146/4
148/6 148/6 148/10 151/2 151/2 152/5
152/23 153/20 153/22 154/2 155/12
155/17 157/2 158/9 158/10 158/11
158/23 158/25 160/6 161/8 163/15
163/19 164/13 164/23 166/7 167/1
167/24 168/2 168/5 168/17 168/20
169/3 171/7 171/23 173/15 173/21
174/1 174/1 174/9 174/9 174/23 175/1
175/11 175/19 175/23 177/14
**yet** [2] 51/15 167/8
**you** [796]
**you'll** [13] 73/21 86/1 86/7 86/18 86/25
87/3 87/11 87/15 88/3 88/8 90/16 90/19
91/3
**you're** [40] 18/10 25/24 32/8 32/24
33/15 39/16 40/15 42/24 43/9 51/23
52/18 75/16 79/1 112/22 115/25 116/2
119/2 120/19 121/12 121/14 122/24
124/21 126/20 126/22 128/6 128/14
129/1 134/9 136/11 141/24 149/12
151/18 156/17 157/25 159/25 163/1
169/2 173/22 174/6 179/22
**you've** [19] 27/11 31/16 46/7 65/11 66/3
66/25 73/4 83/4 83/8 91/19 118/21
127/3 127/8 127/10 127/12 132/16
167/8 167/16 169/4
**your** [340]
**yours** [1] 84/8
**yourself** [9] 29/11 30/1 36/22 71/2 83/10
87/13 127/22 127/22 167/8
**yourselves** [1] 80/4